**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLENDA JOHNSON et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. No. 11-5782** |
| | : | |
| **SMITHKLINE BEECHAM** | : | |
| **CORPORATION et al.,** | : | |
| **Defendants.** | : | |

---

**Diamond, J.**                                                                                 **March 29, 2012**

**MEMORANDUM**

Plaintiffs Glenda Johnson (a Louisiana citizen) and Steven Lucier (a Pennsylvania

citizen) brought this action in Philadelphia Common Pleas Court, alleging that thalidomide—a

drug developed, produced, and distributed by Defendants—caused Plaintiffs to suffer severe

birth defects. *(Doc. No. 1, Ex. A.)* Invoking diversity jurisdiction, Defendants removed to this

Court. *(Doc. No. 1.)* <u>See</u> 28 U.S.C. §§ 1332(a)(1), 1441(a). Plaintiffs now ask me to remand,

arguing that: 1) Defendants GlaxoSmithKline LLC, GlaxoSmithKline Holdings (Americas) Inc.,

SmithKline Beecham Corporation, and Avantor Performance Materials are Pennsylvania

citizens, thus defeating complete diversity; and 2) SmithKline Beecham Corporation did not

consent to removal. *(Doc. No. 17.)* <u>See</u> 28 U.S.C. § 1332(a)(1); <u>Balazik v. County of Dauphin</u>,

44 F.3d 209, 213 (3d Cir. 1995). For the reasons that follow, I will not remand. Because

members of this Court have made contrary determinations as to the GlaxoSmithKline

Defendants' citizenship and will continue to do so absent appellate guidance, I conclude that this

important jurisdictional issue is "a controlling question of law as to which there is substantial

ground for difference of opinion and that an immediate appeal from [my] order may materially

advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

1

I.     **LEGAL STANDARDS**

For diversity jurisdiction to exist, no defendant in a civil action may be a citizen of the

same state as any plaintiff. See 28 U.S.C. § 1332(a)(1); Grand Union Supermarkets of the V.I.,

Inc. v. H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir. 2003) (citing Carden v. Arkoma

Assocs., 494 U.S. 185, 187 (1990)). Because this matter began in state court, diversity must have

existed both when the Complaint was filed and when the matter was removed. 14B Charles A.

Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, Federal Practice and

Procedure § 3723 & n.15 (4th ed. 2009) (collecting cases).

The removing party must establish federal jurisdiction. Hertz Corp. v. Friend, 130 S. Ct.

1181, 1194 (2010).

> In determining whether diversity exists, the court "may demand" that . . .
> "jurisdictional facts" be established by an evidentiary preponderance. . . . "When
> challenged on allegations of jurisdictional facts, the parties must support their
> allegations by competent proof."

Greenberg v. Macy's, No. 11-4132, 2011 WL 4336674, at *2 (E.D. Pa. Sept. 15, 2011) (quoting

Hertz, 130 S. Ct. at 1194-95; Frederico v. Home Depot, 507 F.3d 188, 194 (3d Cir. 2007)).

The Third Circuit has held that as with "partnerships and other unincorporated

associations," the citizenship of a limited liability company "is determined by the citizenship of

its members." Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010). A

corporation is a citizen of the state in which it is incorporated and the state where its principal

place of business or "nerve center" is located. 28 U.S.C. § 1332(c)(1); Hertz, 130 S. Ct. at 1192.

Accordingly, a business incorporated in one state with a nerve center in another state is a citizen

of both states. See Davis v. Union Pac. Ry. Co., 224 F. App'x 190, 191 (3d Cir. 2007). A

corporation may have only one nerve center, however. Hertz, 130 S. Ct. at 1193. It is "the place

where a corporation's officers direct, control, and coordinate the corporation's activities." Id. at

1192. This is not necessarily where a business's bylaws or government filings suggest "nerve center activities" will take place. See id. at 1195 (SEC filing does not establish nerve center); Buethe v. Britt Airlines, Inc., 787 F.2d 1194, 1196 (7th Cir. 1986) (registered office provided in articles of incorporation does not establish nerve center); Guitar Holding Co. v. El Paso Natural Gas Co., No. 10-214, 2010 WL 3338550, at *5 (W.D. Tex. Aug. 18, 2010) (address provided in tax filings does not establish nerve center).

