IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

GLENDA JOHNSON, et al.,:    Case No.
                  :    2:11-cv-05782-PD

         Plaintiffs  :

      vs.         :

                    :

SMITHKLINE BEECHAM   :

CORPORATION, et al.,  :

                    :

      Defendants  :

- - -

Thursday, June 25, 2015
- - -

Telephonic Interview Under Oath
conducted by SPECIAL DISCOVERY MASTER
WILLIAM T. HANGLEY, ESQUIRE, of Plaintiff,
DARREN GRIGGS, taken pursuant to notice,
held at the law offices of HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER, P.C., One Logan
Square, 27th Floor, Philadelphia,
Pennsylvania 19103, beginning at 2:00 p.m.,
on the above date, before MARIA NOELLE
DAMIANI, Registered Merit Reporter,
Certified Realtime Reporter, Certified
Licensed iCVnet Reporter, Certified LiveNote
Reporter, Certified Shorthand Reporter (NJ
License No. 30XI00224100; DE License No.
RPR-117; PA; NY; DC) and a Notary Public.

- - -

ELITE LITIGATION SOLUTIONS, LLC
1518 Walnut Street, Suite 300
Philadelphia, Pennsylvania 19102
www.elitelsllc.com ~ (215) 563-3703

 1

     INTERVIEW OF PLAINTIFFS HELD BEFORE THE
 2   SPECIAL DISCOVERY MASTER:
 3   HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, PC
     BY:  WILLIAM T. HANGLEY, ESQUIRE
 4   BY:  ALLISON R. BUCCOLA, ESQUIRE
     One Logan Square, 27th Floor
 5   Philadelphia, Pennsylvania 19103
     Telephone: 215.496.7001
 6   E-mail:  Whangley@hangley.com
     Abuccola@hangley.com
 7
 8   A P P E A R A N C E S :
 9   HAGENS BERMAN SOBOL SHAPIRO LLC
     BY:  CRAIG SPIEGEL, ESQUIRE
10   BY:  ASHLEY BEDE, ESQUIRE
     1918 8th Avenue, Suite 3300
11   Seattle, Washington 98101
     Telephone:  206.623.7292
12   E-mail:  Ari@hbsslaw.com
     -Representing the Plaintiffs
13
14
     REED SMITH, LLP
15   BY: CASSANDRA MATOS, ESQUIRE
     Three Logan Square
16   1717 Arch Street, Suite 3100
     Philadelphia, Pennsylvania 19103
17   Telephone: 215.851-8223
     E-mail: Sdiiorio@reedsmith.com
18   -Representing the Defendant, GlaxoSmithKline
19
20   ARNOLD & PORTER LLP
     BY: SEAN HENNESSY, ESQUIRE
21   555 - 12th Street NW
     Washington, DC 20004
22   Telephone: 202.942.5999
     E-mail: Daniel_pariser@aporter.com
23   Sean.hennessy@aporter.com
     -Representing the Defendant, Sanofi-Aventis
24

1
A P P E A R A N C E S : (Continued)
2

3   SIDLEY AUSTIN LLP
    BY: LESLIE KUHN-THAYER, ESQUIRE
4   One South Dearborn Street
    Chicago, Illinois 60603
5   Telephone: 312.853.7000
    E-mail: Cknot@sidley.com
6   Lkuhnthayer@sidley.com
    -Representing the Defendant, Grunenthal
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

2                    C O N T E N T S
                    -   -   -   -   -
3
    Testimony of:                DARREN GRIGGS
4
                                 Page Number
5
    By Mr. Hangley. . . . . . . . . . .7
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

