IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENDA JOHNSON, *et al.*,<br><br>                              Plaintiffs,<br><br>       v.<br><br>SMITHKLINE BEECHAM CORPORATION, *et al.*,<br><br>                              Defendants. | Case No. 2:11-cv-05782-PD<br><br>AND ALL RELATED CASES |

**OBJECTIONS OF HAGENS BERMAN SOBOL SHAPIRO LLP
TO NOVEMBER 17, 2016 ORDER OF THE SPECIAL MASTER
<u>REGARDING INQUIRY REGARDING MOTIONS TO WITHDRAW</u>**

- i -

## TABLE OF CONTENTS

**Page**

I. ARGUMENT ................................................................................................................3

    A. The Scope of the Inquiry Exceeds What Is Necessary and Proper to Rule on the Motions. ........................................................................................3

    B. Even Properly Limited, the Inquiry Will Invade the Attorney-Client and Work-Product Privileges, and the Planned Process Does Not Protect Against Prejudice or Waiver ................................................................4

    C. Regardless of Any Revisions to the Order, There is No Basis for Any Inquiry into the Motion to Withdraw As Counsel for John Marshall ...................10

II. ALTERNATIVE REQUEST § 1292(B) CERTIFICATION ...........................................11

III. CONCLUSION ..........................................................................................................11

Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), by and through undersigned counsel, hereby objects to the Special Master's Order dated November 17, 2016 (Dkt. No. 539) ("the Order"), as amended on November 18 and 22, 2016 (Dkts. No. 540 and 541). In the Order, the Special Master indicated that he will conduct an inquiry into whether "the District Court should grant" six motions to withdraw as counsel that Hagens Berman filed in 2014 in the cases of John Marshall, Jose Navamuel, Terrie Bolton, John Skelton III, Richard Anderson, and Mary Sells (Dkt. Nos. 207, 301, 342, 343, 375, 382).

While the Court and the Special Master have some discretion with regard to deciding these motions, the Order exceeds that discretion, and the process described therein would impermissibly delve into areas of privileged communications and work product. As described in the Order, the investigation will inquire not just into the basis for the motions but also into whether Hagens Berman "was aware of the problem when it filed its clients' Complaints"; "how the firm learned of the problem"; and why Hagens Berman "fail[ed] to know about it sooner." Order, p. 2. Yet the Court's and Special Master's discretion on these motions is limited to determining whether the law firm's presence in the case no longer serves any "meaningful purpose." *Ohntrup v. Makina Ve Kimya Endustrisi Kurumu*, 760 F.3d 290, 294-95 (3d Cir. 2014). The Special Master's stated intention to inquire as to when counsel learned of certain facts, or whether it should have withdrawn sooner, is irrelevant to whether (more than two years after Hagens Berman filed its motions) Hagens Berman must be allowed to withdraw for professional ethical considerations. The Order must be limited to the scope of the Court's discretion.

In addition, the Special Master's inquiry will invade sensitive, privileged communications between a lawyer and a client, and will potentially place Hagens Berman in an

ethical bind with regard to its duties of candor to the tribunal under Pennsylvania Rule of Professional Conduct ("Pa. R.P.C.") 3.3 and its duty not to disclose confidential information pursuant to Pa. R.P.C. 1.6. The attorney-client privilege and the work-product privilege will be directly implicated by the inquiry, and the anticipated *in camera* nature of the inquiry does not provide sufficient protection. This is made clear not only by the nature of the motions being investigated but also by the following aspects of the Order:

- The Special Master has ordered that Hagens Berman provide, no later than December 8, 2016, contact information for all of the plaintiffs subject to the motions to withdraw.[1] It is unclear if the Special Master intends to use that information to contact these individuals *ex parte*, but he has indicated that if Hagens Berman submits any documents, he reserves his "right to disclose them and discuss them with the affected plaintiffs." *See id*.

