IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENDA JOHNSON ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 2:11-cv-005782-PD and all related cases |
| SMITHKLINE BEECHAM CORPORATION ET AL., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**REPORT AND RECOMMENDATIONS
OF THE SPECIAL DISCOVERY MASTER RE:  OBJECTIONS OF
HAGENS BERMAN SOBOL SHAPIRO LLP TO NOVEMBER 17, 2016
ORDER OF THE SPECIAL MASTER REGARDING INQUIRY
<u>REGARDING MOTIONS TO WITHDRAW</u>**

I have been ordered (Dkt. 532) to afford Hagens Berman Sobel Shapiro LLC ("Hagens Berman") an opportunity to offer evidence in support of its pending motions to withdraw appearances as counsel for six individual plaintiffs in these consolidated cases.  By Procedural Memorandum and Order of November 17, 2016, Dkt. 539, as corrected by Memorandum and Order of November 18, Dkt. 540 (together, the "Amended Memorandum") and amended at Hagens Berman's request (to postpone deadlines) by my Amended Order of November 22, Dkt. 541 (the "Amended Order"), I set up procedures for complying with the District Court's Order of March 14, 2016 (Dkt. 532).  Hagens Berman objects to the procedure I have chosen.  Dkt. 544.  I recommend that the Objections be overruled.

**I.       Background**

By separate motions, Hagens Berman moved for leave to withdraw from its representation of six of the plaintiffs in these consolidated cases.[1] No successor counsel have appeared for any of the six. In such circumstances, it is the burden of the moving counsel to provide grounds justifying his withdrawal, and a court has broad discretion in acting on a withdrawal motion. (Local Rule 5.1(c))

Except for the client's names, Hagens Berman's six memoranda of law are virtually identical, and the accompanying declarations of Hagens Berman attorneys are not materially different from one another. The motion papers state repeatedly, but without detail, that withdrawal is being sought due to "professional considerations,"[2] and mention Pennsylvania Rule of Professional Conduct 1.16(a)(1) and Explanatory Comment 3 to that Rule.[3] Some (but not all) the declarations state that the affected clients do wish to continue pursuing their claims.[4] The papers do not state that any of the six consents to the proposed withdrawals.[5]

The pertinent Rule 1.16 language is as follows:

---

[1] The plaintiff-clients affected by the motions are John Marshall (Dkt. 207), Jose Navamuel (Dkt. 301), Terrie Bolton (Dkt. 342), John Skelton (Dkt. 343) Richard Anderson (Dkt. 375), and Mary Sells (Dkt. 382).

[2] *See, e.g.,* Dkt. 382, Memorandum of Law in Support of Plaintiffs' Counsel's Motion To Withdraw as Counsel for Plaintiff Mary Sells at 1, 2, 3; *id.,* Declaration of Barbara Mahoney ¶¶ 2, 3.

[3] *See, e.g., id.,* Memorandum at 2 and n.2.

[4] *See, e.g., id.,* Declaration of Barbara Mahoney ¶¶ 2, 3.

[5] Judging by the public record, at least two of the six are bitterly resentful of Hagens Berman's intention to cease representing them, and have apparently tried without success to engage successor counsel. *See* Dkt. 390, Bolton Ltr. to the Court Oct. 22, 2014; Dkt. 533, Sells letter to the Court March 5, 2016. One of the six, John Marshall, is appearing pro se although Hagens Berman remains his counsel of record pending disposition of the withdrawal motion.

> (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
>
>> (1) the representation will result in violation of the Rules of Professional Conduct or other law;
>
> * * *
>
> (c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

Pa. R. Prof. Cond. 1.16(a)(1), 1.16(c).  Explanatory Comment 3 to Rule 1.16 is as follows:

> [C]ourt approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. *The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficien*t. Lawyers should be mindful of their obligations to both clients and the court under Rules 1.6 [confidentiality of client information] and 3.3 [candor toward the tribunal].

(Emphasis added.)

