# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENDA JOHNSON, et al. | : | |
| | : | |
| v. | : | Civ. No. 11-5782 |
| | : | and all related cases |
| SMITHKLINE BEECHAM | : | |
| CORPORATION, et al. | : | |

**Diamond, J.**                                                                May 8, 2018

# MEMORANDUM

Defendants in this thalidomide products action ask me to reallocate exclusively to Plaintiffs' counsel the fees and costs incurred by Special Discovery Master William T. Hangley, whom I appointed to address the discovery complaints made by those same Defendants. The fees and costs Defendants find particularly irksome were incurred when Mr. Hangley inquired into the circumstances surrounding the formation of an unsavory agreement by which lead Defendant GlaxoSmithKline would not seek sanctions against Plaintiffs' counsel Hagens Berman Sobol Shapiro in return for Plaintiffs withdrawing their products claims against GSK. Until Mr. Hangley completes this inquiry, I cannot determine which (if any) "party is more responsible than other parties for the reference to [Mr. Hangley]." Fed. R. Civ. P. 53(g)(3). Accordingly, I will deny Defendants' Motion without prejudice.

## I. PROCEDURAL HISTORY

I have previously set out the tortuous background of this litigation. (See Doc. Nos. 371, 482.) Briefly, from 2011 to 2014, fifty-two Plaintiffs represented by Hagens Berman initiated actions in which they alleged that some fifty years before, thalidomide had caused them to suffer severe birth defects. The drug was produced or distributed by Defendants GlaxoSmithKline LLC, GlaxoSmithKline Holdings (Americas) Inc., Sanofi-Aventis U.S. LLC, and Grünenthal GmbH. Most of the Complaints were initially filed in state court and removed to this Court. See

Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 360 (3d Cir. 2013). The verifications attached to those Complaints were signed by Counsel.

### *The Appointment of a Special Discovery Master*

Anticipating a statute of limitations affirmative defense, Plaintiffs alleged, *inter alia*, that Defendants' fraudulent concealment had tolled the running of the limitations clock. (See Doc. No. 76.) Some Plaintiffs also alleged that they could not reasonably have discovered until very recently that thalidomide had caused their birth injuries. (Id.) Defendants moved to dismiss, arguing that because Plaintiffs had sustained their birth injuries in the late 1950s or early 1960s, their claims necessarily were time-barred. (Doc. Nos. 74, 86.) Because I was obligated to accept Plaintiffs' allegations as true, however, I denied Defendants' Motions and allowed discovery to go forward. (Doc. No. 92); see also Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 498 (3d Cir. 1985) ("Since the applicability of the statute of limitations usually involves questions of fact for the jury, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.").

Defendants promptly sought to learn when each Plaintiff knew or reasonably should have known that thalidomide may have caused his or her birth defects. (See Doc. No. 95.) After Defendants complained that Plaintiffs had repeatedly failed to comply with these critical discovery requests, Defendants urged me to dismiss all Plaintiffs' claims with prejudice. (Doc. No. 232; see also Doc. Nos. 147, 154, 166, 206, 222.) Although I declined to dismiss, I recognized the legitimacy of Defendants' complaints. Accordingly, on June 17, 2014, I proposed appointing Mr. Hangley in the hope that he would resolve Defendants' discovery difficulties. (Doc. No. 239); see also Fed. R. Civ. P. 53(b)(1). Indeed, I ordered Mr. Hangley, *inter alia*, to "[m]onitor[] and report[] on Plaintiffs' compliance with their discovery and

disclosure obligations respecting the Thalidomide discovery issue, and . . . ensure Plaintiffs' compliance with [those] obligations." (Doc. No. 256 ¶ 4(b).) No Party objected to Mr. Hangley's appointment, or to my Order that the Special Master's fees and costs would be paid equally by Plaintiffs (fifty percent) and Defendants (fifty percent). (Id. ¶ 9.)

