IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENDA JOHNSON ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SMITHKLINE BEECHAM CORPORATION ET AL., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 2:11-cv-05782-PD <br> ) and all related cases <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER**
**OF THE SPECIAL DISCOVERY MASTER**

I am publicly docketing the following documents received from counsel for Hagens Berman Sobel Shapiro LLP, purportedly in response to my Order of June 11, 2020 (Doc. 713):

• An email from Douglas E. Roberts, Esquire to the Special Master, dated July 16, 2020.

• Hagens Berman's proposed redactions of an April 15, 2020 "Expert Opinion: Hagens Berman Sobel Shapiro LLP," written by Abraham C. Reich, Esquire and addressed to Gaetan J. Alfano, Esquire and Mr. Roberts at their firm, Pietragallo Gordon Alfano Bosick & Raspanti, LLP. None of this will be discernible to the reader because everything in the document, right down to the page numbers and the date, has been redacted.

• A chart labeled "Hagens Berman's Explanation of Redactions in Expert Report."

Exhibit A to this Memorandum is a less heavily redacted copy of Mr. Reich's report. Although I prepared this version, I consider it also to be excessively redacted. I have left legible all material that, in my view, could not conceivably be viewed as privileged, but blacked out any material as to which I speculate that Hagens Berman or other participants in the ongoing hearing may register a colorable (if not meritorious) claim to privilege.

I am giving Hagens Berman another opportunity to do what I ordered done in the June 11 Order, *i.e.,* to propose redacting "material covered by any privilege or quasi-privilege" asserted by Hagens Berman and to "explain the basis for each redaction – with page and line pinpoints as appropriate – sufficiently to enable all participants to understand precisely the basis for each redaction, and to make informed decisions on challenging or accepting each redaction."

## Discussion

This is the second recent occasion on which, apparently, counsel has misunderstood an Order I considered pellucid. I will try to be more clear.

Counsel first informed me in mid-March that Hagens Berman "anticipate[d] calling Abraham Reich, Esq., as an expert witness on the propriety of the filing of, continued prosecution of, and withdrawal from the thalidomide cases at issue." (Doc. 707-1.) I immediately ordered Hagens Berman to "serve on the participants in these proceedings,[1] as well as the Special Discovery Master, a report in compliance with Rule 26(a)(2)(B)." (Doc. 707.)

---

[1] Beginning with certain Defendants' motions for sanctions against Hagens Berman in 2014, I have been called upon to afford non-parties a day in court and to make or recommend decisions directly affecting non-parties along with the parties. As a result, I habitually refer to "participants" rather than "parties." The participants in the current matter include five Plaintiffs, all three Defendants, a former Plaintiff whose case was consensually dismissed in 2014, two lawyers who no longer represent any parties, and Hagens Berman.

When Mr. Reich's report arrived on April 15, I learned some disturbing facts: First, that Hagens Berman had given the expert the complete transcripts and exhibits from the seven days of the hearing – much of it conducted *in camera* – which raised concerns in my mind about the continuing vitality of any privilege that had existed before. Second, that Mr. Reich had expressly relied on and discussed (and expected to testify about) previously privileged information that the participants and I had worked so hard to preserve in our then-recent redaction process. Third (and this is the first of the two apparent failures of communication), that Hagens Berman had apparently misunderstood my Order to serve the report on "the participants." Counsel simply announced that the Defendants were excluded because they had been excluded from the *in camera* portions of the hearings from which Mr. Reich drew material discussed in his report. My June 11 Memorandum discussed, among other things, my concern that Hagens Berman's wholesale disclosure of previously privileged material to a testifying expert might have vitiated privilege. I invited the participants to brief the questions of privilege and, as stated above, ordered Hagens Berman to provide (and explain granularly) its proposed privilege-based redactions to the Reich report. I hope I am now making myself clear.

Turning to the substance of Hagens Berman's apparent view of privilege: It should be understood that evidence received *in camera* is not necessarily or automatically privileged; that would not make any sense. Courts convene *in camera* proceedings – hearings or document examinations – in order to determine *whether* evidence is privileged. It is an understatement to say that some documents examined *in camera* turn out not to be privileged; so too, much of the testimony heard in an *in camera* hearing (probably most of it by word count) is distinctly unprivileged. Thus, the question is not whether the evidence was received *in camera,* but

whether it is privileged, and the fact that it was adduced *in camera* sheds little if any light on that essential question.

Even more curiously, Hagens Berman appears to think that the expert's consideration and discussion of evidence received *in camera* does not have to be shared with all the participants so long as he refrains from discussing the evidence that has been *publicly* available at all times. I simply cannot fathom this argument, but Hagens Berman's brief of July 9, 2020 (Doc. 718 at 9) states the following as if it were good news:

> The [Reich] report does not mention the expert letters that Weaver altered. It does not assess the scope or applicability of the crime-fraud exception to attorney-client privilege. It does not grapple with the allegations raised by Ms. Sampson. Neither Ms. Cabcabin nor Ms. Sampson appear in the report at all.

Whether the expert should have considered and talked about Hagens Berman's evidence-tampering (by its partner Weaver) when opining that the firm acted ethically in attempting to extract itself from Terrie Bolton's representation is not for me to say at this point. But it is fair to state that, *if* Mr. Reich is permitted to testify, it is highly likely that the Defendants will be permitted to cross-examine him on all the "facts or data [he] considered" (Rule 26(a)(2)(B)(ii)), including the evidence he received but does not mention. And that suggests that Defendants should have access to Mr. Reich's report and the facts or data he considered unless the law of privilege says otherwise.

