# EXHIBIT A



2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
Tel (215) 299-2000  Fax (215) 299-2150
www.foxrothschild.com

ABRAHAM C. REICH
Direct No:  215 299 2090
Email: AReich@FoxRothschild com

April 15, 2020

<u>*Via Email (GJA@Pietragallo.com)*</u>

Gaetan J. Alfano, Esquire
Douglas E. Roberts, Esquire
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
1818 Market Street, Suite 3402
Philadelphia PA 19103

Re:     <u>**Expert Opinion: Hagens Berman Sobol Shapiro LLP**</u>

Dear Messrs. Alfano and Roberts:

## I.     <u>INTRODUCTION</u>

You have asked me to provide my expert opinion in the above-referenced matter on behalf of your client, Hagens Berman Sobol Shapiro LLP ("Hagens Berman").  Specifically, you have asked me to address the following: (i) whether Hagens Berman had a good faith basis to bring lawsuits on behalf of its clients starting in 2011 for injuries allegedly suffered as a result of exposure to Thalidomide; (ii) whether Hagens Berman's continued prosecution of these cases up until the time it sought to withdraw was appropriate; and, (iii) whether it was appropriate for Hagens Berman to seek leave to withdraw from representing these plaintiffs when it did due to information obtained during discovery.

It is indeed a daunting task to review the conduct of lawyers when it has already, to some degree, been evaluated by an esteemed federal judge and highly respected discovery master.  This opinion is not meant to diminish those findings in any way.  My opinion is limited to assessing the conduct of the Hagens Berman attorneys in the five cases identified in this opinion against the specific standards set out below.

A Pennsylvania Limited Liability Partnership

California     Colorado     Delaware     District of Columbia     Florida     Georgia     Illinois     Minnesota     Nevada
New Jersey     New York     North Carolina     Pennsylvania     South Carolina     Texas     Virginia     Washington



April 15, 2020
Page 2

## II.   <u>QUALIFICATIONS</u>

I am a partner at the law firm of Fox Rothschild LLP ("Fox Rothschild" or "the Firm").  I have been at Fox Rothschild since 1974, and a member of its Litigation Department since then.  I am currently Chair Emeritus of Fox Rothschild.  I served as Co-Chairman of Fox Rothschild for twelve years.  For five years prior to becoming Co-Chairman, I was the Managing Partner of the Philadelphia office of Fox Rothschild.  I have been a member of the management group at the Firm since 1985.  I was the founding member of Fox Rothschild's Professional Responsibility Committee (in 1988) and served as Chair of the Committee for eight years.

I am a 1974 graduate of the Beasley School of Law at Temple University, where I was an Editor of its Law Review.  I am admitted to practice in Pennsylvania.  I am also admitted to practice in the United States Supreme Court and the United States Courts of Appeals for the Third, Fourth, Seventh, and Eighth Circuits.

I have had an active litigation practice for over forty-five years.  The majority of my practice involves commercial litigation matters, in which I represent plaintiffs and defendants.  I have also been active for many years in representing lawyers and law firms in a myriad of issues involving professional responsibility and legal ethics, including the defense of legal malpractice claims.  In 1998, I was selected to be a Fellow of the American College of Trial Lawyers.

For over forty years, I have been active in the area of legal ethics and the interpretation and application of the Pennsylvania Rules of Professional Conduct (and its predecessor Code of Professional Responsibility).  I have been a member of the Philadelphia Bar Association's Professional Responsibility and Professional Guidance Committees.  In 1983 and 1984, I served as Chair of the Professional Responsibility Committee.  In 1987 and 1988, I served as Chair of the Professional Guidance Committee.  I also served as a member of a Hearing Committee for the Disciplinary Board of the Supreme Court of Pennsylvania for six years.  For a portion of that time, I chaired the Hearing Committee.  I have also served, from approximately 1988 to 1995, as one of two appointed lawyers (non-judicial) liaisons to the Judicial Ethics Committee of the Pennsylvania Conference of State Trial Judges.

In 1995, I served as Chancellor of the Philadelphia Bar Association.  I have been a member of the House of Delegates of the American Bar Association and the Pennsylvania Bar Association for many years.  I participated in the debates surrounding the enactment of the Model Rules of Professional Conduct and many of the Amendments.

