IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENDA JOHNSON, *et al.*,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>SMITHKLINE BEECHAM<br>CORPORATION, *et al.*,<br><br>                              Defendants. | Case No. 2:11-cv-05782-PD<br><br>AND ALL RELATED CASES |

**HAGENS BERMAN'S REPLY BRIEF
REGARDING ITS EXPERT REPORT IN SUPPORT OF
THE MOTIONS TO WITHDRAW AS COUNSEL FOR FIVE PLAINTIFFS**

Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), through undersigned counsel, respectfully submits this reply brief: (1) in support of its Brief Regarding the Privileged and Protected Nature of its Expert Report, Dkt. No. 718; (2) in opposition to Plaintiff Carolyn Sampson's Brief Regarding the June 11, 2020 Memorandum and Order of the Special Discovery Master, Dkt. No. 716; and (3) in response to the Special Master's Memorandum and Order permitting "all participants . . . [to] submit briefs addressing any earlier-filed briefs, the Expert Report, and any existing or proposed redactions," Dkt. No. 713 at 3.

Sampson argues that, by engaging an expert to opine on the propriety of its Motions to Withdraw as counsel for five plaintiffs (the "Motion-to-Withdraw Plaintiffs") and providing the expert with materials to inform his conclusions, Hagens Berman has effected broad waiver of its work-product protection. Sampson is engaged in an improper attempt to gain discovery from this proceeding for use in a separate lawsuit against Hagens Berman and its former co-counsel, Kay Gunderson Reeves. She is not an "adversary" in the relevant proceeding – *i.e.*, the Special Master's

- 1 -

inquiry into the firm's Motions to Withdraw as counsel for five plaintiffs, none of whom are Sampson – and thus has no right to the work product she seeks, even if the Court were to find waiver. Finally, Hagens Berman could not have waived the work-product protection, which it jointly holds with the five Motion-to-Withdraw Plaintiffs. In any event, it preserved all applicable privileges and protections in retaining an expert, providing him with materials, and distributing his report in a manner that complies with the Special Master's privilege rulings and his mandate to serve the report on "the participants in these proceedings." Dkt. No. 707 at 3.

## I.    **<u>Sampson's Discovery End Run Should Be Redirected to Its Proper Forum.</u>**

Sampson's position is, on its face, contrary to her interests. She is not a party to Hagens Berman's Motions to Withdraw and, accordingly, she is not mentioned in the expert report. Thus, she could draw no possible benefit in these proceedings if the Court were to find waiver of work-product protection.

However, Sampson remains a plaintiff in the thalidomide litigation against the Pharmaceutical Defendants. Indeed, although she sought to dismiss her case in February 2018, she reversed that decision in May 2018, after "stumbl[ing] upon new information that suggests it is not in [her] best interests to withdraw [her claims]." Dkt. No. 635. Yet she argues that Hagens Berman, her counsel for more than seven years, must give her, the Pharmaceutical Defendants (and, by her logic, anybody else who would like access) its work product concerning "nearly every aspect of firm's activities in this consolidated litigation." Dkt. No. 716 at 1. Presumably at least some of that work product could be of use to Sampson's adversaries in their defense of Plaintiffs' claims.

One fact explains this apparent discrepancy: On May 11, 2020, Sampson, represented by the same attorney that represents her in the Special Master's inquiry, filed suit in this court against

Hagens Berman and Reeves, alleging that misleading and incomplete communications by her counsel in the thalidomide litigation amounted to a breach of fiduciary duty.[1] Case No. 2:20-cv-2232, Dkt. No. 1 ("Sampson Compl."). By arguing in these proceedings that Hagens Berman has broadly waived work-product protection, Sampson no doubt hopes to access documents that will aid her in the suit against Hagens Berman and Reeves – no matter the consequences to her co-plaintiffs in the thalidomide litigation.

Sampson herself acknowledges this by revealing the work product in which she has particular interest – for example, information concerning a "key question: Did the replacement of the Lanier Law Firm with Hagens Berman come with adoption of a litigation strategy geared toward filing numerous cases and using publicity generated by the litigation to intimidate the defendants into a quick settlement[?]" Dkt. No. 716 at 6. The question certainly is not "key" to the Special Master's inquiry into the firm's Motions to Withdraw.[2]  Rather it is consistent with the allegations in Sampson's separate lawsuit against her attorneys that Reeves misled her to believe the thalidomide litigation would take only 18 months to complete and that "a victory or settlement was virtually assured," the latter of which was purportedly reinforced by Hagens Berman's status letters (although, in fact, they say nothing of the sort). Sampson Compl., ¶¶ 21, 41.

