IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENDA JOHNSON, *et al*.,<br><br>                              Plaintiffs,<br><br>               v.<br><br>SMITHKLINE BEECHAM<br>CORPORATION, *et al*.,<br><br>                              Defendants. | Case No. 2:11-cv-05782-PD<br><br>AND ALL RELATED CASES |

**OBJECTIONS OF HAGENS BERMAN SOBOL SHAPIRO LLP**
**TO MAY 18, 2021 FINDINGS AND ORDER OF THE SPECIAL DISCOVERY MASTER**

Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), through undersigned counsel, hereby objects to the May 18, 2021 Findings and Order of the Special Discovery Master, and specifically (a) the holding that Hagens Berman "has waived attorney work product protection by giving its proposed testifying expert witness access to facts and data – the transcripts of proceedings and exhibits received partly *in camera* by the Special Discovery Master (the "Hearing materials") – that might otherwise have remained protected" and (b) the "filing with the Clerk's office a partially-redacted copy of the Expert Report (the "Redacted Expert Report") for docketing and service" without providing an opportunity for Hagens Berman to object prior to filing.  Dkt No. 742, ¶¶ 1 and 3.a.

As discussed below, Hagens Berman commissioned an expert report (the "Expert Report") from Abraham C. Reich, Chair Emeritus of Fox Rothschild LLP, in support of its motions to withdraw as counsel for Plaintiffs Richard Anderson, Terrie Bolton[1], John Marshall, Jose Navamuel, and Mary Sells pursuant to the Special Master's order requiring it do so.  Dkt. No. 707 at 2.  That Order further required Hagens Berman to "serve on the participants in these proceedings, as well as the Special Discovery Master, a report in compliance with Rule 26(a)(2)(B)."  *Id.* at 3.  Hagens Berman distributed its Expert Report in a manner consistent with the privilege rulings issued by the Special Master:

- Tyler Weaver and Kay Gunderson Reeves, its former co-counsel who had been granted access to all documents and transcripts, including those that were submitted *in camera* or otherwise sealed, received unredacted copies of the report;

---

[1] On October 21, 2020, the Court granted the Joint Motion to Withdraw and Substitute Counsel as to Plaintiff Terrie Bolton Dkt No. 731.  Accordingly, the original Motion to Withdraw as counsel for Plaintiff Terrie Bolton (Dkt No. 342) is moot.

- Each Plaintiff who is the subject of a motion to withdraw received a report with information specific to the other Plaintiffs at issue redacted;

- Plaintiffs Diana Cabcabin and Carolyn Sampson, who are not subject to motions to withdraw but nevertheless have become involved in this now-expanded litigation, received reports with all Plaintiff-specific information redacted;

- Defendants, who have been granted the right to participate in this litigation only to the extent that the Special Master has found applicable the crime-fraud exception to attorney-client privilege, received no reports.

Hagens Berman has scrupulously adhered to the Special Master's rulings with respect to attorney-client privilege in distributing its Expert Report, which it offers in support of its motions to withdraw, and not with respect to the other issues now being adjudicated before the Special Master in these proceedings.  Moreover, Hagens Berman offers plaintiff-specific information only with respect to the motion to withdraw concerning that plaintiff.  Thus, no further disclosure of the Expert Report is appropriate.

Hagens Berman has not waived attorney work product protection by giving its proposed testifying access to the *in camera* Hearing Materials.  Additionally, the Special Master erred by publishing the Redacted Expert Report for docketing and service without giving the participants the opportunity to file Objections to the finding of waiver and to adjudicate those Objections before the publication of the Redacted Expert Report.

I.   **PROCEDURAL HISTORY**

   A.   **The Special Master Orders Six *In Camera* Motion-to-Withdraw Hearings.**

   This inquiry began in 2014 when Hagens Berman moved to withdraw as counsel for six plaintiffs in the above-captioned matter.[2]  Dkt. Nos. 207, 301, 342, 343, 375, 382. On March 14, 2016, the Court ordered the Special Master to advise it on whether to grant the motions.  Dkt. No. 532.

   On November 17, 2016, the Special Master ordered separate hearings to receive testimony on the motions to withdraw.  Dkt. No. 539; *see also* Dkt. No. 562 at 3 ("To be clear: This will not be a single hearing on all five Motions, but five separate hearings, each of which will delve into the facts and professional considerations surrounding a particular Hagens Berman Motion."); Dkt. No. 588 at 6 ("Because there are five different plaintiffs and five separate motions, five separate *in camera* hearings were held.").

