IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLENDA JOHNSON, et al.,

v.                                        Civ. No. 11-05782
                                          and all related cases

SMITHKLINE BEECHAM
CORPORATION, et al.,

**Terrie Bolton's Response and Request for Clarification
to the Special Master's October 12, 2023 Report and Recommendations**

**Submitted Under Seal**

Special Master Hangley,

I carefully reviewed your October 12, 2023 Report and Recommendation ("R&R") and believe it requires a clarification regarding Dr. Stephens' opinions and conclusions about thalidomide causing my birth injuries.  Because this Response contains information that is not in the public record, I am sending it to you via electronic mail with the hope that you could help me file it under seal.  I do not want to waive any confidentiality or privilege that would attach to the information in this Response.

**<u>Portion of the R&R Which I Believe Should Be Clarified</u>**

Beginning on page 104 of the R&R, there is a discussion about Dr. Stephens' causation methodology.  You state:

> Dr. Stephens's approach to his evaluations of the many plaintiffs' injuries, as understood and explained by Mr. Weaver in his testimony, figures into my evaluation of Weaver's conduct.  In his analysis, Stephens begins by identifying the various defects or birth injuries experienced by the individual and the frequency with which (based on generally scant empirical data, I think) such injuries have historically been associated with thalidomide.  Simultaneously, he considers the frequency with which each of those conditions is found in the general population.  Stephens

1

multiplies the various incidences against one another to arrive at a likelihood of all the conditions occurring without thalidomide poisoning.  The rarer the coincidence of the conditions in the general population, the greater the likelihood that Stephens will blame them on thalidomide.

R&R pp. 1-4-105.  You then summarize Tyler Weaver's testimony about this methodology and how the plaintiffs generally fell into three categories: (1) thalidomide did not cause the birth injuries; (2) the birth injuries were consistent with thalidomide, but Dr. Stephens would have to prove ingestion; and (3) "Then there were a few cases where he concluded that based on the cluster of defects alone …. That those – those injuries were caused by Thalidomide."  *Id.*, p. 105.   You then state: "What Weaver is describing is a bell-shaped curve with 'a few cases' at each extreme – situations in which Stephens felt comfortable, just considering the constellation of birth defects, in opining that the individual definitely was or definitely was not a 'thalidomider.'"  *Id.*  These statements in your R&R are accurate and complete.

The portion that requires correction or clarification relates to Dr. Stephens' evaluation of my birth injuries within the bell curve used by Dr. Stephens.  The R&R discusses a draft report Dr. Stephens provided to Mr. Weaver in August 2014.  As respects that draft report, you state that when Mr. Weaver altered it, he "moved Ms. Bolton to the extreme edge – the 'a few cases' segment – of that bell-shaped curve when Stephens had actually placed her in the middle, with the other subjects whose diagnosis would depend on the proof or disproof of "thalidomide exposure."   This statement creates a misleading record about Dr. Stephens' causation opinion in my case.  Below I explain why this statement should be clarified.

**Dr. Stephens Concluded That My Birth Injuries Were At The Very High Range
of the Bell Curve:  The "Rare Case" Where Evidence of Thalidomide Exposure Is Unnecessary**

As stated above, in the R&R, you were discussing the August 2014 draft report Dr. Stephens provided to Mr. Weaver.  But the draft report was preliminary and did not contain a final conclusion, a

statistical analysis or place my birth injuries anywhere on the bell curve.  Clarification is required so that the record is clear that the constellation of my birth injuries never fell within the mid-range of the bell curve.  To the contrary, I am the "rare case" at the <u>highest</u> end of the bell curve where no proof of thalidomide exposure is required.

To support this clarification, I would like to quote the portion of Mr. Weaver's testimony where he quantifies the standard for falling within the high-end of the bell curve where no proof of exposure is required to prove thalidomide caused birth injuries:

> Q:      And then the third bucket you testified about today was that the probability of exposure to Thalidomide was so high that it would not be necessary to show that the mother had ingested Thalidomide.  Do you remember that being the third category?
>
> A:      That's correct.
>
> Q:      And I also believe I heard you testify that the probability, that three billion didn't do it, but that 30 billion, one in – the chance of one in 30 billion was sufficient to not require, for him [Dr. Stephens], evidence of exposure to Thalidomide; correct?
>
> A:      I believe I testified **one in 300 billion**.  If I said 30 billion, that was in error.

