**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GLENDA JOHNSON ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:11-cv-05782-PD and all related cases |
| SMITHKLINE BEECHAM CORPORATION ET AL., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER OF
THE SPECIAL DISCOVERY MASTER**

**MEMORANDUM**

*Pro se* Plaintiff Terrie Bolton has sent me a document captioned "Terrie Bolton's Response and Request for Clarification to the Special Master's October 12, 2023 Report and Recommendations" (the "Bolton Response") and asked that I advise whether the document should be filed under seal. I am placing the Bolton Response on the public docket because it is not entitled to *in camera* treatment, filing under seal or redaction of any kind.

The Bolton Response also asks that I supplement or amend my October 12, 2023 Report and Recommendation (Doc. 767, the "R&R").

Because Ms. Bolton is a *pro se* litigant, I will explain why I am docketing the Bolton Request publicly, and why I will not either amend or supplement the R&R.

**A.      Why the Bolton Response would not appropriately be filed under seal.**

I thank Ms. Bolton for asking whether the Bolton Response should be received and discussed *in camera.* I am unable to discern any basis for withholding that document (or this discussion) from public scrutiny.

Public access to the records of civil litigation is a touchstone of our democratic system of government.  *See, e.g., Davis v. Elwyn, Inc.*, No. 2:20-CV-05798, 2021 WL 4902333, at *2 (E.D. Pa. Oct. 20, 2021), quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) ("[T]here is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith"), and *Wartluft v. Milton Hershey Sch.*, No. 1:16-CV-2145, 2019 WL 5394575, at *4 (M.D. Pa. Oct. 22, 2019) (the right of public access "antedates the Constitution [and] promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court" (internal citations omitted)).

The Bolton Response focuses – directly if prematurely – on one crucial element of the case Ms. Bolton will have to prove if she is to prevail against any of the Defendants — that her 1964 birth injuries were caused by thalidomide.  In the R&R (§VI(A)(6), at 108-09), I discuss a 2014 preliminary, post-examination report by Hagens Berman's testifying expert, Trent Stephens, Ph.D., stating that "if clear thalidomide exposure is established in the present case, it is my opinion that Ms Bolton's defects . . . are still consistent with thalidomide exposure."  Hagens Berman attorney Tyler Weaver's deletion of this language from the copy of the Stephens report Weaver sent to Ms. Bolton, and his overt misrepresentation of Dr. Stephens's tentative conclusions, are prominent among the ethical failings I address.  *See* R&R§§ II.A.1, VI.

There is nothing confidential, proprietary or privileged to Ms. Bolton or anyone else in the Bolton Response.  First, the Bolton Response does not disclose any privileged communications with any of Ms. Bolton's past or present attorneys.  Turning to work product, a threshold observation:  I have found no guidance in cases addressing either Fed. R. Civ. P.

26(b)(3)(B)[1] or Pennsylvania privilege case law concerning the availability *vel non* of work product protection to an unrepresented litigant; the decisions in other federal and state courts are in disagreement. *See generally* Jennifer A. Gundlach & Zeus Smith, *Expanding the Federal Work Product Doctrine to Unrepresented Litigants*, 30 Geo. J. on Poverty L. & Pol'y 49 (2022). Further, I do not think work-product protection would be available for the matters discussed in the Bolton Response even if a lawyer were in the present mix: Ms. Bolton announces the existence of a post-2014 Stephens report, and expressly asks me to "include a sentence in an amended R&R that the August 2014 report of Dr. Stephens was preliminary only, and that Dr. Stephens prepared a final report that placed [her] at the very top of the bell curve [discussed in the R&R.]" Bolton Response at 5. Alternatively, she requests that I "remove the language about [her] injuries falling within the mid-range of Dr. Stephens' bell curve." *Id.* Far from requesting confidentiality, Ms. Bolton is requesting publication. I will now address that request.

**B.      Why the R&R will not be supplemented or redacted**

If it is not already clear on the face of the R&R, I make it clear now: The R&R neither states nor recommends any conclusion regarding the merit of Ms. Bolton's case. That will be the jury's job, possibly the Court's, but certainly is not my job. *See* R&R § III.A. Because of their relevancy to Hagens Berman's motion to withdraw from its representation of Ms. Bolton and its relevancy – rather, its centrality – to Tyler Weaver's and Hagens Berman's professional misconduct, it *was* my job to discuss what Dr. Stephens reported to Tyler Weaver in August 2014, to discuss Weaver's tampering with that 2014 Stephens report, to discuss Weaver's palming-off of the falsified report to his client, Ms. Bolton, and to discuss the deep mendacity of

---

[1] "***Protection Against Disclosure.*** If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

the things Mr. Weaver did and said in 2014, 2017, and 2019.  But if Dr. Stephens has now moved from a 2014 preliminary opinion that Ms. Bolton's birth injuries would be consistent with thalidomide exposure "if clear thalidomide exposure is established" to a final, unconditional opinion, given to a reasonable scientific certainty, that her birth injuries were in fact caused by thalidomide, that later opinion is entirely irrelevant to the question whether Mr. Weaver and Hagens Berman deserve to be sanctioned.  It might have been tangentially relevant (if relevant at all) to the question whether Hagens Berman should have been permitted to withdraw (in a hypothetical universe in which Terrie Bolton did not fire the firm after learning of Weaver's perfidy), but she did fire Hagens Berman.

I should not be taken as understating the potential importance of expert opinion evidence to the merits of Ms. Bolton's case against the Defendant pharmaceutical companies, only as explaining that such evidence had nothing to do with the cabined responsibilities given to me by the District Court, and that the expert's conclusions – any of them – were not and should not have been considered by me in my limited advisory capacity.

Remembering that Ms. Bolton is a stranger in the strange land of litigation, I will explain, finally, that the contents of my R&R are not and will not be (so far as I can predict) competent evidence on the question whether her injuries are attributable to thalidomide.  Although I understand Ms. Bolton's argument that Dr. Stephens's pre-tampering 2014 memorandum might lead "the reader" to believe that her claim depended on direct evidence of maternal thalidomide exposure sixty years ago, we are a long way from the time when the District Judge may be asked to determine what expert evidence will be heard by the jury, and Ms. Bolton's hypothetical "reader" will not be involved in that endeavor.

- 4 -

- 5 -

**ORDER**

In consideration of Plaintiff Terrie Bolton's Response and Request for Clarification to the Special Master's October 12, 2023 Report and Recommendation (the "Bolton Response"), it is hereby

ORDERED, that the Bolton Response shall be entered in the public docket in these consolidated cases; and it is

FURTHER ORDERED, that Plaintiff Bolton's request for clarification, amendment or supplementation of the October 12, 2023 Report and Recommendation of the Special Discovery Master (the "R&R," Doc. 767) is DENIED.

December 5, 2023                    /s/ William T. Hangley
                                   WILLIAM T. HANGLEY
                                   SPECIAL DISCOVERY MASTER