**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON ET AL., )<br><br>Plaintiffs, )<br><br>v. )<br><br>SMITHKLINE BEECHAM CORPORATION )<br>ET AL., )<br><br>Defendants. ) | Case No. 2:11-cv-05782-PD<br>and all related cases |

**REPORT AND RECOMMENDATION**
**OF THE SPECIAL DISCOVERY MASTER**

## I.     Introduction

In response to the District Court's Order and Rule to Show Cause under Fed. R. Civ. P.

11(c) (Doc. 768), a law firm and three attorneys (the "Objectors") have submitted evidence and

arguments with respect to the October 2023 Report and Recommendations of the Special Master,

Doc. 767, *Johnson v. SmithKline Beecham Corp.*, 2023 WL 8367748 (E.D. Pa. Oct. 12, 2023)

(the "October R&R") which, among other things, recommended Court action on counsel's

motions to withdraw from representing certain clients, and also recommended Court

consideration of sanctions against the law firm and two of the lawyers.  I am now reporting on

my review for privilege of three sets of proposed redactions in these submissions (the

"Objections").  With the permission of the Court (Docs. 787, 788, 796), Seattle, Washington

Attorney Steve Berman and his firm, Hagens Berman Sobel Shapiro LLP ("Hagens Berman"),

filed their Objections on the public docket in redacted form (Doc. 791), as did one-time Hagens

Berman partner Tyler Weaver (Doc. 795), and Texas attorney Kay Gunderson Reeves (Doc.

789).  The Objectors filed unredacted copies under seal and provided copies, along with explanations of their privilege-based redactions, for my review.

In addition to my redaction-by-redaction recommendations, I am also taking the opportunity to recommend that counsel be invited or ordered to review for attorney-client privilege the transcripts of the 2017 and 2019 hearing sessions in this matter in advance of those transcripts being unsealed.  More urgently, I recommend that Berman and Hagens Berman's Objections (the "Berman Objections") be immediately placed under seal and that Berman and Hagens Berman be ordered to submit a copy of the Berman Objections in which their proposed redactions are securely redacted.

## II.   A Late-Discovered Problem Born of Technology:  Penetrable Redactions

As even the most technologically sophisticated litigants have had to learn,  the paperless age brings new complexities to what was once the realm of the black Magic Marker and white-out tape.[1]  In what I thought would be the final mechanics of cleaning this R&R up for filing and service, I stumbled on the unfortunate fact that the Berman Objections do not reliably mask what the redactors intended to mask; more accurately, they are vulnerable to quick "deredaction" (my word).

---

[1]  In *Federal Trade Comm'n v. Microsoft Corp.*, No. 23-cv-02880 (N.D. Cal.), notably, non-party Sony unwittingly published its profit margins and other sensitive information when producing poorly redacted documents in response to a subpoena.  *See* Isha Marathe, *Sony's Sharpie Redaction Gaffe Is Egregious, But Underscores Common E-Discovery Gaps*, Law.com, July 3, 2023, https://www.law.com/legaltechnews/2023/07/03/sonys-sharpie-redaction-gaffe-is-egregious-but-underscores-common-e-discovery-gaps/?slreturn=20240329161103; Tom Warren, *Sony's confidential PlayStation secrets just spilled because of a Sharpie*, The Verge, June 28, 2024, https://www.theverge.com/2023/6/28/23777298/sony-ftc-microsoft-confidential-documents-marker-pen-scanner-oops.

As a first order of business, I recommend that the Court (i) place the present Berman Objections under seal, and (ii) order Hagens Berman and Mr. Berman to replace them with a securely redacted iteration of the pre-R&R Berman Objections.

How effective under-seal treatment will be at this late date is questionable:  The Berman Objections have been publicly available in their vulnerable state on the electronic docket for several months, and were widely served electronically upon filing, but if anyone has successfully deredacted them before now, I have no knowledge of that, and I am proceeding on the assumption that I am the first.

Of course, sealing the Court-filed document will not make the many distributed or downloaded PDF copies less vulnerable to deredaction, but I caution all recipients against attempting to unmask, examine or make any use of the material Hagens Berman seeks to redact. Although Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502 are not facially applicable to this situation, they fairly communicate the attitude of our federal courts toward such conduct.

Finally, I should not be seen as foreclosing – rather, as suggesting that the District Court foreclose – an argument that inadequate redaction operated as a waiver of privilege; that complicated issue has not been before the participants or the Court before now.  This R&R will proceed as if all the purportedly redacted material was in fact fully masked in the first instance.

## III.   <u>General Observations</u>

Before launching the redaction-by-redaction review, it will be helpful to make some more general points:

Upon review, I agree that most of the Objectors' proposed redactions are of either attorney work product within the meaning of Fed. R. Civ. P. 26(b)(3) or *Hickman v. Taylor*, 329 U.S. 495 (1947), or attorney-client communications that are privileged and should not be accessible by the defendants or, therefore, the public at large; they are exceptions to the gospel

that every person's evidence should be accessible to the world.  With only scattered exceptions, however, the redacted information should be accessible to a certain cohort of the plaintiffs – parties to this litigation whose interests are no longer being represented by any of the Objectors under any real-world analysis – and I recommend that the Court order the Objectors to serve their Objections, unredacted with those scattered attorney-client privilege exceptions, on the subset of plaintiffs identified in § III.D.

### A.    Cats and Bags

Two large forces have reduced the availability of work product protection to documents reflecting the attorneys' thoughts and strategies in these consolidated cases.  One of them, of course, was Hagens Berman's disclosure of the 2017 and 2019 *in camera* hearing transcripts and exhibits to its testifying expert witness, which operated as a waiver of those documents' work product protection.  *See* Doc. 746 (SDM Mem.), Doc. 742, *Johnson*, 2021 WL 2010353 (E.D. Pa. May 18, 2021) (SDM Order), *approved and adopted,* Doc. 749.  The other was simply the maturation of the *Johnson* litigation as each of the 52 cases moved along the path from sweepingly accusatory complaint through initial disclosures, early motions and rulings, discovery, and summary judgment motions and dispositions.  At every stage, the parties disclosed new facts about their cases, new details thought to tie those facts to their theories of liability or defense, and each side gained a firmer grasp of the others' weaponry and battle plans. The pleadings are long-since closed, the fact discovery deadline long-since passed.  Plaintiffs' attorneys and experts have spoken eloquently, volubly, and publicly in pursuing or resisting discovery and opposing dispositive motions.  Counsel's three theories in support of the timeliness of lawsuits brought half a century after the supposed torts – the discovery exception, fraudulent concealment, and a perceived "New Science" revelation of previously unknown causal links between thalidomide and prenatal injury – are not confidential today by anyone's

measure, if they ever were.  In reviewing the Objections, I have attempted to honor the privacy of attorney-client communications, and of attorney work product that has not already been publicly disclosed.  But as courts have taught, I will not "seal the bag from which the cat has already escaped."  *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998); *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043, at *6–7 (W.D. Pa. Mar. 17, 2015); *Twp. of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 477 (Pa. Cmwlth Ct. 2018), all quoting *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990).  I will not recommend redacting information that is already in the public record.

