**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 2:11-cv-05782-PD |
| v. ) | and all related cases |
| ) | |
| SMITHKLINE BEECHAM CORPORATION ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPORT AND RECOMMENDATION**
**OF THE SPECIAL DISCOVERY MASTER RE: PROPOSED REDACTIONS FROM**
**2017 AND 2019 HEARING TRANSCRIPTS**

### I.      Introduction

This Report and Recommendation ("R&R") relates to transcripts of hearings in these

consolidated cases, conducted partly *in camera* in September 2017 and May 2019.  Judge

Diamond has ordered the law firm of Hagens Berman Sobel Shapiro LLP ("Hagens Berman") to

submit, for the Court's and my review, copies of the transcripts, "redacted only to preserve past

and present Hagens Berman clients or potential clients' attorney-client privileges" (Doc. 817),

that is, *not* redacted for work product protection.

Hagens Berman proposes redactions that stray from this limitation.  This R&R suggests

redactions that I believe will bring the transcripts into compliance with the Court's Order.

### II.      Discussion

A decision to exclude parties, the press or the public from a court proceeding, as

happened here, is a weighty one; public access to trials and evidentiary hearings is rooted in our

Constitution and ancient common law, *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3d

Cir. 1984), and the transcripts of such proceedings are plainly "court records" within the

meaning of *Publicker Industries* and *In re: Avandia Marketing, Sales Practices and Products Liability Litigation,* 924 F.3d 662 (3d Cir. 2019).

Here, the initial purpose of the 2017 evidentiary hearing was to address Hagens Berman's motions to withdraw from representing several of its plaintiff clients based on unspecified "professional considerations."[1]  The District Court, when assigning these motions to me for R&R purposes, instructed me to "evaluate, *inter alia*, when Hagens Berman first learned that the firm's continuing prosecution of these cases would purportedly be untenable under rule 1.16(a)(1) of the Pennsylvania Rules of Professional Conduct."  Doc. 532 at 3.[2]  To address these subjects, Hagens Berman would surely find it necessary to disclose attorney work product and, probably, privileged attorney-client communications.  Defendants did not oppose my decision to

---

[1] Hagens Berman's contested motions to withdraw, initially six in number, were reduced to five by the death of Plaintiff John Skelton.  I sometimes refer to the remaining respondents – Plaintiffs Richard Anderson, Terrie Bolton, John Marshall, Jose Navamuel and Mary Sells – as "the Five Plaintiffs," "the Five," or "Respondent Plaintiffs."

[2] It is an understatement to say that, by the time of this Order, the District Judge had become skeptical about the reliability of Hagens Berman's representations to the Court.  *See* Doc. 256 (discussing reasons for appointing a Special Master).  Hagens Berman had already lost, surrendered, or moved to disassociate itself from the claims of 25 of the 48 plaintiffs whose complaints it had filed in the consolidated actions.  *See* Docs. 182, 207, 265, 277-78, 301, 305, 325-28, 332, 342, 362, 372-75, 382, 440-41, 488.  Hagens Berman had also agreed to surrender the claims of almost all the remaining plaintiffs against the GlaxoSmithKline defendants ("GSK") in exchange for GSK's agreement to drop and forgo sanctions claims against Hagens Berman.  *See* Docs. 394 (notice of GSK agreement), 396 (opinion and preliminary order), 535, *Johnson v. SmithKline Beecham Corp. ("Johnson"),* 2016 WL 4426164 (R&R). The sanctions requests were not window dressing; the three such requests that had reached Court's disposition had been granted.  Docs. 483-84, *Johnson*, 2015 WL 1004308, *approving and adopting* Doc. 414, *Johnson*, 2014 WL 6851277 (R&R).  Defendants had filed dispositive motions against several more of the plaintiffs (Docs. 259, 272, 274, 291, 312, 415-16, 456, 461, 469), again seeking sanctions against Hagens Berman in most instances.  The Court had denied those motions without prejudice and with leave to renew them after the resolution of certain matters before the Special Master.  Doc. 474.  Similarly, a motion for judgment against Respondent Plaintiff Mary Sells and for sanctions against Hagens Berman, Doc. 459, is in suspense pending the resolution of the withdrawal motions.

proceed *in camera*; indeed, they agreed to be excluded from the hearings.  Doc. 546.  But even with all participants consenting, the rights of the public and the press had to be considered.  *See, e.g., Publicker Indus.*, 733 F.2d at 1065-66.  I was confident that the protection of work product and the attorney-client privilege warranted proceeding *in camera.*

However, excluding the defendants and the public from the hearing was not enough.  The Five Plaintiffs had five unique stories, each a half century in the writing, and each also, presumably, presenting unique reasons for Hagens Berman's desire to leave its client unrepresented mid-litigation.  Preserving the confidentiality of each of the Five Plaintiffs' attorney-client communications and their now-estranged attorneys' related work product required that the Five be prevented from hearing the testimony regarding one another's cases.  And this, in turn, meant that the Special Master and counsel for the participants had to work together to prepare multiple nonidentical iterations of the resulting transcripts, each uniquely redacted to permit its particular audience to read all the evidence it was entitled to read without trespassing on anybody else's privilege or attorney work product protection.[3]

