**TABLE IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GLENDA JOHNSON ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:11-cv-05782-PD |
| v. | ) | and all related cases |
| | ) | |
| SMITHKLINE BEECHAM CORPORATION ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FURTHER REPORT AND RECOMMENDATION
OF THE SPECIAL DISCOVERY MASTER RE: PROPOSED REDACTIONS FROM
2017 AND 2019 HEARING EXHIBITS**

## I.      Introduction

I have considered Hagens Berman and Steve Berman's Responses and Objections (Doc. 841) to my Initial Report and Recommendation regarding the 2017 and 2019 hearing exhibits (the "August R&R," Doc. 836),[1] and have modified my earlier recommendations in certain respects, discussed below.  As with the August R&R, I am not yet filing any exhibits in the public record, even though I (and Hagens Berman concedes in its Response) that the great majority of them are not entitled to *in camera* or under-seal treatment and a number of them require only partial redactions to preserve attorney-client privilege.  I will place the 2017 and 2019 exhibits (with my amended proposed redactions) in a secure ShareFile available to the Court and to counsel for Berman and Hagens Berman, counsel for Tyler Weaver and counsel for Kay Gunderson Reeves.  I will also send subsets to the clients and former clients involved in

---

[1] No other recipient responded to the August R&R.

these proceedings, so that they can consider my recommendations regarding their putatively

privileged communications without seeing privileged communications of their fellow litigants.

As previously stated, I have not reviewed or offered proposed work product or attorney-

client privilege redactions to the third group of transcripts and exhibits, those from the partly

public/partly *in camera* May 2021 hearing sessions.

I will now address the several objections.

**A.      Bolton Ex. 4:**

**I reject Hagens Berman's proposal** that the first page of this email chain (*i.e.,* the latest

messages in the chain) be redacted.  My reasoning is stated sufficiently in the August R&R.

**B.      Bolton Ex. 7, 8:**

**I reject Hagens Berman's proposal.**  These exhibits, placed in evidence by Ms. Bolton

in the 2017 hearing session, are a hospital discharge summary from 2003 with a primary

diagnosis of "Thalidomide extremity deformity (Bolton Ex. 7), and a series of photographs of

Ms. Bolton's birth injuries (Bolton Ex. 8).  Hagens Berman marked the hospital record

"Confidential" in discovery.  As discussed in detail in the following section (relating to the latest

attempt to suppress Sells Ex. 5), the Stipulated Protective Order ("SPO," Doc. 143) is irrelevant

to the present unsealing issues. Indeed, the Court has expressly ruled, years ago, that Ms.

Bolton's medical records are not eligible for under-seal treatment:

> The Exhibits to the Report & Recommendations will be unsealed
> immediately. . . .  Ms. Bolton apparently raises a general concern
> respecting the confidentiality of her medical records. Insofar as
> this is an objection, it has no basis in law.  See 42 Pa. Cons. Stat.
> § 5929.

Doc. 593, *Johnson*, 2018 WL 9536808, at *1 (E.D. Pa. Mar. 14, 2018) (internal record citations

omitted).

C.    Sells Ex. 5:

**I also reject the suggestion that the SPO justified sealing or withholding the records of Plaintiff Mary Sells's genetic testing in Wisconsin.**  Even in the most recent stages of these proceedings, years after its penchant for misstatements and bootless arguments had contributed to the Court's first decision to impose sanctions (Doc. 483, *Johnson v. SmithKline Beecham Corp.* ("*Johnson*"), 2015 WL 1004308 (E.D. Pa. Mar. 9, 2015), Hagens Berman seems to press every argument that crosses its collective mind without, apparently, first considering whether the argument has any merit at all.  When addressing transcript redactions I was met, on two occasions, with Hagens Berman's insistence that a rarely cited Illinois statute (the Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513/15(a)) barred public access to an exhibit it had used in its attempt to withdraw from representing Ms. Sells.  Exhaustive research yielded no less than six independent and sufficient reasons why the Illinois statue was the wrong tool for the job.  *See* Doc. 824 at 13-14, *Johnson,* 2024 WL 5185344, Table A at "September 27, 2017 Sells Transcript/Barbara Mahoney Testimony" (Initial R&R on Transcript Redactions, Nov. 20, 2024); Doc. 829 at 6-22 (Further Report and Amended Recommendations, Apr. 15, 2025).  Worse yet, careful review of the record made it clear that the firm had adduced materially inaccurate testimony and made materially misleading arguments in support of  its Motion to Withdraw from its Ms. Sells's representation *and* in support of its proposed redactions of transcript testimony pertinent to Ms. Sells' case.  *See* Doc. 829 at 7-13.