The Supreme Court has cautioned that

> if the record reveals attempts at manipulation—for example, that the alleged "nerve center" is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the "nerve center" the place of actual direction, control, and coordination, in the absence of such manipulation.

Hertz, 130 S. Ct. at 1195. The Hertz Court recognized that "there may be no perfect test that satisfies all administrative and purposive criteria," and that "there will be hard cases" under the nerve center test. Id. at 1194; see also id. ("We understand that . . . seeming anomalies will arise. However, in view of the necessity of having a clearer rule, we must accept them.").

## II. RECORD

The Parties have agreed to proceed on the jurisdictional record made before Judge Savage in Brewer v. SmithKline Beacham Corp., 774 F. Supp. 2d 720 (E.D. Pa. 2011). *(Doc. No. 17, Exs. 4-6; Doc. No. 34, Exs. 1-2, 5.)* The Parties have supplemented this record with documents related to the Defendants' principal places of business, including Defendants' business records, information from their websites, and four affidavits. *(Doc. No. 17, Exs. 1-3, 7-14; Doc. No. 34, Exs. 3-4, 6-9; Doc. No. 39, Exs. A-F.)*

3

III.     **DISCUSSION**

My ruling as to jurisdiction turns largely on the differences between a "holding company" and an "operating company." A holding company is typically described as a business that exists solely to own and manage its investments in other companies, and does not engage in its subsidiaries' operations. See, e.g., Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 454 (9th Cir. 2007); Corley v. Rosewood Care Ctr., Inc. of Peoria, 388 F.3d 990, 994 (7th Cir. 2004). An operating company, however, produces goods or provides services to customers. See, e.g., Boyer v. Crown Stock Distrib., Inc., 587 F.3d 787, 790, 791 (7th Cir. 2009); Boase v. Lee Rubber & Tire Corp., 437 F.2d 527, 528 n.1 (3d Cir. 1970).

A.      Diversity Jurisdiction

Plaintiffs argue that I must remand because, like Mr. Lucier, GSK LLC and Holdings are Pennsylvania citizens. They base their argument principally on Brewer, in which Judge Savage ruled that both LLC and Holdings are Pennsylvania citizens. 774 F. Supp. 2d at 732. Because I respectfully disagree with Judge Savage's reasoning, I am compelled to reject Plaintiffs' contention and deny their Motion. Because, as I have noted, this jurisdictional issue has divided and will continue to divide this Court, I have concluded that the issue meets 28 U.S.C. § 1292(b)'s requirements.

*GSK LLC*

LLC is a pharmaceutical and consumer healthcare company with its principal place of business in Philadelphia. Once again, however, a limited liability company's citizenship is determined solely by the citizenship of its members, not by the state in which it is legally organized or has its nerve center. See Zambelli, 592 F.3d at 420; Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 347-48 (7th Cir. 2006); Brewer, 774 F. Supp. 2d at 725.

Because GSK LLC's sole member is Holdings, its citizenship is determined by that of Holdings. *(Doc. No. 17, Ex. 4 at 18.)* As I will explain, Holdings—and by extension, GSK LLC—are citizens of Delaware, not Pennsylvania.

*GSK Holdings*

Holdings is a citizen of its state of incorporation and the state where its nerve center is located. 28 U.S.C. § 1332(c)(1); Hertz, 130 S. Ct. at 1192. It is undisputed that Holdings is incorporated in Delaware. *(Doc. No. 17-1 at 19.)*

As a holding company, Holdings does not operate GSK LLC. *(Doc. No. 17, Ex. 4 at 59, 147-48, 150, 166.)* Rather, it manages United States investments—including assets other than GSK LLC—within the group of companies headed by Holdings's and LLC's "ultimate parent," London-based GlaxoSmithKline plc. *(Id., Ex. 4 at 14-15, 17, 59-60, 191-92, Ex. 5 at 115, 117, Ex. 6 at 20.)* In this investment role, Holdings's three-person Board of Directors decides whether to make investments, pay out dividends, and approve restructurings. *(Id., Ex. 4 at 132, 165-66, Ex. 5 at 136, 140, Ex. 6 at 26-28.)*