2                    SUPPORT INDEX

3                      -   -   -

4   Direction to Witness Not to Answer
    Page
5
    None
6

7

8   Request for Production of Documents
    Page
9
    None
10

11

12  Stipulations
    Page
13
    7
14

15

16  Question Marked
    Page
17
    None
18

19

20  Confidential Portions
    Page
21
    None
22

23

24

1          SPECIAL MASTER HANGLEY:  Hi.
2     This is Bill Hangley and I have got
3     Allison Buccola with me.
4          Is anyone here for Hagens
5     Berman?
6          MR. SPIEGEL:  Yes, Craig
7     Spiegel and Ashley Bede, and with us
8     in Seattle is Mr. Griggs.
9          SPECIAL MASTER HANGLEY:  Thank
10    you.
11         For GlaxoSmithKline?
12         MS. MATOS:  Yes, Cassandra
13    Matos for GSK.
14         SPECIAL MASTER HANGLEY:  Thank
15    you.
16         For Grunenthal?
17         MS. KUHN-THAYER:  Yes, this is
18    Leslie Kuhn-Thayer for Grunenthal.
19         SPECIAL MASTER HANGLEY:  And
20    for Sanofi?
21         MR. HENNESSY:  Yes, this is
22    Sean Hennessy from Arnold & Porter on
23    behalf of Sanofi.
24         SPECIAL MASTER HANGLEY:  Okay.

1          And the court reporter is on?

2                THE COURT REPORTER:  Yes, Maria

3          is on.

4                Do I have the consent of all

5          counsel to swear in the witness by

6          telephone?

7                There is no objection, so let's

8          do it.

9                -  -  -

10                DARREN GRIGGS, after having

11          been duly sworn, was examined and

12          testified as follows:

13                -  -  -

14                THE COURT REPORTER:  Thank you.

15                -  -  -

16          E X A M I N A T I O N

17                -  -  -

18    BY SPECIAL MASTER HANGLEY:

19      Q.    Good afternoon, Mr Griggs.  My name

20    is Bill Hangley.  I am a practicing lawyer in

21    Philadelphia, but I have been appointed in

22    this case by the judge in this case to act as

23    sort of a substitute judge, to address

24    certain matters and to make recommendations

1  to the Court with respect to those matters,

2  so for the purposes of this conversation it

3  is as if you were talking to an actual judge

4  even though I am not one.  Do you understand

5  that?

6  A.    Yes.

7  Q.    Okay.

8         SPECIAL MASTER HANGLEY:

9         Mr. Weaver, is there something you

10        want to say?  Oh, wait, it's Mr.

11        Spiegel.

12        MR. SPIEGEL:  Yes.  Based on

13        previous discussions we will forego

14        the statements, with the

15        understanding that it's as if we made

16        the statement, the statement we made

17        at the beginning of all phone calls,

18        if that's agreeable.

19        SPECIAL MASTER HANGLEY:  That's

20        fine.  Okay.

21  BY SPECIAL MASTER HANGLEY:

22  Q.    Mr Griggs, let me ask you first, you

23  are Darren Griggs, the same person who is a

24  named plaintiff in a lawsuit against

1    GlaxoSmithKline and associated companies,

2    Grunenthal and associated companies, and

3    Sanofi-Aventis; is that correct?

4        A.    Yes, I am.

5        Q.    Yes?

6        A.    Yes, I am.

7        Q.    And you originally sued

8    GlaxoSmithKline along with the others, and

9    you have recently moved, or have moved

10   several months ago, I suppose, for the

11   withdraw of the claim against GlaxoSmithKline

12   while you continue to prosecute claims

13   against the other defendants; correct?

14       A.    Correct.

15       Q.    Okay.  Now, when Mr. Spiegel didn't

16   make a statement that the lawyers have been

17   making in this case, that statement, if he

18   made it, would have involved the

19   attorney/client privilege and the protection

20   of your attorney/client privilege in this

21   interview, so I want to tell you a little bit

22   about two important doctrines, the

23   attorney/client privilege and the related

24   Work Product Doctrine.

1      The attorney/client privilege is an
2  exception to the rule.  The general rule is
3  that if a person has relevant evidence,
4  somebody in a lawsuit can get that evidence
5  through testimony or subpoenaing documents or
6  what have you.  That's an important part of
7  how our civil justice system works, but
8  another important part is that people should
9  use the courts rather than the law of the
10  streets and we encourage people to consult
11  with attorneys, see whether they have claims
12  worthy of being pursued and have attorneys
13  capable of pursuing those claims in Court.
14      To make sure that that privilege is
15  efficient and that in order to get people to
16  use the justice system, we have a doctrine
17  that says your communications with your
18  attorney and his with you are not to be
19  probed by third parties so long as those
20  communications, one, are for the purpose of
21  getting legal advice or in the course of
22  giving it; and, two, are given with the
23  expectation of privacy.
24      If those tests are met, the

1    attorney/client privilege is in place,

2    assuming that there isn't one of a handful of

3    other exceptions that might entitle a Court

4    or another party to get past the privilege,

5    but generally speaking, your communications

6    with your attorneys and his with you with the

7    expectation of privacy and relevant to this

8    litigation are protected from being probed by

9    me or by any of the other attorneys here

10   other than of course your own attorneys.