- The Special Master has made it clear that he anticipates requiring both Hagens Berman and the affected plaintiffs to provide testimony about past communications the parties have had about their cases and the reasons that Hagens Berman concluded it had to file motions to withdraw. It is "very likely" that he will "require examination of the Hagens Berman lawyers" in person and "it seems unlikely" that he will "be in a position to recommend granting the withdrawal motions without entertaining live, sworn testimony from the affected Plaintiffs." *See id.* at pp. 2-3.

Thus, there is an extremely heightened risk that the inquiry will unnecessarily invade the rights of the plaintiffs (whom Hagens Berman is conflicted from representing in this inquiry due to the nature of the inquiry), as well as require Hagens Berman and the plaintiffs to disclose

---

[1] Hagens Berman will provide this contact information as required.

006185-11 917874 V1

privileged communications and work product, even though it may not be in the interests of the plaintiffs to have the Court know this information. Hagens Berman therefore objects to the inquiry on the grounds of privilege. To the extent the Court nonetheless orders the inquiry to continue, Hagens Berman submits that several limitations on the inquiry are required to protect the privilege and the plaintiffs, as set forth in section I.C., below.

In addition, in the case of John Marshall, the Special Master apparently plans an inquiry into the motions to withdraw, even though Mr. Marshall informed the Court in September 2014 that he will be proceeding *pro se* and has been doing so for more than two years now. *See* Dkt. No. 356 (statement of Mr. Marshall regarding proceeding *pro se*) and Dkt. No. 426, p. 2 (defendants deposed Mr. Marshall and his sister *pro se* in October 2014). There is thus no reason or basis for an inquiry into John Marshall's case. He has chosen to proceed without counsel, and the Court should grant the motion to withdraw from representing him in this litigation without any further inquiry.

**I.   ARGUMENT**

    **A.   The Scope of the Inquiry Exceeds What Is Necessary and Proper to Rule on the Motions.**

The six motions that the Special Master intends to investigate were all filed pursuant to Local Rule 5.1(c). As the Third Circuit has made clear, the question for the Court under such a motion is whether an order requiring counsel to continue would serve any "meaningful purpose, particularly insofar as an opposing interest is concerned." *Ohntrup,* 760 F.3d at 294, *quoting Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 679-80 (3d Cir. 1986). While the Court has discretion to determine whether that standard has been met, its discretion is limited to determining whether the motion to withdraw satisfies the "meaningful purpose" test:

> [W]hen the law firm serves no meaningful purpose, it is *entitled* to withdraw. That is, it would be an abuse of discretion to deny its

006185-11 917874 V1

> motion to withdraw. . . .  The point at which the law firm no longer serves a meaningful purpose in the case marks the outer boundary of the District Court's discretion because withdrawal would be required at that point.

*Ohntrup*, 760 F.3d at 295 (emphasis in original; citations omitted)*; see also, e.g., Camacho v. Dean*  2016 WL 1182265, at *3 (M.D. Pa. Mar. 28, 2016) ("courts <u>must</u> grant an attorney's motion to withdraw when his or her continued representation would serve "no meaningful purpose.") (emphasis in original); *In re DVI, Inc. Sec. Litig.*, 2014 WL 5430998, at *1 (E.D. Pa. Oct. 24, 2014).

Thus, the Court and the Special Master have discretion to determine whether denying the motions to withdraw would serve any "meaningful purpose" by requiring Hagens Berman to continue its representation.  Relevant factors include the facts supporting the motions, the application of the rules of ethics, and the burdens that denial of the motions would place on Hagens Berman.  *See, e.g., Buschmeier v. G&G Inv., Inc.*, 222 Fed. App'x. 160, 163-64 (3d Cir. 2007).  However, inquiry into when Hagens Berman reached the decision that it needed to move to withdraw, when it received the information that supported that decision, and whether it could have learned that information sooner are irrelevant to whether Hagens Berman's continued representation would serve some "meaningful purpose," such that Hagens Berman should be required to continue to represent these plaintiffs.

The Court should therefore direct the Special Master to limit his inquiry to only area (i) of the four areas of inquiry listed on the second page of the Order.