In these cases, the District Court is unwilling to place its entire reliance on Hagens Berman's blanket invocations of "professional considerations"[6] and has instructed me, as Special Master, to determine, "*inter alia*, when Hagens Berman first learned that the firm's continuing prosecution of these cases would purportedly be untenable under Rule 1.16(a)(1) of

---

[6] It bears mentioning that the District Court has, in these cases, had the unhappy experience of accepting counsel's representations of fact in ruling on matters and, later, learning that "[t]he evidence . . . belied the claims of almost all Plaintiffs and often contradicted critical allegations in their Complaints." *Johnson v. SmithKline Beecham Corp.,* 2015 WL 1004308 at *2 (E.D. Pa. Mar. 9, 2015).

the Pennsylvania Rules of Professional Conduct." Order, Dkt. 532 at 3, citing *Chester v. May Dep't Store Co.*, No. CIV. A. 98-5824, 2000 WL 12896 at *1 (E.D. Pa. Jan. 7, 2000) (denying withdrawal motion where there was "no suggestion that counsel was unaware of his client's history and propensities when he accepted the representation and proceeded to litigate this matter"). Pending my report, Judge Diamond has held the six motions in abeyance, and Hagens Berman remains the six plaintiffs' counsel of record.

## II.     The Procedures in Question

My Amended Memorandum and Amended Order were intended to set the table for Hagens Berman's actual task – explaining its conclusory "professional considerations" assertions in camera, so that the District Court or the Special Discovery Master might make an informed evaluation of each of the six motions. I not only declared that my investigation would be conducted in camera, I also asked Defendants' counsel whether they would agree to waive participation in and discovery into the in camera review and proceedings,[7] which they did. Dkt. 546. I ordered Hagens Berman to distribute copies of the Amended Memorandum and Amended Order to the six Plaintiffs, and to provide me with the latest contact information for the six. I set a deadline for any written in camera submissions from Hagens Berman, and an earlier date by which the firm would inform me whether it intended to make any such submissions.[8]

---

[7] This belt-and-suspenders provision was intended to assure the six plaintiffs that their confidential or privileged information would not somehow fall into defendants' hands. As I explained in my November 17 Memorandum: "[A]lthough I have no doubt concerning my discretion to proceed in camera, and to exclude Defendants from this particular inquiry, I am sure Hagens Berman and the six Plaintiffs would prefer that the Defendants affirmatively waive any objection to my proceeding in this manner. Accordingly, I will order Defendants to advise the Court on that question." Dkt. 539 at 1.

[8] I invited written in camera explanation from Hagens Berman in the hope of moving the withdrawal motion proceedings forward as efficiently as possible; the more detailed and

By letter filed under seal and dated December 8, 2016 (Dkt. 545), Hagens Berman's counsel reported that the firm had distributed the Procedural Memorandum and Order as instructed, and provided the contact information requested, with the exception of contacting and providing information for Plaintiff Richard Anderson.[9] Hagens Berman also informed me that it would not make any written submission. Hagens Berman's objections were filed the same day.

## III. Discussion

The objections are without merit, and seem calculated to prevent the Court from knowing what "professional considerations" led to the firm's desire to cast six of its clients adrift, rather than assisting the Court in understanding and evaluating the firm's professional responsibility concerns. Thus, Hagens Berman seems determined to avoid making the showing it needs to make if it is to have any hope of having its motions granted.

A. The "No Meaningful Purpose" Argument

Hagens Berman's primary argument (Objections, Dkt. 544 at 3-4) is one it did not make in any of the six motions, but I will address it. The firm invokes the doctrine – settled law in the Third Circuit – that "a law firm is entitled to withdraw once the firm demonstrates to the satisfaction of the district court that its appearance serves no meaningful purpose, particularly insofar as an opposing interest is concerned." *Ohntrup v. Makina Ve Kimya Endustrisi Kurumu*, 760 F.3d 290, 294 (3d Cir. 2014), quoting *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 679-80 (3d Cir. 1986). But Hagens Berman is missing the point of the *Ohntrup* decisions if it is arguing

---

complete the explanations, the greater the likelihood that we could limit the time and expense of live in camera proceedings.

[9] Hagens Berman appears to have lost contact with Plaintiff Anderson. But keeping track of a client – knowing how to reach him – seems a reasonable enough obligation to impose on counsel, and I will recommend that Hagens Berman be ordered to keep trying to locate Mr. Anderson and report to me with details of its efforts and results at monthly intervals.

that a court or master must simply accept a law firm's assertion that its continuing participation on behalf of its client "serves no meaningful purpose" based solely on an unsupported reference to "professional considerations."