*Hagens Berman Seeks to Withdraw After Defendants Seek Sanctions*

By the time Mr. Hangley was able to confer with all counsel, the claims of several Plaintiffs had been terminated because the facts refuted Plaintiffs' allegations. (See Doc. Nos. 168, 258, 263, 265.) Accordingly, on July 17, 2014, Mr. Hangley ordered Hagens Berman to "investigate each of the remaining active cases" and "decid[e] [by September 16, 2014] whether it should continue to be prosecuted or dismissed with prejudice by consent." (Doc. No. 268 ¶ 1.) In July and August, 2014, GSK and Grünenthal asked me to sanction Hagens Berman (but not its clients) for its bad faith prosecution of three of these time-barred matters. (Doc. Nos. 258, 281, 310.) I referred the sanctions requests to Mr. Hangley—again, without objection from any Party. (Doc. No. 316.)

On October 28, 2014—well after briefing and argument of the Sanctions Motions—GSK's counsel reported that GSK had reached an extraordinary "agreement" with Hagens Berman: GSK would withdraw its Sanctions Motions in exchange for all Plaintiffs (save one) dismissing with prejudice their claims against GSK. (Letter from Michael T. Scott to Court, Doc. No. 394.) GSK later clarified that—despite their prior representation that the "agreement" included "[a]ll plaintiffs currently represented by Hagens Berman"—the "agreement" did not include the six Plaintiffs as to whom Hagens Berman had filed Motions to Withdraw between May and October, 2014. (Doc. No. 397.) Accordingly, on November 14, 2014, Hagens Berman

3

moved for voluntary dismissal of the claims twenty-eight Plaintiffs' had brought against GSK. (Doc. No. 409.)

*Mr. Hangley Inquires Into the Propriety of the GSK-Hagens Berman "Agreement"*

It appeared to me that the "agreement" benefitted GSK and Hagens Berman to the detriment of the twenty-eight Plaintiffs, who would give up their claims for no benefit. Accordingly, I ordered Mr. Hangley to determine whether these Plaintiffs had knowingly, voluntarily, and intelligently agreed to dismiss their claims against GSK. (Doc. No. 420); see also Green v. Nevers, 111 F.3d 1295, 1301 (6th Cir. 1997); United States v. Mercedes-Benz of N. Am., Inc., 547 F. Supp. 399, 400 (N.D. Cal. 1982) (the court may "look behind" a stipulation of dismissal "to determine whether there is collusion or other improper conduct giving rise to the dismissal"). Although Defendants did not object, Hagens Berman objected vigorously, unsuccessfully seeking mandamus to stop Mr. Hangley's inquiry. See In re Alexander, No. 15-2245, 2015 WL 3479384, at *1 (3d Cir. May 29, 2015). On August 10, 2016, Mr. Hangley submitted a Report in which he reluctantly recommended that I grant the dismissals, noting that Hagens Berman had at least partially obstructed his inquiry. (Doc. No. 535 at 4, 35.) I have not yet ruled on Plaintiffs' Motions for Voluntary Dismissal or decided whether to accept the August 10 Report and Recommendation.

At this point, I turned my attention to the six Plaintiffs who had refused to dismiss their claims against GSK and the other Defendants. In its Motions to Withdraw from representing the six, Hagens Berman stated that that the firm could not, consistent with its professional obligations, continue to prosecute the claims. (Doc. Nos. 207, 301, 342, 343, 375, 382.) Needless to say, this gave rise to concerns respecting both the propriety of Hagens Berman's actions throughout the litigation and the viability of the consents to dismiss the firm had already

4

obtained.  See Chester v. May Dep't Store Co., No. 98-5824, 2000 WL 12896, at *1 (E.D. Pa. Jan. 7, 2000) (withdrawal denied where there is "no suggestion that counsel was unaware of his client's history and propensities when he accepted the representation and proceeded to litigate this matter").  Accordingly, on March 14, 2016—without objection from any Party—I ordered Mr. Hangley to advise me as to whether to grant the Motions to Withdraw.  (Doc. No. 532.)