If one asserts that a particular item of evidence (testimonial or documentary) is privileged, the audience is entitled to know exactly which privilege is being invoked, and on what basis. The June 11 Order was intended to elicit every theory that supports each assertion that a particular statement in the Expert Report should be redacted for privilege, and that is what Hagens Berman must provide. If, hypothetically, Hagens Berman thinks a proposed redaction of a particular sentence in the Expert Report can simultaneously be based on, *e.g.,* the attorney-

client privilege, the opinion work product privilege, the privilege against self-incrimination, and the spousal privilege, I want to be told about all of those privileges and to have it explained why each of them applies to that particular sentence. In that explanation, Hagens Berman should avoid the disjunctive or conjunctive-disjunctive coinage (*e.g.,* "work product and/or attorney-client privilege") one frequently encounters in privilege logs.

I would like to nip one source of confusion in the bud; I refer to what looks suspiciously like the beginnings of a Hagens Berman step-back from its own strategic decisions. For the avoidance of doubt, I remind counsel that it was Hagens Berman and its attorneys, and only they, who decided (i) to engage a testifying expert and (ii) to hand previously privileged material to that expert, and that they took those steps without any prodding of any kind by me or by the Court. (Presumably, they did these two things before informing me of Mr. Reich's engagement and the scope of his expected testimony just a month in advance of the next then-scheduled hearing sessions.) Hagens Berman first informed on me on Friday, March 13 that Mr. Reich was going to provide expert testimony on three topics, and I issued my Order requiring a Rule 26(a)(2)(B)(ii) report the next business day, Monday, March 16. But Hagens Berman's July 9 brief seems to imply that Hagens Berman – a sophisticated law firm with sophisticated counsel – was actually tricked into engaging the expert by a statement the Special Master made back in 2017:

> The Special Master previously observed that "[i]t is Hagens Berman's and its counsel's prerogative to decide what evidence they will muster in support of their Motions to Withdraw, and just how that evidence should be presented." Dkt. No. 569 at 1. *In light of that instruction and the prospect that the next hearing would be the last, Hagens Berman decided to offer testimony from Mr. Reich* in support of its Motions to Withdraw and for no other reason.
>
> *However,* on March 16, 2020, the Special Master ordered Hagens Berman to "serve on the participants in these proceedings, as well

> as the Special Discovery Master," an expert report that complied
> with Federal Rule of Civil Procedure 26(a)(2)(B), within 30 days.
> Dkt. No. 707 at 3.

(Doc. 718 at 8-9 (emphasis added.))[2]  I certainly continue to stand behind my 2017 thought that litigants are free to decide how to go about making their case.  But the unspoken bedrock premise is that the litigants will follow the rules in doing so.  I did not make Rule 26(a)(2) up; the detailed report and disclosure requirements of Rule 26(a)(2)(B) are hardly stealth weapons; they have governed expert witness disclosure in federal court civil litigation for 27 years now, and I sincerely hope they did not come as a surprise to Hagens Berman, its very able counsel, or its preeminent expert witness.

Nor should any of these knowledgeable attorneys have been surprised at my concern that the once-formidable shield of privilege the participants worked so hard to protect may have been breached irreparably by Hagens Berman's wholesale surrender of the hearing transcripts and exhibits to an outside expert.  Indeed, one of the Plaintiffs' counsel, Mr. Boebel, has argued credibly that Hagens Berman's conduct was nothing less than a subject-matter waiver of work product protection.  (Doc. 716, Brief of Carolyn Sampson Regarding the June 11, 2020 Memorandum and Order of the Special Discovery Master.)  I look forward to the other

---

[2] The quoted statement is from a September 2017 Memorandum and Order adjusting the hearing format for the convenience of Hagens Berman witness Steve Berman.  (Doc. 569.)

Other passages in Hagens Berman's recent submissions also might foster the false impression that the Special Master had a role in engaging the testifying expert or forking over the privileged materials.  *See* Doc. 718 at 1 (Hagens Berman "commissioned an expert report in support of its motions to withdraw . . . pursuant to the Special Master's order requiring it to do so. . . . That Order further required Hagens Berman to 'serve on the participants in these proceedings, as well as the Special Discovery Master, a report in compliance with Rule 26(a)(2)(B)'"); *see also* the chart, "Hagens Berman's Explanation of Redactions in Expert Report," that is being docketed today, at 1 n.1 (referring to Hagens Berman's "retaining an expert, providing him with the materials necessary to draft a report pursuant to the Special Master's Order, and disseminating that report pursuant to the same Order").

participants' responses to Mr. Boebel's argument (for Plaintiff Sampson) that such a waiver has occurred.

In the hope that the receipt of a properly redacted expert report will aid the participants in the second-wave briefing contemplated by the June 11 Order, I will extend the deadline for any such briefing.

## **ORDER**

IT IS HEREBY ORDERED that, not later than 7 days after the entry of this Order, Hagens Berman Sobel Shapiro LLC shall serve on the Special Discovery Master, but not docket, a copy of the Expert Report sent to him on April 15, 2020 (the "Expert Report"), containing Hagens Berman's proposed privilege redactions, as called for in the Special Master's Order of June 11, 2020 (Doc. 713), and as further explained in the foregoing Memorandum; and it is

FURTHER ORDERED that, after the Special Master's receipt of the aforementioned redacted Expert Report from Hagens Berman, and his review of and edits to that version, the Special Master will docket or otherwise distribute that latter edited version to the participants. No later than 14 days thereafter, all participants (including Hagens Berman) may submit briefs addressing any earlier-filed briefs, the Expert Report, and any existing or proposed redactions.

July 22, 2020                               /s/ William T. Hangley
                                            WILLIAM T. HANGLEY
                                            SPECIAL DISCOVERY MASTER