I have, for many years, served on the Legal Ethics and Professional Responsibility Committee of the Pennsylvania Bar Association.  In 2012, the Pennsylvania Bar Association



April 15, 2020
Page 3

appointed me Co-Chair of the Taskforce to Evaluate and Recommend Changes to the Code of Judicial Conduct.  The Pennsylvania Supreme Court adopted many of our recommendations, when it enacted a new Code of Judicial Conduct in 2014.

For the past fifteen years, I have taught legal ethics and professional responsibility at the University of Pennsylvania School of Law.

I have spoken and written on issues of trial practice and legal ethics over many years in many different forums.  I have also lectured on issues of legal ethics and trial practice at mandatory continuing legal education courses.  I have counseled hundreds of lawyers on issues of legal ethics and professional responsibility.

I have been qualified as an expert in both state and federal courts on legal ethics and professional responsibility.  I have not testified as an expert in the past five years in any court, however, in 2019 I was deposed as an expert witness in *LoVecchio v. WMATA, et al.*, Civil Action No. 1:16-cv-02374 (D. D.C.).  Attached hereto as Exhibit A is a copy of my curriculum vitae, including my publications for the past ten (10) years.

In reaching the opinions contained herein, I considered the transcripts of testimony from the hearings that took place on September 26 – 28, 2017 and May 7 – 10, 2019, the exhibits entered into evidence at those hearings, and any relevant opinions or orders issued by the Court and the Discovery Master.  I have been compensated for my work on this matter at my usual hourly rate of $860.  I have been assisted in the drafting of this report by my partner Beth Weisser whose hourly rate is $540.

## III.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Thalidomide was first sold in the German marketplace as a sedative in or around 1957. *See The Thalidomide Tragedy: Lessons For Drug Safety and Regulation* by Bara Fintel, Athena T. Samaras, and Edson Carias.   Helix Magazine, July 28, 2009, available at https://helix.northwestern.edu/article/thalidomide-tragedy-lessons-drug-safety-and-regulation.  In approximately 1960, an Australian obstetrician began prescribing it off-label as a way to treat morning sickness in pregnant women.  Soon thereafter, the same obstetrician began noticing birth defects in the babies he delivered whose mothers had taken the drug.  *Id.*  By March of 1962, most of the countries where Thalidomide had previously been sold had banned the drug.  *Id.*  In the United States, the Food and Drug Administration declined to approve the use of Thalidomide.  *Id.* Part of the FDA's concern was a lack of U.S. clinical trials of the drug.  However, even though Thalidomide had not been through clinical trials or approved, more than 2.5 million Thalidomide



April 15, 2020
Page 4

tablets were distributed throughout the United States to approximately 20,000 patients, including several thousand women of childbearing age. *Id.*

As it pertains to this matter, Hagens Berman took over or, in some cases, commenced the current lawsuits starting in 2011 on behalf of plaintiffs alleging injuries from Thalidomide. These suits, at this time, were based on recently discovered evidence that potentially linked these plaintiffs to Thalidomide injuries.[1]

## IV.   HAGENS BERMAN'S PRE-COMPLAINT INVESTIGATION PROCESS

Based on my review of the transcripts from these proceedings, I can summarize the pre-complaint investigation process as follows:

Hagens Berman assumed responsibility for these cases in approximately September 2011. Prior to then, a firm known as Gordon & Reeves LLP (consisting of Peter Gordon, an Australian attorney with significant experience litigating Thalidomide cases and Kay Reeves, a Texas personal injury attorney) had been investigating potential Thalidomide cases and filed suit on behalf of certain plaintiffs in this litigation. Gordon & Reeves had previously partnered with a Texas firm known as the Lanier Firm to pursue potential Thalidomide cases in the United States. Those firms filed the initial two complaints. In addition to Mr. Gordon's extensive experience, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Gordon had filed a class action in the Supreme Court of Victoria in Australia in October of 2010, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ That case ultimately settled in 2013 for $80 million (US dollars) for a class of approximately 100 plaintiffs. In September 2011 Gordon & Reeves parted ways with the Lanier Firm and Hagens Berman assumed responsibility for these cases in conjunction with Gordon & Reeves. At that time, two Thalidomide cases were then pending in the United States, each with two plaintiffs. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] I acknowledge that there has been testimony regarding certain plaintiffs contacting and/or seeking relief from certain defendants prior to their participation in these cases and independent of their representation by Hagens Berman. However, my understanding is that those plaintiffs did not pursue claims against defendants in these proceedings if they had sought recovery against them at an earlier time.