Hagens Berman vigorously disputes each allegation that Sampson has lodged against it. But, like the merits of Sampson's action, the discoverability of Hagens Berman's thalidomide work

---

[1] Notably, Sampson does not allege a claim for legal malpractice, which would require her to prove that she has a viable cause of action against the Pharmaceutical Defendants.

[2] As framed by the Special Master, the inquiry concerns "the assertion that 'professional considerations require that Plaintiffs' counsel withdraw as [Plaintiffs Marshall, Navamuel, Bolton, Skelton, Anderson and Sells'] counsel under Rule 1.16(a)(1),'" as well as whether "the firm was unaware of the problem when it filed its clients' Complaints; . . . how the firm learned of the problem; and . . . the failure to know about it earlier." Dkt. No. 539 at 2

product is not a matter for this case.  Sampson must not be permitted to use these proceedings to gain discovery for her lawsuit against Hagens Berman and Reeves.

II.      **Sampson Is Not Adverse to Hagens Berman in the Special Master's Inquiry Concerning the Motions to Withdraw, and Is Not Entitled to Work Product, Irrespective of Waiver.**

"The purpose of the work product rule 'is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering material.'" *Peerless Heater Co. v. Mestek, Inc.*, 1999 WL 35147370, at \*2 (E.D. Pa. Dec. 6, 1999) (quoting 8 Wright & Miller, Fed. Prac. and Proc. § 2024). As explained by the U.S. Court of Appeals for the Third Circuit, "the work-product doctrine protects an attorney's work from falling into the hands of **an adversary**." *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) (emphasis added). It follows that **only the adversary** may obtain the work product if the protection has been waived.

As the expert report itself makes clear, and as Hagens Berman explained in its opening brief on this subject, the firm has offered the report solely in support of its Motions to Withdraw as counsel for five separate plaintiffs, none of whom are Sampson. Dkt. No. 718 at 9-10. Thus, Sampson is not adverse to the firm in the matter of relevance. Neither are the Pharmaceutical Defendants, a fact that they readily acknowledge.  On August 19, 2020, the Pharmaceutical Defendants, who "waived participation in most aspects of the Special Master's inquiries into [the Motions to Withdraw]," notified the Special Master that they "take no position on whether Hagens Berman has waived privilege with respect to the [expert] report or portions thereof." Dkt. No. 725 at 1-2.

Sampson, for her part, interceded (and was permitted to participate) in these proceedings in 2019 – more than a year after the Special Master conducted *in camera* hearings into the motions

– to air grievances about the frequency and content of communications from counsel, grievances that also form the basis of her lawsuit against Hagens Berman and Reeves. These allegations have nothing to do with the grounds for withdrawal, the five plaintiffs who are the subject of the motions, or even the document alterations that Hagens Berman discovered in the wake of the *in camera* hearings and immediately disclosed to the Special Master.[3]

Not surprisingly, given the foundation of the work-product doctrine and the adversarial nature of civil proceedings, Hagens Berman can find no authority – and Sampson has not identified any – where the implication of waiver is the transfer of documents to non-parties to the dispute at hand.  Thus, even if Sampson's analysis of waiver is correct (and it is not), only Plaintiffs Anderson, Bolton, Marshall, Navamuel, and Sells could claim access to the firm's work product.[4] Not the Pharmaceutical Defendants, who concede they have no stake in the proceedings with respect to the Motions to Withdraw and, accordingly, have not argued for access to Hagens Berman's work product.  And certainly not Sampson, who similarly has no stake in the motions, but no doubt hopes to gain an advantage in her lawsuit against Hagens Berman and Reeves.

### III.    Hagens Berman Could Not and Did Not Waive Attorney-Client Privilege or Work-Product Protection.

Sampson argues that Hagens Berman has "effect[ed] a subject-matter waiver of the work-product privilege" that "touches on nearly every aspect of the firm's activities in this . . . litigation." Dkt. No. 716 at 1. She is wrong.

---

[3] Noting the incompatibility of Sampson's contentions with the rest of the subject matter of the proceedings, which by then had expanded to include a former attorney's alteration of certain documents (which also did not concern Sampson), Hagens Berman and Reeves moved to bifurcate the issues. Dkt. No. 673. The Special Master denied the motion. Dkt. No. 689 at 2-4.