   The Special Master stated that the inquiry would not be limited to "the assertion that 'professional considerations require that Plaintiffs' counsel withdraw as [Plaintiffs Marshall, Navamuel, Bolton, Skelton, Anderson and Sells'] counsel under Rule 1.16(a)(1)'."  Dkt. No. 539 at 2 (citation omitted).  The firm would also need "to establish that the firm was unaware of the problem when it filed its clients' Complaints; to explain how the firm learned of the problem; and to explain the failure to know about it earlier."  *Id.*

   Because the inquiry would necessarily delve into matters of attorney-client privilege, the Special Master ordered that the hearings would proceed *in camera* to avoid privilege waiver. Although he had "no doubt concerning [his] discretion to proceed" in that manner, he asked

---

[2] One Motion-to-Withdraw Plaintiff, John Skelton, passed away while this litigation was pending. The Special Master "recommend[ed] that the Skelton Motion be dismissed as moot."  Dkt No. 563 at 1.

Defendants to waive any objections they might have.[3]  *Id.*  On December 12, 2016, Defendants waived discovery into and participation into the inquiry. Dkt. No. 546.

The hearings on the motions to withdraw proceeded in accordance with the Special Master's procedures from September 26-28, 2017.  In addition to the Plaintiff-specific hearings, there was a hearing at the beginning of the session, which all Plaintiffs were permitted to attend, where Hagens Berman offered evidence concerning its "all clients" work product so it could efficiently address its pre- and post-filing due diligence, which were not related to any particular Plaintiff.  *See* Dkt. No. 644 at 12.  Apart from this all-Plaintiffs session, participation in each hearing was limited to Hagens Berman and the affected Plaintiff.  Consistent with their waiver and the Special Master's ruling, Defendants did not appear, participate in any manner, or have access to transcripts of, or exhibits put into evidence during, the hearings.

**B.    The Inquiry Expands to Address Weaver's Document Alteration, and Certain Additional Participants Are Granted Limited Access.**

In November 2017, Hagens Berman discovered that its Partner Tyler Weaver, who had testified on the firm's behalf in three of the September 2017 hearings, had altered two letters submitted by its expert witness, Dr. Trent Stephens.  One of the letters pertained to Terrie Bolton. The other pertained to Diana Cabcabin, a Plaintiff who had dismissed her claims against all defendants in the underlying Thalidomide litigation (Dkt. No. 328) and was not to subject to a motion to withdraw.[4]  Hagens Berman disclosed the alterations to counsel for Ms. Bolton and the

---

[3] The Special Master later referred to this as a "belt and suspenders procedure," meant to assure Plaintiffs that their "confidential or privileged information would not somehow fall into defendants' hands." Dkt. No. 554 n.7.

[4] The Special Master has recently acknowledged that Ms. Cabcabin never received the altered report.  Dkt. 76 at 11 ("Mr. Weaver also changed former Plaintiff Cabcabin's examination report, but she appears to have agreed to drop her case without ever seeing the forged document.")

Special Master.  *See* Dkt. No. 588 at 1.  The Special Master opined that "Weaver's conduct obliges the Court to examine closely the events that transpired, and to impose sanctions if and as warranted, and that the Court expects me to report and recommend on those subjects as well as on the grant or denial of the Motions to Withdraw."  *Id.* at 13.

On Hagens Berman's motion, Ms. Cabcabin was offered *pro bono* counsel, whom she retained at the firm's expense.  Concerned that Weaver's alterations "may have implications for other Hagens Berman client-plaintiffs who consented to the dismissal of all their claims with prejudice" and "call into question every plaintiff who was asked to drop her case against all defendants," the Special Master ordered production of certain categories of documents from Hagens Berman "regarding the five plaintiffs and other plaintiffs as to whom voluntary dismissal was sought or obtained."  *Id.* at 3, 9, 16.  Hagens Berman fulfilled its production obligations to the Special Master.  It also made substantial document productions to Ms. Bolton and Ms. Cabcabin, as well as to Ms. Sells, even though no expert letter related to her claims had been altered.[5]  On the Special Master's instructions, all documents provided to each Plaintiff were altered so that references to all other plaintiffs were removed.

On April 11, 2018, Defendants, despite their waiver regarding the Motion-to-Withdraw proceedings, moved for leave to participate in any further hearings.  Dkt. No. 602.  Defendants claimed "not [to be] asking for any greater role than the opportunity to observe and, only as necessary to protect their interests, to be heard."  *Id.* at 3.  Specifically, Defendants claimed "not [to be] seek[ing] to intrude on the privilege between Hagens Berman and plaintiffs."  *Id.* at 2.