Transcript of May 8, 2019 Hearing at 339:15-340:7 (emphasis added).

On May 24, 2021, during confidential portion of the testimony of Abraham Reich, Exhibit Number Bolton-12 was admitted into evidence.  *See* Transcript of May 24, 2021 hearing, at 114:6-115:19.  Bolton-12 is an email from Hagens Berman that attaches a June 14, 2018 <u>final</u> declaration of Dr. Trent Stephens ("Stephens Declaration").  In his Declaration, Dr. Stephens confirms that the August 2014 draft report was preliminary and was not a thorough or complete analysis.  Specifically, Dr. Stephens declared under oath:

> Although I told Hagens that it was my practice to prepare detailed reports and findings for each plaintiff, Hagens told me not to conduct that detailed work.  Rather, Hagens directed me on many cases to prepare brief, **cursory memoranda** and provide it to them as soon as possible after each examination …. Any final thalidomide reports I prepared for the Hagens firm contained a conclusion section which extrapolated the chances of a plaintiff's physical deformities occurring in a typical pregnancy, followed by my medical judgment regarding whether the plaintiff was exposed to thalidomide.  **I was never asked to prepare a final report on Ms. Bolton** ….

Stephens Declaration, ¶¶ 2, 13 (emphasis added). Dr. Stephens also declared under oath that the chances that the constellation of my birth defects occurring in one person without thalidomide exposure was well above the 300 billion mark identified by Mr. Weaver. This was demonstrated during the confidential testimony of Mr. Reich, when Mr. Reich was reviewing Exhibit No. Bolton-12 and the Stephens Declaration:

Q: Tyler Weaver testified under oath in the 2019 hearings that the statistical marker for not having to prove causation was **1 in 300 billion**. Do you remember us going through that testimony?

A: Yes.

Q: Okay. So, I want to take you to a sentence on the last page of the [2018 Stephens] declaration in paragraph 16 that starts with "the probability." Do you see that?....

A: …. I see that.

Q: Okay. And it says, "The probability of these defects occurring together by chance I the same person is **1 to 1.5 x 1016 births**." Do you see that?

A: I do.

Q: I didn't know what that calculation meant, so I Googled it. Do you know what the chances of Ms. Bolton having all of her birth injuries without being exposed to thalidomide is?

A: I don't.

Q: It is in excess of **10 quadrillion**.

Transcript of May 24, 2021 hearing 122:15-123:21 (emphasis added).

I believe Dr. Stephens only prepared seven final reports for plaintiffs in this case. I am at the very top of the bell curve by a wide margin:

| | |
|---|---|
| **Terrie Bolton:** | **$1:1.5 \times 10^{16}$ (15 quadrillion)** |
| Debra Johnson: | 1:300 trillion |
| Mark Harrelson: | 1:30 trillion |
| Edmund Andre: | 1:960 million |
| Carolyn Sampson: | 1:30 million |
| Yolanda Perez: | 1:741,000 |

4

**Conclusion**

I want to continue to prosecute my claims against the defendants as quickly and fairly as possible.  I do not want my case prejudiced by a record that characterizes my birth injuries as falling within the mid-range of a bell curve methodology used by Dr. Stephens.  Although the August 2014 draft report you were discussing in your R&R contained language that would lead the reader to believe I was in the mid-range of the bell curve, an examination of the complete record in this case demonstrates that in 2018, Dr. Stephens concluded that proof of thalidomide exposure was unnecessary in my case because the chance of my constellation of birth defects appearing in one person without thalidomide exposure is 1 in 15 quadrillion – the highest of any plaintiff in this lawsuit.

I am asking that you please include a sentence in an amended R&R that the August 2014 report of Dr. Stephens was preliminary only, and that Dr. Stephens prepared a final report that placed me at the very top of the bell curve.  In the alternative, please remove the language about my injuries falling within the mid-range of Dr. Stephens' bell curve.  Thank you for your time.

Respectfully submitted on November 13, 2023,

Terrie Bolton
21001 N. Tatum Blvd STE 1630 #492
Phoenix, AZ 85050
(312) 623-3070
Email: tmixon922@gmail.com