### B.      The Fickleness of Work Product Protection

Unlike attorney-client privilege protection, which is forever unless waived, the protectionworthiness of attorney work product depends upon the client's relationship with the current litigation both at the time the work was done and at the time of invoking the supposed privilege:  "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  Here, as we shall see, some of the work product sought to be protected related to litigation between different parties in a far-off country, and some other work product involved parties who left this litigation years in the past.  It has no strategic value to a litigant against any current plaintiff, and its disclosure would not jeopardize the litigation position of any current plaintiff.

### C.      The *Pro Se* Plaintiffs and Work Product Redactions

Some of the continuing plaintiffs' relationships with the Objectors (and the Objectors' relationships with one another) have changed markedly during the lives of these cases.  Because I was tasked to consider whether the Court should consider the sanctionability of the attorneys'

conduct, the October R&R (and hence the objections to it) necessarily addresses a wide range of
subjects:

- Hagens Berman's contested motions to withdraw from its representation of five different plaintiffs (the "Five Plaintiffs");

- inconsistencies between the pleadings authored by counsel and the facts developed in highly contentious discovery;

- the past imposition of sanctions sought by defendants based, essentially, on such inconsistencies and their implications for time-bar issues;

- a one-defendant dismissal agreement that relieved Hagens Berman of potential additional sanctions exposure without apparent benefit to the client plaintiffs themselves;

- the creation and use of falsified expert reports;

- false testimony;

- Hagens Berman's waiver of work product protection;

- lawsuits and ADR proceedings brought against the attorneys by seven unhappy plaintiffs and one former plaintiff; and, finally,

- whether the Court should consider imposing sanctions on the attorneys.

In some of these subject areas, the interests of a "*Pro Se* Plaintiff"[2] and the lawyers are obviously
in tension.  Having been unable to locate successor counsel after the collapse of their attorney-

---

[2] For want of a better label, I refer collectively to the five plaintiffs against whom Hagens
Berman brought motions to withdraw, the suing, mediating or arbitrating plaintiffs, and any other
plaintiffs who have asked or been asked to terminate their attorney-client relationships with
Hagens Berman as the "*Pro Se* Plaintiffs," although the record reflects a range of situations:
Some of the eleven plaintiffs identified in § III.D. have formally entered their own *pro se*
appearances, others have not, and one still opposes Hagens Berman's withdrawal.

client relationships with Hagens Berman, these alienated plaintiffs are now in the unenviable position of litigating *pro se* (either of record or as a practical matter) against the pharmaceutical defendants.  Their interests are no longer wholly congruent with Hagens Berman's; to some extent, their interests are directly in conflict with Hagens Berman's.

Whether a particular Berman, Weaver or Reeves document or act was "by or for" the benefit of a plaintiff or group of plaintiffs can, obviously, vary depending on the thrust of the particular objection sought to be redacted, and the particular passage of the October R&R it targets.  Although the work product shield in litigation belongs to the attorney, it exists, ultimately, for the benefit and protection of the client; the doctrine exists to "enabl[e] attorneys to prepare cases without fear that their work product will be used *against their clients*." *In re Application of Chevron Corp*., 633 F.3d 153, 164 (3d Cir. 2011), *quoting Westinghouse Elec. Corp. v. Republic of the Phillipines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (emphasis added).  Thus, the work product doctrine "does not apply where a client, as opposed to some other party, seeks discovery of the lawyer's mental impressions."  *Koen Book Distribs., Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283, 286 (E.D. Pa. 2002) , *citing Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982).

In *Koen*, as here, the attorneys found themselves at odds with clients they still represented.  A client had threatened a malpractice claim in an ongoing bankruptcy matter but had not yet fired the attorneys, and the law firm was, for a time, simultaneously representing the client in a bankruptcy matter and, in consultation with its own in-house counsel, analyzing the firm's possible exposure and defenses to the client's lurking claims.  Judge Bartle held that this created a conflict of interest, and that the attorneys could not invoke work product or attorney-client protection against their former client.  Before *Koen,* Judge O'Neill had found the same sort

of conflict defeated a law firm's claim of attorney-client privilege: "[A] law firm's communication with in-house counsel is not protected by the attorney client privilege if the communication implicates or creates a conflict between the law firm's fiduciary duties to itself and its duties to the client seeking to discover the communication." *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 597 (E.D. Pa. 1989); *see also id.* at 567 ("Allegations of . . .misconduct while rendering legal advice also can place attorneys' mental impressions and opinions directly at issue and eliminate work product protection.").

Other courts have drawn a bright-line distinction between the client or ex-client's access to the lawyer's work product in the usual attorney-client relationship (attorney cogitation in service of client's claim or defense against a third party), and such access when the attorney and client have become antagonists. *See, e.g, Garvy v. Seyfarth Shaw LLP*, 966 N.E.2d 523, 539–40 (Ill. App. 2012) (refusing to follow *Koen* where "[t]he mental impressions Garvy seeks to obtain are not those related to his attorney's representation of him in the chancery litigation, but those related to the adversarial proceedings between himself and his attorney")*.*

For purposes of the present analysis, however, we do not have to choose between the *Koen* and *Garvy* approaches.  Whatever Hagens Berman, Weaver or Reeves were doing or thinking about at a particular moment in the litigation, they now consider it strategically important to tell the Court about the event or thought.  The lawyers have shown them to the Judge.  They have picked them out of their arguably private files and presented them to the District Judge in aid of their Objections to the October R&R.  If a particular item of work product centers on the claims against the pharmas, or is totally unrelated to any adversity between the attorney and a *Pro Se* Plaintiff, there is no reason to hide it from a *Pro Se* Plaintiff. But if, for example, the evidence is intended to support the withdrawal motions, the *Pro Se*

Plaintiff is entitled to see and respond to the evidence and arguments the attorneys have put before the Court under our familiar notions of sword and shield.  As the Supreme Court has explained:

> The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived. Here respondent sought to adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses. Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

*United States v. Nobles*, 422 U.S. 225, 239–40 (1975).