But it became clear at the initial hearing sessions , that the District Court's "when learned" and "why not sooner" questions were not going to be answered adequately by the witnesses Hagens Berman called in support of its withdrawal motions.  Those witnesses, notably Steve Berman and the late Nicholas Styant-Browne, were eager to place the responsibility for counsel's obligatory presuit investigations – adequate or not – on people who were not in the room, non-Hagens attorneys in Texas and Australia.  That meant that additional lawyer witnesses and a deeper dive into the presuit investigation process and results would be called for with

---

[3] The hearing-management and transcript-redaction processes are described in more detail in Doc. 746 at 14-16, *approved and adopted, objections overruled,* Doc. 749.

respect to the Five Plaintiffs' cases and the litigation in general. And then, stunningly, it was revealed that a Hagens Berman partner, Tyler Weaver, had given false testimony and presented a falsified exhibit on the very first day of the 2017 session, and had lied to his client years earlier. *See* Doc. 588. This made the choreography of the 2019 sessions not just complicated, but exquisitely so. From witness to witness, from topic to topic, hearing participants – defendants, Respondent Plaintiffs, other present and past plaintiffs, and other witnesses – had to exit or reenter the courtroom (or break off or reconnect their remote hookups) in my effort to learn facts and preserve privileges at the same time.

And, of course, the selective redacting of the resulting transcript reached new expensive, time-consuming and generally maddening levels of complexity for all concerned.

All that custom tailoring came to naught when, at some point after the adjournment of the 2019 hearing, Hagens Berman gave copies of the 2017 and 2019 transcripts and exhibits – entirely unredacted copies – to a testifying expert witness, who would consider them in formulating an opinion, writing the report required by Fed. R. Civ. P. 26(a)(2), and testifying under oath.

It is worth noting that, right from the start, Hagens Berman intended that its expert's ultimate testimony would be adverse to active parties litigant on both sides of the "v." – the Five Plaintiffs *and* the defendants. Here is how the expert summarized his assignment in his expert report:

> [Y]ou have asked me to address the following: (i) whether Hagens Berman had a good faith basis to bring lawsuits on behalf of its clients starting in 2011 for injuries allegedly suffered as a result of exposure to Thalidomide; (ii) whether Hagens Berman's continued prosecution of these cases up until the time it sought to withdraw was appropriate; and, (iii) whether it was appropriate for Hagens Berman to seek leave to withdraw from representing these plaintiffs when it did due to information obtained during discovery.

Doc. 743 at 1.[4]  Obviously, the Five Plaintiffs would be unhappy when the expert told the Special Master and the Court (apropos question (iii)) that "Hagens Berman no longer had a meritorious claim that these plaintiffs' injuries were caused by exposure to Thalidomide," and "it was appropriate for Hagens Berman to seek leave to withdraw from representing these plaintiffs when it did due to information obtained during discovery." *Id.* at 13.   But the defendants would be every bit as unhappy with the expert's accompanying assertions (apropos questions (i) and (ii)) that "Hagens Berman had a good faith basis to bring lawsuits on behalf of its clients starting in 2011 for injuries allegedly suffered as a result of exposure to Thalidomide, [and] to continue to prosecute them as long as it did." *Id.*  Defendants had been contending for years that Hagens Berman had no business bringing its clients' claims in the first place, that the plaintiffs' cases should be dismissed and Hagens Berman should be sanctioned.  *See* Note 2, *supra.*  Remarkably, Hagens Berman wanted its expert witness to argue the contrary positions to the Court while defendants remained oblivious to what he was saying, much less his evidentiary basis for saying it.  That is not how Rule 26 works.

The test for waiver of work product protection by disclosure is whether "the work product is shared with an adversary or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." *BouSamra v. Excela Health*, 210 A.3d 967, 978 (Pa. 2019); Restatement (Third) of the Law Governing Lawyers § 91(4) ("Restatement").  The case law in this Circuit is clear: By giving the expert access to the transcripts and exhibits and opening the door to the extraordinary disclosures and discovery by adversaries to which testifying experts are amenable under Fed. R. Civ. P. 26(a)(2) and 26(b)(4),

---

[4] The unredacted expert report is filed under seal at Doc. 744.  The publicly available version (Doc. 743) is redacted to preserve attorney-client privilege.

Hagens Berman waived protection of any work product disclosed in those previously confidential transcripts and exhibits.[5]  The defendants and the Five Plaintiffs (and, indeed, the press and public) had every right to scrutinize the evidence the expert considered.

However, Hagens Berman did not and could not waive its clients' or former clients' attorney-client privileges when it used their communications against them in the withdrawal motions.  *See* Restatement § 79, Cmt. c.: "Unauthorized disclosure by a lawyer not in pursuit of the client's interests does not constitute waiver . . . ."; *see also Purcell v. Dist. Att'y for Suffolk Dist.*, 676 N.E.2d 436 (Mass. 1997) (attorney who reported his client's threat to commit arson could not be made to testify at the criminal trial because the disclosure had been proper but unauthorized).