Hagens Berman has finally given up on the Illinois statute (*see* Doc. 830 at 1, Response and Objections to the Further Report and Amended Recommendations, May 6, 2025).  But , instead, the firm belatedly trots out a 2013 Stipulated Protective Order (Doc. 143, the "SPO") as

a supposed shield against publication of Plaintiff Mary Sells's (as well as Plaintiff Bolton's) medical records. "Inane" is not too strong a word:

1. Pennsylvania statute, Pennsylvania case law and federal case law all dictate that a plaintiff's medical records are not privileged against disclosure or publication in cases like these. 42 Pa. C.S. § 5929; *In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 155 (E.D. Pa. 2009) ("By bringing suit based on diagnoses of asbestosis, Plaintiffs have essentially released to the world their own medical information and waived any privilege to the privacy of that information."); *Feingold v. SEPTA*, 517 A.2d 1270, 1273 (Pa. 1986) ("[A]ppellant contends that the privilege of communication between a doctor and his patient precludes the admission of such testimony at trial. There is absolutely no merit to this claim, especially where the appellant has brought an action in personal injury and certain medical claims are at issue.").

2. As mentioned earlier, Judge Diamond has long since decided the question of medical records confidentiality in these cases, squarely holding that they are not entitled to under-seal treatment. Doc. 593, *Johnson*, 2018 WL 9536808, at *1.

3. The SPO expressly provides for the discoverability of all plaintiffs' medical information. SPO § II.G.4.

4. The SPO's curbs on the publication of testimony or documents are expressly subject to the action of the Court, *id.* §§ III.A., III.B., VI.B, and the person resisting publication has the burden of proving that confidential treatment is warranted under law, without reference to the terms of the SPO. *Id.* § VI.B.

5. If the SPO had any arguable bearing on the public's access to documents and information regarding any of the 52 original plaintiffs, one would certainly have expected it to be raised by Hagens Berman years earlier in the long life of these consolidated cases: To my knowledge that never happened. There would be a serious question of waiver even if the Court considered entertaining the firm's unserious SPO argument.

Hagens Berman surely knew and understood how SPOs fit into logistics of sophisticated litigation; court-blessed confidentiality agreements like the SPO are a commonplace in the big-ticket litigation in which Hagens Berman claims preeminence.[2]  Generally, SPOs protect sensitive information – trade secrets and competitive business information, for example – from being broadcast to the public and the competition while necessarily being made available to the parties in pretrial discovery.  SPOs give the disclosing party the "first pass" at deciding whether a document in its possession is privileged against public disclosure, but leave the ultimate decision on that question exactly where it belongs – with the Court – and place the burden on the disclosing party to show that the document or information is worthy of protection, as if the confidentiality agreement did not exist.  They do not, in short, make information confidential if it would not have been protected in the absence of an SPO.  But Hagens Berman and Mr. Berman went ahead and threw the SPO into the litigation blender as one more obstacle to the Court's and the Special Master's search for truth.

The SPO argument, like the Illinois statute argument, does exactly what Hagens Berman has done before, "made things worse" with baseless claims and arguments that do nothing other

---

[2] *See, e.g.,* Mr. Berman's fulsome Declaration in support of his and Hagens Berman's Objections to the October 2023 R&R.  Doc. 794 at Ex. 2.

than waste the Court's time and erode the firm's and Mr. Berman's credibility.  *Cf.* Doc. 830 at 8, 16-17; *Johnson*, 2015 WL 1004308, at *5, 10 (Hagens Berman, opposing sanctions, had "made it worse" by arguing to the Special Master a statute of limitations theory that had already been decided adversely by the District Court, and by attempting to invoke the unpleaded "discovery rule" and equitable tolling when the plaintiff had "known for decades that thalidomide caused his injuries.").

There is more that needs to be said about Hagens Berman's persistent attempts to suppress this particular evidence in aid of its attempt to walk away from Ms. Sells's representation.  The science tells us that Ms. Sells's genetic testing had two possible results:  A positive result – a finding of a certain mutation at Gene TP63 – would support a conclusion that Mary Sells's birth injuries were a condition known as ectrodactyly-ectodermal dysplasia ("EEC") that is genetic in origin, not considered attributable to a teratogenic agent like thalidomide.  A negative result would not support that conclusion, although it would not rule out the possibility that the injuries were genetic.  *See* Doc. 829 at 7; Sells Ex. 5 at 3-4 (Shashanna Ndong, M.D.); *id.* at 5 (Nicole Hook); *id.* at 9 (Bruce R. Krawisz, M.D., *Supplemental Information: TP63-Related Disorders via TP63 Gene Sequencing).*

Obviously, a thalidomide plaintiff would prefer the negative result, while the lawyers who wanted to escape a contingent-fee engagement would have an easier time if the result was positive.  And it seems equally obvious that conscientious lawyers would consult their client – however stressed the professional relationship might be – before asking the Court to seal this information.  But even though I raised this ethical concern in an earlier R&R (Doc. 829 at 20-22), I have still seen no evidence that the client, Ms. Sells, had any input at all into Hagens Berman's and Mr. Berman's attempts to keep the genetic test reports  out of the public record.