To carry out these extremely limited activities, Holdings has six officers (three of whom also serve as its Directors) and only one employee, who works in Wilmington and devotes about 20 hours a year to the Company's affairs. *(Id., Ex. 4 at 92, Ex. 5 at 35, 138.)* Holdings's office is a ten-by-ten-foot room in Wilmington that it subleases from Wilmington Trust. *(Id., Ex. 5 at 19.)* Dozens of holding companies have similar one-room offices in the same building. *(Id., Ex. 5 at 22-23.)* The room contains filing cabinets, a desk, Holdings's books and records, a chair, and computer equipment. *(Id., Ex. 5 at 19, 53.)* The office is rarely used. *(Ex. 5 at 19, 25, 53-54.)* Although the office has a telephone, its calls are routed to an answering service in the same

5

building. *(Id., Ex. 5 at 50-52, 61-62.)* The Directors rarely visit the office, and one testified that he did not recall ever having visited it. *(Id., Ex. 4 at 40, Ex. 5 at 53-54.)*

Holdings's three Directors require no more than four 15- to 30-minute Board meetings a year to manage Holdings's affairs. *(Id., Ex. 4 at 42, 66, 166-67, Ex. 5 at 34, 130.)* Although Holdings's bylaws indicate that the meetings will take place in Philadelphia, they have, in fact, taken place in Wilmington exclusively since 2001. *(Id., Ex. 4 at 66-67, 155-57, 164, 190, 203, 206-07; Doc. No. 34, Ex. 1 ¶ 15, Ex. 6.)* The Board's meeting room is in the same building as Holdings's office. *(Doc. No. 17, Ex. 4 at 40.)* The meeting minutes and corporate seal are kept in Wilmington. *(Id., Ex. 4 at 156, 206; Doc. No. 34, Ex. 6 ¶ 5.)* The three Directors have their main offices in London, Philadelphia, and Wilmington. *(Doc. No. 17, Ex. 4 at 63.)* The Wilmington Director attends all Board meetings in person; the London and Philadelphia Directors attend most meetings in person. *(Id., Ex. 4 at 76, 90, 92, 127, 161-62, Ex. 5 at 129, Ex. 6 at 23-24.)* They will otherwise attend by telephone. *(Id., Ex. 4 at 66, Ex. 6 at 23-24; Doc. No. 17-1 at 24.)* The Board thus controls all Holdings's actions through resolutions that are considered and passed in Wilmington. *(Id., Ex. 4 at 157-58, Ex. 6 at 24.)* These decisions may be made only by the Directors acting together at these meetings; no single Director has the authority to operate Holdings. *(Id., Ex. 4 at 157-58, 183, Ex. 5 at 132-33, Ex. 6 at 24-25.)*

Because all Holdings's investment-related actions require Board decisions, officers and employees (most of them based outside Delaware) have no management discretion. Rather, they execute these decisions as directed by the Board. *(Id., Ex. 4 at 86-87, 89, 183-84, 188, 193-94, Ex. 6 at 16, 25-28; Doc. No. 34, Ex. 1 ¶ 15.)*

Holdings's Wilmington "footprint" is certainly modest. I must measure that footprint, however, against the modest scope of Holdings's activities. See <u>457 Madison Ave. Corp. v.</u>

<u>Amedeo Hotels Ltd. P'ship</u>, No. 04-3030, 2004 WL 1335937, at *1 (S.D.N.Y. June 11, 2004)
(Mukasey, J.) (limited partnership is Delaware citizen because partners' corporate activities,
though minimal, were conducted in Delaware). Such measurement makes plain that Holdings's
corporate "brain" and its nerve center are in Delaware. <u>See</u> <u>Hertz</u>, 130 S. Ct. at 1194 (nerve
center is where officers direct business operations, not where those operations take place); <u>Cent.</u>
<u>W. Va. Energy Co. v. Mountain State Carbon, LLC</u>, 636 F.3d 101, 105 (4th Cir. 2011) (nerve
center is where officers "set[] policy and oversee[] significant corporate decisions," not where
day-to-day operations take place); <u>S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.</u>, No. 11-
542, 2011 WL 1565996, at *3 (S.D. Tex. Apr. 25, 2011) (nerve center of purported shell
company was where board of directors met).