11        You have the right to waive that

12   protection if you want to.  Nobody encourages

13   you to do that, and, in fact, you should

14   consult with an attorney before deciding

15   whether or not you want to waive the

16   attorney/client privilege.

17        There's a related protection called

18   the Work Product Doctrine.  That offers

19   similar protection to the mental processes of

20   the attorneys in the course of representing a

21   client in a particular case.  I said it

22   protects those communications, whether it's

23   conversations, telephone conversations,

24   face-to-face conversations.  All sorts of

1 communications between attorney and client

2 outside the presence of third parties are

3 protected.  The facts are not protected.

4     If I ask you to tell me a fact or if

5 I ask you to tell me what you believe to be a

6 fact, or if I ask you why you did a certain

7 thing or what your opinion is on a certain

8 thing, you may answer those questions and,

9 indeed, if I tell you to answer them, you

10 have to answer them.

11     It's going to be hard at times to

12 separate out a statement by your attorney

13 from a fact that you know.  The fact itself

14 is not privileged, what the attorney said is

15 privileged.  So if you find yourself slipping

16 into telling me about what your -- what the

17 Hagens Berman lawyers told you in a letter or

18 on the telephone, do not go that way.  If I

19 hear you going that way, I will interrupt

20 you.  Your attorneys probably will also

21 object.  And we'll be very careful that you

22 want to disclose an attorney/client privilege

23 before we permit you to do that.

24     That's not intended as an insult to

1   you.  We just know how complicated some of

2   this business gets.

3           There are going to be objections by

4   Mr. Spiegel, I predict, grounded in the

5   attorney/client privilege or the Work Product

6   Doctrine because reasonable people can differ

7   on how far the privilege goes.  I will have

8   to rule on those objections even though I am

9   the person who asked the question.  Sometimes

10  I have sustained the objections; far more

11  often I have overruled the objections.  When

12  I overrule an objection to one of my own

13  questions, that means that you should answer

14  the question.  Don't wait for me to tell you

15  and don't wait for the Hagens Berman attorney

16  or another attorney to tell you to answer the

17  question, you can just go right ahead and

18  answer.  We want to take as little of your

19  time and inconvenience you as little in this

20  conversation as possible.

21          Now, I have said a mouthful.  And

22  it's all things with which I am familiar, as

23  are the other attorneys in this conversation.

24  We don't expect you to be familiar with them.

1    We expect you to have questions.  Before

2    going into any questions you may have, I'm

3    going to give Mr. Spiegel an opportunity to

4    register an objection if he has one.

5                   MR. SPIEGEL:  The one thing I

6           would say, Mr. Hangley, is that we

7           may disagree on certain facts and

8           whether they are protected by the

9           attorney/client privilege when they

10          necessarily reveal mental processes

11          of the attorneys, but I think we can

12          save that for the particular

13          questions.

14                   SPECIAL MASTER HANGLEY:  Okay.

15          Thank you very much.

16   BY SPECIAL MASTER HANGLEY:

17     Q.    Mr. Griggs, is there any of this

18   you'd like me to go over again?

19     A.    No.

20     Q.    Okay.  Do you think you have a fairly

21   good understanding of the distinction that

22   we're drawing here?

23     A.    I believe so.

24     Q.    Okay.  You already stated that you

1 brought a claim against GlaxoSmithKline and

2 now you have decided to withdraw it.  Why?

3     A.    Well, the -- the -- the timeline of

4 when they were distributing the medication

5 did not figure into the time that I was born

6 and so it was -- it didn't seem like it was

7 the right -- the right thing to continue with

8 that.