**B.     Even Properly Limited, Any Inquiry Will Invade Client Confidences and Attorney-Client and Work-Product Privileges, and the Planned Process Does Not Protect Against Prejudice or Waiver.**

Even if the Special Master is properly limited to determining whether requiring Hagens Berman to remain counsel for the plaintiffs would serve any "meaningful purpose," the inquiry

- 4 -

as designed will clearly involve investigation of client confidences, attorney-client communications, and work product.  And while the Special Master presently contemplates an *in camera* investigation to address those problems, that is insufficient to avoid waiver of the applicable privileges, especially where the plaintiffs are likely to appear *pro se* and possibly have *ex parte* interviews with the Special Master.

Any inquiry into the reasoning behind the motions to withdraw will necessarily require Hagens Berman and/or the plaintiffs to tell the Special Master not only about communications they have had with each other but also what was discussed and why those communications led Hagens Berman to file motions to withdraw from representation of these individuals.  These communications are highly sensitive, and, even if not disclosed to the defendants, they could prejudice the Court's view of the plaintiffs and/or the substance of their claims in later proceedings.

Depending on what the Special Master orders Hagens Berman to disclose, Hagens Berman may be placed in a situation where its duty of candor to the tribunal under Pa. R.P.C. 3.3 is in direct conflict with its duty not to disclose client confidences pursuant to Pa. R.P.C. 1.6.[2]  If such a situation arises, Hagens Berman may be ethically required to object to, and possibly refuse to answer, the Special Master's questions.  The Court should either abandon the inquiry entirely or limit the inquiry so as to not subject the Special Master and Hagens Berman to this potential conflict.

---

[2] Indeed, the duty of confidentiality under Pa. R.P.C. 1.6 applies "not only to matters communicated in confidence by the client but to all information relating to the representation." *Id.*, cmt. 3.  Thus, even questions concerning what it learned about the case from sources other than plaintiffs could put Hagens Berman in an untenable ethical quandary.

The inquiry also seeks attorney-client communications. Under Pennsylvania law,[3] the attorney-client privilege protects communications from the client and communications from the attorney to the client for the purpose of providing advice and consultation about the client's claims. *See, e.g., Gillard v. AIG Ins. Co.*, 609 Pa. 65, 88-89 (Pa. 2011) ("the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice"). This means that Hagens Berman cannot disclose such communications:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa. C. S. § 5928; *see also, e.g., Collautt v. Li,* 2014 WL 6988657, at *2 (E.D. Pa. Dec. 11, 2014).

In addition, even a properly limited investigation will necessarily seek the work product of Hagens Berman, because it would require Hagens Berman to explain the reasoning underlying its motions to withdraw. And the full investigation outlined in the Order would also require disclosure of what Hagens Berman knew or thought at the time the cases were filed, and when and why Hagens Berman ultimately changed its thinking. All of this information is work product.

As set forth in Federal Rule of Civil Procedure 26(b)(3)(B), opinion work product is "the mental impressions, conclusions, opinions, or legal theories of a party's attorney … concerning the litigation." *See also, e.g., In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979) ("analyses or assessments of (the client's) position with respect to the various parties in

---

[3] The law of Pennsylvania applies here to questions of privilege. *See* Fed. R. Evid. 501; *Keating v. McCahill,* 2012 WL 2527024, at *2 (E.D. Pa. July 2, 2012) ("Federal courts sitting in diversity, as in this case, apply the law of the host state to determine privilege.").