What the two *Ohntrup* decisions make clear is that it is the burden of the moving attorneys to "demonstrate to the satisfaction of the district court" that its appearance serves no meaningful purpose, and a heavy burden it is. In the earlier of the two relevant *Ohntrup* opinions, the Circuit panel affirmed Judge Pollak's *refusal* to permit withdrawal, even after the client fired the lawyers and refused to speak to them. Defendant, a Turkish government-owned weapon manufacturer, lost its case and was facing discovery in aid of execution. Defendant terminated its counsel, Morgan Lewis. Morgan Lewis then sought to withdraw, arguing that the district court had placed it in an "unacceptable ethical position." *Ohntrup v. Firearms Ctr.*, 802 F.2d at 679. Both the District Court and the Circuit Court rejected that proposition. Morgan's second argument was that its continued involvement would serve no meaningful purpose because the client was studiously ignoring Morgan's efforts to assist in post-judgment discovery and secure the client's cooperation. But this Court and the Circuit Court were not yet persuaded that continuing Morgan Lewis' unpaid and thankless involvement would "serve no meaningful purpose."

> [W]e conclude that a law firm is entitled to withdraw once the firm demonstrates to the satisfaction of the district court that its appearance serves no meaningful purpose, particularly insofar as an opposing interest is concerned.
>
> We nevertheless affirm because we cannot say that the district court abused its discretion, particularly in light of the relatively short elapsed time from the entry of judgment to the decision on the motion and the representations of Ohntrups' counsel that further discovery in aid of execution was contemplated.

*Ohntrup v. Firearms Ctr.*, 802 F.2d at 680.[10]

It would be another 28 years before Morgan Lewis was finally able to persuade the courts that the firm's presence was not providing any benefit to the court or the parties. As the Circuit Court explained in its 2014 opinion:

> At the time the District Court denied the Firm's first motion to withdraw, it remained uncertain how the Ohntrups' post-judgment proceedings would unfold and whether MKEK would comply with discovery requests served on the Firm. We affirmed the District Court's initial denial of the motion to withdraw because there was a chance that the Firm's presence would facilitate communication between the parties . . . . By now, it is clear that the Firm is merely a captive, uncompensated process server and that Ohntrup's efforts to communicate with MKEK through the Firm are futile. Accordingly, the District Court did not err when it granted the Firm's motion to withdraw.

*Ohntrup v. Makina Ve Kimya Endustrisi Kurumu*, 760 F.3d at 295.

The *Ohntrup* client was a corporation, and I suppose it could be argued that this makes a difference because these six individual plaintiffs, unlike the corporation, have the right to represent themselves in court.[11] But no such distinction is reflected in the case law. Thus, in a District Court decision cited by Hagens Berman, *In re DVI, Inc. Sec. Litig.*, No. CIV. A. 03-5336, 2014 WL 5430998 (E.D. Pa. Oct. 24, 2014), the client was an individual. The Dilworth

---

[10] Elsewhere the Circuit panel observed that "[a]s Morgan recognizes, the purposes of [Local Rule 5.1's predecessor rule] include providing for communications between the litigants and the court, as well as ensuring effective court administration. . . . [T]he district court found that permitting Morgan to withdraw would leave the court without the possibility of effective communication with Makina, as well as without a reliable mechanism for responsible supervision of the post-judgment aspects of this litigation. These findings are not clearly erroneous." 802 F.2d at 679.