Because Mr. Hangley anticipated questioning the six Plaintiffs (one of whom has since passed away) and their Hagens Berman lawyers (now adverse to their clients with respect to the withdrawal motions) about privileged communications, he proposed proceeding in the absence of Defendants or their counsel.  (Doc. No. 539.)  Defendants readily agreed.  On December 12, 2016, all three Defendants waived participation in the proposed *in camera* proceedings.  (Doc. No. 546.)  Mr. Hangley conducted those proceedings on September 26, 27, and 28, 2017, during which he sought to determine, *inter alia*, the information Hagens Berman had learned that compelled its precipitant dismissal requests.  The firm was represented by outside counsel.

### *Evidence of Malfeasance*

On November 28, 2017, Hagens Berman's counsel informed Mr. Hangley that the firm had falsified an expert consultant's report in an unsuccessful effort to persuade one of the six Plaintiffs to withdraw her thalidomide claims.  (See Doc. No. 588 at 7.)  To allow the full exploration of these troubling events, Hagens Berman has proposed re-opening the record with respect to its Motions to Withdraw, and I have granted that request.  (Doc. Nos. 583, 593.)  Mr. Hangley has announced the procedures he intends to follow during these proceedings.  (Doc. No. 588 at 15–16.)  Defendants have asked to participate in these proceedings "in light of the Special Master's expanded inquiry."  (Doc. No. 602.)  I am awaiting Mr. Hangley's Report and Recommendation on that request.

*The Instant Motion*

On April 18, 2018, Defendants sought a "reallocation of the fees and costs arising from Special Master Hangley's work" concerning Hagens Berman's Motions to Withdraw. (Defs.' Mot. Reallocate, Doc. No. 615.) In Defendants' view "the Parties responsible for the events at issue [should] bear the fees and costs of the Special Master – not Defendants." (Id. at 1.) Hagens Berman responded that it did not object to paying all Mr. Hangley's fees and costs, but noted that Defendants' recent request to participate in future proceedings "does not square with their argument that Hagens Berman pay [the fees and costs] in full." (Hagens Berman's Resp. Opp. Defs.' Mot. Leave Participate 3, Doc. No. 619; see also Hagens Berman's Resp. Defs.' Mot. Reallocate, Doc. No. 617.) The firm suggests that "[i]t is inconsistent for Defendants to state in one filing that they have no involvement in the conduct at issue and thus should not bear the costs associated with it, and to ask in another for leave to become involved." (Hagens Berman's Resp. Opp. Defs.' Mot. Leave Participate 3.) On May 3, Defendants replied, again asking me to order that Hagens Berman alone bear Mr. Hangley's fees and costs. (Defs.' Reply Supp. Mot. Reallocate, Doc. No. 623.) Surprisingly, Defendants failed to address the firm's contention that such a reallocation underscores that Defendants should be excluded from further proceedings before Mr. Hangley.

## II. LEGAL STANDARDS

Rule 53 permits me to allocate a special master's fees among the parties. Fed. R. Civ. P. 53(g). I am "afforded broad discretion in making a determination as to whether reallocation is appropriate." Wachtel v. Health Net, Inc., No. 01-4183, 2015 WL 5915786, at *4 (D.N.J. Oct. 8, 2015); see also Glover v. Wells Fargo Home Mortg., 629 F. App'x 331, 339 (3d Cir. 2015); Halderman v. Pennhurst State Sch. & Hosp., 855 F. Supp. 747, 748 (E.D. Pa. 1994). As I have

6

mentioned, in determining allocation, I must consider "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3).

"An interim allocation may be amended to reflect a decision on the merits." Id. As the Third Circuit recently explained,

> Rule 53(g)(3) provides a means for the court to revisit the allocation *after the Special Master rules*. This provides, among other things, a means to shift expenses if it is determined, for example, that one party has taken frivolous or bad faith positions that have unnecessarily increased the costs associated with proceeding before the Special Master.