April 15, 2020
Page 5





April 15, 2020
Page 6


## V.      RELEVANT LEGAL STANDARDS AND ANALYSIS

In evaluating the propriety of Hagens Berman's decision to file these lawsuits (including, specifically, ███████████████████████) and subsequent decision to withdraw in certain cases, I am guided by Pennsylvania Rule of Professional Conduct 3.1, Federal Rule of Civil Procedure 11, and 28 U.S.C.A § 1927.

**Pennsylvania Rule of Professional Conduct 3.1** deals with Meritorious Claims and Contentions.  It states the following (in relevant part):

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.[2]

**Federal Rule of Civil Procedure 11(b)** states:

Representations to the Court.  By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[2] The Hagens Berman attorneys involved in this matter are physically located and licensed in the State of Washington. Washington Rule of Professional Conduct 3.1 is identical to the Pennsylvania Rule.  Moreover, the Hagens Berman lawyers were admitted *pro hac vice* in the United States District Court for the Eastern District of Pennsylvania and, as a result, they agreed to be bound by the Pennsylvania Rules of Professional Conduct.  See E.D. Pa. Local R. Civ. P. 83.6 Part IV(B) (attorneys admitted to practice in the Eastern District of Pennsylvania must follow the Pennsylvania Rules of Professional Conduct) and 83.6 Part VIII (counsel admitted to the E.D. Pa. *pro hac vice* are subject to the disciplinary rules of that Court).



April 15, 2020
Page 7

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

**28 U.S.C.A. § 1927** (Counsel's Liability for Excessive Costs) states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Under any of the above-referenced standards, Hagens Berman, in my opinion, was justified in bringing these cases on behalf of the plaintiffs. Moreover, it is also my view that it was appropriate for the firm to seek leave to withdraw when it did based on information that was gained during the discovery process.

In Pennsylvania, a potential plaintiff has two years within which to bring a claim for personal injury caused by another. 42 Pa.C.S.A. § 5524. In general, the statute of limitations period will begin to run when an injury is inflicted but "where the plaintiff's injury or its cause was neither known nor reasonably ascertainable," the discovery rule will toll the statute of limitations. *See Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018); *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). Applying the discovery rule, the statute of limitations period "begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another." *See Adams v. Zimmer US, Inc.*, 943 F.3d 159 (3d Cir. 2019), *citing Coleman v. Wyeth Pharms.*, 6 A.3d 502, 510-511 (Pa. Super. 2010).

In *Adams*, the Third Circuit explained that the "'reasonable diligence' standard is an objective one, but at the same time 'sufficiently flexible' to 'take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.'" *Adams*, 943 F.3d at 163. The Third Circuit went further and explained that "[p]laintiffs generally will not be charged with more medical knowledge than their doctors or health care providers have communicated to them." *Id*. (internal citations omitted).



April 15, 2020
Page 8

The Third Circuit concluded that it was error for the district court to grant summary judgment to the defendants because there were factual disputes concerning the application of the discovery rule. In so concluding, the court relied heavily on the Pennsylvania Supreme Court case of *Nicolau*, which is also instructive here. The Third Circuit explained that *Nicolau* "illustrates how a plaintiff's after-the-fact recollection of general suspicion does not start the statutory clock as a matter of law." *Adams*, 943 F.3d at 166. In *Nicolau*, a medical professional had diagnosed the plaintiff with "probable" Lyme disease in July 2009 but the Pennsylvania Supreme Court held that a reasonable jury may believe that she should not be charged with "discovering" her injury until she received a positive Lyme disease test result. *Id.*

### Hagens Berman Did Not Violate The Rules of Professional Conduct or Rule 11 By Bringing Cases On Behalf Of These Plaintiffs

In evaluating the statute of limitations and applying Pennsylvania's version of the discovery rule, the Hagens Berman lawyers were justified in bringing these cases on behalf of their clients when they did.

Pennsylvania RPC 3.1 addresses meritorious claims and defenses.[3] Courts have described a "meritorious" claim as a "low threshold" and one where "there is enough to warrant judicial determination – certainly not a difficult threshold to cross." *Lafortune v. Hertz Corp.*, 2000 WL 281779 (S.D.N.Y. March 13, 2000). RPC 3.1 requires a lawyer to have a good faith basis in law and fact to bring a proceeding.