[4] Significantly, counsel appointed by the Special Master to speak for the affected Plaintiffs (as well as Plaintiff Diana Cabcabin) on this issue, agrees with Hagens Berman that "[n]o privilege has been waived by the disclosure to the expert or the submission of the Expert Report for the *in camera* withdrawal proceedings." Dkt. No. 719 at 8.

For starters, the privilege is not Hagens Berman's to waive. It is axiomatic that the attorney-client privilege belongs to the client and not the attorney.[5] *E.g., In re Chevron Corp.*, 650 F.3d at 283 n.8. But Plaintiffs may also assert the work-product protection "to the extent [their] interest may be affected." *In re Grand Jury Proceedings*, 604 F.2d 798, 801 (3d Cir. 1979). Consistent with this precedent, the Special Master has recommended that the Court grant under-seal treatment to a motion "disclosing opinion work product and communications as to which the client, Ms. Bolton, holds the privilege, and she has not waived it."[6] Dkt. No. 588 at 3.

In their opening brief on the expert report, Ms. Bolton and the rest of the Motion-to-Withdraw Plaintiffs confirmed that they continue to invoke, and have not waived, the work-product protection.[7] Dkt. No. 719 at 11. The doctrine thus endures to protect any work product considered by the expert in opining with respect to the Special Master's inquiry into the Motions to Withdraw: that is, the sufficiency of Hagens Berman's grounds for withdrawal, as well as whether "the firm was unaware of the problem when it filed its clients' Complaints; . . . how the firm learned of the problem; and . . . the failure to know about it earlier." Dkt. No. 539 at 2.

Even if Hagens Berman had the ability to waive the protection for work product affecting the interests of the Motion-to-Withdraw Plaintiffs, it did not do so here. Again, the scope of both the Special Master's inquiry and Hagens Berman's expert report is critical. Although the U.S. Courts of Appeals for the Third Circuit has yet to decide the issue, district courts within the Circuit

---

[5] The Special Master invited participants in the proceedings to submit "briefs addressing any issues of privilege or quasi-privilege," including work product, but also attorney-client privilege. Dkt. No. 713 at 3; *see also id.* at 1 ("I have spent many hours pondering and researching questions implicated by these events: including whether Plaintiffs' and former Plaintiffs' attorney-client privileges have been waived or undone."). No participant has argued for waiver of attorney-client privilege.

[6] The Court approved and adopted the recommendation. Dkt. No. 593.

[7] Hagens Berman incorporates by reference the Motion-to-Withdraw Plaintiffs' argument that crime-fraud exception does not apply. *Id.* at 12-16.

have held that Federal Rule of Civil Procedure 26(a)(2)(B)(ii), which requires the disclosure of "materials considered" by a testifying expert, compels waiver of work product provided to the expert. The Special Master cited those cases, and similar authority from other jurisdictions, in his June 11, 2020 order. Dkt. No. 719 at 18-19 (citing Dkt. No. 713; *Fialkowski v. Perry*, 2012 WL 2527020 (E.D. Pa. Jun. 29, 2012); *Kontonotas v. Hygrosol Pharm. Corp.*, 2009 WL 3719470 (E.D. Pa. Nov. 4, 2009); *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 263 F.R.D. 190, 196–97 (E.D. Pa. 2009); *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176 (D. Del. 2003); *Netjumper Software, L.L.C. v. Google, Inc.*, 2005 WL 3046271, at *1 (S.D.N.Y. Nov. 10, 2005)).

But, as the Motion-to-Withdraw Plaintiffs note in their opening brief, all of those cases involve circumstances where counsel, in advancement of its clients' claims, provided work product to an expert witness. The same is true of the few cases Sampson found and cited on this topic. Dkt. No. 716 at 4 (citing *In re Chevron*, 633 F.3d at 165 (3d. Cir. 2011); *Doe 1 v. Baylor Univ.*, 2019 WL 2462800 at * 12 (W.D. Tex. Jun. 19, 2019); *Cincinnati Ins. Co. v. Zurich Ins. Co.*, 198 F.R.D. 81, 86 (W.D.N.C. 2000)).  Absent waiver under these circumstances, counsel potentially could, in Sampson's view, use work product as a "sword," to advance its clients' position in litigation, and the protection as a "shield" to protect its impressions, opinions, strategy, and analysis. *See* Dkt. No. 716 at 8.