---

[5] Through its counsel, Hagens Berman retained an independent forensic examiner who reviewed all letters provided by Dr. Stephens and all communications concerning those letters.  He determined that Mr. Weaver was the only Hagens Berman employee who had altered any letters, and he only altered the letters concerning Ms. Bolton and Ms. Cabcabin.

C.   **The Inquiry Further Expands to Include the Grievances of Unrelated Plaintiff Carolyn Sampson.**

While Hagens Berman, Ms. Bolton, Ms. Cabcabin, and the Court were moving forward in the proceedings following the disclosure of Weaver's conduct, Plaintiff Carolyn Sampson, who was subject to neither a motion to withdraw nor of an altered expert report, inserted herself into the inquiry.  She first moved to dismiss all her claims against all Defendants.  Dkt. No. 597.  But then, in May 2018, she requested that her motion be withdrawn, Dkt. No. 635, and the Court granted her request, Dkt. No. 636.

In July 2018, Ms. Sampson sent the Special Master a letter in which she accused Hagens Berman and its former co-counsel, Kay Gunderson Reeves,[6] of various instances of false, misleading, or inadequate communications.  Dkt. No. 640.  On December 21, 2018, the Special Master again expanded the scope of the inquiry to include Ms. Sampson's grievances.  Dkt. No. 644 at 7.  Ms. Reeves was ordered to produce *in camera* "all documents in her possession or control relating to her involvement" in the Thalidomide litigation.  *Id.* at 6.  Hagens Berman was ordered to produce *in camera* "all documents in its possession or control dealing with Ms. Sampson or her representation."  *Id.*  Finally, Ms. Sampson was ordered to produce *in camera* "the documents and emails in her possession that relate to her dealings with Hagens Berman and her other past attorneys in this litigation, and her documents and emails with any of her present or past co-Plaintiffs that relate to these actions."  *Id.* at 7.

---

[6] Ms. Reeves withdrew as counsel in the Thalidomide litigation in July 2013. Dkt. No. 78.

D.     **The Expansion of the Inquiry Leads to Further Proceedings and a "Mare's Nest" of Privilege Issues.[7]**

In defining the scope of hearings to come, the Special Master invoked the crime-fraud exception to vitiate attorney-client privilege as to "evidence tending to show fraudulent behavior on the part of the attorneys – Hagens Berman or Ms. Reeves." *Id.* at 15.[8] This ruling encompassed the "Stephens [letters] regarding Misses Cabcabin and Bolton," *id.* n.9, and other testimony and documents to be determined by the Special Master, *id.* at 16. Under the Special Master's recommendation, at the next hearings, the Defendants would be "permitted to hear and elicit testimony and have access to exhibits only when such testimony or exhibits are pertinent to the crime-fraud exception," and such evidence would be made available to the public. *Id.* at 15-16. The Court adopted the Special Master's recommendation. Dkt. No. 662.

The Special Master also recommended, and the Court then ordered, that Ms. Cabcabin be granted access to the transcript and exhibits related to the "all clients" session held at the beginning of the September 2017 hearings. Dkt. No. 644 at 12; Dkt. No 662. But the Court denied – again on the Special Master's recommendation – Ms. Cabcabin's motion for the plaintiff-specific testimony and exhibits. *Id.*

Ms. Reeves, who would be required to testify in future hearings, moved for access to the transcripts and exhibits from the September 2017 hearings. Dkt. No. 651. The Court granted the motion, permitting Ms. Reeves to obtain "presently sealed materials and materials received in

---

[7] Dkt. No. 700 at 2.

[8] The Special Master has since acknowledged that Mr. Weaver acted alone and that nobody at Hagens Berman was aware of his actions. Dkt. 746 at 11 n.9 ("Formally, it was Hagens Berman that offered Mr. Weaver, then a member of the firm, as a witness, and put the bogus document into evidence. But the evidence does not suggest anyone at the firm other than Mr. Weaver was aware of its falsity, or that the firm knew of his conduct.")

camera to the same extent such materials are available to Hagens Berman Sobel Shapiro LLP and Tyler Weaver, and subject to identical restrictions and limitations." Dkt. No. 661 at 2.

The Special Master set further hearings for the week of May 7, 2019. Dkt. No. 665.  He identified the witnesses required to testify.  *Id.*  "Because some if not all of the hearing evidence w[ould] be received in camera," he noted that "some attendees w[ould] be excluded from parts of the proceeding.  Similarly, the transcript of the proceedings will require my pre-distribution review and redaction to assure that the confidentiality of evidence is preserved where that is called for." *Id.* at 2.