### D. Preserving Attorney-Client Privilege:  The Need for Non-Identically Redacted Copies

This privilege and the attorney's obligation to preserve it survive the attorney-client relationship.  And, of course, most attorney-client communications are one-on-one events, where it is the individual client's statement, or the advice she receives individually from the attorney, that is involved.  That means that, to a limited extent, some of the *Pro Se* Plaintiffs will not be entitled to see a particular item in the Objections that is protected by another plaintiff or former plaintiff's privilege.  When I have recommended Court allowance of such a redaction I have endeavored to point that out in this R&R, so that the Objector will be alerted to redact matter from some *Pro Se* Plaintiff's copies while not masking it in the actual privilege-holder's copy (if, obviously, the privilege holder actually receives a copy).  I think there are relatively few such phenomena in the Objections, but I do not claim to have scoured the Objections for every plaintiff or former plaintiff's privileged communication that might be implicated; that is counsel's job.

Subject only to that refinement, I recommend that the Objectors be ordered to distribute unredacted copies of their Objections to:

- the Five Plaintiffs who are respondents to the withdrawal motions – Terrie Bolton, John Marshall, Jose Navamuel, Mary Sells and (if and when he can be found) Richard Anderson;

- each plaintiff who has sued or brought dispute resolution proceedings against one or more of the Objectors: Diana Cabcabin, Yvonne English, Darren Griggs, Carolyn Jean Grover, Mark Harrelson, and Carolyn Sampson (in addition to Ms. Bolton and Mr. Marshall); and

- each plaintiff who has terminated her representation by Hagens Berman, agreed to do so, been asked by Hagens Berman to do so, or informed Hagens Berman of her intention to do so.

As to the remaining plaintiffs and former plaintiffs:  Courts do not generally require that every pleading or paper filed or served by counsel be copied and given to their clients; that sort of thing is left to the sound judgment of counsel.  I see no need to require the attorneys to produce unredacted copies of the Objections and exhibits to plaintiffs other than the *Pro Se* Plaintiffs, or to those former plaintiffs whose claims have been dismissed, either voluntarily or involuntarily, and whether finally or not within the meaning of Fed. R. Civ. P. 54(b).  By way of example, I have recommended that the Court permit redaction of some privileged communications between former plaintiffs and Hagens Berman, Mr. Weaver or Ms. Reeves.  I see no need to serve either the Objections or the redactions on those former plaintiffs.

### E.    The 2017 and 2019 Hearing Transcripts

In May 2021, as previously discussed, the District Court held that Hagens Berman had

waived work product protection by disclosing the 2017 and 2019 transcripts and exhibits to its

testifying expert, but that the Five Plaintiffs had not waived their attorney-client privilege

regarding communications disclosed in the transcript, exhibits, or expert report, because Hagens

Berman was not acting as their authorized agent when it waived privilege.

At that time, I redacted and docketed (at Doc. 743) the expert's report to mask only the

handful of attorney-client communications it disclosed.  By reason of Hagens Berman's waiver,

the 2017 and 2019 hearing transcripts and exhibits themselves are no longer entitled to remain

under seal.  But no one has sought (on behalf of the privilege holders) to redact the hearing

transcripts and exhibits to preserve attorney-client privilege.

In the present privilege review, I have recommended accepting a few proposed redactions

in the Berman Objections (¶¶ 194, 195, 201), because they quote or paraphrase attorney-client

communications, but those communications – and every other attorney-client communication

disclosed in the 2017 and 2019 testimony – will be unprotected once the seal is removed from

those transcripts.

The Pennsylvania Rules of Professional Conduct permitted the attorneys to divulge their

clients' and former clients' privileged statements in the *in camera* hearings on the withdrawal

motions, Fed. R. Prof. Conduct 1.6(b)(4), but Rule 1.6(d) requires reasonable efforts to "prevent

the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to

the representation of a client."  I suggest that, in advance of unsealing, the 2017 and 2019

transcripts should be reviewed by the attorneys for the purpose of identifying and seeking

redactions of their past and present clients' privileged attorney-client communications.

IV.   **The Objectors' Proposed Redactions from Their Objections**

A.   **Mr. Weaver's Redactions, Doc. 796**

Tyler Weaver's proposed redactions are just two in number:

**Objection at p. 25:**  Mr. Weaver redacts a single short paragraph addressing the thalidomide exposure fact issue.  Although I believe the facts disclosed in that paragraph are in the record and uncontested, this particular passage could be read as disclosing a privileged attorney-client exchange between Weaver and Plaintiff Terrie Bolton that is not already public.  I recommend bowing to that concern and permitting the redaction.

**Weaver's 2019 testimony (Exhibit 1 to Declaration of Robert Welsh, Esquire) at 264-66:**  In his testimony in 2017 and 2019, Mr. Weaver discussed his conversations with his client, Ms. Bolton, around the time of his document-tampering and the Hagens Berman motion to withdraw, and introduced email exchanges purporting to summarize or follow up on those conversations.  Although work product protection is no longer available, Ms. Bolton's attorney-client communications are still privileged.  Accordingly, I recommend permitting the proposed redaction of these pages of the exhibit to Weaver's Objections.

If my recommendations regarding Mr. Weaver's redactions are accepted, Ms. Bolton should receive a completely unredacted copy of Weaver's Objections.  Redacted versions of the Weaver Objections should be served on the other *Pro Se* Plaintiffs.  There will be no need for Weaver to serve anything further on those who have already been served with his redacted Objections.

B.   **Ms. Reeves's Redactions (Doc. 789)**

The October R&R discusses, sometimes in less-than-laudatory terms, Ms. Reeves's involvement in some but not all the 52 plaintiffs' consolidated cases, but does not recommend that the District Court consider sanctions against Ms. Reeves.  I also concluded that the single

former client who accused Ms. Reeves of sanctionable conduct had not made her case. *See* October R&R, 2023 WL 8367748, at *60.