It is a lawyer's sacred duty to guard his clients and former clients' confidential communications assiduously.  Absent an explicit waiver by the client or former client, the governing presumption is that the privilege is intact and the lawyer's lips are sealed.[6]  On the

---

[5] *See In re Chevron Corp.*, 633 F.3d 153, 165-66 (3d Cir. 2011) (disclosure to court-appointed expert witness waived privilege); *United States v. Veolia Environnement N. Am. Operations, Inc.*, 2013 WL 5779653, at *7 (D. Del. Oct. 25, 2013) (disclosure by non-testifying expert to testifying expert); *Fialkowski v. Perry*, 2012 WL 2527020, at *4 (E.D. Pa. June 29, 2012) (Rule 26's protocols for expert disclosure and discovery "trump all claims of privilege, mandating production of all information furnished to the testifying expert for consideration in the formulation of [the expert's] opinions, regardless of privilege.") (citation omitted); *Kontonotas v. Hygrosol Pharm. Corp.*, 2009 WL 3719470, at *1-5 (E.D. Pa. Nov. 4, 2009); *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 263 F.R.D. 190, 197 (E.D. Pa. 2009); *Bio-Tech Corp. v. Thermax, Inc.*, 2008 WL 356928, at *2 (E.D. Pa. Feb. 7, 2008); *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005) (collecting cases).

[6] In civil litigation, a Pennsylvania statute provides that "counsel shall not be competent or permitted to testify to confidential communications made to him by his client [unless] this privilege is waived upon the trial  by the client." 42 Pa. C.S. § 5928.  Outside the litigation context, attorneys are ethically bound to preserve client confidences (privileged or not) in the absence of an explicit client waiver.  Pa. R. Prof. Conduct 1.6.  Rule 1.6(c)(4) does permit disclosure "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a . . . civil claim or disciplinary proceeding against

- 6 -

other hand, the privilege itself is quite limited: "Because the attorney-client privilege obstructs the truth-finding process, [the privilege] is [to be] construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3rd Cir. 1991).  As explained by the Supreme Court:

> The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:
>
>> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981), *quoting Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962).  *See also, e.g., Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer").

In most litigations, the privilege's usual stablemate, work product, is close at hand to enable counsel to mask his own communications and ruminations about the facts learned from the client.  Here, because of Hagens Berman's waiver, that is not an option.  The transcripts require redaction to preserve attorney-client privilege, but cannot be redacted to mask, for example, the attorney's strategic discussions of the client's case with his colleagues and

---

the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client."

consultants, to the extent they are revealed in the transcripts and exhibits that were given to the testifying expert.

In drafting its proposed redactions, Hagens Berman misconstrued this Court-announced limitation, failing to limit its redactions to the "confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice" (*Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011)) that are protected by the attorney-client privilege under Pennsylvania law. In some instances, Hagens Berman seeks to mask attorney-client conversations in which the participants could never have expected confidentiality – content for rules-required verifications or Court-ordered discovery, for example. Additionally, a handful of Hagens Berman's suggested redactions fall within the crime-fraud exception to the attorney-client privilege. But most of Hagens Berman's unwarranted redactions do not cover attorney-client communications at all but, for example, lawyer-to-lawyer statements (or lawyer-to-expert statements) of unprivileged facts.

It was the client parties who were required to disclose the unprivileged facts in *Upjohn*, 449 U.S. at 395-96, and *Philadelphia v. Westinghouse*, 205 F. Supp. at 831. Here, of course, it was the attorneys who testified to many of the facts Hagens Berman would now like to redact under the aegis of the attorney-client privilege. The tacit and paradoxical argument seems to be that wholly *factual* information, unprivileged in the hands of the client, becomes privileged when it falls into the hands of her non-privilege-holding attorney. That is not the law. *Rhone–Poulenc*, 32 F.3d at 864; *see also, e.g., Gates v. Rohm & Haas Co.*, 2006 WL 3420591 (E.D. Pa. Nov. 22, 2006). In *Gates*, a class action, defendant sought discovery of questionnaires, presumably of the type employed (and held to be attorney-client privileged, Doc. 816, *Johnson,* 2024 WL 3440239) in the present cases. The court drew a sensible distinction between the

questions and the answers, and between the written conversation and the facts that populated the

conversation.  The questionnaires, once filled in and returned to the attorneys, "are protected by

the attorney-client privilege," *Gates*, 2006 WL 3420591, at *5, but "the purely factual

information contained on the completed questionnaires is not protected . . . ." *Id.*  The questions

themselves "were created by counsel in anticipation of litigation and, therefore, are protected by

the work product doctrine."  *Id.*[7]  The difference here, of course, is that there is no work product

protection because Hagens Berman waived it.

I have attempted to honor these limitations in recommending the redactions – and the

partial denials of Hagens Berman's proposed redactions – set forth and explained in the attached

Table A.  That table is based on Hagens Berman's own table, submitted to the Court and the

Special Master on July 31, 2024.  I did not review the transcripts independently in search of

additional privileged communications.

November 20, 2024                              /s/ *William T. Hangley*
                                               WILLIAM T. HANGLEY
                                               SPECIAL DISCOVERY MASTER

---

[7] *Accord, e.g., Plavin v. Grp. Health Inc.,* 2022 WL 1911404, at *9 (M.D. Pa. June 3, 2022) ("[Defendant] is not entitled to the communications engaged in by Plaintiffs' counsel with any individuals who contacted Plaintiffs' counsel for legal advice regarding potential representation in the lawsuit but purely factual information obtained from such communications is discoverable from the party/client through interrogatories and the normal processes of discovery").  The *Gates* court, citing the "substantial need" and "undue hardship" qualifiers in Fed. R. Civ. P. 26(b)(2)(a)(ii), gave plaintiffs' counsel a choice of turning over the questionnaires (with redactions not pertinent here) or extracting and producing the "Client Information" from the completed questionnaires.