Ms. Sells is a tenacious and intelligent if unschooled litigant.  On Wednesday, September 3, she wrote directly to Judge Diamond, telling the Court  about the testing and its outcome, among other things.  Doc. 843.  The client plainly does not share the lawyers' desire to hide the exhibit.

> ### D.    Marshall Ex. 12:

**I recommend rejecting Hagens Berman's proposed redaction**.  These are Attorney Kay Reeves's notes about Plaintiff John Marshall's history.  Hagens Berman and the Special Master agree that most of the content of pages 3 and 4 are from Ms. Reeves's interviews of non-clients, while the page 2 content – at least the greater part of it (up to the cryptic "1155" entry) – is from a conversation with Marshall himself.  The balance of page 2 is unintelligible to the neophyte, and I have proposed redacting the entire page as a matter of convenience.  Hagens Berman would like me to continue the redaction onto the next page (through the word "Hurt"), but I see nothing to suggest a greater likelihood that Marshall, rather than an older relative, was the source of the information.  "[B]ecause the privilege obstructs the search for the truth and because its benefits are, at best, indirect and speculative, it must be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979) (citations and internal quotes omitted).  "If the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege". *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1267 (Pa. Super. Ct. 2007), *aff'd by equally divided court*, 992 A.2d 65 (Pa. 2010), *abrogated in other respects by Gillard v. AIG Ins. Co.*, 15 A.3d 44 (Pa. 2011).

**E.    SDM Ex. 1:**

These are Ms. Reeves's notes regarding a number of plaintiffs and potential plaintiffs.

*Ted Mann*:  After review**, I accept Hagens Berman's proposal** that I redact the first sentence on Bates Page Reeves000030567.

*Barbara Murray*:  **I reject the requested redaction and, indeed, propose to unredact the entire discussion of Ms. Murray's situation.**  In my earlier review, I overlooked an important fact:  A few days after the Special Master's October 2023 R&R was filed, Ms. Murray waived attorney-client privilege (at least transactionally with respect to the matter discussed in this exhibit) in a letter to the Court.  Indeed, she offered to testify about her instructions to her then attorneys.  Doc. 775, Email from Barbara Murray to Chambers of Judge Diamond (Oct. 18, 2023).

*Michael Morgan*:  **I reject the proposed redaction**. One can only speculate as to whether the information Hagens Berman seeks to redact came from Mr. Morgan or his parents.  If the latter, it is simply not an attorney-client communication.  Hagens Berman has not carried its burden.

*Paul Haddad*:  **I reject this requested redaction**.  It is not clear from Ms. Reeves's blurb whether she ever actually communicated directly with Mr. Haddad, or how she received the limited information she recites in her note.

**F.    SDM Ex. 2:**

**I reject the proposed further redaction** to Ms. Reeves's notes regarding Michael Morgan for the same reason stated above:  It is impossible to tell whether the fact of the parents' earlier suit and settlement (on Michael's behalf and presumably their own), and the concern that Michael's ongoing payments might be jeopardized if he joined in the thalidomide litigation, were

disclosed to Ms. Reeves by the parents – who spoke with Reeves first – or Mr. Morgan.  Reeves testified concerning the events discussed in these notes, but was not asked who gave her this information.  The burden has not been met.

G.   SDM Ex. 3

These are more Reeves notes:

*Kenneth Crandall*:  **I accept the proposed redaction in part**, but I will not redact the fact of Ms. Reeves's conversation with the potential client, only its content.

*Jerry Harrelson*:  **I reject this proposed redaction**.  Jerry Harrelson was a non-client, the uncle of a potential client.  I cannot tell whether the language following Jerry's name, about the non-client Harrelsons, came from Mark's lips or Jerry's.

*Alan Horridge*:  **I reject this proposed redaction**.  Easily the more logical constructions of Ms. Reeves's sentence scraps is that she "recommended [to unnamed colleagues] against representing" Mr. Horridge, and either that she had never sent Horridge a contingent fee contract or if she had, that Horridge never signed and returned it.  There is nothing privileged here.[3]

*Michael Morgan*:  **I reject this proposed redaction.**  *See* discussion regarding SDM Ex. 2.