   Plaintiffs invoke the <u>Hertz</u> Court's admonition that a corporation's nerve center is not
simply where board meetings take place. <u>See</u> 130 S. Ct. at 1192. Plaintiffs ignore, however, that
the Court was seeking to determine the nerve center of Hertz—an operating company with
extensive activities carried out by 11,230 employees at facilities in 44 states. <u>Id.</u> at 1186. The
activities of an operating company and those of a holding company are obviously different. As
innumerable courts have observed, holding companies do not run the entities they own; rather,
all holding companies do is "hold." <u>See, e.g.</u>, <u>Primary Succession Capital, LLC v. Schaeffler,</u>
<u>KG</u>, No. 09-735, 2010 WL 4236948, at *1 (S.D.N.Y. Oct. 26, 2010) ("That holding company . . .
exists solely as a vehicle to facilitate Georg's ownership interest in Schaeffler, KG and the entire
Schaeffler Group."); <u>Hurth v. Bradman Lake Group, Ltd.</u>, No. 08-370, 2009 WL 2497993, at *4
(W.D.N.C. Aug. 14, 2009) ("It is undisputed that the UK Defendants are holding companies and
neither engages in manufacturing or selling machinery—their subsidiary's primary activities.");
<u>LG Elecs., Inc. v. ASKO Appliances, Inc.</u>, No. 08-828, 2009 WL 1811098, at *3 (D. Del. June

23, 2009) ("ASKO Holding is merely a passive holding company that engages in no production

activities, and does not participate in its subsidiary's day-to-day decisions, propositions LG does

not dispute."); Gurvey v. Cowan, Liebowitz & Latman, PC, No. 06-1202, 2009 WL 691056, at

*1 (S.D.N.Y. Mar. 17, 2009) ("Both Defendants are holding companies whose sole purpose is to

hold stock in subsidiaries and other companies."); In re 15375 Memorial Corp., 400 B.R. 420,

423 (D. Del. 2009) ("Memorial, a Delaware corporation, is a holding company that has no office

or employees and engages in no business other than to act as the sole shareholder of Santa Fe.");

LaPlante v. OneBeacon Ins. Group, No. 05-496, 2006 WL 3004750, at *1 (D.R.I. Oct. 20, 2006)

("OneBeacon is a holding company, the sole purpose of which is to own various incorporated

insurance companies."); Garshman v. Universal Res. Holding, Inc., 641 F. Supp. 1359, 1366

(D.N.J. 1986) ("As a public utility holding company, System engages in no commercial activity

other than holding the voting stock and debt of its wholly owned subsidiary.").

    In noting that the nerve center of a sprawling operating company and the site of its board

meetings may be different, the Hertz Court was not referring to these myriad holding entities,

whose limited, ownership-related activities are necessarily "direct[ed], control[led], and

coordinat[ed]" by their boards. Hertz, 130 S. Ct. at 1192. Because Holdings's Board undertakes

its activities entirely in Wilmington, Holdings's nerve center is in Delaware. Cf. Bellomo v. Pa.

Life Co., 488 F. Supp. 744, 746 (S.D.N.Y. 1980) ("Where a holding company is nothing more

than an investment mechanism . . . [t]he business of the parent is the business of investment, and

that business is carried out entirely at the parent level.").

    Plaintiffs contend that Holdings's emphasis on its boardroom activities is simply an

"attempt[] at [jurisdictional] manipulation"—that the Wilmington boardroom is tantamount to "a

mail drop box, a bare office with a computer, or the location of an annual executive retreat."