9     Q.    Okay.  When were you born?

10     A.    June 13th, 1962.

11     Q.    And was your information to the

12 effect that SmithKline had stopped or said

13 that it had stopped distributing on or about

14 1958?

15     A.    Yes.

16     Q.    And when did you first hear that

17 SmithKline had stopped distributing in about

18 1958?

19     A.    It was -- uhm, it was my lawyers had

20 talked to me about --

21     Q.    Stop.  Stop.  The question was when.

22 I didn't ask you what your lawyers said.

23     A.    Okay.  Uhm, I don't remember the

24 exact dates.

1    Q.    Okay.  Can you pin it down to a

2    season of 2014?

3    A.    I believe it was later in 2014.

4    Q.    Okay.  Now, apart from that fact

5    about SmithKline, do you understand what I am

6    saying when I say that's a defense that

7    SmithKline has?

8    A.    Uhm, no, I am not sure I do

9    understand.

10   Q.    Okay.  Okay.

11             MR. SPIEGEL:  And I would

12        object to saying it's a defense as

13        opposed to part of the plaintiffs'

14        burden of proof to establish our

15        claims.

16             SPECIAL MASTER HANGLEY:  I will

17        -- I will sustain the objection and

18        accept the friendly amendment, Mr.

19        Spiegel.

20             MR. SPIEGEL:  Thank you.

21   BY SPECIAL MASTER HANGLEY:

22   Q.    Did you know of any defenses that the

23   other two defendants had to your claims?

24   A.    Could you repeat that?  I'm not sure.

1    Q.    Sure.  Do you know of any defenses

2  that the other two defendants, Grunenthal and

3  Sanofi, have to your claims?

4    A.    The only thing that I, uhm, can

5  really think about is the statute of

6  limitations.

7    Q.    Okay.  Do you know any details about

8  when, if ever, Grunenthal's products were in

9  the United States?

10   A.    It was, uhm, uhm, right around, uhm

11  -- right after, uhm, GSK -- not too far after

12  GSK quit distributing and Richardson-Merrell

13  started distributing and it was continued

14  through the time that I was born.

15   Q.    Okay.  Okay.  Thank you.

16         Now, you said that you learned about

17  this what I will call defense or this

18  assertion that GlaxoSmithKline may have

19  stopped distributing in 1958, but you learned

20  about that in the fall you think of 2014.

21   A.    I believe so, yes.

22   Q.    At some point did you become aware

23  that GlaxoSmithKline was pursuing motions for

24  sanctions against Hagens Berman based on

1  Hagens Berman's handling of other plaintiffs'
2  claims?
3      A.    Yes.
4      Q.    Was that at the same time as you
5  learned about the GlaxoSmithKline 1958 date
6  or was it at a different time?
7      A.    It was at the same time.
8      Q.    Okay.  All right.  Did you understand
9  that GlaxoSmithKline was attempting to have
10 Hagens Berman penalized for conduct in which
11 their firm supposedly had engaged?
12     A.    Yes.
13     Q.    Did you understand that
14 GlaxoSmithKline was not attempting to have
15 any of the individual plaintiffs penalized?
16     A.    Yes.
17     Q.    So did you have a concern that --
18 strike that question.
19          You understood, sir, that
20 GlaxoSmithKline would be benefitted if -- I'm
21 sorry.  I have done it again in two
22 successive interviews.
23          You understood that Hagens Berman
24 would be benefitted if GlaxoSmithKline

1  withdrew its sanctions motions?

2  A.    Yes.

3  Q.    Okay.  Did you consider consulting an

4  attorney independent of Hagens Berman, an

5  attorney that didn't have sanctions motions

6  pending against it, in deciding whether you

7  should continue pursuing your claims against

8  GlaxoSmithKline?

9  A.    I understand I could have, but I

10  didn't.

11  Q.    Okay.  And why was that?

12  A.    Uhm, uhm, well a couple reasons:  The

13  timeline wasn't right, which common sense

14  would tell me we are just kind of wasting the

15  Court's time with that one; and the other

16  thing is, uhm, I pretty much trust my

17  attorneys to do the right thing for me.

18  Q.    All right.

19           SPECIAL MASTER HANGLEY:  All

20        right.  Thank you very much.  I have

21        no further questions.