the litigation" are core opinion work product); *In re Cendant Corp. Sec. Liitg.*, 343 F.3d 658, 662 (3d Cir. 2003) (work product protections apply to both tangible and intangible forms of work product). That protection exists even if it is not the attorney himself who is being sought to testify or produce documents about the attorney's opinions; it also applies to any attempts to get a client or an agent of the attorney to reveal those opinions indirectly. *See, e.g., In re Cendant*, 343 F.3d at 660-61, 667-68 (jury consultant present at meeting between client and attorney cannot be compelled to provide discovery about counsel's meeting); *Sporck v. Peil*, 759 F.2d 312, 313-14, 317-18 (3d Cir. 1985) (discovery of testimony of client about documents he had reviewed was barred because the documents were selected by his counsel, and testimony would reveal opinion work product); *Bush Dev. Corp. v. Harbour Place Assocs.,* 632 F. Supp. 1359, 1363 (E.D. Va. 1986) ("Counsel's statements concerning the claim's likely success, even when transcribed by the client, are prime examples of the types of materials entitled to near absolute protection under Rule 26(b)(3).").

This work product is protected from discovery, nearly absolutely. Under federal law,[4]

> "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." [Fed. R. Civ. P. 26(b)(3)]; *In re Ford Motor Co.,* 110 F.3d 954, 962 n. 7 (3d Cir. 1997). Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.

*In re Cendant Corp.*, 343 F.3d at 663; *see also, e.g., Sporck*, 759 F.2d at 316 ("Opinion work product. . . is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in

---

[4] Federal law regarding work product governs in diversity cases. *See, e.g., United Coal Cos. v. Powell Const. Co.*, 839 F. 2d 958, 966 (3d Cir. 1988).

maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 866 (3d Cir. 1994) ("[E]fforts to obtain disclosure of opinion work product should be evaluated with particular care."); *In re Grand Jury Investigation*, 599 F.2d at 1231 ("Memoranda summarizing oral interviews . . . may indirectly reveal the attorney's mental processes, his opinion work product. . . . [S]pecial considerations . . . must shape any ruling on the discoverability of interview memoranda like those at issue in this case.  The result, we believe, is exactly that contemplated in *Hickman;* such documents will be discoverable only in a 'rare situation.'").

Further, the intended *in camera* nature of the inquiry does not provide adequate protections for the communications and work product.  While Defendants presumably will not be present for the substance of the planned investigation, that still does not protect this information from disclosure to the Court or the Special Master, who presumably will at some point rule on the merits of these plaintiffs' claims.  This is especially true since the Special Master apparently intends to contact the plaintiffs directly about this issue, and perhaps call them to testify under oath.  The danger to the plaintiffs is heightened further by the fact that the motions to withdraw and the planned inquiry have placed Hagens Berman into a conflict with these plaintiffs that prevents Hagens Berman from representing them in the planned inquiry.  A judicial officer should refrain from all *ex parte* communications, unless they are expressly authorized by law (and any such contacts here would not be expressly authorized).  *See* Fed. Judicial Canon 3(A)(4); Pa. Judicial Canon 2, Rule 2.9.

**C.     If the Court Orders the Inquiry to Continue, It Should Consider Additional Protections for Client Confidences and Privileged Information.**

For the above stated reasons, Hagens Berman objects to any inquiry that will require disclosure of client confidences, attorney-client communications, or work product. However, if the Court nonetheless compels an investigation that will require such a disclosure, Hagens Berman submits that the Court should enter a process designed to invade confidential information as little as possible. Hagens Berman requests the following limitations to protect confidences, privilege, work product, and the plaintiffs:

- Direct preliminary inquiry only from Hagens Berman (not plaintiffs) *in camera* and only into the general reasons that Hagens Berman has sought to withdraw (e.g., inability to communicate with client, ethical conflicts, an inability to otherwise ethically proceed, etc.), and confirmation that Hagens Berman communicated the reason for the withdrawal to the plaintiffs before filing its motions to withdraw.

- Instruct the Special Master to only require further explication from Hagens Berman if there is some objective basis for believing that Hagens Berman's explanation is inaccurate.

- Instruct the Special Master to initially communicate with plaintiffs only in writing and only if objectively necessary to determine if denial of the motions to withdraw would serve some "meaningful purpose" in the litigation of their cases.