[11] *Compare Ohntrup v. Firearms Ctr.* at 680 n.1: "Since we anticipate that Morgan will remain in the case until the Ohntrups have exhausted meaningful efforts to satisfy their judgment, we need not consider the Ohntrup's argument that granting Morgan leave to withdraw would violate the prohibition against corporations appearing in court unrepresented by counsel."

firm, long unpaid and getting no cooperation from its client (one Garfinkel), made the "no meaningful purpose" argument. Judge Joyner's discussion is particularly apposite:

> Complex issues are presented here, concerning conduct over a protracted period of time by multiple parties with conflicting interests, and many other actors and experts. Moreover, the motion for leave to withdraw is presented at a stage in this litigation where the potential consequences of Dilworth's withdrawal are uncertain. . . .
>
> In addition, Dilworth overlooks the difficulties that would likely be created for the trial judge were the request for withdrawal to be granted at this time. Lead Plaintiffs and other Defendants – in particular, Defendant Deloitte & Touche, LLP – can reasonably be expected to assert claims or defenses based on Garfinkel's conduct at DVI, Inc. It is not unlikely that Garfinkel could be called to testify at trial by either Lead Plaintiffs or particular Defendants. Other litigants' proofs and the protection of Garfinkel's personal interests would likely be served by Dilworth's continued representation. Communication among the parties and with the trial judge would be aided as well by Dilworth's appearance, further helping to ensure an efficient and fair trial.
>
> Dilworth has not persuasively met its burden to show that its representation of Garfinkel no longer serves any meaningful purpose.

*In re DVI, Inc. Sec. Litig.,* 2014 WL 5430998 at *2.

Thus, if my inquiry were limited to considering the "no meaningful purpose" argument as presented by Hagens Berman (and it is not), I would have no choice but to recommend that the District Court deny all six motions.

B.   The Breadth of the Court's Discretion

The 2014 *Ohntrup* decision explains that the "no meaningful purpose" doctrine marks the "outer boundary" of a court's discretion in considering withdrawal motions; short of that point, the court's discretion is very broad indeed.[12] I *could* recommend permitting the withdrawals if I

---

[12] "The point at which the law firm no longer serves a meaningful purpose in the case marks the outer boundary of the District Court's discretion because withdrawal would be

were persuaded that there were sound reasons for that result.  By the same token, I could recommend denying the motions even if I were convinced they were well grounded.  "The Rule [1.16(c)] states: '[A] lawyer shall continue representation notwithstanding good cause for terminating the representation' when so ordered by the court. The theory behind this provision is that, even if withdrawal is otherwise appropriate, other considerations must sometimes take precedence, such as maintaining fairness to litigants and preserving a court's resources and efficiency."  *Haines v. Liggett Grp., Inc.*, 814 F. Supp. 414, 423 (D.N.J. 1993), citing G. Hazard & W. Hodes, 1 The Law of Lawyering, § 1.16:401 at 483 (1990).  But the problem here is that I have not gotten any information that would inform a discretion-related recommendation.  Thus far, I can only guess at Hagens Berman's reasons for wanting to withdraw.

C.        Privilege, Work Product and In Camera Proceedings

If I understand Hagens Berman's remaining quarrel with the procedure I set up, it comes down to an argument that an in camera proceeding forces a waiver of privilege.  But it is too well settled for adult discussion that a court's in camera review of documents or other information does not destroy privilege:

> We begin our analysis by recognizing that disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege. Indeed, this Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection, see *Kerr v. United States District Court for Northern District of Cal.,* 426 U.S. 394, 404–405 (1976), and the practice is well established in the federal courts. See, *e.g., In re Antitrust Grand Jury,* 805 F.2d 155, 168 (CA6 1986); *In re Vargas,* 723 F.2d 1461, 1467 (CA10 1983); *United States v.*

---

required at that point. By requiring 'leave of court' before an attorney may withdraw, the local rules commit the decision on attorney withdrawal to the discretion of the district court. And that discretion is not governed by any 'meaningful purpose' test."  *Ohntrup,* 760 F.3d at 295.

9

> *Lawless,* 709 F.2d 485, 486, 488 (CA7 1983); *In re Grand Jury Witness,* 695 F.2d 359, 362 (CA9 1982).

*United States v. Zolin,* 491 U.S. 554, 568–69 (1989).