Glover, 629 F. App'x at 339 n.7 (emphasis supplied); see also Wachtel, 2015 WL 5915786, at *4 (Rule 53(g) "permits the Court to . . . amend such an allocation *after the proceeding* 'to reflect a decision on the merits'" (emphasis supplied) (quoting Fed. R. Civ. P. 53(g)(3))); Southersby Dev. Corp. v. Borough of Jefferson Hills, No. 09-208, 2011 WL 6179778, at *3 (W.D. Pa. Dec. 13, 2011) (reallocating special master's fees *after* final resolution of underlying dispute); Thabault v. Chait, No. 85-2441, 2009 WL 69332, at *16 (D.N.J. Jan. 7, 2009) (court had authority to "amend" initial allocation of fees "to reflect that the Receiver prevailed in this case").

### III. DISCUSSION

Defendants argue that I should reallocate payment of the Special Master's expenses, given the "expanded inquiry concerning the Motions to Withdraw and the conduct which prompted it." (Defs.' Mot. Reallocate 1.) I do not agree.

The "scope" of Mr. Hangley's inquiry has not expanded in over two years. (See id. at 3.) As I have discussed, because I immediately questioned the propriety of the GSK-Hagens Berman "agreement," in December 2014 I referred that question to Mr. Hangley without objection from

7

Defendants.  In March 2016, I ordered (again, without objection) Mr. Hangley to advise me with respect to Hagens Berman's pending Motions to Withdraw.  There has thus been no expansion of Mr. Hangley's inquiry since my March 2016 Order.  Mr. Hangley has received evidence that, in an apparent effort to convince a client that her thalidomide claim had no merit and should be withdrawn, Hagens Berman dishonestly altered a key expert report.  Given the nature of the GSK-Hagens Berman "agreement"—abandon your clients and GSK won't pursue sanctions against the firm—those apparently wrongful actions and Mr. Hangley's proposed response were entirely foreseeable.  Indeed, Mr. Hangley foresaw them.  (See Doc. No. 535 at 4 ("The Hagens Berman lawyers' obstructive conduct in connection with my interviews has made me doubt whether the lawyers 'told it like it was' to their clients . . . .").)  Mr. Hangley has also suggested that any such misconduct "may have implications for other former Hagens Berman client-plaintiffs who consented to the dismissal of all their claims with prejudice." (Doc. No. 588 at 3.)  This inquiry too, however, falls squarely within my December 2014 Order asking him to determine whether the twenty-eight Plaintiffs had "knowingly, voluntarily, and intelligently consented to dismissing with prejudice" their claims.  (Doc. No. 420 at 5.)  Accordingly, Mr. Hangley's effort to determine whether any Plaintiff was misled by Hagens Berman is exactly what I ordered him to do in 2014 and 2016—without objection from Defendants.  It "expands" nothing.

Defendants' suggestion that they "should not be required to bear the cost stemming from conduct about which they had no knowledge or involvement and bear no responsibility" is thus, to put it politely, mistaken.  (Defs.' Mot. Reallocate 4.)  Whether (and to what extent) Hagens Berman's apparent misconduct was the inevitable result of negotiations leading to GSK's distressing "agreement" with the firm is something Mr. Hangley will likely address.  As

Defendants themselves acknowledge, however, "the Special Master has not yet made findings as to which parties may be found culpable for the matters outlined in his Report." (Id. at 4.) There has thus been no decision on the merits to warrant a reallocation. See Fed. R. Civ. P. 53(g) ("An interim allocation may be amended to reflect a decision on the merits.") Only after the issuance of such a decision could I decide whether to reallocate Sanofi-Aventis's and Grünenthal's shares of Mr. Hangley's fees and costs to GSK, whether Hagens Berman should bear the entire expense, whether some other reallocation is warranted, or whether no reallocation is warranted.

In sum, because Defendants' Motion is premature, I will deny it without prejudice.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion will be denied without prejudice.

An appropriate Order follows.

*/s/ Paul S. Diamond*

May 8, 2018                                                       Paul S. Diamond, J.