---

[3] While reviewing Rule 3.1 is appropriate for my professional opinion, it is worth noting that a violation of the Rules of Professional Conduct does not create a cause of action against the attorney; nor does it create a presumption that the attorney breached his or her legal duty. *See* Pennsylvania Rules of Professional Conduct, Scope, cmt. [19].



April 15, 2020
Page 9



The subjective component to the discovery rule is particularly important in evaluating Hagens Berman's clients here. The Third Circuit in *Adams* found that the plaintiff had a "difficult diagnostic history" that "counsel[ed] against quickly charging her with knowledge of an injury." ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. It is important to note that Thalidomide was never approved by the FDA in this country and, accordingly, ▇▇▇▇▇▇▇▇▇▇▇ If anything, pregnant women might have received a sample of the drug from their doctor with little to no documentation of what it was or when it was taken. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Information was nowhere near as widespread or readily available then as it is now. There was no internet and ▇▇▇▇

Hagens Berman had support for the argument that the statute of limitations should not begin to run based solely on an "after-the-fact recollection of general suspicions."

With regard to Rule 11, "[t]he signer's signature on a pleading, motion, or other paper certifies the signer has done three things: (1) read the pleading, motion, or paper; (2) made a reasonable inquiry into the contents of the pleading, motion, or other paper and concluded that it is well grounded in fact and warranted in law; and (3) has not acted in bad faith in signing the document. *See Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1275 (3d Cir. 1994), *citing CTC Imports and Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991). While the signer has a "personal, nondelegable responsibility" to comply with Rule 11, they are not precluded from relying on information gained from others. *Id.* Moreover, to satisfy the "reasonable inquiry" standard, "[i]t is not necessary that an investigation into the facts be carried to the point of absolute certainty." *Forbes v. Eagleson*, 228 F.3d 471, 488 (3d Cir. 2000), *citing Kraemer v. Grant County*, 892 F.2d 686 (7th Cir. 1990).

In *Garr*, the Third Circuit explained that "when the court examines the sufficiency of the inquiry into the facts and law, it must avoid drawing on the wisdom of hindsight and should test the signer's conduct by determining what was reasonable when the document was submitted." *Id.* Accordingly, "if an attorney makes a reasonable inquiry as to the facts and law when the document is submitted, subsequent developments showing that the signer's position was incorrect will not subject the signer to Rule 11 sanctions for having submitted the document." *Id.* "A filing is



April 15, 2020
Page 10

'frivolous' for Rule 11 purposes if it is both baseless and made without a reasonable inquiry." *Zion v. Nassan*, 727 F.Supp.2d 388, 413 (W.D. Pa. 2010).  The complaints in these cases were neither.

Hagens Berman complied with the requirements of Rule 11 prior to filing the complaints on behalf of these plaintiffs. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

As explained by the Third Circuit in *Garr*, there is also a temporal element in determining whether an inquiry is reasonable: "[t]hus, we have recognized that a factor in ascertaining the reasonableness of the signer's inquiry is the amount of time available to investigate the facts and law involved." *Garr*, 22 F.3d at 1279 (internal citations omitted). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Hagens Berman Was Justified In Seeking To Withdraw When It Did.**

Over time, some of the Thalidomide cases filed by Hagens Berman (or taken over by Hagens Berman) settled or were voluntarily dismissed.  There are currently pending five Motions to Withdraw as Counsel filed by Hagens Berman.  While the ultimate decision on the propriety of withdrawal is of course left to the trial court, in my opinion it was appropriate for Hagens Berman to seek leave to withdraw when it did.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

For each of these plaintiffs, Hagens Berman has offered the following explanation in support of its Motion to Withdraw as Counsel:



April 15, 2020
Page 11

**Terrie Bolton[4]:**

**Mary Sells:**

---

[4] I am advised that on April 1, 2020 Ms. Bolton, along with Hagens Berman and local counsel Spector Roseman & Kodroff, P.C. ("Spector Roseman"), filed a joint motion for Hagens Berman and Spector Roseman to withdraw and substitute Ms. Bolton as *pro se* counsel and that Ms. Bolton represented that it is her wish that Hagens Berman and Spector Roseman have no further responsibilities for her case.  Nonetheless, I include her in this opinion as she is one of the Plaintiffs for whom a Motion to Withdraw by Hagens Berman is still pending and the Discovery Master has held hearings on that Motion.