These cases, whether within or outside this district, are not binding precedent.  Far more importantly, though, they are factually inapposite. Hagens Berman is adverse to five particular clients within the narrow context of its efforts to withdraw as their counsel.  It sought the opinion of an expert, not to further the interests of these clients, but in support of its Motions to Withdraw from representation, as the inquiry was defined by the Special Master.[8] In doing so, it provided the

---

[8] Pennsylvania Rule of Professional Conduct 1.6(c)(5) permits counsel to disclose confidential information in order to secure legal advice with respect to compliance with the Rules of Professional

expert with materials – *i.e.*, the hearing transcripts – to which the Motion-to-Withdraw Plaintiffs already had access. Then, in distributing the reports, Hagens Berman scrupulously adhered to the Special Master's various rulings:

- Reeves and Tyler Weaver, both of whom had been granted access to all documents and transcripts, including those that were submitted *in camera* or otherwise sealed, received unredacted copies of the report;

- Each Motion-to-Withdraw Plaintiff received a report with all information except that which was specific to another Motion-to-Withdraw Plaintiff;

- Sampson and Plaintiff Diana Cabcabin, who is also not subject to a Motion to Withdraw but nevertheless has become involved in this now-expanded litigation, received reports with all Plaintiff-specific information redacted;

- The Pharmaceutical Defendants, who have been granted the right to participate in this litigation only to the extent that the Special Master has found applicable the crime-fraud exception to attorney-client privilege, received no reports.

Hagens Berman does not invoke the protection to "shield" its work product from its "adversaries": the five Motion-to-Withdraw Plaintiffs.  It argues only that the doctrine of waiver grants non-adversaries like (in the context of the motions) Sampson and the Pharmaceutical Defendants no access to its work product. That proposition is entirely consistent with the Special Master's prior rulings, which have endeavored to protect the privileges held by individual Plaintiffs. It is also consistent with the position taken by the Pharmaceutical Defendants, who have

---

Conduct, including Rule 1.16, which governs termination of representation.  *See* RPC 1.6, cmt. 16 ("a lawyer's confidentiality obligations do not preclude a lawyer from securing confidential legal advice about the lawyer's personal responsibility to comply with these Rules. In most situations, disclosing information to secure such advice will be impliedly authorized for the lawyer to carry out the representation. Even when the disclosure is not impliedly authorized, paragraph (c)(5) permits such disclosure").

waived participation with respect to the Motions to Withdraw and have declined to argue that Hagens Berman has waived any applicable privilege or protection.

Simply put, no authority counsels for waiver under these circumstances. And no authority suggests that retaining an expert to address a specific question or providing him with materials necessary to render an opinion entitles these non-adversaries to probe "every aspect of the firm's activities in this . . . litigation." Dkt. No. 716 at 1. Hagens Berman continues to object to any further disclosure of its expert report or its work product.

## IV.    <u>Conclusion</u>

For the reasons stated herein, in its opening brief, and in the opening brief of the Motion-to-Withdraw Plaintiffs as incorporated herein, Hagens Berman did not waive any applicable privilege by engaging an expert to opine on the propriety of its Motions to Withdraw, providing the experts with the materials necessary to draft his report, or disclosing the report in a manner consistent with the Special Master's rulings on privilege.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI LLP

By:    /s/ Gaetan J. Alfano
Gaetan J. Alfano
Pennsylvania Bar No. 32971
GJA@pietragallo.com
Douglas E. Roberts
Pennsylvania Bar No. 321950
DER@pietragallo.com
1818 Market Street, Suite 3402
Philadelphia, PA 19102
Telephone: (215) 320-6200
Facsimile: (215) 981-0082

*Attorneys for Hagens Berman Sobol Shapiro LLP*

DATED:  August 21, 2020

5422582v2

9

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on August 21, 2020, the foregoing brief was served on all counsel of record through the Court's electronic filing system, CM-ECF.

PIETRAGALLO GORDON ALFANO BOSICK &
RASPANTI LLP

By:   */s/ Douglas E. Roberts*
Douglas E. Roberts
Pennsylvania Bar No. 321950
DER@pietragallo.com
1818 Market Street, Suite 3402
Philadelphia, PA 19102
Telephone: (215) 320-6200
Facsimile: (215) 981-0082

*Counsel for Hagens Berman Sobol Shapiro LLP*

- 1 -