On April 25, 2019, the Special Master granted Ms. Bolton and Ms. Cabcabin's requests for access to all documents concerning all Plaintiffs or multiple Plaintiffs, including them.  Dkt. No. 683 at 4-5, 7.  The Special Master found that, as Plaintiffs in the Thalidomide litigation, Ms. Bolton and Ms. Cabcabin were entitled to see documents to any pre-suit or post-suit investigation of the claims that Hagens Berman or Ms. Reeves conducted. *Id.*

The hearings proceeded from May 7-10, 2019. As a general matter, participants were granted access consistent with the Special Master's privilege rulings.[9]  Hagens Berman, Weaver, and Reeves were permitted to attend all testimony and examine all witnesses and were provided with all exhibits.  No testimony pertaining to the reasons for Hagens Berman sought to withdraw as counsel for Plaintiffs Anderson, Bolton, Marshall, Navamuel, or Sells was presented at the May 2019 hearings.

---

[9] The redaction of transcripts and exhibits is subject to a process ordered by the Special Master. *See* Dkt. No. 704.  Hagens Berman does not waive its rights to assert attorney-client privilege or work-product protection for any testimony or exhibit.

**E.     The Special Master Orders Hagens Berman to Serve an Expert Report on All Participants.**

On February 6, 2020, the Special Master proposed to set further proceedings between March 16 and April 3.  Dkt. No. 704 at 4.  He hoped the testimony would last only a day or two, and that this would be the last evidentiary hearing in this matter, though he could "not make any promises."  *Id.*  The Procedural Memorandum did not specify the witnesses required to attend, nor did future procedural memoranda in 2020, issued as the Covid-19 public health crisis caused one delay after another.

In response to one such memorandum, Hagens Berman provided the Special Master with scheduling conflicts for potential witnesses and disclosed that it intended to call Abraham Reich, Esq., as an expert witness on the propriety of its pre- and post-filing due diligence and of moving to withdraw as counsel for the aforementioned Plaintiffs when and for the reasons it did.  Dkt. No. 701 Ex. A.

The Special Master previously observed that "[i]t is Hagens Berman's and its counsel's prerogative to decide what evidence they will muster in support of their Motions to Withdraw, and just how that evidence should be presented."  Dkt. No. 569 at 1.  In light of that instruction and the prospect that the next hearing would be the last, Hagens Berman decided to offer testimony from Mr. Reich in support of its Motions to Withdraw and for no other reason.

However, on March 16, 2020, the Special Master ordered Hagens Berman to "serve on the participants in these proceedings, as well as the Special Discovery Master," an expert report that complied with Federal Rule of Civil Procedure 26(a)(2)(B), within 30 days. Dkt. No. 707 at 3. Hagens Berman served its Expert Report, in various forms of redaction, on April 15, 2020.

**F.      The Special Master Invited Briefing from all Participants Regarding Whether the Attorney-Client Privilege and Work Product Protection were Waived. The Motion-to-Withdraw Plaintiffs and Hagens Berman Agreed That Neither Was Waived.**

On June 11, 2020, the Special Master *sua sponte* issued a Memorandum and Order noting that he has "spent many hours pondering and researching questions implicated by" Hagens Berman's submission of the Expert Report, "including whether Plaintiffs' and former Plaintiffs' attorney-client privileges have been waived or undone; whether Hagens Berman's core work product protection was waived; and how the answers to these questions will affect the ongoing conduct of the hearing over which I am presiding."  Dkt No. 713 at 1.  The Special Master "concluded that the interests of justice may best be served by affording all participants an opportunity to proceed before I proceed further" and "invite[d] all participants to brief these matters simultaneously," while requesting that "Mr. Pulgram consult with, and take the lead in advancing the positions of, his own client [Ms. Cabcabin] and the Plaintiffs who have testified in the hearing, to the extent that can be done consistent with his obligations to his own client."  *Id.* at 2.  Following these simultaneous briefs by the participants, the Special Master anticipated "extensive responsive briefings in a second wave."  *Id.*

Continuing, the Special Master "order[ed] Hagens Berman to prepare – but serve only on the Special Master for the time being – a redacted copy of the Expert Report" and directed that "Hagens Berman should avail itself of every perceived justification for redaction, *i.e.*, Hagens Berman should not concede that any privilege has been lost by the disclosure of information to or by the expert witness, or by any prior ruling in this litigation…"  *Id.*

Hagens Berman argued in its July 9, 2020 Brief that neither the attorney-client privilege nor work product doctrine protections had been waived.  Dkt. 718.  Through Mr. Pulgram, Ms. Cabcabin and the Motion-to-Withdraw Plaintiffs – Ms. Sells, Mr. Navamuel, Mr. Marshall, and

Ms. Bolton[10] - advanced the same position.  Dkt No. 719.  As to the work product protections, Ms. Cabcabin and the Motion-to-Withdraw Plaintiffs argued that they have an interest in any work product that implicates their confidences and that they have not waived any such protection.  *Id.* at 5.