In 2019, Ms. Reeves relied on the protections of her work product and her clients' confidential communications when she testified and produced extensive documents *in camera* pursuant to the Special Master's orders, and she has never waived work product protection. But her *in camera* testimony about her strategic and scientific thinking, and about the thinking of the lawyers and scientists with whom she interacted, is now public. Similarly, the exhibits used in her or other witnesses' testimony, however confidential they may have been at the time, became public when Hagens Berman shared them with a testifying expert who, in turn, would be obligated to identify them in a written report and to testify concerning their contents in a deposition or at a hearing. *See* discussion in Doc. 746 at 16-29.

Of the trove of documents Ms. Reeves produced to the Court and Special Master, however, only a tiny portion were admitted as exhibits at these now-public hearings. I have no reason to believe that Hagens Berman's expert witness considered (even within the broad meaning of Rule 26(a)(2)(B)(ii)) any of Ms. Reeves' non-exhibit documents. The District Court is free to consider those non-public documents in reviewing my October R&R – that is the nature of an *in camera* proceeding – but the non-exhibit documents were not stripped of any work product or attorney-client protections by reason of their production to the Special Master in a proceeding expressly calculated to preserve those protections.

A last general observation before discussing Ms. Reeves's proposed redactions. Work product protection is available only insofar as the attorney's skills are being brought to bear in service of a present party in the present litigation or, perhaps, a client who has a material interest

in the present litigation.[3]  As I shall discuss, some of Ms. Reeves's expressed concerns do not

satisfy that element of the test.

      **Reeves Redaction 1, page 8.**  *Denial Recommended:*  I find Ms. Reeves's approach here

confusing and her concerns misplaced.  When testifying *in camera* in May 2021, she identified

experts whose thoughts on causation contributed to the lawyers' contentions that alleged mid-

20th Century tortious conduct was actionable in the 21st Century.  She testified that her Australian

law partner, Peter Gordon, had worked with a Dr. Sally Cockburn[4] on a paper discussing the

scientific evidence associating a range of birth injuries with the ingestion of thalidomide during

pregnancy, *i.e.,* the "New Science" position.  Tr. 5/10/2019 at 921:10-924:4.  That *in camera*

testimony became public upon Hagens Berman's waiver.  From her proposed redactions,

however, it is apparent that Ms. Reeves is worried that the Gordon-Cockburn paper she discussed

in her testimony will itself become public by virtue of her mention of it *in her present

Objections*.  But this Objection, so far as I have been able to determine, is the first

communication that identifies a Bates-numbered document from Reeves's production as the

Gordon-Cockburn paper she testified about.  Her proposed solution is to redact the Objection

while, of course, still arguing from it to the District Judge.

      Ms. Reeves's concern is misplaced and her solution would be inappropriate.  She need

not worry about disclosing the Gordon-Cockburn paper because, as discussed above, documents

produced *in camera* that were not introduced as exhibits at the hearing, and not considered by

---

[3] *See* Fed. R. Civ. P. 26(b)(3)(A).  *Compare In re Student Fin. Corp.*, 2006 WL 3484387
(E.D. Pa. Nov. 29, 2006).

[4] Ms. Reeves' did not recall Dr. Cockburn's special expertise.  I believe but am not
certain that Mr. Gordon's co-author is an Australian general medical practitioner and media
personality also known as "Dr. Feelgood."  *See* https://www.drfeelgood.com.au, last accessed
April 15, 2024.

Mr. Reich, did not become public by reason of Hagens Berman's sharing the transcript and the actual admitted hearing exhibits with Reich.  It was not swept up in the waiver.

That said, nothing in this discussion should be taken as a conclusion that the Gordon-Cockburn paper is in fact protectable attorney work product; my impression at the hearing was that the Gordon-Cockburn piece was a scholarly work that had been either published or prepared with a view to eventual publication and scientific peer review.  My understanding of Ms. Reeves's present submission, though, is that Gordon-Cockburn's was a lobbying or negotiating piece prepared for some use in Gordon's and Cockburn's native Australia.  Without even wrestling with Mr. Gordon's janusian presence in these United States cases – counsel and not-counsel simultaneously – *his* mental impressions, strategic thinking, and scholarly writings might not qualify for protection under Fed. R. Civ. P. 26(b)(3)(B) or *Hickman v. Taylor*, if only because they were marshaled for other purposes – his Australian efforts – and do not appear to have been generated for the benefit of any of the 52 *Johnson* plaintiffs.[5]

**Reeves Redactions 2-4, pp. 9-10.  *Partial Denial Recommended:*** These are paragraphs in Ms. Reeves's Objections discussing her activities and warnings about the fact that Tawana Williams, Barbara Murray and Michael Morgan had each sued one of the defendants many years before bringing the present suits.  I recommend allowing one partial redaction and rejecting the rest.

Once again, work product protection under Rule 26(b)(3) is unavailable not only because of the transcript's disclosure to the expert witness, but because these three one-time plaintiffs

---

[5] On cursory review, the obvious focus of the Gordon-Cockburn paper was on Australian events and harms to non-United States thalidomide victims.  This is apparent from, *e.g.,* the paper's talk of "Distillers" (the one-time Australian thalidomide distributor) and of Distillers' touting of "Distaval" (the Australian trade name of the product), as a compound with no side effects.

voluntarily dismissed their claims with prejudice ten years ago.  As noted earlier, Rule 26(b)(3) "protects materials prepared for any litigation or trial as long as they were *prepared by or for a party to the subsequent litigation*, and "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) *even though the person may be a party to a closely related lawsuit*"  C. Wright & A. Miller, 8 Fed. Prac. & Proc. Civ  § 2024 (3d ed.) ("Wright & Miller"); *see, e.g., Collins v. Mullins*, 170 F.R.D. 132, 136–37 (W.D. Va. 1996) (Once sheriff was dismissed from 42 U.S.C. § 1983 case, documents prepared for him were no longer work product-protected).

  *Hickman v. Taylor* and the policies that underlie both *Hickman* and the work product doctrine itself have occasionally persuaded courts in this Circuit to issue protective orders under the aegis of Rule 26(c)(1) to avoid "annoyance, embarrassment, oppression, or undue burden or expense."  Compare *In re Student Fin. Corp.*, 2006 WL 3484387 (E.D. Pa. Nov. 29, 2006) (protecting work product of private investigators engaged by a non-party creditor, subpoenaed by a defendant in a suit brought by a trustee in bankruptcy) *with EFG BNK AG v. Lincoln Nat'l Life Ins. Co.*, 593 F. Supp. 3d 225, 231 (E.D. Pa. 2022) (citing *Student Finance* but denying work product protection  where affording it to the non-party would not "further[] the doctrine's purpose: preventing 'opposing parties,' 'adversaries,' and 'opponents' from using a lawyer's work to his or his client's disadvantage.").