# Table A

## Recommended Redactions ("R"), Partial Redactions ("RP") and Denials of Redactions ("D")

| SEPTEMBER 26, 2017 BOLTON TRANSCRIPT | | |
|---|---|---|
| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
| Tyler Weaver Testimony | | |
| 20:14-20 | R | Discloses privileged attorney-client communication entitled to redaction ("ACC") |
| 20:24 | D | Does not disclose a privileged attorney-client communication ("NACC"). Identifying the occurrence of an attorney-client communication and its general subject matter ("GSM") sufficiently to "enable other parties to assess the claim" of privilege is not a disclosure of its privileged content. *Cf.* Fed. R. Civ. P. 26(b)(5)(A)(ii). |
| 20:25-21:4 | D | NACC |
| 21:8-21:13 | Redact portions ("RP") | R21:9-21:13 |
| 21:18-21:19 | R | |
| 22:16-22:17 | R | |
| 22:22-22:25 | D | NACC |
| 23:8-23:14 | D | NACC: The stipulations on the record were to unprivileged facts – a plaintiff's date of birth and the death of her parents. |
| 24:14-24:17 | D | NACC, GSM |
| 24:19-20 | D | NACC, GSM |
| 24:22-25:2 | D | NACC, GSM |
| 26:7-26:20 | Redact portions ("RP") | R26:14 (after "conversations")-26:16 (before "And"). The rest is GSM. |
| 27:4 | R | |
| 27:8-27:15 | D | NACC:  A lawyer-witness's denial that a communication occurred, or denial of knowledge whether it occurred, is not evidence ("NE") that it did occur, or of the hypothetical content of the hypothetical communication.  Of course, the questions themselves are not evidence. |
| 28:18-28:25 | R | Discloses content of a client questionnaire ("CQ content") |
| 29:4-29:10 | RP | R29:4-29:8, CQ content. |
| 29:15-29:17 | D | NACC |

| | | |
|---|---|---|
| **SEPTEMBER 26, 2017 BOLTON TRANSCRIPT** | | |
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Tyler Weaver Testimony** | | |
| 29:25-30:2 | RP | R29:25-30:1.  The communication of CQ content is ACC, but the denial that the information was reviewed by counsel is not. |
| 34:15-34:17 | D | NACC.  The question is not evidence. |
| 36:16-36:18 | D | NACC |
| 37:2-37:4 | D | NACC |
| 40:14-40:15 | D | NACC |
| 44:1-44:3 | D | NACC |
| 46:20-46:21 | D | NACC |
| 48:24-48:25 | D | NACC, GSM |
| 49:4-49:5 | D | NACC, GSM |
| 49:16-49:17 | D | NACC. *Note*:  The testimony, which was false, was corrected by the witness after discovery, but that is not a basis for redacting it from the public record. |
| 49:23-50:22 | RP | R50:5-50:9.  Balance is NACC, NE. |
| 51:6-51:7 | D | NACC, NE |
| 51:10-51:22 | D | NACC, NE |
| 52:15-52:17 | R | *Note*: I recommend expanding the redaction to mask the word "that" in 52:15. As submitted by Hagens Berman, the proposed redaction would have changed the meaning of the published testimony. |
| 53:7-8 | D | NACC |
| 54:3-54:5 | D | NACC, NE |
| 65:21-65:23 | D | NACC, NE |
| 66:3-66:6 | R | |
| 66:10-66:18 | RP | R66:10-66:11 (before "If I"). Balance is NACC, NE. |
| 68:2-68:3 | R | |
| 90:15-91:18 | R | CQ content |
| 92:23-93:16 | RP | R92:23-93:13 (before "Do you know") (CQ content). Balance is NACC, NE. |
| 97:13 | R | |
| 101:19-101:25 | D | NACC, NE |

| SEPTEMBER 26, 2017 BOLTON TRANSCRIPT | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Nicholas Styant-Browne Testimony** | | |
| 108:17-109:6 | RP | R108:17-108:22 (before "And it was").  Balance is NACC |
| 109:10-109:15 | D | If the questionnaire's questions are not ACC but work product, as stated in *Gates*, the more ministerial content written by counsel – the identity and address of the law firm that wrote it – are plainly not ACC. |
| 110:1-112:24 | R | |
| 114:11-114:17 | D | NACC, NE.  This was, as the witness said, "merely an administrative inquiry." |
| 114:21 | D | NACC, NE |
| 115:12-115:14 | R | |
| 115:15-115:20 | RPN | R 115:18 (after "I knew that")-115:20.  Balance is NACC. |
| 121:15-121:16 | D | NACC |
| 124:2-124:6 | R | |
| 124:10-124:21 | R | |
| 125:8-126:7 | RP | R125:8-125:18; R125:23 (before "that the drug;" R126:1 (after "existed")-126:2 (before "that the drug").  The balance is NACC. |
| 127:17-130:11 | RP | R127:17-128:8 |
| | | R128:22-130:8.  Balance is NACC |
| 135:2-135:20 | D | NACC |
| 136:1-136:7 | D | NACC |