*Jose Navamuel* and *Misc.*:  **I recommend accepting the redaction.**  I agree that it is far more likely that the proposed redaction content came from Jose Navamuel than from his aged mother.

H.   **Weaver Ex. 8:**

**I recommend accepting the redaction**.

---

[3] Advice not taken.  Mr. Horridge did become a plaintiff, but Ms. Reeves was not listed as one of his attorneys.  *See* Complaint, *Brust v. Avantor Perf. Mat'ls*, No. 130200838 (C.P. Phila.), *removed to this Court,* No. 13-cv-00758 (Feb. 11, 2013).

**I.      Weaver Ex. 9:**

*Weaver 8/22/2014 email to Volk et al.***:  I reject this proposed redaction**.  Weaver's lamentation on what he has to explain to his client about the quality of her case is not a communication with that client.  It might (I doubt it) be cast as work product, but that protection has been waived.

*Weaver 8/22/2014 email to Connolly*:  **I recommend accepting the redaction**.

**J.      Weaver 14:**

I stand by the analysis stated in the R&R, **and reject the redaction**.

**K.      HB Ex. 11**

**I reject the proposed redaction.**  This entry in a Reeves email recites that a client has approved the filing of her claim as described in a complaint, something that is required as a predicate to filing under Pennsylvania law and, therefore, there was no expectation of privacy.  Without that approval, the attorneys could not and should not have given the affidavits they filed, and Ms. Cabcabin would have had to make the statement under oath.

An Amended Table X follows.  For clarity, I have left my initial recommendations in place and, in bold italics, added my responses to the requested changes.

October 22, 2025                          /s/ *William T. Hangley*
                                         WILLIAM T. HANGLEY
                                         SPECIAL DISCOVERY MASTER

# Amended Table X

# Recommended redactions for attorney-client privilege

**Recommending Redaction ("R"), Partial Redaction ("RP"), or Refusing Redaction (No Code)**

| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
|---|---|---|---|---|
| *SEPTEMBER 26, 2017 BOLTON TRANSCRIPT* | | | | |
| Bolton 1 | 13 | Weaver | | Motion to Withdraw |
| Bolton 2 | 17 | Weaver | | Falsified expert report with Weaver transmittal email |
| Bolton 3 | 20 | Weaver | R | 8/22/2014 Weaver-to-Bolton email summarizing ACCs, a small part of which refers broadly to the misrepresented expert advice.  It is arguable that that portion should be "unredacted," but I do not think that would enhance any reader's understanding of the events or even enable the reader to make sense of the unredacted portion standing alone, so I recommend complete redaction. |
| Bolton 4 | 21 | Weaver | RP | 8/25/2014 Weaver-Bolton email chain.  Most of the content of this exhibit is included in Weaver 14. On a close call, I have concluded that the post-August 22, 2014 portions of this exchange (that is, everything after the already redacted Bolton 3) are not protectable threads in the attorney-client advice tapestry.  Rather, they reiterate the two sides' positions on withdrawal (without the supporting facts or arguments) and the failure of that arms' length negotiation.   ***Request for further redaction rejected by SDM.*** |
| Bolton 5 | 22 | Weaver | R | Client Intake Questionnaire |
| Bolton 6 | 107 | Styant-Browne | | *Spence* Complaint |
| Bolton 7 | 62 | Weaver | | Northwestern Mem'l Hosp. Discharge Summary 6/5/2003, Primary Diagnosis Thalidomide extremity deformity (Lalit Puri, MD) ***Request for redaction rejected by SDM.*** |
| Bolton 8-1 to 8-7 | 62 | Bolton | | Photographs of Ms. Bolton ***Request for redaction rejected by SDM.*** |

| SEPTEMBER 27, 2017 SELLS TRANSCRIPT | | | | |
|---|---|---|---|---|
| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
| Sells 1 | 16 | Mahoney | | Motion to Withdraw |
| Sells 2 | 7 | Mahoney | | Stephens Expert Report, 8/25/2014 |
| Sells 3 | 9 | Mahoney | R | 8/27-28/2014 Mahoney-Sells email exchanges |
| Sells 4 | 11 | Mahoney | | 8/28/2014 Stephens-Sells email . The anatomist discusses the plaintiff's condition with the plaintiff and suggests next steps. The email was forwarded by Stephens to Weaver, then by Weaver to the Hagens Berman team on 8/29. None of these is an attorney-client communication. |
| Sells 5 | 12 | Mahoney | | Packet of reports from Illinois and Wisconsin geneticists, faxed to Mahoney 10/16/2014. ***Request for redaction rejected by SDM.*** |
| Sells 6 | 16 | Mahoney | R | 10/16-17/2014 Mahoney-Sells email exchanges |
| Sells 7 | 71 | Mahoney | R | Client Intake Questionnaire |
| Sells 8 | 112 | Styant-Browne | | *Gunn* Complaint |