Hertz, 130 S. Ct. at 1195. Again, Plaintiffs ignore that because Holdings is not an operating company, its most significant activities are limited and necessarily conducted by its Board of Directors alone. Moreover, there is nothing to suggest that the GSK Defendants implemented their particular holding structure to "manipulate" jurisdiction. *(Doc. No. 17, Ex. 4 at 142, 201-02.)* See id.; Brewer, 774 F. Supp. 2d at 730 ("LLC was formed to accomplish a legitimate business purpose and not to manipulate jurisdiction for litigation purposes."). On the contrary, it is undisputed that Holdings was incorporated in Delaware in 1999, that it has investments other than LLC, and that Holdings's limited activities have remained the same since its formation. *(Id., Ex. 4 at 59, 146-47, Ex. 5 at 117; Doc. No. 34, Ex. 1 ¶¶ 14-15.)*

Plaintiffs also argue that under Delaware law, Holdings "delegated" its operational responsibilities to GSK LLC. Accordingly, they contend that because this owner-subsidiary structure is highly unusual, I must conclude that Holdings's nerve center is located where LLC's officers carry out those operations. The law suggests just the opposite. See Danjaq, S.A. v. Pathe Commc'ns Corp., 979 F.2d 772, 775 (9th Cir. 1992) (subsidiary's activities not attributed to parent in determining citizenship); Pyramid Sec. Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1120 (D.C. Cir. 1990) (same); cf. In re Am. Int'l Group, Inc., 965 A.2d 763, 816 n.194 (Del. Ch. 2009) (citing HMG/Courtland Props., Inc. v. Gray, 729 A.2d 300, 307 (Del. Ch. 1999)) (subsidiary that maintains independent identity is not parent company's alter ego).

I agree that Delaware law gave Holdings, as owner of LLC, the authority to operate LLC, had it chosen to do so. See 6 Del. C. § 18-402. Plaintiffs' suggestion notwithstanding, the statutory conferral of such authority is hardly unusual. See, e.g., Cal. Corp. Code § 17151; 805 Ill. Comp. Stat. 180/15-1; N.J. Stat. Ann. § 42:2B-27; N.Y. Ltd. Liab. Co. Law § 408; 15 Pa. Cons. Stat. § 8941. Moreover, Plaintiffs have identified no provision of Delaware law that

*required* Holdings to manage LLC. On the contrary, they concede that "Holdings as the sole

member was not obligated to retain management control." *(Doc. No. 17-1 at 31.)* Further, apart

from Brewer, Plaintiffs cite no decision (and I have found none) that adopts this delegation

argument. Cf. J.A. Olson Co. v. City of Winona, 818 F.2d 401, 412 (5th Cir. 1987) (nerve center

may be found outside corporation where *the corporation's* activities are managed by a separate

company) (discussing Toms v. Country Quality Meats, Inc., 610 F.2d 313 (5th Cir. 1980)).

    In these circumstances, Holdings's decision to conduct only ownership activities and

"delegate" operational authority is typical of all holding companies and determines neither

Holdings's nor LLC's citizenship. See Carden, 494 U.S. at 192, 195 (partnership's citizenship

determined by citizenship of managing partners and non-managing partners alike); Zambelli, 592

F.3d at 419 (limited liability company takes members' citizenship despite their passive

management role); Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121 (4th Cir. 2004)

(limited liability company assumes citizenship of its corporate member); Harvey v. Grey Wolf

Holding Co., 542 F.3d 1077, 1079-80 (5th Cir. 2008) (limited liability company assumes

citizenship of its holding company member); S & T Oil, 2011 WL 1565996, at *3 (purported

shell company's nerve center is located where board directs company's activities); 457 Madison

Ave. Corp., 2004 WL 1335937, at *1 (holding company partner and its limited partnership were

Delaware citizens because holding company was directed from Delaware).

    The result Plaintiffs urge would effectively construe all holding companies out of

existence and contravene Hertz. By Plaintiffs' logic, a Delaware corporation that holds fifteen

limited liability companies operating in fifteen different states might well have fifteen nerve

centers. The Supreme Court has condemned precisely such an "anomalous result," noting that

the lower court's "novel citizenship rule" meant that Wachovia Bank "would be a citizen of 16

States." <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 317 (2006) (construing citizenship statute for national banking associations, 28 U.S.C. § 1348).