22           MR. SPIEGEL:  This is Craig

23        Spiegel.  We have no questions.

24        Thank you.

1          SPECIAL MASTER HANGLEY:
2     GlaxoSmithKline?
3          MS. MATOS:  No questions for
4     GSK.
5          SPECIAL MASTER HANGLEY:
6     Grunenthal?
7          MS. KUHN-THAYER:  I have no
8     questions.
9          SPECIAL MASTER HANGLEY:
10    Sanofi?
11         MR. HENNESSY:  No questions.
12    Thank you.
13         SPECIAL MASTER HANGLEY:  Okay.
14    Mr. Griggs, thank you very much for
15    your cooperation and attendance.
16         And, folks, we are off the
17    record.  We are adjourned.
18         -  -  -
19         (Witness excused.)
20         -  -  -
21         (Deposition concluded at
22    approximately 2:19 p.m.)
23
24

1              C E R T I F I C A T E
2
3              I, Maria N Damiani, a
Registered Merit Reporter, Certified Real
4    Time Reporter, Certified Live Note Reporter,
Certified Court Reporter, certify that prior
5    to the commencement of the examination,
DARREN GRIGGS, duly sworn by me to testify to
6    the truth, the whole truth and nothing but
the truth.
7
               I do further certify that the
8    foregoing is a verbatim transcript of the
testimony as taken stenographically by and
9    before me at the time, place and on the date
hereinbefore set forth, to the best of my
10   ability.
11             I do further certify that I am
neither a relative nor employee nor attorney
12   nor counsel of any of the parties to this
action, and that I am neither a relative nor
13   employee of such attorney or counsel, and
that I am not financially interested in the
14   action.
15

     _____
16   Maria N Damiani, RMR, CRR, CLR, CCR
17   Notary number: 1034904
     Notary expiration:  12/3/2016
18   CSR Number Delaware:  RPR-117
     CSR Number New Jersey:  30XI00224100
19
     Dated: June 29, 2015
20
21             (The foregoing certification of this
transcript does not apply to any reproduction
22   of the same by any means, unless under the
direct control and/or supervision of the
23   certifying reporter.)
24

1                    INSTRUCTIONS TO WITNESS

2                    Please read your deposition

3      over carefully and make any necessary

4      corrections.  You should state the reason in

5      the appropriate space on the errata sheet for

6      any corrections that are made.

7                    After doing so, please sign the

8      errata sheet and date it.

9                    You are signing same subject to

10     the changes you have noted on the errata

11     sheet, which will be attached to your

12     deposition.

13                    It is imperative that you

14     return the original errata sheet to the

15     deposing attorney and all counsel within

16     thirty (30) days of receipt of the deposition

17     transcript by you.  If you fail to do so, the

18     deposition transcript may be deemed to be

19     accurate and may be used in Court.

20

21

22

23

24

1                    - - - - - -
                      E R R A T A
2                    - - - - - -

3    PAGE   LINE   CHANGE

4    _____  _____  _____

5    _____  _____  _____

6    _____  _____  _____

7    _____  _____  _____

8    _____  _____  _____

9    _____  _____  _____

10   _____  _____  _____

11   _____  _____  _____

12   _____  _____  _____

13   _____  _____  _____

14   _____  _____  _____

15   _____  _____  _____

16   _____  _____  _____

17   _____  _____  _____

18   _____  _____  _____

19   _____  _____  _____

20   _____  _____  _____

21   _____  _____  _____

22   _____  _____  _____

23   _____  _____  _____

24   _____  _____  _____

1          ACKNOWLEDGMENT OF DEPONENT

2

3         I,_____, do

4  hereby certify that I have read the foregoing

5  pages,  1 - 21, and that the same is a

6  correct transcription of the answers given by

7  me to the questions therein propounded,

8  except for the corrections or changes in form

9  or substance, if any, noted in the attached

10  Errata Sheet.

11

12

13  _____

14  DARREN GRIGGS

15                DATE

16

17

18

19  Subscribed and sworn
to before me this

20  _____ day of _____, 20_____.

21  My commission expires:_____

22

_____

23  Notary Public

24