- Instruct the Special Master that he may not speak to any plaintiffs or require them to provide testimony unless the plaintiffs have been fully informed that the Special Master will be asking them about protected information that the plaintiffs are not required to disclose, that any disclosure may be contrary to their interests in this case,

and that the plaintiffs may retain different counsel to represent them in response to his inquiries.

Hagens Berman believes such a process would better protect confidences and the rights of the plaintiffs than the currently anticipated process. However, Hagens Berman nonetheless reserves the right to object, as it is required to do, to any specific inquiries on the basis that it has been directed to disclose confidential or privileged information. *See, e.g.,* Pa. R.P.C. 1.6, cmt. 21.

**D.   Regardless of Any Revisions to the Order, There is No Basis for Any Inquiry into the Motion to Withdraw As Counsel for John Marshall**

Plaintiff John Marshall has made plain that he wishes to proceed *pro se* in this matter, and he has done so for more than two years. Thus, there can be no "meaningful purpose" for Hagens Berman to fulfill as to Mr. Marshall, and the Court must therefore grant the motion to withdraw.

To restate the facts:

- In September 2014, in response to direct inquiry from the Court, Mr. Marshall indicated that he wished to proceed *pro se*. Dkt. No. 356 (statement of Mr. Marshall regarding proceeding *pro se*).

- In October 2014, he appeared not only in his own deposition, but also his sister's deposition. Dkt. No. 426, p. 2 (defendants deposed Mr. Marshall and his sister *pro se* in October 2014). Hagens Berman was not present for either of these depositions.

Mr. Marshall has made his preference clear and has acted on that preference. There is thus no meaningful purpose to be served by denying the motion to withdraw as his counsel, and therefore it must be granted without further inquiry. *See Ohntrup*, 760 F.3d at 295.

## II. ALTERNATIVE REQUEST § 1292(b) CERTIFICATION

If the Court orders Hagens Berman to comply with the Order without modification to address the concerns stated in these objections, Hagens Berman respectfully requests that the Court stay its order and certify that order for appeal under 28 U.S.C. § 1292(b), which states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

An order authorizing the Special Master to inquire into areas beyond the basis for the motions to dismiss is a controlling question of law as to which there is substantial ground for difference of opinion. Hagens Berman is unaware of any precedent allowing such an inquiry, and respectfully submits that its arguments in these Objections demonstrate that there is substantial ground for difference of opinion as to whether such an inquiry is permissible. And an immediate appeal from the order may materially advance the termination of the litigation and avoid creating unnecessary ethical conflicts and inquiries into privileged communications and work product.

## III. CONCLUSION

Hagens Berman respectfully submits that the Court should direct the Order be revised as described above, and further request that the Court rule on these objections promptly, given the schedule ordered by the Special Master.

- 11 -

- 12 -

DATED:  December 8, 2016

                                         PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP

                                         By:  /s/ Douglas E. Roberts
                                                Gaetan J. Alfano
                                                Pennsylvania Bar No. 32971
                                                GJA@pietragallo.com
                                                Douglas E. Roberts
                                                Pennsylvania Bar No. 321950
                                                DER@pietragallo.com
                                                1818 Market Street, Suite 3402
                                                Philadelphia, PA 19102
                                                Telephone: (215) 320-6200
                                                Facsimile: (215) 981-0082

                                        *Attorneys for Hagens Berman Sobol Shapiro LLP*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Objections have been electronically filed with the Clerk of Court using CM/ECF on this 8th day of December, 2016. A true and correct copy of the foregoing document is being served on this date on all counsel of via transmission of Notices of Electronic Filing generated by CM/ECF.

        PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP

By:    /s/ Douglas E. Roberts
        Gaetan J. Alfano
        Pennsylvania Bar No. 32971
        GJA@pietragallo.com
        Douglas E. Roberts
        Pennsylvania Bar No. 321950
        DER@pietragallo.com
        1818 Market Street, Suite 3402
        Philadelphia, PA 19102
        Telephone: (215) 320-6200
        Facsimile: (215) 981-0082

*Attorneys for Hagens Berman Sobol Shapiro LLP*