Reading Hagens Berman's Objections, one would think that the idea of proceeding in camera in evaluating a motion for leave to withdraw – talking to the lawyers and clients outside the hearing of the adverse party – is some radical overreach on the part of the Special Discovery Master. In fact, such proceedings are a commonplace when withdrawal motions are in play, and counsel knows it. *See, e.g., Best Med. Int'l, Inc. v. Accuray, Inc.,* No. 2:10-CV-1043, 2014 WL 281676 (W.D. Pa. Jan. 24, 2014) (addressing Pietragallo firm's motion for leave to withdraw); *Sharp v. Verizon Delaware Inc.*, No. CIV.A. 11-1209-RGA, 2012 WL 6212615 at *1 and n.1 (D. Del. Dec. 12, 2012); *Lewis v. Brown*, No. CIV 04-6063, 2009 WL 1545970 at *2 n.3 (D.N.J. May 27, 2009). Thus, Hagens Berman's labored (and all too familiar) discussions of the attorney-client privilege, the opinion work product doctrine, and the professional obligation to preserve client confidences simply do not factor into the conversation and need not be addressed in this Report." Similarly, it is unnecessary to address Hagens Berman's suggestions for a truncated investigation that appears to be at cross-purposes with my obligation to develop the information requested by the Court. On the present record, all we know is that Hagens Berman no longer wishes to pursue these six plaintiffs' claims, even though it thought highly enough of those claims to bring them in the first place. In *Rusinow v. Kamara*, 920 F. Supp. 69 (D.N.J. 1996), *after* conducting proceedings in camera, the district court had this to say:

> Plaintiffs' counsel have not presented this Court with any compelling reasons to justify their withdrawal. It is they who chose to file this action, and therefore, they who must be prepared to see it to completion. . . . A sudden disenchantment with a client or a cause is no basis for withdrawal. Those who cannot live with risk, doubt and ingratitude should not be trial lawyers. A lawyer's duty to his or her client cannot be sacrificed to ambivalence.

*Rusinow v. Kamara*, 920 F. Supp. at 72.

D.     Plaintiff John Marshall's Pro Se Appearance

Hagens Berman argues that its withdrawal from representing Plaintiff John Marshall must be approved, because Mr. Marshall has already represented himself at his deposition and has told the Court that "I John Marshall wish to proceed with this action pro se." Dkt. 356. I cannot tell whether Mr. Marshall stated that willingness as an alternative to (a) continuing to be represented by Hagens Berman, (b) obtaining successor counsel, or (c) having his claim terminated.[13] But assuming for argument's sake (most favorably to Hagens Berman's position) that Mr. Marshall does not want Hagens Berman to represent him anymore, and wants to go it alone, even that interpretation would not require the Court to grant the withdrawal motion with respect to Mr. Marshall, as demonstrated by the very cases cited by Hagens Berman. In *Ohntrup,* the client "informed Morgan by telex that it no longer wished Morgan to continue its representation in the matter," *Ohntrup v. Firearms Ctr.,* 802 F.2d at 678, but the withdrawal motion was denied. In *DVI, Inc.,* the individual client, Garfinkel, submitted a declaration stating that he had "[r]epeatedly instructed Dilworth not to perform legal services on his behalf," *In re DVI, Inc. Sec. Litig.*, 2014 WL 5430998, at *1, but the withdrawal motion was denied.

IV.    **Recommendation Regarding the Objections and Related Matters, and Comment Regarding the Request for § 1292 Certification**

As stated, I recommend that the Objections be overruled. I also recommend that Hagens Berman be ordered to make all reasonable efforts, including the engagement of third-party

---

[13] The record does suggest that, before filing this statement, Mr. Marshall had been attempting to engage new counsel. Dkt. 207, Declaration of Nick Styant-Browne in Support of Plaintiffs' Counsel's Motion To Withdraw as Counsel for John Marshall ¶ 4.

investigators, to locate Plaintiff Richard Anderson, and report to me monthly on the efforts that have been made and the progress achieved.

I do not believe the Court has solicited my views on Hagens Berman's alternative request that the Court certify any order it enters pursuant to 28 U.S.C. § 1292. If that question were referred for my recommendation, I would recommend that the request be denied because, if the Court accepted my recommendations on the Objections, its Order would not involve a controlling question of law as to which there is substantial ground for difference of opinion.

Hagens Berman should distribute copies of this Report and Recommendations and confirm to me that this has been done.

                                         Respectfully submitted,

January 23, 2017                          /s/ William T. Hangley
                                                         WILLIAM T. HANGLEY
                                                         SPECIAL DISCOVERY MASTER