April 15, 2020
Page 12

**Richard Anderson**:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████

**Jose Navamuel**:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████

**John Marshall**:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████

████████████████████████████, Hagens Berman had
an obligation under RPC 3.3 ("Candor Toward the Tribunal") not to offer evidence that the lawyer
knows to be false.  RPC 3.3 also provides that a lawyer shall take remedial measures if he or she
comes to learn of the falsity of material evidence that has been put forth in a proceeding.
Additionally, under 28 U.S.C.A. § 1927, an attorney has an obligation not to unreasonably and
vexatiously multiply the proceedings in any case.  Continuing to represent these plaintiffs in light



April 15, 2020
Page 13

of the information the firm had obtained would have run afoul of RPC 3.3 and 28 U.S.C.A. § 1927. Finally, under the previously discussed RPC 3.1, Hagens Berman no longer had a meritorious claim that these plaintiffs' injuries were caused by exposure to Thalidomide.  Under these circumstances, the decision to seek lave to withdraw from the representation was appropriate and warranted.

**VI.     CONCLUSION**

It is my opinion that Hagens Berman had a good faith basis to bring lawsuits on behalf of its clients starting in 2011 for injuries allegedly suffered as a result of exposure to Thalidomide, to continue to prosecute them as long as it did and, finally, that it was appropriate for Hagens Berman to seek leave to withdraw from representing these plaintiffs when it did due to information obtained during discovery.  I offer this opinion to a reasonable degree of professional certainty.

I reserve the right to change or modify my opinions should any additional material fact be brought to my attention.

Very truly yours,

Abraham C. Reich

ACR:cah

# EXHIBIT A

# ABRAHAM C. REICH

2000 Market Street | 20th Floor | Philadelphia, PA  19103-3291
(215) 299-2090 | Fax:  (215) 299-2150 | Email:  areich@foxrothschild.com

## PROFESSIONAL ASSOCIATION

### FOX ROTHSCHILD LLP

- Chair Emeritus, Fox Rothschild LLP (April 2017 to Present)
- Co-Chairman, Fox Rothschild LLP (April 2005 to March, 2017)
- Partner, Litigation Department
- Former Managing Partner, Philadelphia Office (2000- April 2005)
- Professional Responsibility Committee (1998-2008),
  (Founding Member and Former Chair)

Abe has been with the firm since 1974.  His area of practice involves all aspects of business litigation and counseling, including representation of lawyers and law firms in defense of legal malpractice claims and other disputes.  Abe has taught professional responsibility at University of Pennsylvania School of Law since 2007.  He also provides expert testimony in connection with legal ethics and professional responsibility and business litigation matters.

### EDUCATION

The Beasley School of Law at Temple University, J.D. 1974, Editor, Law Review

University of Connecticut, B.A., magna cum laude; 1971,
    Elected to  Phi Beta Kappa and Phi Kappa Phi

### ADMISSIONS

- Pennsylvania
- United States Supreme Court
- United States Courts of Appeal for the Third, Fourth, Seventh and Eighth Circuits

## PROFESSIONAL ASSOCIATIONS

- Fellow, American College of Trial Lawyers
- American Bar Association, House of Delegates (1995-2015; 2018-2020)
- American Bar Foundation
- American Association for Justice (formerly American Trial Lawyers Association)
- Association of Professional Responsibility Lawyers
- Pennsylvania Bar Association, House of Delegates; First Statewide Bench Bar Conference, Chair, 1986; Legal Ethics and Professional Responsibility Committee; Co-Chair, Task Force to Revise the Code of Judicial Conduct, 2012- 2013
- Pennsylvania Association for Justice (Formerly Pennsylvania Trial Lawyers Association) Board of Governors, 1985-1990; Commercial Litigation Committee, Former Co-Chair
- The Beasley School of Law at Temple University, Board of Overseers