The second wave briefing of Hagens Berman and the Motion-to-Withdraw Plaintiffs advanced the same positions (Dkt Nos. 726 and 727), including the arguments that where, as here, "privileged information is offered to an expert with the intent for the expert's report to be used *in camera* only, the *in camera* nature of the proceeding preserves whatever privileges might otherwise be subject to waiver" and that "[a] contrary rule could effectively prohibit experts from testifying in *in camera* proceedings, which would not serve the interests of justice." Dkt No. 727 at 7 (citing *Mutawakkil v. Gerl*, No. 12-cv-816-bbc, 2014 WL 670853, at *5 (W.D. Wis. Feb. 20, 2014) (ordering submission of expert testimony and opinion regarding defendants' communications in camera))

The briefing on these issues was closed August 23, 2020.  On May 18, 2021 – roughly nine (9) months later – the Special Master issued the "Findings and Order of the Special Discovery Master" ("Findings and Order") holding, in pertinent part, that (a) Hagens Berman "has waived attorney work product protection by giving its proposed testifying expert witness access to facts and data – the transcripts of proceedings and exhibits received partly *in camera by the Special Discovery Master* [] – that might otherwise have remained protected" and (b) "[t]he attorney-client privileges of individual past or present clients of Hagens Berman or the firm's former co-counsel,

---

[10] As noted above, Judge Diamond granted the Joint Motion to Withdraw and Substitute Counsel as to Plaintiff Terrie Bolton on October 21, 2020.  Dkt No. 731.  Accordingly, the original Motion to Withdraw as counsel for Plaintiff Terrie Bolton (Dkt No. 342) is moot.

Kay Gunderson Reeves, were not waived or lost by the attorneys' self-serving disclosure of privileged communications to the proposed testifying expert witness…" Dkt 742, ¶¶ 1-3.

Additionally, the Special Master "fil[ed] with the Clerk's office a partially-redacted copy of the Expert Report (the "Redacted Expert Report") for docketing and service" and directed that "the Redacted Expert Report shall be delivered to" "(i) The testifying expert witness; (ii) All Defendants; (iii) The Plaintiffs and former Plaintiffs participating or entitled to participate in this hearing, *i.e.* Richard Anderson, Terrie Bolton, Diana Cabcabin, John Marshall, Jose Navamuel, Carolyn Sampson and Mary Sells; (iv) Kay Gunderson Reeves; (v) Tyler Weaver; and (vi) Hon Paul Diamond, U.S.D.J." *Id.* at ¶ 3.a. The only items redacted from the Expert Report were those sections the Special Master identified as containing information subject to the attorney-client privilege. No work product was redacted.

The Special Master did not allow any participant to object to the Findings and Order before the Redacted Expert Report was docketed. The Findings and Order were issued less than one day after Hagens Berman requested leave to amend the Expert Report to eliminate any reference to Ms. Bolton given that the Motion to Withdraw for Ms. Bolton was Moot. Dkt 740, ¶ 3. A Memorandum of the Special Master followed two days later. Dkt No. 746.

On May 20, 2021, Ms. Bolton filed a Motion to Strike Portions of the Unredacted Expert Opinion of Abraham C. Reich, arguing that Hagens Berman's Motion to Withdraw as to Ms. Bolton is moot and that evidence concerning Hagens Berman's withdrawal as her counsel is irrelevant. Dkt 745 ("there is no motion or dispute involving Ms. Bolton currently pending before the Special Discovery Master and matters involving Ms. Bolton should not be addressed during the hearings that begin on May 24, 2021…any testimony, evidence and opinions regarding Hagens' efforts to withdraw from representing Ms. Bolton are irrelevant [and] unrelated to the

issues before the Special Discovery Master…").  The Special Master denied Ms. Bolton's Motion to Strike on May 21, 2021.  Dkt. 747.

## II.   ARGUMENT

### A.   The Special Master Erred in Holding that Hagens Berman Waived Attorney Work Product Protection

"The work-product doctrine … 'promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients."  *In re Chevron Corp.*, 633 F.3d 151, 164 (3d Cir. 2011) (citing *Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1999)).