  If there is an "opposing party," "adversary" or "opponent" implicated by the three paragraphs – comparing the involvement of Ms. Reeves with that of the late Mr. Styant-Browne in the chain of events that resulted in fifty-year gaps between lawsuits by the same plaintiffs over the same torts – it is certainly not the defendant pharmas; they won their Williams-Murray-Morgan battles in 2014 when those plaintiffs withdrew their claims with prejudice.  The closest

thing to a disagreement here seems to be between Hagens Berman and Ms. Reeves, and to involve the allocation of responsibility for those three former plaintiffs' having been included in the litigation in the first place. There is no sound policy reason that would justify Ms. Reeves' arguing her side to the Court in her Objection while masking it from Hagens Berman.

For the bulk of these paragraphs, too, Ms. Reeves summarizes portions of Nick Styant-Browne's now-public testimony; nothing in that summary is privileged or worthy of work product protection.

Proposed Redaction 3 does contain isolated references to what may be attorney-client communications that remain privileged. I recommend permitting a redaction of that portion of Proposed Redaction 3 that follows the words "a note stating that."

**Reeves Redaction 5, p. 10.** *Denial Recommended*: This redaction should be rejected. It restates Mr. Styant-Browne's testimony at the hearing. As the testimony is public, so too is its repetition. And while the Reeves-cited Styant-Browne testimony refers to attorney-client conversations, those conversations could not have been held with the expectation of privacy that is a necessary element of attorney-client privilege protection. These were, according to the testimony, conversations in which a plaintiff-to-be confirmed the contents of a draft complaint before it was filed and published. As discussed in the October R&R, 2023 WL 8367748, at *7-*9, the Pennsylvania Rules of Civil Procedure (which govern as to pre-removal procedural events) require both the attorney and the plaintiff to verify publicly the facts in a complaint, and require an agent who will verify the complaint on a plaintiff's behalf (here Mr. Styant-Browne or Mr. Berman) to put himself in an informed permission to do the verifying. Pa. R. Civ. P. 1023.1, 1024.

**Reeves Redaction 6, p. 12.   *Denial Recommended***

This is simply a second reference to the Gordon-Cockburn paper.  The proposed redaction is unjustified.

**Reeves Redaction 7, pp. 12-13. *Partial Denial Recommended.***

In this Objection, Ms. Reeves lists the general topics of her own hearing testimony, and then redacts the entire summary.  Once again, a rehearsal or précis of unprivileged testimony is not privileged, and even a description of privileged testimony may be unprivileged if it is general enough.  Especially when considering text that is so densely peppered with references to the transcript, it is a challenge to bear in mind that we are considering redacting *only the text of Ms. Reeves's Objections*, not redacting the transcripts to which she refers.  Unless the Objections themselves disclose privileged attorney-client communications or Ms. Reeves's work product not previously disclosed in her already-public testimony, there is no cause to consider redacting the Objections.

This particular description is almost entirely lacking in redactable content.  Phrases like "discussing jurisdictional/remand issues" and "discussion of litigation risk with a plaintiff" are far too general to qualify for treatment as privileged; indeed, they are the stuff of privilege logs.  There are two snippets on page 13, at the 5th and 6th lines (each is bracketed by quotation marks), that apparently are words Ms. Reeves actually said to clients, and I recommend giving her the benefit of the doubt and permitting their redaction.[6]  Nothing else should be redacted.

---

[6] As discussed earlier, the 2017 and 2019 hearing transcripts themselves do contain attorney-client privileged materials.  However, I note that some of Ms. Reeves transcript references to supposedly privileged testimony – everything before page 735 of the May 2019 transcript – are to unprivileged matter.  That testimony involved her conversations with the only plaintiff who expressly waived attorney-client privilege in these proceedings, Carolyn Sampson.

She should be Ordered to file and serve copies of her Objections, redacting only the passages identified above.  I do not think she should be required to serve former plaintiffs Williams, Barbara Murray or Morgan, but she should send all the *Pro Se Plaintiffs* copies that do not redact the quoted words from Redaction 7; I understand Ms. Reeves to be asserting that those communications were directed, *verbatim* or in substance, to all plaintiffs and potential plaintiffs during her time in the cases.

**C.      The Berman/Hagens Berman Redactions (Doc. 791)**

Mr. Berman and Hagens Berman filed more than 200 Objections and submitted three declarations and over 100 exhibits in response to the October R&R and the District Court's Order to Show Cause.  As a courtesy, they have sent the Court and the Special Master (but not filed of record) a separate document, an "Explanation of Materials Redacted in Connection with Hagens Berman's Objections and Response to R&R," which has facilitated my review. Winnowing things down from that master list, I will identify only those proposed redactions that I think should be rejected or partially rejected by the District Court; thus, my omission to identify a proposed redaction is a tacit recommendation that the Court permit it, almost always on the same ground offered by its proponents.

I recommend permitting the great majority of the Berman/Hagens Berman proposed redactions.  Those I recommend against are set out below, with my reasoning.

1.     **Proposed Redactions in pp. 1-44 of Hagens Berman Objections (unnumbered paragraphs)**

<u>Page</u>

*12:  Reflects Firm's mental impressions as to Ms. Sell's claims (WP)*

    ***Denial Recommended:***  The redacted language asserts two things.  The first, Hagens Berman's subjective evaluation of Ms. Sells's claims, is public record.  The second, discussing the October R&R, is not work product because it does not go to the Objectors' mental impressions or strategy in prosecuting the claims against the defendants.

*13:*
-     ***Redaction No. 1:***  *Reflects Firm's mental impressions as to Ms. Sell's claims (WP)*

      ***Denial Recommended:***  The firm's position is public record.  Its argument for the grant of its withdrawal motion is not strategy for the case it is attempting to abandon.

*33:  All redactions on this page reflect investigative steps taken by Firm and topics of its legal research (WP)*

    ***Partial Denial Recommended***:  The three general arguments for avoidance of the time bar are widely discussed in pleadings, oppositions to dispositive motions, and other public papers.  The assertion that Berman and Hagens Berman consulted with and relied upon the efforts of their sometime co-counsel, Mr. Gordon and Ms. Reeves, is not protection-worthy and, of course, was already published.