- 3 -

| SEPTEMBER 27, 2017 SELLS TRANSCRIPT | | |
|---|---|---|
| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
| **Barbara Mahoney Testimony** | | |
| 8:19-8:24 | D | NACC |
| 9:6-9:8 | D | NACC |
| 9:13-9:19 | RP | R9:15 (after "to them)-9:19. Balance is NACC |
| 10:5-10:20 | R | |
| 11:21-12:3 | D | NACC |
| 12:6-12:8 | RP | R12:6 (before "we arranged") |
| 12:23-14:6 | D | This content – a geneticist's report – is NACC, but Hagens Berman asserts that it is protected from disclosure in this action pursuant to an Illinois statute, the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513/15(a).  I have been unable to find any case or other authority for the proposition that a plaintiff choosing to put her physical condition and its causation at issue is entitled under Illinois law to withhold relevant genetic information, nor has Hagens Berman submitted authority suggesting that Illinois privilege law would trump Pennsylvania privilege law in this situation.  Assuming *arguendo* that Illinois law would govern here, the statute does expressly permit disclosure in a range of more or less comparable forensic contexts – criminal matters, some civil rights litigation, workers' compensation cases, public health activities, paternity cases, and "treatments, payment, or health care operations."  *See id.* §§ 513/15(b), 513/22, 513/31.  I do not believe a Pennsylvania court would recognize a privilege against disclosure of this information in this particular context. |
| 14:9-14:10 | D | NACC.  *See* Comment on proposed redaction of Sells Transcript 12:23-14:6 |
| 14:12-15:11 | D | NACC.  *See* Comment on proposed redaction of Sells Transcript 12:23-14:6 |
| 15:16-15:19 | RP | R15:16 (after "Sells").  The balance is NACC |
| 15:21-15:24 | D | NACC |
| 16:9-16 | R | |
| 19:21-20:1 | D | NACC.  *See* Comment on proposed redaction of Sells Transcript 12:23-14:6 |
| 24:10-24:14 | D | NACC, GSM |
| 29:2-29:3 | D | NACC |
| 30:20-31:4 | D | NACC |
| 31:15-31:18 | D | NACC |

| SEPTEMBER 27, 2017 SELLS TRANSCRIPT | | |
|---|---|---|
| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
| **Barbara Mahoney Testimony** | | |
| 31:22-31:23 | D | NACC |
| 32:1-32:2 | D | NACC |
| 32:6-32:12 | D | NACC |
| 32:19-32:22 | D | NACC |
| 32:24-33:4 | D | NACC |
| 33:10-12 | RP | R33:11 (after "little hair")-33:12(before "in her") |
| 33:17-18 | RP | R33:17 (after "teeth, but")-33:18 (before "that was") |
| 33:20-34:9 | D | NACC |
| 34:22-34:23 | D | NACC, NEP |
| 34:25-35:3 | D | NACC and no disclosure of CQ content |
| 35:6-14 | RP | CQ: R35:6 (after "hearing")-35:7 (before "I did") |
| 35:17-35:19 | D | NACC (and no disclosure of CQ content) |
| 36:2-36:4 | D | NACC |
| 36:6-36:9 | D | NACC |
| 36:11-36:12 | D | NACC |
| 36:15-36:17 | D | NACC |
| 36:19-37:6 | D | NACC |
| 37:8-37:9 | D | NACC |
| 37:22-38:1 | D | NACC |
| 38:3 | D | NACC |
| 38:5-38:8 | D | NACC |
| 38:9-38:15 | D | NACC |
| 38:25-39:22 | D | NACC. *See* Comment on proposed redaction of Sells Transcript 12:23-14:6 |
| 40:1-40:8 | D | NACC. *See* Comment on proposed redaction of Sells Transcript 12:23-14:6 |
| 44:4-44:16 | D | NACC; NE; |
| 59:21-60:3 | D | NACC |
| 61:13-61:21 | D | NACC; NE: Denials and inability to recall whether a question was asked are not evidence that it was; hence no communication. |
| 68:8-68:9 | D | NACC |
| 71:7-71:9 | R | |
| 71:12-71:19 | R | |
| 72:7-73:16 | R | |

| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
|---|---|---|
| *SEPTEMBER 27, 2017 SELLS TRANSCRIPT* | | |
| **Barbara Mahoney Testimony** | | |
| 74:9-74:25 | RP | R74:9 (after "time that")-74:10 (before "that she") |
| | | R74:14 (after "deposition")-74:15 (before "it was that") |
| | | R74:24-74:25.  The remainder is unprivileged as NEP.  The testimony that tells what was said in the client's deposition is plainly unprivileged. I may actually have been overly solicitous of the conversants in redacting snippets that might not necessarily relate to attorney-client communications outside the deposition context. |
| 75:2-75:6 | R | |
| 75:9-75:11 | D | NACC |
| 77:18-78:6 | R | |
| 78:8-78:9 | R | |
| 80:6-81:3 | R | |
| 81:17-82:15 | RP | R81:17 (after "but")-81:18 (before "that she had"); R82:2 (before "was that"). R82:11 (after "understood")-82 (before "that her"). The balance is NACC. |
| **Tyler Weaver Testimony** | | |
| 85:21-86:4 | D | NACC |
| 86:7-86:13 | D | NACC |
| 101:12-101:13 | D | NACC |
| 101:20-101:22 | R | |
| **Nicholas Styant-Browne Testimony** | | |
| 109:22-112:4 | RP | CQ Content R109:22-110:15 |
| | | CQ content  R110:19-111:21 |
| | | CQ content  R111:24 (after "developed" and before "thin") |
| | | CQ content  R112:3 (after "injuries" and before "being" |
| 113:9-113:19 | D | NEP: Testimony is about the content of the complaint.  No ACC is disclosed. |
| 114:17-115:2 | RP | R114:17 (CQ content).  The balance is NACC |
| 115:5-115:15 | RP | R115:5-115:7. Balance is NACC, NE |
| 124:13-124:15 | R | |
| 130:22-130:24 | R | |
| 132:8-132:12 | R | |