| SEPTEMBER 28, 2017 ANDERSON TRANSCRIPT | | | | |
|---|---|---|---|---|
| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
| Anderson 1 | 4 | Styant-Browne | | Motion to Withdraw |
| Anderson 2 | 5 | Styant-Browne | | Stephens Expert Report, 9/15/14 |
| Anderson 3 | 10 | Styant-Browne | R | 9/17/2014 Ltr. from Styant-Browne to Anderson |
| Anderson 4 | | Styant-Browne | R | Client Intake Questionnaire |
| Anderson 5 | 13 | Styant-Browne | | Ltr. from Grünenthal responding to 1/10/2011 Anderson letter |
| Anderson 6 | 12 | Styant-Browne | | *Yeatts* Complaint |

- 2 -

| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
|---|---|---|---|---|
| | | | | *SEPTEMBER 28, 2017 MARSHALL TRANSCRIPT* |
| Marshall 1 | 13 | Smith | | 4/29/2014 Styant-Browne/Shelby email chain re Smith interview of non-client Gwendolyn Marshall |
| Marshall 2 | 17 | Smith | | 4/30 Smith's handwritten notes re telephone conversation (TC) w/ non-client Louise King |
| Marshall 3 | 16 | Smith | R | 5/1/2014 Ltr. from Styant-Browne to Marshall |
| Marshall 4 | 23 | Smith | R | 5/3/2014 Email from Marshall to Smith |
| Marshall 5 | 24 | Smith | R | Doc. linked to Marshall Ex. 4. Wikipedia Page with photo with Smith's notes from conversation with client in the margin. To be clear, I consider a publicly available document, when transmitted to counsel in circumstances like these, to become privileged. Ms. Smith's notes of the related conversation are an independent basis for the redaction. |
| Marshall 6 | 26 | Smith | R | Emails from Marshall to Smith, forwarded to Styant-Browne, transmitting publicly available materials. |
| Marshall 7 | 28 | Smith | R | 5/28/2014 Email from Styant-Browne to Marshall |
| Marshall 8 | 42 | Styant-Browne | | Motion to Withdraw |
| Marshall 9 | 50 | Styant-Browne | R | 8/22/2014 Email from Marshall to Styant-Browne transmitting email exchange with a scholar. The Marshall-Professor correspondence, standing alone, is obviously not attorney-client privileged, and I continue to believe that a pro se litigant (if we view Marshall as one) does not have opinion work product protection under Fed. R. Civ. P. 26(b)(3)(B). *See* discussion in Doc. 782, *Johnson*, 2023 WL 8817639, at *1 (E.D. Pa. Dec. 5, 2023) (SDM). But the next step, Marshall's bringing his dialogue with the academic to the attention of his lawyers, is a communication with counsel on an advice-related subject. |
| Marshall 10 | 54 | Styant-Browne | R | Client Intake Questionnaire |

| SEPTEMBER 28, 2017 MARSHALL TRANSCRIPT | | | | |
|---|---|---|---|---|
| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
| Marshall 11 | 57 | Styant-Browne | R | 12/6/2010 Ltr. from Stephen Raynes, Esq. to Marshall |
| Marshall 12 | 57 | Styant-Browne | RP | Kay Reeves Notes of interviews of Marshall and others.  I believe page 2 reflects Ms. Reeves's privileged communications with Mr. Marshall, but that pages 3-4 are the product of communications with persons other than the client. ***Request for further redaction rejected by SDM.*** |
| Marshall 13 | 59 | Styant-Browne | | *Yeatts* Complaint |
| Marshall 14 | 6 | Smith | | Plaintiff John Marshall's Responses and Objections to Defendant Sanofi-Aventis U.S. LLC's Second Set of Interrogatories, 2/28/2014 |
| Marshall 15 | 35-36, 76-77 | Colloquy | | This document, emailed by Marshall to Hagens Berman's hearing counsel – Marshall's adversary in the context of the hearing – was brought up by Marshall in colloquy with counsel.  It was not initially available in the courtroom. It was later printed out and produced by Hagens Berman's counsel and I received it in evidence.  It is a product description captioned *"(±)-Thalidomide -CAS 50-35-1 -.  Calbiochem Selective inhibitor of TNF-a biosynthesis. ~ Sigma-Aldrich.*"  In retrospect, I should probably have received it in evidence only for identification purposes, if at all, since it was not authenticated and there was no testimony about its content or relevance.  It has no actual evidentiary value. |