Moreover, there is no indication that the <u>Hertz</u> Court intended to create a "holding company exception" to its admonition that a corporation has only one nerve center. <u>See</u> <u>Hertz</u>, 130 S. Ct. at 1193 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."). Indeed, the creation of such an exception would necessitate the kind of "complex jurisdictional administration" the <u>Hertz</u> Court condemned. <u>See</u> <u>id.</u> at 1193 ("Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."); <u>Balachander v. AET Inc.</u>, No. 10-4805, 2011 WL 4500048, at *7 (S.D. Tex. Sept. 27, 2011) ("[T]he <u>Hertz</u> Court [rejected] a nuanced and fact-specific test in favor of a bright-line test.").

In sum, a corporation's principal place of business—including that of a holding company—is the state in which *the corporation's* activities are "directed, controlled, and coordinated." <u>Hertz</u>, 130 S. Ct. at 1192; <u>see</u> <u>J.A. Olson Co.</u>, 818 F.2d at 412; <u>S & T Oil</u>, 2011 WL 1565996, at *3; <u>457 Madison Ave. Corp.</u>, 2004 WL 1335937, at *1. Holdings and LLC are distinct entities that conduct significant, but different, business activities. Holdings's nerve center is not in Philadelphia because its investment (LLC) operates there. Rather, Holdings's nerve center is where its ownership decisions are made: Wilmington. Accordingly, Holdings and LLC are Delaware citizens. <u>See</u> 28 U.S.C. § 1332(c)(1); <u>Hertz</u>, 130 S. Ct. at 1192; <u>Zambelli</u>, 592 F.3d at 420.

*Avantor*

Plaintiffs argue that at the time of removal, Defendant Avantor (the successor corporation to a thalidomide manufacturer) had its "nerve center" in Center Valley, Pennsylvania. Avantor

has submitted two affidavits from its general counsel, internal Company memoranda, and a newspaper report, all of which establish that Avantor's headquarters moved from New Jersey to Pennsylvania on September 19, 2011—five days *after* Defendants removed the case. None of the evidence Plaintiffs have submitted contradicts this. *(Doc. No. 17-1 at 38-43; Doc. No. 39 at 26-30.)* Accordingly, at all relevant times, Avantor was a citizen of New Jersey, not Pennsylvania.

B.    SmithKline Beecham's Failure to "Consent" to Removal

All properly joined defendants must consent to removal. See Balazik, 44 F.3d at 213. The unanimity rule may be disregarded if "a non-joining defendant is an unknown or nominal party." *(Doc. No. 17-1 at 12 & n.13.)* Id. at 213 n.4 (citations omitted); cf. 28 U.S.C. § 1441(b) (diversity is determined based on citizenship of real parties in interest); Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980) (in diversity cases, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"). Nominal parties are "those without a real interest in the litigation." Bumberger v. Ins. Co. of N. Am., 952 F.2d 764, 767 (3d Cir. 1991).

Plaintiffs argue that because SmithKline Beecham did not consent, the "rule of unanimity" requires remand. *(Id. at 10-13.)* I disagree.

Formerly a Pennsylvania corporation, SmithKline Beecham was converted on October 27, 2009 to GSK LLC, a limited liability company organized under Delaware law. *(Doc. No. 17, Ex. 4 at 19-22; Doc. No. 34, Ex. 1 ¶¶ 3-10.)* This was done to avoid certain tax liabilities. *(Doc. No. 17, Ex. 4 at 18-21, 139.)* Brewer, 774 F. Supp. 2d at 723. Under Delaware law, GSK LLC is a continuation of SmithKline Beecham, and all SmithKline Beecham's debts and liabilities "remain attached" to LLC. *(Id., Ex. 4 at 145-46, Ex. 6 at 20.)* See 6 Del. C. § 18-214(f); 8 Del. C. § 265(f). SmithKline Beecham's senior managers and assets became LLC's senior managers and

assets. *(Id., Ex. 4 at 43-47, 142-46.)* SmithKline Beecham's Philadelphia headquarters became those of GSK LLC. *(Id.)* Like SmithKline Beecham, GSK LLC is a pharmaceutical and consumer healthcare business.