## PHILADELPHIA BAR ASSOCIATION ACTIVITY

- Chancellor, 1995
- Board of Governors, 1987-1999; Chair, 1989
- Commission on Judicial Selection and Retention, 1986-1989, 1993-1994; Vice-Chair, 1989; Chair, Investigative Division, 1988-1989
- Professional Guidance Committee; Chair, 1987-1988
- Professional Responsibility Committee; Chair, 1983-1984
- Annual Conference Committee (Bench Bar Conference), Vice-Chair, 1984; Chair, 1985
- Trustee, Philadelphia Bar Foundation, 1993-1996
- Trustee, Philadelphia Bar Education Center, 1993-1999
- Trustee, International Human Rights Fund, 1993-1995
- Federal Courts Committee
- State Civil Judicial Procedures Committee
- Editorial Board, the Philadelphia Lawyer, 1975-1987 (Former Publication of Business Law Section)
- Counsel to Philadelphia Bar Association in Restifo v. Philadelphia Bar Association, 1991-1994

2

## OTHER ORGANIZATIONAL ACTIVITY

- Lecturer in Law, University of Pennsylvania School of Law, "Ethics and Advocacy – From the Boardroom to the Courtroom"; Spring Semesters 2007-2020

- The Continuing Legal Education Board of the Supreme Court Of Pennsylvania, Board Member 2005 – 2010; Chair, 2011

- The Disciplinary Board of the Supreme Court of Pennsylvania, Former Hearing Committee Member and Chair, 1985-1991

- Pennsylvania Committee of State Trial Judges, Lawyer Liaison, Judicial Ethics Committee, 1988-1995

- Campaign for Qualified Judges, Former Trustee

- Pennsylvania Law Journal-Reporter, Former Member of Corporate Law Advisory Board

- The Legal Intelligencer, Former Editorial Board Member, 1992

- Lawyers Club of Philadelphia, Former Member of Board of Directors

- United States Court of Appeals for the Third Circuit, Task Force on Equal Treatment in the Courts, 1996

- Lawyer's Advisory Committee, United States Court of Appeals for the Third Circuit, Chair, 1998

- Jenkins Law Library, Board Member and President (1995-2015)

- Pennsylvanians for Modern Courts, Advisory Board Member

- Brandeis Law Society Foundation, Director

## PUBLICATIONS

- Contributing Author, *Successful Partnering Between Inside and Outside Counsel* – Ethics, Chapter 31 (Thomson Reuters 2009-2020)

- Contributing Author, *Pennsylvania Ethics Handbook*, Pennsylvania Bar Institute, 2008, 2011, 2014, 2017

- Co-Author, *Attorney Self-Governance, Federal Oversight Clash in Dodd-Frank Act*, The Legal Intelligencer, November 15, 2010

- Co-Author: *The Lawyer's Duty of Disclosure: Ethics and Sarbanes-Oxley – The New Conundrum for Patent Lawyers*, Akron Intell. Prop. 43-63, 2007

- *"The IP Lawyer's Duty of Disclosure Under Sarbanes-Oxley,"* The Legal Intelligencer – May 8, 2006

- Co-Author: *When Competition Crosses The Line, Mid-Atlantic Executive Legal Advisor*, Winter 2005

- Co-Author: *What Do You Do When Confronted With Client Fraud, Business Law Today*, Vol. 12, Number 1, September/October 2002

- Co-Author: *Screening Mechanisms: A Broader Application? Balancing Economic Realities and Ethical Obligations*, Vol. 72, Temple Law Review 1023, 2000

- *Lawyer Controlled MDPs: Critical to the Future Economic Vitality Of Our Profession*, American Bar Association Section of Environment Energy and Resources, Ethics Committee Newsletter, Vol. 1 No. 1, November 2000

- Co-Author:  *The Private Securities Litigation Reform Act of 1995; An Overview*, *The Barrister*, Vol. XXVII, No. 2, Fall, 1996

- Co-Editor: *Commercial Litigation Case Notes, Pennsylvania Trial Lawyers Association*, 1985-1995

- Co-Author: *Time Out – A Time for Reflection on Statutes of Limitation in Federal Securities Laws and RICO Claims, The Barrister*, Vol. XVIII, No. 1, Spring 1987

- Co-Author: *Getting Even, Litigation*, Vol. 13, No. 2, Winter, 1987

- Book Review, *Newberg on Class Actions, (Second), The Barrister*, Vol. XVL  No. 4, Winter 1985/1986

- Co-Author: *Mandamus Used as Pretrial Appeal, Pennsylvania Law Journal Reporter*, Vol. VI, No. 10, March 1983