To that end, "the work-product doctrine protects an attorney's work from falling into the hands of an adversary, and so 'disclosure to a third party does not necessarily waive the protection of the work-product doctrine.'"  *In re Chevron Corp.*, 633 F.3d at 165 (citing *Westinghouse Elec. Corp.*, 951 F.2d at 1428).  "Rather, the purpose behind the work-product doctrine 'requires [a court] to distinguish between disclosures to adversaries and disclosures to non-adversaries,' and it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived."  *In re Chevron Corp.*, 633 F.3d at 165 (citing *Westinghouse Elec. Corp.*, 951 F.2d at 1428); *see also BouSamra v. Excela Health*, 210 A.3d 967, 977-978 (Pa. 2019) (holding that disclosure to a third party does not automatically waive application of the work product doctrine "because disclosure does not always undermine its purpose" and "that the work product doctrine is waived when the work product is shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it.").

"This waiver rule," as recently stated by the Pennsylvania Supreme Court, "comports with the prevailing view in state and federal courts across the country, and the rule's fact intensive structure requires evaluation on a case-by-case basis." *BouSamra*, 210 A.3d at 978 (citing *Allphin, supra; Am. Zurich Ins. Co. v. Mont. Thirteenth Judicial Dist. Court*, 364 Mont. 299, 280 P.3d 240, 248 (2012) ("Disclosure only waives the work product protection if it is inconsistent with the maintenance of secrecy from the disclosing party's adversary.") (quoting *U.S. v. Deloitte*, 610 F.3d 129, 140 (D.C. Cir. 2010); *Fox v. Alfini*, 432 P.3d 596, 604 (Colo. 2018) (Hood, J., concurring) ("[V]oluntary disclosure of information to third parties does not ordinarily constitute a waiver of exemption from discovery under the work product doctrine, unless such disclosure is to an adversary in the litigation[.]"); *Chevron*, 633 F.3d at 165 ("it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived."); *Blattman v. Scaramellino*, 891 F.3d 1, 5 (1st Cir. 2018) (same); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 91(4) (2000) ("Work-product immunity is waived if the client, the client's lawyer, or another authorized agent of the client ... discloses the material to third persons in circumstances in which there is a significant likelihood that an adversary or potential adversary in anticipated litigation will obtain it.")).

As the Expert Report makes clear, Hagens Berman is offering the report solely in support of its Motions to Withdraw as counsel for five plaintiffs. Hagens Berman served unredacted copies of the Expert Report on Weaver and Reeves, "participants" in the hearings that have been granted the same access as Hagens Berman to all testimony, exhibits, and productions of documents. The firm also served on each of the five Motion-to-Withdraw Plaintiffs a copy of the Expert Report from which all information specific to other Plaintiffs was redacted. That is because Hagens

Berman offers the plaintiff-specific information only with respect to the Motion to Withdraw that pertains to that Plaintiff.

In an attempt to follow with precision the Special Master's rulings as to privilege and various individuals' access to the proceedings, Hagens Berman provided reports to Ms. Cabcabin and Ms. Sampson that had all Plaintiff-specific information redacted, but included information on Mr. Reich's qualifications and compensation, as well as his analysis of the firm's pre- and post-filing due diligence, elements that are an explicit part of the Special Master's Motion-to-Withdraw inquiry.

It did not serve the Expert Report on Defendants, because Defendants are not "participants" in the Motion to Withdraw hearings – indeed, they have agreed to be excluded – and the report concerns only those motions, and not the Special Master's inquiry into the alteration of expert letters or any other issue to which the crime-fraud exception to attorney-client privilege could apply.  Thus, there is no applicable ruling that would permit Defendants to intrude on Hagens Berman's dispute with five individual Plaintiffs and access the Expert Report pertinent to only that matter.

The Special Master concluded that Hagens Berman waived its work product protection because Mr. Reich was retained as a testifying expert.  But Mr. Reich's Expert Report applies only to the pending Motions to Withdraw – proceedings on which have been held *in camera* – and the "adversaries" to those Motions are the Motion-to-Withdraw Plaintiffs.  The Defendants are not "adversaries" in the Motion-to-Withdraw context, and the disclosure of Hagens Berman's work product to Mr. Reich does not "significantly increases the likelihood that an adversary [(such as Defendants)] or anticipated adversary will obtain it." *BouSarma*, 210 A.3d at 978.  Mr. Reich, in

this context, is no different that a Motion-to-Withdraw Plaintiff whose receipt of the *in camera* hearing transcripts did not, and could not, operate as a waiver of the work-product doctrine."

In addition to the work product protections advanced by an attorney, Plaintiffs may also assert the work-product protection "to the extent [their] interest may be affected." *In re Grand Jury Proceedings*, 604 F.2d 798, 801 (3d Cir. 1979). Consistent with this precedent, the Special Master previously recommended that the Court grant under-seal treatment to a motion "disclosing opinion work product and communications as to which the client, Ms. Bolton, holds the privilege, and she has not waived it."[11] Dkt. No. 588 at 3.