    I do recommend permitting redaction of the passages on this page that disclose particular activities conducted on particular dates, as work-product information not previously disclosed:
- Beginning with "Legal research re whether …" and ending after "Review docs."
- Following the word "analyzing" and ending at "doctrine."
- Following "noteworthy cases" and ending at "thalidomide."

*34-36:  Reflects factual investigation and legal research conduct by the Firm and co-counsel. Also reflects identity and opinions of consulting experts not disclosed to Defendants and mental impressions of counsel (WP)*

    ***Partial Denial Recommended:***  I recommend permitting almost all of these proposed redactions and denying only the last two proposed redactions on page 36 (beginning with "on document review" and "various factual," respectively) as disclosing nothing beyond what has been left unredacted in the text.

*39:*

- ○ ***Redaction No. 1:*** *Reflects communications received from clients (ACP)*

     ***Denial Recommended***: No actual work product or privileged communications are disclosed.

*38-39: Reflects identity and opinions of consulting experts not disclosed to Defendants, and mental impressions of counsel (WP)*

  ***Comment***: I believe counsel intended to refer to pages 39-40. I agree that the disclosures on those pages regarding consulting experts and their statements are protected work product. Fed. R. Civ. P. 26(b)(4)(D).

## 2. Proposed Redactions in Numbered Paragraphs

*¶ 16: Redaction of communication between Mr. Gordon and Hagens Berman regarding case strategy (WP)*

  ***Denial Recommended***: That Mr. Gordon communicated with Hagens Berman regarding his intention to bring cases has already become public.

*¶¶ 40-42: Description of privileged material attached as Exhibit 19 (see Chart of Exhibits, above) (WP)*

  ***Partial Denial Recommended***: The ¶ 40 redaction should be allowed, as should redacting the identification (in all three numbered paragraphs) of the consulting expert whose declaration is cited. While it might be argued that the consultant has become a testifying expert by the very act of submitting the declaration, I believe the declaration is not a report within the meaning of Rule 26(a)(2)(B).

  I also recommend allowing the redaction of that portion of ¶ 42 that begins with the word "ignored." I have not found the particular thought expressed by that phrase in the now-public record of the hearings before me.

  However, the remaining proposed redactions in these paragraphs should be denied; their contents are simply rehearsals of historical information publicly discussed by Attorneys Gordon, Reeves, Berman and others, and by Dr. Stephens, the testifying expert, in declarations submitted in opposition to summary judgment motions. *See*, *e.g.*, Doc. 262-7 (Declaration of Trent Stephens, Ph.D. regarding Edmund Andre) ¶¶ 18-22; Doc. 429-2 ¶ 16 (Declaration of Trent Stephens, Ph.D. regarding Phillip Yeatts).

*¶ 43:*

> ***Redaction No. 1:*** *Description of privileged material attached as Exhibit 20 evidencing Firm's development of March of Science theory (see Chart of Exhibits, above) (WP)*
> ***Redaction No. 2:*** *Description of privileged material attached as Exhibit 21 evidencing Firm's development of March of Science theory (see Chart of Exhibits, above) (WP)*
>
> > ***Denial Recommended***:  The following (unredacted) ¶ 44 of the Objections recites that the District Judge considered the existence of "this decades-old data" in rejecting the "New Science" theory as overcoming the time bar.  These are publicly known facts, not revelations, not mental impressions or strategy innovations on the part of plaintiffs' counsel.  While I am not certain that all the pre-2009 scholarship discussing non-bilateral injuries has been known to both plaintiffs' and defendants' counsel, the existence and obvious relevance of such scholarship to Mr. Gordon's and Hagens Berman's theory of actionability have certainly been no secret.

*¶ 47:*

> ***Redaction No. 1****: Description of Firm's internal development of March of science theory (WP)*
>
> > ***Denial Recommended:***  As the Objection itself observes, there is a widespread American perception that thalidomide's harm was far more pervasive outside this country than in, and Dr. Kelsey is widely credited with preventing a larger presence of thalidomide in the United States, but those are simply facts, not strategies or lawyerly ruminations.  Mr. Berman and Hagens Berman themselves point (with a telltale "*e.g.,*") to their own published statements and those of their testifying expert.  *See* Doc. 465 at 6-7, 27 (Hagens Berman brief); Doc. 465-2 ¶ 18.k (Declaration of Trent Stephens, Ph.D. regarding Robert Murray).

*¶¶ 48-49:  Description of privileged material attached as Exhibit 19 (see Chart of Exhibits, above) (WP)*

> ***Partial Denial Recommended:***  The identification of the consulting expert should be deleted, but the remainder of the paragraphs should be public; *see* discussion re ¶¶ 36-43, *supra*.

*¶ 50:*

> ***Redaction No. 1****: Description of privileged material attached as Exhibit 19 (see Chart of Exhibits, above) (WP)*
> ***Redaction No. 2****: Name of non-testifying expert whose declaration is Exhibit 19 ("WP")*
>
> > **Partial Denial Recommended:**  Once again, the identity of the consulting expert should be redacted.  However, Ms. Reeves has testified at length on the theory

that the types of injury mentioned in this paragraph may be associated with thalidomide.

¶ *51:*

***Redaction Nos. 1-2:*** *Description of privileged material attached as Exhibit 25 (see Chart of Exhibits, above) (WP)*

> ***Denial Recommended:*** Hagens Berman does not seek to redact the assertion that its lawyers met with Dr. Stephens in January 2014, or that he "emphasized the foregoing points." His attendance at the conference in Geneva and the goings-on at that conference are disclosed in, among other places, his *Yeatts* declaration, Doc. 429-2 ¶ 16.k. The second redaction in this paragraph – alleging the persistence of a popular and scientific community assumption that thalidomide is not the cause of unilateral injuries – has also been widely publicized in Hagens Berman's and the expert's public statements.

¶ *54:*

***Redaction Nos. 1-2:*** *Description of content of Ms. Reeves' privileged memorandum attached as Exhibit 26 (see Chart of Exhibits, above) (WP)*

> ***Denial Recommended:*** Ms. Reeves's analysis of certain Pennsylvania court decisions became public with Hagens Berman's waiver of work product protection of her hearing testimony. More fundamentally, the same arguments are made throughout the Hagens Berman-authored complaints. Note that I have not taken issue with the redaction of Hagens Berman's Ex. 26 (cited in this paragraph) which is a far more detailed lawyer-to-lawyer discussion of Ms. Reeves's theories for overcoming the time bar, and which was not placed in evidence in the hearings.