| SEPTEMBER 27, 2017 SELLS TRANSCRIPT | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Nicholas Styant-Browne Testimony** | | |
| 139:5-139:8 | RP | R139:6 (before "were consistent"). Only the client communication is privileged. The attorney's knowledge or belief is not, in the absence of work product protection. |
| 140:17-141:12 | RP | R140:17-141:10 |
| 141:15-18 | D | NACC |
| 142:2-142:21 | RP | R142:2-142:3 (before "I'm not"). Balance is NACC. |
| 143:1-143:9 | D | NACC |
| 143:16-144:3 | R | |
| 144:19-145:2 | RP | R144:20 (before "I don't"); R144:24 (after "doctors") |
| 147:20-147:23 | D | NACC ; NEP |
| **Mary Sells Testimony** | | |
| 157:2-157:9 | R | |
| 158:4-158:15 | R | |
| 158:16-158:17 | RP | R158:17 (after "they" and before "filed") |
| 161:5-161:7 | R | |
| 161:13-162:12 | D | NACC |
| 163:18-163:21 | R | |

| *SEPTEMBER 28, 2017 ANDERSON TRANSCRIPT* | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Nicholas Styant-Browne Testimony** | | |
| 5:2-5:4 | D | NACC.  Conversations between the attorneys and the testifying expert are not attorney-client privileged, and work product protection has been waived. |
| 6:5-6:7 | D | NACC |
| 6:12-7:4 | D | NACC |
| 7:8-7:10 | D | NACC |
| 8:10-13 | D | NACC |
| 8:20-9:17 | D | NACC |
| 9:22-10:2 | D | NACC |
| 10:15-11:2 | RP | R10:15-10:24.  Balance is an unanswered question. |
| 12:5-12:20 | RP | R12:5-12:14.  Balance is NACC |
| 14:25-18:8 | D | NACC |
| 18:25-19:1 | D | NACC, GSM |
| 19:7-21:2 (HB typo corrected) | RP | R19:8-19:10 (before "Is that"); R19:23-19:24; R20:8-20:12.  Balance is NACC. |
| 21:18-22:1 | RP | R21:18-21:20.  Balance is NACC. |

| *SEPTEMBER 28, 2017 BOLTON TRANSCRIPT* | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Terrie Bolton Testimony** | | |
| 4:22-5:21 | R | |
| 8:23-8:25 | D | NACC when the event is an attorney's voicemail asking the client to call back, and without substantive content. |
| 9:3-9:24 | R | |
| 10:6-10:19 | R | |
| 10:22-11:2 | RP | R10:22-10:23 (before "and then") |
| | | R10:24 (after "email")-10:25 ("before "He wanted"). Balance is NACC.  In particular, the portion of the testimony beginning at 10:25 ("He wanted") does not comport with accepted notions of attorney-client communications; Hagens Berman was attempting to negotiate with Ms. Bolton in its own interests. |
| 11:4-11:8 | RP | R11:5 (after "email" and before "when."  Balance is NACC |

| SEPTEMBER 28, 2017 BOLTON TRANSCRIPT | | |
|---|---|---|
| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
| Terrie Bolton Testimony | | |
| 11:10-11:11 | D | NACC |
| 11:15-12:5 | R | |
| 12:13 | R | |
| 12:20-12:23 | R | |

| SEPTEMBER 28, 2017 MARSHALL TRANSCRIPT | | |
|---|---|---|
| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
| Shelby Smith Testimony | | |
| 9:3 | D | Information provided for interrogatory responses is given with no expectation of privacy ("NEP"), and is not privileged. |
| 9:18-9:21 | D | NEP; Crime-fraud exception ("CFX") |
| 10:16-10:20 | RP | R10:16-10:18 |
| 11:3-12:4 | D | CFX |
| 14:5-14:7 | R | |
| 14:11-14:23 | D | NACC, NEP, CFX |
| 15:5-15:13 | D | NACC |
| 15:22 | D | NACC (no content disclosed) |
| 16:6-17:6 | R | |
| 23:1-23:5 | RP | R23:2 (after "emails,")-23:5 |
| 23:11-23:18 | R | |
| 24:1-24:4 | R | |
| 24:14-24:17 | RP | R24:14 (after "also,")-24:15 (before "I was") |
| 24:22-24:24 | R | |
| 25:1-26:17 | RP | R25:8-25:9 |
| | | R25:13 (after "Marshall")-25:17 |
| | | R25:20 (after "photograph:)-25:22 (before "and from my") |
| | | R26:3 (after "really")-26:4 |
| | | R26:7 (after "able to")-26:8 (before "confirm") |
| | | R26:8 (after "confirm" and before "that the feet:) |
| | | R26:14-26:17 |
| 26:24 | R | |
| 27:8-27:16 | D | NACC |
| 27:22-28:5 | RP | R27:23 (after "understood "and before "as"); |
| | | R27:25 (after "understand")-28:1 (before "and that's") |
| 29:2-14 | R | |
| 29:19-29:25 | D | NACC |