- 4 -

| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
|---|---|---|---|---|
| *SEPTEMBER 28, 2017 NAVAMUEL TRANSCRIPT* |
| Navamuel 1 | 5 | Mahoney | | Motion to Withdraw |
| Navamuel 2 | 11 | Mahoney | R | 4/9/2014 Ltr. from Mahoney to Navamuel |
| Navamuel 3 | 12 | Mahoney | | Sanofi's Responses and Objections to Navamuel's First Set of Requests for Admission, First Set of Interrogatories, and First Set of Requests for Production, 7/7/2014 |
| Navamuel 4 | 13 | Mahoney | | GSK's Responses and Objections to Navamuel's First Set of Requests for Admission, First Set of Interrogatories, and First Set of Requests for Production, 7/7/2014 |
| Navamuel 5 | 13 | Mahoney | R | 7/8/2014 Email from Mahoney to Navamuel sending copies of Mahoney Exs. 3, 4. |
| Navamuel 6 | 15 | Mahoney | | Grünenthal's Responses and Objections to Navamuel's First Set of Requests for Admission, First Set of Interrogatories, and First Set of Requests for Production, 7/10/2014 |
| Navamuel 7 | 15-16 | Mahoney | | 7/18/2014 Mahoney-Navamuel email and attached letter.  I do not consider this a privileged communication because it deals solely with the fact that Hagens Berman is moving to withdraw and (prematurely) treats withdrawal as *fait accompli*.  Ms. Mahoney is stating that she and her firm are *not* Mr. Navamuel's attorneys and he must represent himself going forward. |
| Navamuel 8 | 19 | Mahoney | R | Client Intake Questionnaire |
| Navamuel 9 | 30 | Styant-Browne | | Ocala, FL Star-Banner story, "Cubans are Told Drug Thalidomide is Made in United States" 8/2/1962 |
| Navamuel 10 | 8 | Mahoney | | *Spence* Complaint |
| Navamuel 11 | 10 | Mahoney | R | 4/1/2014 Mahoney-Navamuel email transmitting letter |
| Navamuel 12 | 26 | Mahoney | | Navamuel's Responses and Objections to GSK's First  Set of Interrogatories, 11/5/2013 |

| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
|---|---|---|---|---|
| | | | | *MAY 7, 2019 TRANSCRIPT* |
| HB 1 | 56, 59-60 | Styant-Browne | | Stephens's pre-physical exam report on Terrie Bolton, under cover of 8/11-14/2014 Weaver-Stephens email chain.  (Emails heavily redacted by HB before introduction.) |
| HB 2 | 60-61 | Styant-Browne | | Stephens's authentic post-physical report on Terrie Bolton, under cover of 8/21-22/2014 Weaver-Stephens email chain.  (Email heavily redacted by HB before introduction.) |
| HB 3 | 63 | Styant-Browne | | Weaver's tampered version of Stephens's post-physical Bolton Report under cover of Weaver-Bolton email |
| HB 4 | 65 | Styant-Browne | | Stephens's authentic report on Diana Cabcabin |
| HB 5 | 66-67 | Styant-Browne | | Weaver's tampered version of Stephens's Cabcabin report, under cover of redacted 4/22/2014 Weaver-Stevens email chain. |
| HB 6 | 70 | Styant-Browne | | 3/14/2018  Ltrs. from Steve Berman to bar disciplinary authorities Wash., Ore., and Pa. |
| HB 7 | 81 | Styant-Browne | | 4/30/2018 Ltrs. from Office of Pennsylvania Disciplinary Counsel to Alfano and 4/1/2018 Oregon State Bar response letter to Berman and Styant-Browne |
| HB 8 | 99 | Stipulation | | CV of Jeff Whitney, Certified Computer Examiner, eDiscovery Inc. |
| HB 9 | 99 | Stipulation | | 3/8/2018 Whitney Investigative Report to Pietragallo firm |
| SDM 1 | 168 | Styant-Browne | RP | Reeves *"Notes on SOL: Unfiled Americans,"* Reeves Production Bates Reeves000030567-69.  I have redacted all information I consider ACC-privileged. ***Redaction <u>recommended</u> regarding Plaintiff Mann as requested by Hagens Berman.*** ***Earlier partial redaction regarding Plaintiff Barbara Murray <u>withdrawn</u> by SDM.*** ***Redactions <u>rejected</u> with respect to Michael Morgan and Paul Haddad.*** |
| SDM 2 | 171 | Styant-Browne | RP | Reeves notes re Jack Merica, Michael Morgan. Reeves000036302-06.  ***Request for further redaction rejected .*** |