Plaintiffs do not dispute that SmithKline Beecham is now GSK LLC. *(Doc. No. 39 at 6-8.)* LLC is thus the real party in interest that consented to removal; no entity named SmithKline Beecham now exists that has "a real interest in the litigation." Bumberger, 952 F.2d at 767. Plaintiffs rely upon decisions that are inapposite because they include no consideration of the undisputed fact that GSK LLC *is* SmithKline Beecham, domesticated under Delaware law and operating under a different name. See Monroe v. SmithKline Beecham Corp., No. 10-2140, 2010 WL 2606682, at *3 (E.D. Pa. June 25, 2010), vacated, Monroe, No. 10-2140 (E.D. Pa. July 23, 2010); Aaron v. SmithKline Beecham Corp., No. 09-1071, 2010 WL 1752546, at *5 (S.D. Ill. Apr. 28, 2010). Accordingly, "SmithKline Beecham Corporation d/b/a GlaxoSmithKline" is a nominal party whose consent was not required for removal. See Balazik, 44 F.3d at 213 n.4; see also Navarro Sav. Ass'n, 446 U.S. at 461 (nominal party's citizenship must be disregarded for diversity purposes).

Plaintiffs also contend that SmithKline Beecham continues to exist independently of GSK LLC by operation of 15 Pa. Cons. Stat. § 1979, which provides that: 1) an "action or proceeding may be prosecuted against and defended by a dissolved corporation in its corporate name"; and 2) remedies against a dissolved corporation expire two years after the date of dissolution. 15 Pa. Cons. Stat. § 1979(a)(2), (e). Plaintiffs thus argue that SmithKline Beecham continued to exist as a Pennsylvania citizen until two years after its conversion to GSK LLC—over a month after Defendants removed to this Court.

Plaintiffs ignore that SmithKline Beecham domesticated itself as a Delaware corporation pursuant to 15 Pa. Cons. Stat. § 1980, and then converted to a Delaware limited liability company. Though such domestication is termed a "dissolution" under Pennsylvania law, it is not a dissolution "in the ordinary sense." See 15 Pa. Cons. Stat. § 1980 cmt. "The existence of the corporation is not affected because the same entity continues to exist in the new jurisdiction of incorporation." Id.; see Brewer, 774 F. Supp. 2d at 723 ("SKB did not dissolve when it was converted to LLC."). Further, Plaintiffs ignore § 1979's purpose: to provide "an orderly procedure" for corporations that wish to dissolve in fact—and so no longer to exist in *any* form—and "to fix a time beyond which the shareholders need no longer concern themselves about the possibility that creditors might assert claims which could upset the dissolution." Am. Optical Co. v. Phila. Elec. Co., 228 F. Supp. 293, 295 (E.D. Pa. 1964).

Plaintiffs are thus correct in stating that any cause of action against SmithKline Beecham survived its "dissolution," because the cause of action now exists against GSK LLC. See 6 Del. C. § 18-214(f); 8 Del. C. § 265(f). They err, however, in suggesting that SmithKline Beecham still exists as an entity separate from LLC.

Plaintiffs also argue that because service was twice accepted on SmithKline Beecham's behalf, this somehow establishes that its existence continued after 2009. Once again, I disagree. Plaintiffs "served" the instant Complaint upon SmithKline Beecham at GSK LLC's Philadelphia headquarters. *(Doc. No. 17, Exs. 8A, 8B at 8, 10, 12.)* It thus appears that LLC—the real party in interest—accepted service for SmithKline Beecham. This does not establish that SmithKline Beecham then existed, nor that its consent was required for removal. See Balazik, 44 F.3d at 213 n.4; Adams v. AlliedSignal Gen. Aviation Avionics, 74 F.3d 882, 884, 885 (8th Cir. 1996) (service upon operating divisions of real party in interest does not establish they are independent

14

legal entities). Indeed, it would be anomalous (to say the least) if the real party in interest—

LLC—could accept service but could not consent on behalf of the same nominal party.

## IV.     INTERLOCUTORY CERTIFICATION

Two Judges of this Court have already reached contrary conclusions as to whether

Holdings and LLC are Pennsylvania citizens. Compare Brewer, 774 F. Supp. 2d 720 (Savage, J.)