- Co-Author:  *Derivative Action Requirements Eased, Pennsylvania Law Journal Reporter*, Vol. V., No. 46, December 1982

- Co-Author:  *Non-Parties May Recover Discovery Costs, Pennsylvania Law Journal Reporter,* Vol. V, No. 39, October 1982

- *Action in Restraint of Trade:  What Constitutes Conspiracy?, Pennsylvania Law Journal Reporter*, Vol. IV, No. 15, April 1981

4

- *A Shot in the Arm for Dissenting Shareholders, The Philadelphia Lawyer*, Vol. 17, No. 2, March 1980
- *The New Judicial Code as Part of Pennsylvania's Consolidated Statutes, The Philadelphia Lawyer*, Vol. 16, No. 2, June 1979
- *Equal Fault Revisited; The Philadelphia Lawyer*, Vol. 14, No 4, December 1977
- Co-Author: *Individual Issues in Securities Class Actions, The Philadelphia Lawyer*, Vol. 13, No. 3, October 1976
- *United States v. Byrum: The Troubled Application of Section 2036, Vol. 46, Temple Law Quarterly* 498, 1973

## LECTURES

- **American Association for Justice** (Formerly American Trial Lawyers Association): Commercial Litigation, 1986
- **American Bar Association**: Section of Business Law, *Client Fraud: To Disclose or Not to Disclose*, October 2002 (National Teleconference)
- **American Conference Institute Forum On Reduced Legal Costs**, The Ethics of Alternative Fee Arrangements and Cost Reduction Strategies, 2009
- **American Intellectual Property Law Association**: *Advanced Computer & Electronic Patent Practice Seminar, The Lawyers Duty of Disclosure – Ethics and Sarbanes-Oxley – The New Conundrum for Patent Attorneys*, Boston, June 2006
- **Berks County Bar Association**: Legal Ethics, 1993
- **Delaware Valley Corporate Counsel Association**: Legal Ethics, 1987
- **Dickinson Law School**: Intellectual Property Forum, Trade Secrets, 1983 and 1985
- **DuPont Chemical CLE Series**, Ethics and the Federal Circuit, September 2007
- **Federal Bar Association**: Federal Class Actions, 1986
- **Frankford's Rotary Club**: Legal Ethics, 1987
- **Intellectual Property Owners Association**: Annual Meeting  "Sarbanes-Oxley and the Duty of Disclosure for IP Lawyers", Seattle, September 2005
- **Lorman Seminars, Ethics Seminars**, 2013, 2014, 2015, 2016, 2017, 2019, 2020
- **Minnesota Institute of Legal Education**: Securities/Commercial Litigation, 1986;
- **Antitrust/Unfair Competition,** 1987; Securities/Commercial Litigation, 1989
- **Montgomery County Trial Lawyers Association**: Legal Ethics/Fee Disputes, 1991

- **Pennsylvania Association for Justice** (Formerly Pennsylvania Trial Lawyers Association)

  - Broker/Dealer Litigation, 1984;

  - Commercial Litigation Update, 1986-1989;

  - Antitrust/Health Care, 1989;

  - Legal Ethics/Professional Responsibility, 1992/1993 (Multiple Seminars);

  - Winning with Expert Testimony, April 2002;

  - "What's It Worth" Seminar (Ethics Component), November 2002; March 2010

- **Pennsylvania Bar Association: Young Lawyers Section**, The Transition from Associate to Partner, 1986

- **Pennsylvania Bar Institute**

  - Directors and Officers Insurance, 1987;

  - Legal Ethics/Professional Responsibility, 1988;

  - Legal Ethics/Professional Responsibility – Bucknell University, 1992;

  - Legal Ethics/Professional Responsibility, 1993;

  - Alternative Dispute Resolution, 1994;

  - Legal Ethics/Professional Responsibility, 1997;

  - Alternative Dispute Resolution, 1997;

  - Recent Developments in Federal Practice/Federal Evidence, 1998;

  - The Ethics of Law Firm Governance, 2000;

  - Intellectual Property Issues for Business Lawyers, April 2002;

  - Accounting Litigation After Enron, WorldCom. (Ethics Component), November 2002;

  - Attorney Fees, June 2003;

  - My First Federal Court Trial, October 2004;

  - Tortious Interference in Business/Professional Relationships, August 2005;