As noted above, the Motion-to-Withdraw Plaintiffs confirmed that they continue to invoke, and have not waived, the work-product protection. Dkt. No. 719 at 8 ("[n]o privilege has been waived by the disclosure to the expert or the submission of the Expert Report for the *in camera* withdrawal proceedings."); Dkt No. 727 at 7. The doctrine thus endures to protect any work product considered by the expert in opining with respect to the Special Master's inquiry into the Motions to Withdraw: that is, the sufficiency of Hagens Berman's grounds for withdrawal, as well as whether "the firm was unaware of the problem when it filed its clients' Complaints; . . . how the firm learned of the problem; and . . . the failure to know about it earlier." Dkt. No. 539 at 2.

Even if Hagens Berman had the ability to waive the protection for work product affecting the interests of the Motion-to-Withdraw Plaintiffs, it did not do so here. Again, the scope of both the Special Master's inquiry and Hagens Berman's expert report is critical. Although the U.S. Courts of Appeals for the Third Circuit has yet to decide the issue, district courts within the Circuit have held that Federal Rule of Civil Procedure 26(a)(2)(B)(ii), which requires the disclosure of "materials considered" by a testifying expert, compels waiver of work product provided to the

---

[11] The Court approved and adopted the recommendation. Dkt. No. 593.

expert.  The Special Master cited those cases, and similar authority from other jurisdictions, in his June 11, 2020 Order.  Dkt. No. 719 at 18-19 (citing Dkt. No. 713; *Fialkowski v. Perry*, 2012 WL 2527020 (E.D. Pa. Jun. 29, 2012); *Kontonotas v. Hygrosol Pharm. Corp.*, 2009 WL 3719470 (E.D. Pa. Nov. 4, 2009); *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 263 F.R.D. 190, 196–97 (E.D. Pa. 2009); *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176 (D. Del. 2003); *Netjumper Software, L.L.C. v. Google, Inc.*, 2005 WL 3046271, at *1 (S.D.N.Y. Nov. 10, 2005)).  But all of those cases involve circumstances where counsel, in advancement of its clients' claims, provided work product to an expert witness.  Those cases are factually inapposite.

Hagens Berman is adverse to five particular clients[12] within the narrow context of its efforts to withdraw as their counsel.  It sought the opinion of an expert, not to further the interests of these clients, but in support of its Motions to Withdraw from representation, as the inquiry was defined by the Special Master.[13]  In doing so, it provided the expert with materials – *i.e.*, the hearing transcripts – to which the Motion-to-Withdraw Plaintiffs already had access.  Then, in distributing the reports, Hagens Berman scrupulously adhered to the Special Master's various rulings:

- Reeves and Tyler Weaver, both of whom had been granted access to all documents and transcripts, including those that were submitted *in camera* or otherwise sealed, received unredacted copies of the report;

[12] While there were five at the time the Expert Report was issued, the Motion to Withdraw as to Ms. Bolton is now moot.

[13] Pennsylvania Rule of Professional Conduct 1.6(c)(5) permits counsel to disclose confidential information in order to secure legal advice with respect to compliance with the Rules of Professional Conduct, including Rule 1.16, which governs termination of representation.  *See* RPC 1.6, cmt. 16 ("a lawyer's confidentiality obligations do not preclude a lawyer from securing confidential legal advice about the lawyer's personal responsibility to comply with these Rules. In most situations, disclosing information to secure such advice will be impliedly authorized for the lawyer to carry out the representation. Even when the disclosure is not impliedly authorized, paragraph (c)(5) permits such disclosure").

- Each Motion-to-Withdraw Plaintiff received a report with all information except that which was specific to another Motion-to-Withdraw Plaintiff;

- Sampson and Plaintiff Diana Cabcabin, who is also not subject to a Motion to Withdraw but nevertheless has become involved in this now-expanded litigation, received reports with all Plaintiff-specific information redacted;

- The Pharmaceutical Defendants, who have been granted the right to participate in this litigation only to the extent that the Special Master has found applicable the crime-fraud exception to attorney-client privilege, received no reports.