¶ *55:*

***Redaction No. 1:*** *Description of basis for Firm's good faith belief in statute of limitations argument (WP)*
***Redaction No. 2:*** *Description of privileged information attached as Exhibit 27 (see Chart of Exhibits, above) (WP)*

> ***Denial Recommended:*** The assertion that the firm believed in its arguments is certainly not something a litigation firm would hope to keep secret from anyone, leastwise the Court and the firm's opponents, and Hagens Berman's assertion of reliance on Gordon & Reeves's work is already public. As to Redaction No. 2, I do not consider the label on an electronic file to be protectable opinion work product, particularly where it is no secret that so many plaintiffs' late-in-life decisions to sue depend on the "New Science" theory.

¶ *68:*

***Redaction 1:*** *Summary of Firm's development of legal theories (WP)*

> ***Denial Recommended:*** This is public information, as demonstrated by Hagens Berman's citations to public documents.

¶ 69:

> *Redaction 1:  Summary of Firm's development of legal theories, including mental impressions and analysis, as discussed in privileged memorandum attached as Exhibit 26 (see Chart of Exhibits, above) (ACP, WP)*
> *Redaction 2:  Summary of Firm's development of legal theories, including mental impressions and analysis, as discussed in privileged memorandum attached as Exhibit 31 (see Chart of Exhibits, above) (WP)*
> *Redaction 3:  Quoting from privileged memorandum attached as Exhibit 31 (see Chart of Exhibits, above) (WP)*

> > ***Partial Denial Recommended:***  The theory broached in this paragraph was fully aired and addressed in *Debra Johnson (Johnson v. SmithKline*, 95 F. Supp. 3d 819 (E.D. Pa. 2015), *aff'd sub nom. Johnson v. GlaxoSmithKline, LLC*, 636 F. App'x 87 (3d Cir. 2016) (not precedential)).  **Redaction 3**, which summarizes material from a work product-protected memorandum, should be permitted as requested.

¶ 71

> *Redaction 1:  Summary of Firm's development of legal theories, including mental impressions and analysis (WP)*
> *Redaction 2:  Quoting from privileged email exchange attached as Exhibit 33 (see Chart of Exhibits, above) (WP)*

> > ***Partial Denial Recommended:***  The theory discussed in this paragraph – fraudulent concealment – is publicly stated throughout this litigation and was also publicly addressed by this Court and the Third Circuit in *Debra Johnson*. (Ironically, Hagens Berman cites the public Westlaw edition of its own Third Circuit brief in support of this redaction.).
> > **Redaction 2**, which quotes a work product-protected memorandum, should be permitted as requested.

¶ 86:  *Description of Ms. Reeves' communications with Mr. Andre, as discussed in typed case notes (ACP, WP)*

> o  ***Denial Recommended***.  The mere statement that Ms. Reeves spoke with her client – as distinguished from the things they said to one another – is not privileged.

¶ 98:

> *Redaction 1:  Summary of privileged memo attached as Exhibit 70 (see Chart of Exhibits, above) (WP)*
> *Redaction 2:  Summary of privileged memo attached as Exhibit 39 (see Chart of Exhibits, above) (WP)*

> > ***Denial Recommended***.  The deposition testimony of Dr. Forrer, an independent witness, was not in any respect privileged.  Moreover, it was an exhibit to an October 2014 Hagens Berman letter motion in (Doc. 411).  If nothing else, the public briefing on that motion eliminates any need to redact a Hagens Berman

associate's quoted conclusory assertion that a witness's deposition testimony "undercut" GSK's factual representations.  Note that I do not suggest that the associate's more granular internal analyses of the facts and issues, Ex. 39 and 70, should be made public.

¶ *169*:

**Redaction 1**:  *Description of the Firm's assessment of a particular client's case, including with respect to elements of claims (ACP, WP)*

**Denial Recommended:**  The particular client, Mr. Garza, is no longer a party, and the sentence does not speak to the claims or circumstances of any present litigant.  Further, the redacted assertions of what Mr. Berman and Hagens Berman "believed" when they filed Mr. Garza's suit are necessary (if not sufficient) elements of what is required before filing a complaint under Pa. R. Civ. P. 1023.1 and Fed. R. Civ. P. 11.  That is not the sort of private strategizing or analysis that the work product doctrine seeks to protect; it is what must be present in every case.

**Redaction 2**:  *Description of the Firm's factual investigation and legal theories, citing to privileged memorandum attached as Exhibit 39 (see Chart of Exhibits, above) (WP)*
**Redaction 3**:  *Description of the Firm's factual investigation and legal theories (WP)*

**Denial Recommended:**  It is a close question, but I recommend denial of these proposed redactions simply because I see nothing, today, that is the least bit "secret" or "trial strategic" in the theory discussed in these passages; it was public knowledge.  Hagens Berman's discovery and discovery motion practice was geared to building a narrative that had thalidomide being distributed more widely and more intensively than previously acknowledged.  *See* Doc. 411, the letter brief relating to Dr. Forrer.

¶ *172*:  *Description of the Firm's assessment of a particular client's case, including with respect to statute of limitations defenses (ACP, WP)*

**Denial Recommended:**  The particular client, Mr. Boiardi, is no longer a party, and the sentence does not speak to or implicate the claims or circumstances of any present litigant.

¶ *181*:  *Description of the status of the Firm's factual investigation and development of specific legal theories as of 2014, as it pertained to a specific client's claim (WP, ACP).  Also cites privileged email exchange attached as Exhibit 104 (see Chart of Exhibits, above) (ACP)*

**Denial recommended:**  Hagens Berman's position on these points is a matter of public knowledge.  The email chain cited is already public.

¶ *182:  Description of correspondence contained within privileged email exchange attached as Exhibit 104 (see Chart of Exhibits, above) (ACP)*

    **Denial recommended:**  To say the least, Ms. Bolton's refusal to dismiss her claims is not a secret.

¶ *184:*
    **Redaction 1:**  *Description of reasons why the Firm withdrew its motion to withdraw in July 2018 (WP)*
    **Redaction 2:**  *Summary of expert opinion with respect to causation of specific client's injuries, citing to privileged materials attached as Exhibit 105. (see Chart of Exhibits, above) (ACP)*

        **Denial recommended as to both redactions:**  The substance of Dr. Stephens's more recent expert report has been published by the former client, Plaintiff Bolton.  *See* Doc. 800.