- 9 -

| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
|---|---|---|
| *SEPTEMBER 28, 2017 MARSHALL TRANSCRIPT* | | |
| **Shelby Smith Testimony** | | |
| 30:4-5 | D | NACC |
| 31:25-32:12 | RP | R31:25 (after "true that")-R32:1.  Remainder is NEP, discussion of Ms. Smith's practice when gathering information and preparing discovery responses with a client. |
| 32:22-33:9 | D | NEP.  And, in any event, the *pro se* party's questions are not actually testimony or evidence. |
| 33:22-34:4 | R | |
| **Nicholas Styant-Browne Testimony** | | |
| 44:14-45:5 (HB typo corrected) | RP | R44:14-44:24 |
| | | R45:2 (after "issue,")-45:3 (before "And Dr.") |
| 45:11-13 | R | |
| 45:19-23 | R | |
| 46:17 | D | NACC |
| 46:21-25 | D | NACC |
| 47:17-48:7 | RP | R47:17-47:18 (before "I had no") |
| | | R47:25 (after "related")-48:7. The balance of this passage is unprotected work product and stops short of disclosing any actual ACC. |
| 48:11-48:12 | D | NACC |
| 48:22-48:24 | RP | R48:24 (after "1998 paper") |
| 49:4-49:13 | RP | R49:4-49:7 |
| 49:21-49:23 | D | NACC |
| 52:18-53:1 | D | NACC.  The client's communications with the expert are not ACC-privileged, nor are Mr. Styant-Browne's dealings with the expert. |
| 53:9-53:18 | D | NACC.  The lawyer's reason for communicating a fact to a client is not ACC but work product, here unprotected. |
| 55:9-55:14 | R | CQ content |
| 55:22-57:3 | R | CQ content |
| 57:13-57:24 | R | Note that the ACC here was between Mr. Marshall and attorneys who never undertook to represent him.  It is protected nevertheless. |
| 58:10-59:10 | D | NACC |
| 60:16-60:17 | D | NACC |
| 61:1-61:3 | D | NACC |
| 65:2-65:24 | D | NACC; CFX |
| 66:2-66:4 | R | |

- 10 -

| *SEPTEMBER 28, 2017 MARSHALL TRANSCRIPT* | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Nicholas Styant-Browne Testimony** | | |
| 67:20-67:22 | R | |
| 68:1-68:22 | D | Neither Mr. Marshall's questions nor the witness's lack of recall are evidence or testimony. |
| 70:5-70:18 | R | |
| 72:17 | D | NACC |
| 73:16-73:21 | D | NACC |
| 74:7-74:14 | D | NACC |
| 75:14-75:17 | D | NACC |
| 75:19-75:21 | D | NACC |

| *SEPTEMBER 28, 2017 NAVAMUEL TRANSCRIPT* | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Barbara Mahoney Testimony** | | |
| 9:13-9:15 | RP | R9:13 (before "about") |
| 9:18-9:22 | R | |
| 10:8-10:11 | R | |
| 10:13-10:14 | R | |
| 10:18-10:22 | RP | R10:21 |
| 11:3-11:10 | RP | R11:3 (after "letter") |
| 11:23-12:10 | R | |
| 13:25-14:18 | R | |
| 14:20 | D | NACC, GSM |
| 16:4-16:5 | D | NEP |
| 16:14-16:23 | RP | R16:14-16:19 (before "we provided." The balance is NACC. |
| 17:22-18:13 | R | |
| 18:19-19:1 | RP | R18:19-18:24. |
| 19:3-19:6 | R | |
| 19:13-19:15 | R | |
| 19:19-20:12 | RP | R19:19-20:8 |
| 24:3-24:7 | D | NACC; NEP |
| 24:23-25:18 | R | |
| **Nicholas Styant-Browne Testimony** | | |
| 28:7-28:25 | R | |
| 29:5-29:19 | RP | R29:17 (after "And in") and before "the complaint" |
| 30:15-30:18 | R | |
| 33:20-34:1 | R | |

- 11 -

| SEPTEMBER 28, 2017 NAVAMUEL TRANSCRIPT | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| *Jose Navamuel Testimony* | | |
| 36:22-37:9 | RP | R36:22 (after "life")-37:1 (before "I") |
| | | 37:6 (after "beginning")-37:8 (before "they just") |
| 37:12-37:13 | D | NACC |
| 38:11-38:16 | D | NACC |
| 38:19-38:25 | R | |
| 39:3-39:6 | R | |
| 40:7-40:20 | RP | R40:16-40:20 |
| 41:4-41:6 | D | NACC |

| MAY 7, 2019 TRANSCRIPT | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| *Nicholas Styant-Browne Testimony* | | |
| 118:21-119:9 | D | NACC.  Conversations between counsel are not ACC, and work product protection has been waived. |
| 129:13-129:15 | D | NACC, NEP |
| 129:22-130:20 | D | NACC.  The memoranda and conversations described might be work product (not protected here), but are not attorney-client communications. |
| 131:8-133:19 | D | NACC, NEP |
| 141:12-141:19 | D | NACC |
| 146:15-147:15 | D | NACC |
| 152:1-6 | D | NEP |
| 168:11-171:8 | RP | R169:1 (after "there")-169:3 |
| | | R169:9 (after "fund")-169:10 |
| | | R169:14-169:20 |
| | | R170:7 (after "was filed")-170:15 |