- 6 -

| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
|---|---|---|---|---|
| *MAY 7, 2019 TRANSCRIPT* | | | | |
| SDM 3 | 172 | Styant-Browne | RP | Reeves notes, Reeves000026866-92.  Several clients and potential clients.  ***Further redactions recommended in part, rejected in part as to Mr. Crandall.*** <br> ***Redaction recommended as requested as to Plaintiff Navamuel.*** <br> ***Requests rejected as to Plaintiffs Harrelson, Horridge and Morgan.*** |
| SDM 4 | 141 | Styant-Browne | | 3/24/2014 Ltr. from Sidley to Judge Diamond arguing for dismissal of Murray, Williams, Morgan claims. |
| SDM 5 | 125 | Styant-Browne | | *Spence r*emoval papers including complaint |

| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
|---|---|---|---|---|
| *MAY 8, 2019 TRANSCRIPT* | | | | |
| Weaver 1 | 213, 224 | Colloquy (before Weaver testimony), Weaver | | 7/17/2014 SDM's Discovery Order (Doc. 268). (In advance of taking testimony, the Special Master made preliminary exhibit-by-exhibit rulings on the need to exclude participants from the courtroom.) |
| Weaver 2 | 213, 237 | Colloquy, Weaver | | 8/11-14/2014 Weaver-Stephens redacted email chain (redacted by Weaver to mask information re parties other than Bolton and Cabcabin) |
| Weaver 3 | 213, 242 | Colloquy, Weaver | | 8/18/2014 Weaver-Mahoney-Grueneich redacted email chain (similar redactions by Weaver) |
| Weaver 4 | 213-14, 250 | Colloquy, Weaver | | 8/19/2014 Weaver, Spiegel, Styant-Browne, Bede, Brown, Smith, Mahoney email chain re: availability of thalidomide in 1964. |
| Weaver 5 | 214, 255 | Colloquy, Weaver | | 8/20-21/2014 Weaver-redacted email chain between Weaver, Styant-Browne, Haegele, Smith, Brown, Mahoney re: Bolton. |
| Weaver 6 | 215, 261 | Colloquy, Weaver | | 8/19-21/2014 Weaver-redacted email chain: Weaver-Grueneich-Stephens |
| Weaver 7 | 215, 264 | Colloquy, Weaver | R | 4/21/2014 email from Weaver to Bolton |

- 7 -

| MAY 8, 2019 TRANSCRIPT | | | | |
|---|---|---|---|---|
| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
| Weaver 8 | 215, 270 | Colloquy, Weaver | RP | 8/22/2014 Weaver-Stephens email chain re Cabcabin and attaching authentic 8/22/2014 Bolton report. ***Further redaction recommended as requested.*** |
| Weaver 9 | 215, 279 | Colloquy, Weaver | RP | 8/22/2014 email chain.  Bolton to Berman, Weaver; Weaver to Berman, Brown, Spiegel; fwd Weaver to Andrew Volk, Ivy Tabbara with added text; fwd Weaver to Jennifer Connolly with added text.  The client's email is privileged. ***Further redaction rejected as to email to Volk. Redaction recommended as to email to Connolly.*** |
| Weaver 10 | 215-16, 286 | Colloquy, Weaver | RP | 8/22/2014 Bolton-Berman email chain (same privileged email as in Weaver 9), Berman to Weaver; Weaver fwd to Connolly; Connolly reply. |
| Weaver 11 | 216, 287 | Colloquy, Weaver | | 8/22/2014 email from Weaver to Bolton, with falsified Stephens report (same as Bolton 2, HB 3) |
| Weaver 12 | 216, 292 | Colloquy, Weaver | RP | 8/22/2014 Weaver-Bolton email chain fwd (adding content) Weaver to Styant-Browne, Spiegel; reply Spiegel to Weaver. |
| Weaver 13 | 216, 293 | Colloquy, Weaver | R | 8/22/2014 Weaver-Berman email chain, fwding earlier emails and adding text.  The new content discloses ACC.  The earlier content is already disclosed in or redacted from Weaver 9 as appropriate. |
| Weaver 14 | 216, 295 | Colloquy, Weaver | RP | 4/22-25/2014 Bolton-Weaver email chain.  This is a repetition of most of the content of Bolton 4, discussed earlier.  Except as indicated there, it should not be redacted.  ***The requested further redaction is rejected.*** |
| Weaver 15 | 217, 296 | Colloquy, Weaver | | 4/21-22/2014 Weaver-redacted email chain between Weaver-Stephens  attaching authentic Stephens report re Cabcabin. |
| Weaver 16 | 219, 300 | Colloquy, Weaver | | 8/11-14/2014 Weaver-redacted email chain between Weaver-Stephens, also attaching authentic report re Cabcabin. |
| Weaver 16A | 219, 301 | Colloquy, Weaver | R | 8/15/2014 Cabcabin-Weaver-Grueneich, Styant-Browne email chain |