(GSK Defendants are citizens of both Delaware and Pennsylvania), Patton ex rel. Daniels-Patton

v. SmithKline Beecham Corp., No. 11-5965, 2011 WL 6210724 (E.D. Pa. Dec. 14, 2011)

(Savage, J.) (same), and Maldonado ex rel. Maldonado v. SmithKline Beecham Corp., No. 11-

2812, 2011 WL 7069430 (E.D. Pa. Dec. 12, 2011) (Savage, J.) (same) with White v. SmithKline

Beecham Corp., No. 10-2141, 2010 WL 3119926 (E.D. Pa. Aug. 6, 2010) (McLaughlin, J.)

(GSK Defendants are citizens of Delaware alone).

GSK LLC and Holdings are also defendants in thalidomide cases removed from state

court and pending before Judge Jones and Judge Slomsky of this Court. Murray v. SmithKline

Beecham Corp., No. 11-3510 (E.D. Pa. filed May 31, 2011); Yeatts v. SmithKline Beecham

Corp., No. 11-6711 (E.D. Pa. filed Oct. 27, 2011). The plaintiffs in those cases have moved to

remand, making the same jurisdictional arguments Plaintiffs make here. Although I have ruled

that this Court has subject matter jurisdiction, Judges Jones and Slomsky have ruled that it does

not. Without guidance from the Third Circuit, Judges of this Court will undoubtedly continue to

disagree in the numerous cases involving the GSK Defendants and similarly situated parties. See,

e.g., Maldonado, 2011 WL 7069430 (remanding 27 GSK cases); Patton, 2011 WL 6210724

(remanding 9 GSK cases). The resulting uncertainty is extremely troubling. See Hertz, 130 S. Ct.

at 1193 ("Predictability is valuable to corporations making business and investment decisions.").

Statutory restraints on appellate jurisdiction compound these difficulties. See 28 U.S.C. §§ 1291, 1292(a), 1447(d). A refusal to remand is appealable, but an order remanding generally is not. See 28 U.S.C. § 1447(d), 1453(c); In re U.S. Healthcare, 159 F.3d 142, 146 (3d Cir. 1998) (remand for lack of subject matter jurisdiction not reviewable on appeal). Further, Courts of Appeals have resisted perceived attempts to circumvent this rule. See In re Federal-Mogul Global, Inc., 300 F.3d 368, 387-88 (3d Cir. 2002) (remand order not reviewable by way of mandamus); Hunt v. Acromed Corp., 961 F.2d 1079, 1082 (3d Cir. 1992) (after remand, order denying motion to amend defective notice of removal not reviewable on appeal); Ray v. Am. Nat'l Red Cross, 921 F.2d 324, 326 (D.C. Cir. 1990) (without accompanying order, jurisdictional question dispositive of remand issue not reviewable on appeal). But see In re WTC Disaster Site, 414 F.3d 352, 381 (2d Cir. 2005) (declining to address remand issue on appeal, but "inviting" district court to revisit its decision remanding to state court).

Such hurdles to appellate review may prevent this Court from obtaining much-needed guidance in resolving the jurisdictional question respecting the GSK Defendants' citizenship. Accordingly, Judge Jones, Judge Slomsky, and I have agreed to issue our rulings on the same day, and to certify this jurisdictional question for interlocutory appeal. See 28 U.S.C. § 1292(b). The Parties have agreed jointly to appeal our Orders. Accordingly, I conclude that the jurisdictional issue respecting the GSK Defendants' citizenship "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from [my] order may materially advance the ultimate termination of the litigation." Id.

V.      **CONCLUSION**

I am well aware that the law requires me to resolve all doubts in favor of remand. <u>Brown v. Francis</u>, 75 F.3d 860, 864-65 (3d Cir. 1996) (citing <u>Abels v. State Farm Fire & Cas. Co.</u>, 770 F.2d 26, 29 (3d Cir. 1985)). I have no doubt, however, as to whether this Court has subject matter jurisdiction here. Accordingly, I will deny Plaintiffs' Motion to Remand.

An appropriate Order follows.

*/s/ Paul S. Diamond*
_____
**Paul S. Diamond, J.**