  - Ethical Considerations in Litigating Employment Discrimination Cases, December 2005;

  - Best Practices in Pretrial Litigation in Federal Courts, 2012, 2013, 2014; 2015, 2016;

  - Annual Labor Law Update (Ethics Component) 2014;

  - Ethics And The Labor Lawyer, November 2016;

  - Plenary CLE Ethics Program, Business Law Institute, October 2019

- **Philadelphia Bar Association**
  - Bench Bar Conference, Commercial Litigation, 1979
  - Commercial Litigation, 1982
  - Professional Responsibility, 1983
  - Federal Bench Bar Conference, 2015
  - Client Confidentiality/Duty of Disclosure, 1985
  - Professional Responsibility Committee, May 2004; September 2004 (New Rules of Professional Conduct)
  - Federal Bench Bar Conference "The Rocket Docket", 2005
- **Philadelphia Bar Education Center**
  - Legal Ethics/Solicitation, October 1992;
  - Legal Ethics/Pro Bono Representation, November 1992; November  1993
  - "Client Conflicts: Charting Safe Courses After Maritrans", April 1993;
  - Legal Ethics: "Attorney/Accountant Ethical Clashes in the 90's: How to Bridge the Gap", January 1994;
  - Ethics of Pro Bono, 1992, 1994, 1996
- **Philadelphia Business Journal**, Roundtable: The Future of Law Firms (May 22-28, 2009)
- **Pennsylvania Law Journal-Reporter**: Antitrust Law Seminar, 1981 – Course Planner
- **Philadelphia Trial Lawyers Association**
  - Commercial Litigation, 1985
  - Legal Ethics/Fee Disputes, 1991
  - Legal Ethics/Trial Practice, 1997
  - Legal Ethics and Attorney Malpractice, 2016
- **Philadelphia Intellectual Property Law Association**
  - Legal Ethics and Professional Responsibility for the Intellectual Property Lawyer, 1996;
  - ADR in IP Cases, 2005;
  - IP Lawyers and the Duty of Disclosure under the Sarbanes-Oxley Act, May 2006;
  - Ethics, May 2010
- **Smithsonian Institution/American Association of Museums**: Legal Ethics: Who is the Client? – The Museum Board, Officers, Employee, or the "Public" - 2007
- **Temple University School of Law**: Legal Ethics, 1995; Rome Program, Visiting Professor, International Civil Litigation, June 2004; Legal Ethics and Social Media 2013; 2014

- **Third Circuit Judicial Conference**: Litigating Federal Civil Cases in the 21st Century: Changes and Challenges (Course Planner) 1997; Ethics in a Digital Age (Panelist), 2011
- **Thomson Reuters**: *Conflicts and Ethical Duties to Clients and the Public: Are They Reconcilable?*, Speaker, June 25, 2013
- **University of Akron School of Law**, Eighth Annual Richard C. Sughrue Symposium: The New Conundrum for Patent Lawyers: Sarbanes-Oxley, March 2006
- **University of Pennsylvania School of Law**: Social Media and Ethics, 2012
- **Villanova University School of Law**: Professional Responsibility, 1983

## AWARDS

- Named as one of the Leading Litigation Attorneys in Pennsylvania, Chambers USA (2008 through 2018)
- Philadelphia Magazine Super Lawyers, "The Top Ten", 2006; 2011-2016 "The Top 100", 2006-2017
- Most Admired CEO Award by *Philadelphia Business Journal*, 2014
- Brandeis Society Community Achievement Award (Ben Levy), 2014
- Pennsylvania Bar Association, Award for Service as Co-Chair of Task Force on Code of Judicial Conduct, 2014
- Learned Hand Award, American Jewish Committee, 2012
- Temple University, Founder's Day Award, 2009
- Wachovia Fidelity Award, 2007
- Fund for Religious Liberty Award, American Jewish Congress, 1997
- Outstanding Leadership Award by Pennsylvania Legal Services, 1996
- IOLTA Leadership Award, 1993
- Equal Justice Award by Community Legal Services, 1991


## PERSONAL

Born:        April 17, 1949, Waterbury, Connecticut

Married:    Sherri Engelman Reich

Children:   Two sons, Spencer and Alexander; Daughters-in-Law,
             Elena Steiger Reich (lawyer); Lea Michele Sarfati
             Two grandchildren, Gabriella and Levi