Hagens Berman does not invoke the protection to "shield" its work product from its "adversaries": the five Motion-to-Withdraw Plaintiffs.  It argues only that the doctrine of waiver grants non-adversaries like (in the context of the motions) Sampson and the Pharmaceutical Defendants no access to its work product.  That proposition is entirely consistent with the Special Master's prior rulings, which have endeavored to protect the privileges held by individual Plaintiffs.  It is also consistent with the position taken by the Pharmaceutical Defendants, who have waived participation with respect to the Motions to Withdraw and have declined to argue that Hagens Berman has waived any applicable privilege or protection.  The Special Master's logic that "fairness" to the Defendants and the Ms. Sampson's allegations support a determination that the work product protection has been waived (Dkt. 746 at 28) is misplaced and in error.

Moreover, the fact that Mr. Reich is engaged as an expert witness does not change the analysis or compel a determination of waiver to anyone other than Motion-to-Withdraw Plaintiffs in the context of the *in camera* proceedings.  Hagens Berman is not a party (plaintiff or defendant) to these proceedings.  The Special Master has long characterized Hagens Berman as a participant.  The Special Master's determination that the provisions of Rule 26 (a)(2)(B) applies to Hagens

Berman – a "participant" in the context of Motions to Withdraw and use of that rule to support a waiver determination is inconsistent with the law and the very purpose set forth in Rule 1 of the Federal Rules of Civil Procedure that "[t]hese rules" "shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

Simply put, no authority counsels for waiver under these circumstances. And no authority suggests that retaining an expert to address a specific question in *in camera* proceedings or providing him with materials necessary to render an opinion results in a waiver of the work product protections such that non-adversaries to these *in camera* proceedings are entitled to review these materials. To the contrary, when – as here – privileged information is offered to an expert with the intent for the expert's report to be used *in camera* only, the *in camera* nature of the proceeding preserves all privileges that might otherwise be subject to waiver. *Cf. Mutawakkil v. Gerl*, No. 12-cv-816-bbc, 2014 WL 670853, at *5 (W.D. Wis. Feb. 20, 2014) (ordering submission of expert testimony and opinion regarding defendants' communications in camera). A differing rule – as adopted by the Special Master – runs counter to the interests of justice and would effectively prohibit experts from testifying in *in camera* proceedings.

Finally, the Special Master erred in rejecting the concept of selective waiver. That determination rested solely on principles surrounding waiver of the attorney-client privilege (Dkt 746 at 29), principles that do not apply to questions of waiver of the work product doctrine protections. *See In re Chevron Corp.*, *supra; BouSamra, supra.*

**B.**   **The Special Master Erred in Publishing the Redacted Expert Report Without Affording Any Participant the Right to Object to the Finding that Hagens Berman Waived the Work Product Protections**.

"A party may file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time."  Fed.R.Civ.P. 53(f)(2).

The Special Master published the Redacted Expert Report at the same time as he issued his determination that Hagens Berman waived the work product doctrine protections, and thereafter issued a Memorandum providing the Special Master's rationale for this ruling two days later.  As such, Hagens Berman (and the Motion-to-Withdraw Plaintiffs who agreed that no waiver occurred) never had the opportunity to file Objections before the Special Master disclosed the contents of the Redacted Expert Report to the general public.  Hagens Berman submits that this action was in error, and that it should have had the opportunity to file Objections to the work product waiver determination before the Redacted Expert Report was docketed.

**III.**   **CONCLUSION**

For the foregoing reasons, Hagens Berman respectfully requests that the Court reject and reverse the Special Master's determination at paragraph 1 of the Findings and Order that Hagens Berman has waived attorney work product protection and strike the Redacted Expert Report from the docket.


DATE:  May 23, 2021                              Respectfully submitted,

                                                 PIETRAGALLO GORDON ALFANO
                                                 BOSICK & RASPANTI LLP

                                      By:    */s/ Gaetan J. Alfano*
                                             Gaetan J. Alfano
                                             Pennsylvania Bar No. 32971
                                             GJA@pietragallo.com

1818 Market Street, Suite 3402
Philadelphia, PA 19102
Telephone: (215) 320-6200
Facsimile: (215) 981-0082

Peter St. Tienne Wolff
Pennsylvania Bar No. 208433
PSW@pietragallo.com
38th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 263-2000
Facsimile: (412) 263-2001
*Attorneys for Hagens Berman Sobol Shapiro, LLP*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 23, 2021, the foregoing document was filed electronically and served on all counsel of record via the Court's CM/ECF system.  It also was transmitted for service by first class mail on Plaintiffs John Marshall and Jose Navamuel and on Plaintiff Richard Anderson at Mr. Anderson's last-known address.

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By:     */s/ Peter St. Tienne Wolff*
Peter St. Tienne Wolff
Pennsylvania Bar No. 208433
PSW@pietragallo.com
38th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 263-2000
Facsimile: (412) 263-2001

*Attorneys for Hagens Berman Sobol Shapiro LLP*

6403266v1