¶ *188*: Describes the results of the Firm's investigation into Mr. Navamuel's claim and communications with him.  (WP & ACP)

    **Partial Denial Recommended:** Mr. Navamuel is still a litigant, although no longer a Hagens Berman client.  But the first proposed redaction relates to something that is discussed in the now-public testimony in the September 2017 hearing session, the firm's professed belief that it would be able to establish that thalidomide was present in Cuba at a relevant time.  It should not be redacted.

    Whatever relevance the second redaction might have – Ms. Reeves's guesswork – it plainly reflects her mental impressions and theories in a lawyer-to-lawyer memorandum.  I recommend permitting the second proposed redaction in this paragraph.
    .

¶ *193:  Describes the results of the Firm's investigation into Mr. Navamuel's claim. (WP)*

    **Denial Recommended:**  Hagens Berman's failure to find evidence to support its theory was fully aired in the September 2017 hearing.

¶ *203:  Describes communications between the Firm and Mr. Anderson (ACP)*

    **Denial Recommended:**  The correspondence with the client was publicly described at the hearing.  It does not appear to be of the type associated with an expectation of privacy.  The description of "logistical holdups" is neither protected work product nor an attorney-client communication.

*¶ 205:  Describes Firm's mental impressions of the strength of Mr. Anderson's claim (WP)*

   ***Denial Recommended:***  This information was published at the hearing.

*¶ 208:  Describes Firm's communications with Mr. Anderson (ACP)*

   ***Denial Recommended:***  This information was published at the hearing.

*¶ 210:  Describes attorney-client privileged information supplied by Ms. Sells to Plaintiffs on Exhibits 118 and Exhibit 119 (ACP)*

   ***Denial Recommended:***  This information was published at the hearing.

*¶ 214 & 215:  Discusses medical testing that led to Firm's decision that Ms. Sells' claim was not meritorious (WP)*

   ***Denial Recommended:***  The redacted information became public when work product protection was waived.  Parenthetically, it is not accurate for Hagens Berman to assert, in explaining its objection, that the medical testing "led to the Firm's decision" to move to withdraw, when the testing actually failed either to identify a genetic, non-teratogenic cause of the plaintiff's injury or to rule out thalidomide as a cause.

*¶ 219:  Reflects mental impressions of counsel as to client intake and discussion of potential new client (Mr. Flick) (WP)*

   ***Denial Recommended:***  This information does not reflect work product with respect to a party.  Mr. Flick never joined the litigation.

### 3.    Proposed Redactions of Exhibits

**Berman Declaration, Exhibit 2**

Counsel did not provide paragraph-by-paragraph explanations for their proposed redactions from Mr. Berman's 33-paragraph Declaration, Ex. 2.  I will list only those paragraphs as to which I disagree with the redaction decision in whole or part.  I stress that in recommending acceptance or rejection of particular redactions, I am not opining on the truth of the declarant's statements.

**Berman ¶ 15**

>***Partial Redaction Recommended:***  As stated earlier, Mr. Gordon's interest in bringing thalidomide claims in the United States, and considering Hagens Berman as associated counsel, is publicly known.  Although it is a close question, I recommend permitting redaction of the material beginning with "Mr. Gordon described" and ending with the words "bringing the claims."

**Berman ¶ 17**

>***Denial Recommended:***  That four plaintiffs had sued before Hagens Berman brought suit on behalf of 48 more plaintiffs is a matter of record.  While the balance of the sentence relates to Hagens Berman's reasoning in deciding to accept Mr. Gordon's invitation, it says nothing about any particular litigation strategy or Hagens Berman's evaluation of any particular claim.  Accepting Mr. Berman's assertion that he values the business judgment of the Lanier firm, that would seem to be a matter of no particular consequence to the defendants, to the merits, or to the likely outcome of the litigation.

**Berman ¶ 18**

>***Denial Recommended:***  Although this paragraph, discussing what Hagens Berman's research is said to have suggested, might have been protectionworthy as work product in 2011, it is now entirely public because it has been asserted and reasserted in numerous briefs and expert declarations.  There is nothing left to protect here.

**Berman ¶ 19**

>***Partial Redaction Recommended:***  It is beyond obvious that these cases presented challenges with respect to statutes of limitations and causation, that memories do fade and witnesses do disappear.  I recommend redacting the passage beginning "Although Hagens Berman" and ending before the word "doctors," because that phrase describes the firm's non-public activities.

**Berman ¶ 30**

>***Partial Redaction Recommended:***  It is already a matter of record that Dr. Stephens met with Hagens Berman in January 2014.  I recommend permitting redaction of this paragraph beginning after the words "Hagens Berman."

### 4.    Other Exhibits

**Ex. 7:**    ***Denial Recommended:***  There is conflicting (perhaps merely confusing) testimony regarding whether Ms. Reeves resigned or was terminated by Mr. Gordon and Hagens Berman; this email chain discusses Hagens Berman's attitude on that subject, providing internal law firm information not previously of record. Fundamentally, though, the exhibit does not contain or disclose any materials "prepared in anticipation of litigation or for trial" (Fed. R. Civ. P. 26(b)(3)(A)) or,

certainly, any "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at 26(b)(3)(B).  The paragraph is about staffing.

**Ex. 27:**        ***Denial Recommended:***  This is an email from a Hagens Berman employee-accountant authorizing the setup of an account for these cases.  It identifies one of the defendants "and others" and mentions the "New Science" theory that is broadly and publicly invoked throughout the paper record.  It is not protectable work product.

**Ex. 104.**      ***Denial Recommended:***  This email chain is already public.

**Ex. 105.**      ***Denial Recommended:***  The substance of this document was made public by Plaintiff Bolton.

**Ex. 107.**      ***Denial Recommended:***  This document is a hearing exhibit.

**Ex. 115.**      ***Denial Recommended:***  This is a hearing exhibit.

**Ex. 116.**      ***Denial Recommended:***  This is a hearing exhibit.

**Ex. 117.**      ***Denial Recommended:***  This is a hearing exhibit.

**Ex. 118.**      ***Denial Recommended:***  This is a hearing exhibit.

May 16, 2024                              /s/ *William T. Hangley*
                                          WILLIAM T. HANGLEY
                                          SPECIAL DISCOVERY MASTER