- 12 -

| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
|---|---|---|
| *MAY 8, 2019 TRANSCRIPT* | | |
| **Tyler Weaver Testimony** | | |
| 244:21-244:24 | D | NACC |
| 252:1-253:2 | D | NACC |
| 254:3-254:23 | D | NACC |
| 258:2-4 | D | NACC |
| 258:7-9 | D | NACC |
| 264:6 -16 | RP | R264:6 (after "a lot")-264:8 (before "And it")  The balance is NACC. |
| 265:2-266:17 | R | |
| 279:19-21 | R | |
| 282:3-6 | R | |
| 293:5-14 | R | |
| 294:24-295:2 | D | NACC: The lawyer-to-lawyer discussion of the client's state of mind is work product.  It is not ACC. |
| 296:10-15 | R | |
| 302:19-303:4 | RP | R303:2 (after "house")-303-4 (before "and I sent") |
| 303:9-10 | R | |
| 303:19-22 | R | |
| 342:13-346:8 | RP | R343:8-343-10.  Attorney-expert conversations are not ACC.  Testimony that the attorney does not know whether he spoke to client, or that he did not do so, are also not ACC, and testimony that the attorney did not talk to past or present treating physicians is, again, not ACC. |
| 368:2-6 | D | NACC |
| 368:18-369:18 | RP | R368:18-369:4 (before "Nick") |
| 370:19-371:9 | R | |
| 377:8-380:22 | D | NACC |
| 395:1-13 | D | NACC |

- 13 -

| MAY 9, 2019 TRANSCRIPT | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Diana Cabcabin Testimony** | | |
| 445:5-452:24 | RP | R447:17 (after "Ms. Reeves")-448:10 |
| | | R448:14-451:17 |
| | | R452:9-452:24 |
| 459:12-460:1 | R | |
| 460:15-461:18 | R | |
| 471:5-472:10 | RP | R471:11-472:10 |
| 475:15-477:10 | D | NACC.  The small part of this testimony that mentions a conversation with one of counsel, Ms. Reeves, does no more than attempt to place it chronologically in reference to other events. |
| 478:4-5 | R | |
| 478:14-15 | R | |
| 479:21-480:14 | RP | R 480:2 (after "remember")-480:14 |
| 480:15-481:8 | R | |
| **Kay Reeves Testimony** | | |
| 731:16 | D | NEP |
| 731:22-732:5 | D | NEP.  This and the preceding segment relate to the process of obtaining the client's confirmation of information to be included in a public document, with no expectation that either the occurrence or the content of the communication would be private. |
| 732:20-22 | D | NACC.  Ms. Reeves's drafting of assertions of fact for a complaint was at most work product, not protected here. |
| 733:22-734:1 | D | NACC |
| 734:13-23 | D | NEP |
| 735:18-736:17 | R | |

| MAY 10, 2019 TRANSCRIPT | | |
|---|---|---|
| **Pg/Ln HB Proposed Redactions** | **Special Master's Recommendation** | **Comments** |
| **Kay Reeves Testimony** | | |
| 817:8-821:12 | RP | R820:22-821:8.  The balance of this testimony is about the witness's general practice. The suggested redaction is of ACCs she says she had with all plaintiffs in *these* cases. |

- 14 -

| MAY 10, 2019 TRANSCRIPT | | |
|---|---|---|
| Pg/Ln HB Proposed Redactions | Special Master's Recommendation | Comments |
| **Kay Reeves Testimony** | | |
| 821:16-822:12 | D | NACC because only the occurrence, not the content, of conversations is testified to. |
| 833:24-834:1 | D | NACC |
| 834:24-835:10 | R | It is difficult to determine whether the witness is describing her general practice, or what she would probably do, or describing actual conversations with clients or potential clients in these actual cases. I gave the benefit of the doubt, but the privilege is to be applied parsimoniously, and the Court may disagree with my recommendation. |
| 843:14-16 | D | NACC. After explaining that the PowerPoint exhibit was not used in these cases, and quoting many sentences in it, Hagens Berman redacts (and seems to distinguish) one sentence on a rationale I cannot divine. |
| 843:24-844:14 | D | NACC |
| 845:14-847:18 | D | NACC |
| 851:7-11 | R | |
| 851:18-852:7 | D | NACC. The statement that a letter was sent, without disclosing its content, does not disclose an ACC. |
| 877:23-878:15 | RP | R878:9 (after "2011")-878:15 |
| 880:3-8 | D | NE |
| **Steve Berman Testimony** | | |
| 964:10-16 | R | |
| **Kay Reeves Testimony Resumes** | | |
| 1022:4-1023:20 | D | NACC |
| 1024:11-1028:23 | RP | R1024:15-1024:17 (before "She is") R1024:23 (after "fund")-1024:23 R1026:7--1026:9 R1028:1(after "Barbara")-1028:4 |
| 1029:23-1033:9 | RP | R1030:15 (after "Richardson-Merrell")-1030:16 (before "Hold"). The balance is NACC. |
| 1047:15-1048:13 | D | NE |
| 1066:23-1067:20 | RP | R1067:8 (after "place")-1067:20 (before "And I said") |

- 15 -