| MAY 8, 2019 TRANSCRIPT | | | | |
|---|---|---|---|---|
| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
| Weaver 17 | 219, 304 | Colloquy, Weaver | | 8/22/2014 Stephens to Weaver email chain (Weaver 15); fwded Weaver to Grueneich, but with Weaver-falsified report re Cabcabin. (Same as HB 5). |
| Weaver 18 | 219, 309-10 | Colloquy, Weaver | | 8/22/2014 Grueneich response email to Weaver 17. |
| SDM 6 | 363 | Weaver | | 7/1/2014. Weaver & Connolly email chain re: Boiardi Sanctions motion, |
| SDM 7 | 368 | Weaver | RP | 7/24/2014 Weaver & Connolly email chain re: Boiardi, after Weaver fwding his earlier emails sent to Boiardi. |
| SDM 8 | 377 | Weaver | RP | Emails: 8/28/2014 Stephens to Sells; 8/29 Stephens fwd to Weaver; Weaver fwd to Styant-Browne and Mahoney; Mahoney response; Weaver response. |

| MAY 9, 2019 TRANSCRIPT | | | | |
|---|---|---|---|---|
| No. | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
| SDM 9 | 505 | Sampson | | 7/26/2018 Ltr. from Sampson to SDM. ACC Privilege waived. |
| SDM 10 | 570 | Sampson | | Client Intake Questionnaire. Privilege waived. |
| HB 10 | 671 | Reeves | | 10/21/2011 Heavily redacted (by Reeves) email from Reeves to Styant-Browne, Bates HBSS-SAMPSON_00004319-47, reporting Sampson approval of draft complaint language included. |
| HB 11 | 729 | Reeves | | Differently Reeves-redacted copy of HBSS-SAMPSON_00004319-47, reporting Cabcabin approval of draft complaint language included. ***Request for further redaction rejected.*** |
| SDM 11 | 739 | Reeves | | Murray Complaint. |

- 9 -

| | Intro. Pg. | Witness | SDM Rec. | Description/Comment |
|---|---|---|---|---|
| No. | | | | |
| Reeves 2 | 833 | Reeves | R | Gordon & Reeves letter to Sampson transmitting engagement docs and questionnaire, and disclosing risks and other aspects of engagement.  This is an individualized copy of Reeves 6, an ACC-privileged document, but Ms. Sampson has waived privilege.  I believe that waiver is effective as to this copy only, even though, as a practical matter, that conclusion effectively guts the privilege as to the content of each like iteration. |
| Reeves 3 | 839 | Reeves | | Fee Agreement: Not privileged.  *Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) |
| Reeves 4 | 841 | Reeves | R | PowerPoint shown to potential plaintiffs or groups of potential plaintiffs.  This document was not prepared for or communicated to Sampson; hence no waiver.  *See* Tr. 5/10/2021 at 842:22-843:2.) |
| Reeves 5 | 848 | Reeves | | Sampson client questionnaire.  (same as SDM 10).  Sampson has waived privilege. |
| Reeves 6 | 851 | Reeves | | Template for Reeves 2.  The template itself was not communicated to clients or potential clients; it would not become an ACC until it was actually sent to a client.  Before that it was work product.  *See* November R&R at 8-9, 2024 WL 3420591 at *5; *Gates v. Rohm & Haas Co.,* 2006 WL 3420591 at *5 (E.D. Pa. Nov. 22, 2006). |
| Reeves 7 | 852 | Reeves | | Emails Sampson-Reeves 10/11/2018, post-Reeves' withdrawal, re Sampson's search for relevant documents.  The attorney-client relationship had long since expired. |
| Reeves 8 | 856 | Reeves | | Extensive collection of emails from/to Sampson and to/from Reeves, Mahoney and others, mostly in Oct.-Nov. 2011.  ACC and Work Product protection waived. |
| Reeves 9 | 863 | Reeves | | Extensive chain of emails from/to Sampson and Reeves, Sept.-Oct. 2018. |
| Reeves 10 | 877 | Reeves | | Status report letter Gordon & Reeves to Sampson. 10/13/2011. Work Product and ACC privileges waived. |
| Reeves 11 | 885 | Reeves | | Collection of Sampson emails with Mahoney or Reeves, between 2011 and 2013.  Sampson has waived privilege. |

MAY 10, 2019 TRANSCRIPT

- 10 -