**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 2:11-cv-05782 |
| SMITHKLINE BEECHAM CORPORATION, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DIANA CABCABIN'S OBJECTION TO THE OCTOBER 22, 2025 FURTHER REPORT
AND RECOMMENDATION OF THE SPECIAL DISCOVERY MASTER RE:
PROPOSED REDACTIONS FROM 2017 AND 2019 HEARING TRANSCRIPTS**

DIANA CABCABIN, objects to the above referenced report and recommendation and requests to maintain redacted and/or under seal all confidential information in which Ms. Cabcabin has a protectable attorney-client privilege, attorney work product, or privacy interest, as such information was disclosed only at an *in camera* proceeding and the Court's legitimate interest in resolving the issues in this matter can be met without full or further public disclosure of her private information.

The materials that are subject to this objection include the expert reports identified in the appendix at Exhibits HB4 and HB5.  Ms. Cabcabin's legal contentions regarding these materials are set forth in more detail at Doc. 719, which she incorporates herein by reference and attaches in full as **Exhibit A**.

Dated: November 12, 2025                FENWICK & WEST LLP


By: /s/ *Todd R. Gregorian*
Laurence F. Pulgram

(Admitted *pro hac vice*)
Email: lpulgram@fenwick.com
Todd R. Gregorian
(Admitted *pro hac vice*)
Email: tgregorian@fenwick.com

555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:      415.875.2300
Facsimile:      415.281.1350
Attorneys for DIANA CABCABIN

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused to be served the foregoing

**DIANA CABCABIN'S OBJECTION TO THE OCTOBER 22, 2025 FURTHER REPORT AND RECOMMENDATION OF THE SPECIAL DISCOVERY MASTER RE: PROPOSED REDACTIONS FROM 2017 AND 2019 HEARING TRANSCRIPTS**

on all parties by operation of the Court's electronic filing system. Parties may access this filing

through the Court's system.

Dated: November 12, 2025                        */s/ Todd R. Gregorian*

                                                Todd R. Gregorian

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLENDA JOHNSON, et al.     )
               )
    Plaintiffs,     )
               )
   v.         )
               ) CIVIL ACTION NO. 2:11-cv-05782
SMITHKLINE BEECHAM CORPORATION, et )
al.              )
               )
    Defendants.    )
               )

## RESPONSE TO REQUEST OF SPECIAL
## MASTER REGARDING PRIVILEGE ISSUES

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ................................................................................................2

I.      PLAINTIFFS OWN THE RELEVANT PRIVILEGES AT ISSUE AND HAVE NOT WAIVED THEM BY CONSENT OR THROUGH HAGENS BERMAN....4

II.     THE CRIME/FRAUD EXCEPTION DOES NOT DESTROY THE PRIVILEGE FOR THE PLAINTIFFS AS AGAINST THE DEFENDANTS OR OTHERS ......6

III.    THE *IN CAMERA* NATURE OF THE WITHDRAWAL PROCEEDINGS HAS PRESERVED THE PRIVILEGE ..........................................................................10

IV.    THE COURT MAY DECLINE TO CONSIDER PRIVILEGED MATERIAL IF IT DETERMINES IT CANNOT FAIRLY DO SO WITHOUT PUBLIC DISCLOSURE ...................................................................................................14

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ainsworth v. Vasquez*,
759 F. Supp. 1467 (E.D. Cal. 1991).................................................................................11

*CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP*,
No. 11-4753, 2013 WL 315716 (E.D. Pa. Jan. 28, 2013).................................................2

*Chevron Corp. v. Salazar*,
275 F.R.D. 437 (S.D.N.Y. 2011) .......................................................................................9

*CSX Transp., Inc. v. Gilkison*,
No. 5:05-CV-202, 2009 WL 1528190 (N.D.W.V. May 29, 2009)......................................9

*Diversified Grp., Inc. v. Daugerdas*,
217 F.R.D. 152 (S.D.N.Y. 2003) .....................................................................................14

*El-Masri v. United States*,
479 F.3d 296 (4th Cir. 2007), *cert. denied* 552 U.S. 947 (2007)....................................15

*Fraidin v. Weitzman*,
93 Md. App. 168 (1992) ..................................................................................................14

*Harrison Conference Servs., Inc. v. Dolce Conference Servs., Inc.*,
806 F. Supp. 23 (E.D.N.Y. 1992) ....................................................................................17

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*,
805 F.2d 120 (3d Cir. 1986)............................................................................................11

*In re Chevron Corp.*,
633 F.3d 153 (3d Cir. 2011)............................................................................................10

*In re DiLoreto*,
No. 98-34541F, 2002 WL 34573858 (E.D. Pa. Bankr. May 3, 2002)................................5

*In re Grand Jury*,
705 F.3d 133 (3d Cir. 2012).............................................................................................7

*In re Grand Jury Empanelled Feb. 14, 1978*,
603 F.2d 469 (3d Cir. 1979).............................................................................................15

*In re Grand Jury Proceedings*,
417 F.3d 18 (1st Cir. 2005)............................................................................................7, 8

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*In re Grand Jury Proceedings*,
604 F.2d 798 (3d Cir. 1979)...................................................................................................5, 7

*In re Grand Jury Subpoena*,
696 F. App'x 66 (3d Cir. 2017) ...............................................................................................7

*In re Grand Jury Subpoenas*,
144 F.3d 653 (10th Cir.) .........................................................................................................7

*In re Impounded Case (Law Firm)*,
879 F.2d 1211 (3d Cir. 1989)...............................................................................................8, 9

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-02002, 2014 WL 6388436 (E.D. Pa. Nov. 17, 2014).............................................4

*In re Sealed Case*,
107 F.3d 46 (D.C. Cir. 1997)...................................................................................................7

*In re Teleglobe Commc'ns Corp.*,
493 F.3d 345 (3d Cir. 2007)....................................................................................................2

*In re Tire Workers Asbestos Litig.*,
125 F.R.D. 617 (E.D. Pa. 1989)..............................................................................................4

*Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*,
953 F.2d 1004 (5th Cir. 1992) .................................................................................................1

*Interfaith Hous. Del., Inc. v. Town of Georgetown*,
841 F. Supp. 1393 (D. Del. 1994)............................................................................................6

*Johnson v. SmithKline Beecham Corp.*,
No. 08-md-02002, 2018 WL 9536806 (E.D. Pa. Feb. 26, 2018).............................................5

*Johnson v. SmithKline Beecham Corp.*,
No. 2:11-cv-005782, 2019 WL 4233629 (E.D. Pa. Feb. 14, 2019)......................................8, 9

*Johnson v. SmithKline Beecham Corp.*,
No. 2:11-cv-005782-PD, 2017 WL 2729272 (E.D. Pa. Jan. 23, 2017) .................................11

*Karimian v. Time Equities, Inc.*,
No. 10–3773, 2011 WL 1900092 (S.D.N.Y. May 11, 2011)..................................................12

*Leduc Gifts & Specialty Prods, LLC v. Sachs*,
Nos. 15-2743, 15-2744, 2017 WL 11502319 (D. Minn. June 5, 2017)..................................12

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Meyerhofer v. Empire Fire & Marine Ins. Co.*,
    497 F.2d 1190 (2d Cir. 1974)..................................................................................................14

*Navient Sols., LLC v. Law Offices of Jeffrey Lohman, P.C.*,
    No. 1:19-cv-461, 2020 WL 1172696 (E.D. Va. Mar. 11, 2020)...............................................9

*Pellegrino v. U.S. Transp. Sec. Admin.*,
    No. 09-5505, 2015 WL 2124911 (E.D. Pa. May 6, 2015)........................................................10

*Republic Gear Co. v. Borg-Warner Corp.*,
    381 F.2d 551 (2d Cir. 1967).....................................................................................................5

*Rusinow v. Kamara*,
    920 F. Supp. 69 (D.N.J. 1996) ...............................................................................................12

*Sabre Int'l Sec. v. Torres Advanced Enters. Sols. LLC*,
    219 F. Supp. 3d 155 (D.D.C. 2016) .......................................................................................12

*Sackman v. Liggett Grp., Inc.*
    173 F.R.D. 358 (E.D.N.Y. 1997) .............................................................................................6

*Schnell v. Schnall*,
    550 F. Supp. 650 (S.D.N.Y. 1982)...........................................................................................5

*Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*,
    190 F. Supp. 3d 491 (M.D. Pa. 2016) ....................................................................................10

*Skloff v. Bickley*,
    No. 85-5555, 1986 WL 14999 (E.D. Pa. 1986) ......................................................................14

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*,
    464 F. Supp. 2d 164 (E.D.N.Y. 2006) ...................................................................................12

*United States ex rel. Bolognese v. Brierley*,
    412 F.2d 193 (3d Cir. 1969).....................................................................................................5

*United States v. Bergrin*,
    No. 08-md-02002, 2011 WL 4368970 (D.N.J. Sept. 19, 2011)................................................7

*United States v. Breslin*,
    No. 96-CR-202, 1997 WL 299442 (E.D. Pa. June 2, 1997) ...................................................12

*United States v. Cortese*,
    614 F.2d 914 (3d Cir. 1980).....................................................................................................11

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*United States v. Cuthbertson,*
651 F.2d 189 (3d Cir. 1981) (Seitz, J., concurring) ...............................................15

*United States v. Zolin,*
491 U.S. 554 (1989) ...................................................................................................6

*Weinberger v. Provident Life & Cas. Ins. Co.,*
No. 97–9262, 1998 WL 898309 (S.D.N.Y. Dec. 23, 1998) ....................................17

*Yeatts et al. v. SmithKline Beecham Corp. et al.,*
No. 11-6711 ................................................................................................................2

**STATUTES AND RULES**

Fed. R. Civ. P. 26 .............................................................................................................13, 17

**OTHER AUTHORITIES**

1 ATTORNEY-CLIENT PRIVILEGE: STATE LAW PA. ...........................................................4

2 ATTORNEY-CLIENT PRIVILEGE IN THE U.S. ............................................................14, 15

Edna Selan Epstein, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT
DOCTRINE (6th ed. 2017) ...........................................................................................5

Fed. R. Civ. P. 26 .............................................................................................................13, 17

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS. ..........................................1

3 WEINSTEIN'S FEDERAL EVIDENCE ...............................................................................14

This brief responds to the Special Master's June 11, 2020 request for the Plaintiffs' positions regarding privilege and other issues affecting his potential consideration of the Expert Report submitted by Hagens Berman. (Doc. 713.)

The Plaintiffs whose rights are placed at issue by the proposed disclosure potentially include Diana Cabcabin, Terrie Bolton, Carolyn Sampson, Mary Sells, John Marshall, and Jose Navamuel. The undersigned counsel represents only Ms. Cabcabin but has consulted with the other Plaintiffs and their counsel regarding this brief at the Special Master's instruction and pursuant to the Plaintiffs' common interest in the withdrawal proceedings. Ms. Cabcabin voluntarily dismissed her claims against Defendants with prejudice on August 15, 2014. (*See* Doc. 319.) The other Plaintiffs' claims remain pending. Ms. Cabcabin and Ms. Sampson testified at the May 2019 hearing. Ms. Bolton, Ms. Sells, Mr. Navamuel and Mr. Marshall received the exhibits from that hearing, and all but Mr. Navamuel appeared. Hagens Berman moved to withdraw as to Ms. Bolton, Ms. Sells, Mr. Navamuel, and Mr. Marshall. (Docs. 207, 301, 342, 375, 382.) The Court has not ruled finally on these motions, but Ms. Bolton and Mr. Marshall have elected to proceed against the Defendants *pro se*. (Doc. 356.) Ms. Sampson has both testified publicly and filed a separate action against Hagens Berman that may place her individually privileged materials at issue. (Transcript of May 9, 2019 Hearing at 493:15-17 (Doc. 696) ("And Ms. Sampson's testimony is in large part, if not entirely, public.").) She thus stands in a different position from the other Plaintiffs, and we understand her counsel, who has appeared in this proceeding, intends to file a separate response with her positions.[1]

---

[1] By suing Hagens Berman, Ms. Sampson has placed her own privileged materials at issue and most courts hold Hagens Berman may use those in defense of her claims. However, this exception acts as a selective waiver for the attorney only; the communications remain privileged as to others. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 83 cmt. e (2000); *Indus.*

For purposes of this brief it was assumed "that the Expert Report offers opinions on the propriety of the filing of, continued prosecution of, and withdrawal from the thalidomide cases at issue, and that the author of the Expert Report received and considered the unredacted transcripts and exhibits from the September 2017 and May 2019 hearing sessions, including evidence received *in camera*." (*See* Doc. 713 at 3.) Moreover, the Plaintiffs understand that Hagens Berman expects to file a brief that represents that: (1) the Expert Report does not discuss or rely on the portions of the hearing concerning the conduct of Tyler Weaver to which the Defendants had access; and (2) Hagens Berman has offered the Expert Report to defend itself in the proceedings specifically regarding the motion to withdraw, and not for any other purpose.

## SUMMARY OF ARGUMENT

No privilege has been waived by the disclosure to the expert or the submission of the Expert Report for the *in camera* withdrawal proceedings, and the Special Master is free to consider the report in those proceedings without disclosing them to the Defendants or others. Plaintiffs own the relevant privileges and have not waived them, either by consent or by participating at the Special Master's direction in proceedings that were designated and consistently treated as *in camera*. Indeed, Plaintiffs' individual privileges have to date been upheld, and their individually-

---

*Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co*., 953 F.2d 1004, 1007 (5th Cir. 1992) (malpractice suit against one's attorney does not waive the privilege with respect to third parties; also, a complaint is not waiver in and of itself unless confidential communications are revealed). Moreover, a joint client may not "unilaterally waive the privilege as to any of the other joint clients' communications or as to any of its communications that relate to other joint clients." *In re Teleglobe Commc'ns Corp*., 493 F.3d 345, 363 (3d Cir. 2007) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75(2) cmt. e); *see also CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP*, No. 11-4753, 2013 WL 315716, at *1-2 (E.D. Pa. Jan. 28, 2013) (applying *Teleglobe* to Pennsylvania privilege law). While all Plaintiffs shared Hagens Berman's work in many respects, Plaintiffs John Marshall, Diana Cabcabin, and Carolyn Sampson were also co-plaintiffs in the complaint filed October 27, 2011 in *Yeatts et al. v. SmithKline Beecham Corp. et al.*, No. 11-6711.

privileged materials sequestered, even as against their co-Plaintiffs.  Hagens Berman's use of the information in the Expert Report prepared for its own defense in those same proceedings also did not effect a waiver.  Whether or not Hagens Berman has the right to use privileged material in its own defense, disclosing that material to an expert for use in an *in camera* proceeding should not breach the privilege.

Moreover, there are no other bases to find a waiver.  The crime/fraud exception does not usually apply to waive the client's privileges where the attorney committed the wrongful conduct in furtherance of his own interest and without the client's participation.  But even if the Special Master follows the authority that holds the exception *can* apply in such a circumstance, it is only communications in furtherance of the crime or fraud that would be implicated, and Plaintiffs are advised that the Weaver misconduct is not addressed in the Expert Report.[2]  Further, the case law still favors use of procedures, such as the *in camera* proceedings here, that allow the use of the privileged material for investigation of the crime or fraud while still protecting the client's legitimate, ongoing interests in confidentiality.  Several Plaintiffs continue, and are rightly entitled, to maintain claims against Defendants for serious, life-altering conditions they attribute to Defendants' conduct, without invading their privileges.

If the Special Master concludes that he cannot fairly consider the unredacted Expert Report for some issue without permitting others to review its privileged portions, then the proper course would be to decline to consider the redacted privileged material as to that issue.  This circumstance could occur if Hagens Berman sought to use the privileged material specific to one Plaintiff to justify the reasonableness of its conduct as to other Plaintiffs who have not seen it but who remain adverse to Hagens Berman on the motion to withdraw.  We are not aware that this has happened,

---

[2] Ms. Cabcabin and her counsel have received only a redacted version of the Expert Report.

3

and Hagens Berman has advised that it has not, so this does not present an issue that appears to need solving.

The Defendants' potential interest in viewing the material as part of their merits discovery or for any other purpose, however, is not a circumstance that warrants disclosure.  The withdrawal proceedings concern Hagens Berman's obligations to its clients and the Court.  They have rightly been conducted *in camera.*  Defendants have no direct interest at stake.  And their access to privileged material could prejudice the Plaintiffs in the presentation of Plaintiffs' claims against the Defendants.  To the extent that the Special Master is provided with information *in camera* that could conceivably pertain to an issue relevant to Defendants, the Special Master will do what is customarily done with materials reviewed *in camera* that do not become part of the public record: exclude their content from future consideration in determining the rights of persons who were not present.  That does not prejudice Defendants, who retain their rights on the merits, and with respect to any other issues that concern them, when those issues proceed.

## I.  PLAINTIFFS OWN THE RELEVANT PRIVILEGES AT ISSUE AND HAVE NOT WAIVED THEM BY CONSENT OR THROUGH HAGENS BERMAN

As an initial matter, Plaintiffs, as the holders of the privileges, have not waived them.[3]  With respect to attorney-client privilege, "[i]t is the client who holds the privilege, and, therefore, only the client who can decide to waive the privilege." *In re Processed Egg Prods. Antitrust Litig.*, No.

---

[3] There are at least three protections at issue in the materials the Special Master has considered: the attorney-client privilege, the work product protection, and privacy.  The Special Master has ruled that the relevant privacy protections for Plaintiffs' medical information were waived when Plaintiffs filed suit.  (Doc. 683.)  Plaintiffs do not here waive any rights with respect to the privacy issue but understand it to be outside the scope of this assignment.  With respect to the other two protections, in a diversity action, federal courts apply state privilege law. *See In re Tire Workers Asbestos Litig.*, 125 F.R.D. 617, 621 (E.D. Pa. 1989).  However, Plaintiffs have not identified any relevant privilege issues on which Pennsylvania law differs from federal common law as applied by the Third Circuit. *See, e.g.*, 1 ATTORNEY-CLIENT PRIVILEGE: STATE LAW PA. § 8:2 (Pennsylvania courts follow federal law in recognizing the crime/fraud exception).

08-md-02002, 2014 WL 6388436, at *10 (E.D. Pa. Nov. 17, 2014)) (citing *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 90 (3d Cir. 1992)).  Likewise, although Hagens Berman has an interest in its own work product, the Plaintiffs have an interest in any work product that implicates their confidences.  *In re Grand Jury Proceedings*, 604 F.2d 798, 801 (3d Cir. 1979) ("To the extent a client's interest may be affected, he, too, may assert the work product privilege.").  The Special Master has upheld these principles throughout the withdrawal proceedings.  *See Johnson v. SmithKline Beecham Corp.,* No. 08-md-02002, 2018 WL 9536806 at *2 (E.D. Pa. Feb. 26, 2018) (holding, regarding both work product and privileged communications, "Ms. Bolton[] holds the privilege, and she has not waived it.").  Here, therefore, the Plaintiffs own the privileges at issue. And they confirm as part of this filing that they did not and do not consent to the disclosure of their privileged information for the Expert Report, nor was their consent sought.  Waiver is "an intentional relinquishment or abandonment of a known right or privilege."  *United States ex rel. Bolognese v. Brierley*, 412 F.2d 193, 197 (3d Cir. 1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  Plaintiffs have not waived here.

Nor can Hagens Berman consent to waive the privilege on Plaintiffs' behalf.  A lawyer's unauthorized disclosure does not waive the privilege.  *See In re DiLoreto*, No. 98-34541F, 2002 WL 34573858, at *6-7 (E.D. Pa. Bankr. May 3, 2002) (attorney's testimony did not waive privilege where client did not explicitly or implicitly authorize the testimony); *Schnell v. Schnall*, 550 F. Supp. 650, 653 (S.D.N.Y. 1982) (attorney's unauthorized disclosure to the SEC did not waive).

The attorney is typically treated as having implied authority both to assert the privilege and to disclose privileged communications *in the course of representing the client*. *E.g.*, *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967); *see also* Edna Selan Epstein, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, 116 (6th ed. 2017)

("[T]he courts assume that an attorney has the authority and obligation to act on the client's behalf in terms of both asserting or waiving the privilege").  But that authority is limited to the scope of the representation.  *See Sackman v. Liggett Grp., Inc.* 173 F.R.D. 358, 365 (E.D.N.Y. 1997) (paralegal's self-interested disclosure of a document for payment did not waive the privilege); *cf. Interfaith Hous. Del., Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1399 (D. Del. 1994) (agent can only waive privilege if the agent is acting within the scope of her authority).  Here, both in creating the Expert Report and submitting it to the Special Master, Hagens Berman acted on its own behalf, without authorization, and not in furtherance its representation of Plaintiffs (which it was attempting to terminate) or as their agent.  Further, Hagens Berman made both disclosures as part of an *in camera* withdrawal proceeding in which its interests remain adverse to at least some of the Plaintiffs.  Accordingly, while Plaintiffs contend that the *in camera* nature of these proceedings leaves no possible basis to find any waiver of their privileges, Plaintiffs  are in any event not bound by Hagens Berman's unauthorized disclosures, even assuming counsel's disclosures might waive the privilege under other circumstances.

## II.   THE CRIME/FRAUD EXCEPTION DOES NOT DESTROY THE PRIVILEGE FOR THE PLAINTIFFS AS AGAINST THE DEFENDANTS OR OTHERS

As discussed, Plaintiffs understand (based on communications with Hagens Berman's counsel) that the Expert Report does not discuss Tyler Weaver's conduct or the related materials or testimony that the Special Master has ruled are not privileged pursuant to the crime/fraud exception.  Given that, and for the further reasons below, the crime/fraud exception does not apply to waive privilege over the Expert Report.

The crime/fraud exception removes the protection of the attorney-client privilege for communications where a client consults a lawyer to further an illegal or fraudulent act.  *See United States v. Zolin*, 491 U.S. 554, 563 (1989).  In the Third Circuit, a party seeking discovery of

6

privileged material under this exception must show "a reasonable basis to suspect that [1] the *privilege holder* was committing or intending to commit a crime or fraud and [2] that the attorney-client communications or attorney work product were used in furtherance of the alleged crime or fraud." *In re Grand Jury*, 705 F.3d 133, 153 (3d Cir. 2012) (emphasis added); *see also In re Grand Jury Subpoena*, 696 F. App'x 66, 70 (3d Cir. 2017); *United States v. Bergrin*, No. 08-md-02002, 2011 WL 4368970, at *6 (D.N.J. Sept. 19, 2011) (rejecting application of crime/fraud exception, among other reasons, because government failed to show client's involvement in attorney's communication with witnesses).

The Third Circuit thus generally follows the majority rule that "[t]he crime-fraud exception requires the *client's* engagement in criminal or fraudulent activity," and "the privilege is not lost solely because the client's lawyer is corrupt." *See, e.g., In re Grand Jury Proceedings*, 417 F.3d 18, 23 (1st Cir. 2005) (emphasis in original); *see also In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir.), *cert. denied sub nom. Anderson v. United States*, 525 U.S. 966 (1998); *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997). Under that rule, the lawyer's criminal conduct or fraud—particularly if undertaken in his or her own interest and not the client's—is treated as an *ultra vires* act to which the crime/fraud exception does not apply. It does not destroy any of the privileges or protections as to materials an innocent client wishes to keep confidential.[4] In *In re Grand Jury Proceedings*, for example, the First Circuit confronted the following facts:

> In the course of a grand jury investigation ... a lawyer ("Lawyer I") directed his client ("Client A") to commit perjury in testifying before the grand jury, after initially advising him to tell the truth. The same lawyer has also represented another client ("Client B") who might or might not have some connection with the earlier

---

[4] This rule is consistent with the Third Circuit's separate treatment of client and attorney conduct when analyzing the crime/fraud exception. For example, it has observed that "there may be circumstances in which [an] attorney, without knowledge of his client's illegal activity, might ... properly claim and prevail in asserting a work product privilege" even when his client cannot. *In re Grand Jury Proceedings*, 604 F.2d at 802 n. 5.

7

perjury ... Lawyer I [later] told Client A to recant the false testimony. Lawyer I did so after consulting with Lawyer II, who represented ... other clients (collectively "Group C") variously connected with Client B and with pertinent events.

417 F.3d at 19. The issue was whether the crime/fraud exception applied to waive the privilege as to Client B or Group C. *Id.* at 19-20. The court held that "[t]he crime-fraud exception requires the *client's* engagement in criminal or fraudulent activity and the *client's* intent with respect to attorney-client communications." *Id.* at 23 (emphasis in original). Applying this standard, it found that reasonable cause had been shown to pierce the privilege as to Client B (though it suggested the district court may employ some protective measure against further disclosure if the facts ultimately exonerated Client B), but not as to Group C, for whom no direct involvement was shown. *Id.* at 24.

As the Special Master has already noted, one Third Circuit case has held that an attorney's misconduct without the client's knowledge waived privilege under the crime/fraud exception, at least with respect to a criminal investigation of that conduct. *See Johnson v. SmithKline Beecham Corp.*, No. 2:11-cv-005782, 2019 WL 4233629, at *8 (E.D. Pa. Feb. 14, 2019) (discussing *In re Impounded Case (Law Firm)*, 879 F.2d 1211 (3d Cir. 1989)). In that case, the Third Circuit held that a law firm under criminal investigation could not invoke the attorney-client privilege to prevent review of evidence against it, notwithstanding the fact that the "pertinent alleged criminality [was] solely that of the law firm." 879 F.2d at 1213. That said, the court did *not* hold that the government's showing was also sufficient to forfeit the privilege of an innocent client. *See In re Grand Jury Proceedings*, 417 F.3d at 23 n.5. As the Special Master has recognized, there are good reasons not to treat an attorney's independent misconduct as a waiver of the client's privilege, and those are heightened where the clients are not the beneficiaries of the misconduct but rather the intended victims:

8

> [T]he present cases demonstrate the potential unfairness of completely obliterating the innocent client's privilege simply because her attorney chose to snooker her. Here, eradicating the privilege in its entirety would create an informational windfall for the Defendants, solely because of the suspected self-serving conduct of the attorneys at the expense of their clients.

*Johnson*, 2019 WL 4233629, at *8. *In re Impounded Case (Law Firm)* did not present this heightened concern, as this Court also noted: "presumably, the suspected criminal or fraudulent conduct occurred in the course of an attempt to advance the client's interest." *Id.* at *8. Moreover, there are other circumstances that distinguish this case from that one. There is no indication that the disclosures in *In re Impounded Case (Law Firm)* threatened to prejudice the client's legitimate interests in an ongoing civil proceeding. That case concerned a criminal investigation, unlike this one, which involves a withdrawal proceeding focused specifically on upholding the *clients'* rights, in addition to the attorney's duties to the Court. Thus, *In re Impounded Case (Law Firm)* should be read as describing a limited extension of the crime/fraud exception that does not necessarily apply in its entirety here.[5]

That said, even if *In re Impounded Case (Law Firm)* did apply, the Third Circuit left open the possibility that concerns about the client's interests could be "resolved pursuant to established procedures," such as *in camera* review. 879 F.2d at 1214-1215. That is exactly what should happen here, where the Plaintiffs have done nothing to justify vitiating their privileges.

In light of all this, there is no indication that the crime/fraud exception should apply to pierce Plaintiffs' privileges over information in the unredacted Expert Report. No party has

---

[5] It is notable, too, that cases purporting to follow *In re Impounded Case (Law Firm)* have tended to involve facts where the client was also implicated in or knew about the illegal conduct. *See Navient Sols., LLC v. Law Offices of Jeffrey Lohman, P.C.*, No. 1:19-cv-461 (LMB/TCB), 2020 WL 1172696, at *6-7 (E.D. Va. Mar. 11, 2020) (Report & Recommendation) *adopted in relevant part* 2020 WL 1917837 (E.D. Va. Apr. 20, 2020); *CSX Transp., Inc. v. Gilkison*, No. 5:05-CV-202, 2009 WL 1528190, at *6 (N.D.W.V. May 29, 2009); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 452 (S.D.N.Y. 2011).

suggested that the Plaintiffs participated in or had knowledge of any misconduct—two of them touched the fraud, at most, as victims.  The Expert Report is also reported to contain no information regarding Mr. Weaver's conduct or the communications that were already ordered to be disclosed under the crime/fraud exception.  Furthermore, the fact that some communications are found subject to the crime/fraud exception does *not* effect a broad subject-matter waiver over all attorney-client communications and work product regarding the same topic.  Instead, as previously noted, the crime/fraud exception waives privilege only for those communications that furthered a crime or fraud, *In re Chevron Corp*., 633 F.3d 153, 166 (3d Cir. 2011), and which rise above mere unethical conduct, *see Pellegrino v. U.S. Transp. Sec. Admin*., No. 09-5505, 2015 WL 2124911, at *3 (E.D. Pa. May 6, 2015) (finding no legal authority for an "attorney misconduct exception" to work-product protection in the Third Circuit) (dicta), *rev'd en banc on other grounds*, 937 F.3d 164 (2019); *Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc*., 190 F. Supp. 3d 491, 435 n.13 (M.D. Pa. 2016) (consideration of sanctions for unauthorized practice of law did not implicate the crime/fraud exception).  Accordingly, the Special Master's ruling that the Weaver materials were subject to the crime/fraud exception does not suggest that the unredacted Expert Report also implicates the exception.[6]

III.   **THE *IN CAMERA* NATURE OF THE WITHDRAWAL PROCEEDINGS HAS PRESERVED THE PRIVILEGE**

Neither the Plaintiffs nor Hagens Berman have waived the Plaintiffs' privilege over the redacted Expert Report materials by participating in the Court's *in camera* withdrawal proceeding.

---

[6] Were there any question about applying the crime/fraud exception here, the Special Master would then need to make an individualized determination with respect to each of the redactions in the Expert Report before making any further disclosures.  Absent Plaintiffs' involvement in the crime/fraud, and absent any basis for a subject matter waiver, individual assessments would be required.

The Special Master carefully structured both hearings and related discovery and briefing precisely to protect and maintain Plaintiffs' privileges to the extent not previously lost.[7] The Special Master even preserved the individual Plaintiffs' confidences vis-à-vis each other, with whom they shared common interests and attorneys, in addition to the Defendants, with whom they were adverse. Defendants have identified no defect in those proceedings that would give rise to a waiver.

The case law is quite clear that "[r]eview of allegedly privileged matters *in camera* does not terminate the attorney-client privilege and is an appropriate way in which to consider matters that may involve the privilege." *Ainsworth v. Vasquez*, 759 F. Supp. 1467, 1473 (E.D. Cal. 1991) (citing *United States v. Zolin*, 491 U.S. 554 (1989)); *see also In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 125 n.2 (3d Cir. 1986). The Third Circuit, in particular, has noted that *in camera* proceedings would be "meaningless" if they were not protected. *United States v. Cortese*, 614 F.2d 914, 922 (3d Cir. 1980). Indeed, the Special Master has noted correctly that "it is too well settled for adult discussion that a court's *in camera* review of documents or other information does not destroy privilege." *Johnson v. SmithKline Beecham Corp.*, No. 2:11-cv-005782-PD, 2017 WL 2729272, at *5-6 (E.D. Pa. Jan. 23, 2017) (citing *Zolin*, 491 U.S. at 568-69).

---

[7] *See, e.g.,* Docs. 575-581; 663 at 2; 664 at 2 ("I remind counsel that I will not disclose the produced documents to anyone other than Judge Diamond unless and until I determine that they were never privileged or, if they were, that any privilege has been lost by reason of the client's conscious waiver, the operation of the crime-fraud exception to privilege, or some other cause"); 665 at 2 ("Because some if not all of the hearing evidence will be received *in camera,* some attendees will be excluded from parts of the proceeding. Similarly, the transcript of the proceedings will require my pre-distribution review and redaction to assure that the confidentiality of evidence is preserved where that is called for."); 689 at 8 ("If I determine that the witness's response to that question is likely to be privileged and not covered by the crime-fraud exception, I will excuse the necessary individuals from the room for that portion of the hearing in order to protect the privileged testimony") & n.4 ("Defendants may participate in the proceeding and have access to the evidence 'to the extent that such testimony or documents implicate the crime-fraud exception'") (citing Doc. 644 at 17; see also Doc. 662 at 2).

Accordingly, with the sole exception of communications and testimony that the Special Master has already designated as public under the crime/fraud exception, such as Mr. Weaver's, the testimony and disclosures *in camera* did not breach any privilege. Plaintiffs did not waive their privileges by attending the *in camera* hearings, testifying at them at the Special Master's direction, or otherwise participating.

Moreover, Hagens Berman has represented that it submitted the Expert Report to defend itself with respect to the *in camera* withdrawal proceedings, and not for any other purpose. Considering withdrawal proceedings *in camera* is common, for obvious reasons: confidential information about the attorney-client relationship is often at their core. *E.g.*, *Leduc Gifts & Specialty Prods, LLC v. Sachs*, Nos. 15-2743 (JRT/DTS), 15-2744 (JRT/DTS), 2017 WL 11502319 (D. Minn. June 5, 2017); *Sabre Int'l Sec. v. Torres Advanced Enters. Sols. LLC*, 219 F. Supp. 3d 155, 159 (D.D.C. 2016); *Karimian v. Time Equities, Inc.*, No. 10–3773, 2011 WL 1900092, at *7 (S.D.N.Y. May 11, 2011); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F. Supp. 2d 164, 165–66 (E.D.N.Y. 2006); *United States v. Breslin*, No. 96-CR-202, 1997 WL 299442, at *3 (E.D. Pa. June 2, 1997); *Rusinow v. Kamara*, 920 F. Supp. 69, 72 (D.N.J. 1996).

The expert here received access to the *in camera* privileged materials in connection with giving an opinion *in camera,* about a subject matter (withdrawal) that the Court is adjudicating (to the extent possible) *in camera*. Mere submission of the Expert Report for that purpose at this stage should not be deemed a waiver. The cases considered by the Special Master in his June 11, 2020 order do not change this result. (*See* Doc. 713 (citing *Fialkowski v. Perry*, No. Civ. A. 11–5139, 2012 WL 2527020 (E.D. Pa. June 29, 2012); *Kontonotas v. Hygrosol Pharm. Corp.*, No. CIV. A. 07-4989, 2009 WL 3719470 (E.D. Pa. Nov. 4, 2009); *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 263 F.R.D. 190, 196–97 (E.D. Pa. 2009); *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D.

176 (D. Del. 2003); *Netjumper Software, L.L.C. v. Google, Inc.*, No. 04-70366CV, 2005 WL 3046271, at *1 (S.D.N.Y. Nov. 10, 2005).) In those cases, the disclosures to the expert were made in the client's interest, as part of the representation, for the case on the merits, to be determined in public hearings between the disclosing party and their adversaries. Those disclosing parties, therefore, had already affirmatively decided to advance a position that placed privileged communications at issue in a public forum. No such decision has been made here. Further, in those cases, fairness required the adversary's access to the information disclosed as the expert was being offered *against that adversary.* Not so here. One can also imagine a wide range of subjects on which a district court may benefit by receiving expert opinion testimony *in camera* concerning privileged communications. The conclusion that Rule 26 *necessarily* effects a waiver of the privilege the moment protected communications are given over to a testifying expert for an *in camera* proceeding would defeat the court's access to such testimony. There is certainly no indication in the text of Rule 26 that its authors intended it to apply so inflexibly.[8]

The concern that underlies the Rule 26(a)(2)(B) waiver rule is that parties should not be allowed to use the privilege as both a sword and shield; specifically, they should not be allowed to present the fact-finder with an expert's conclusion while preventing a litigation opponent from examining its underlying factual basis and supporting analysis. That concern is not present here, where the only present issue is withdrawal.

Moreover, given the *in camera* nature of the withdrawal proceedings, it is clear that Hagens Berman's preparation of the Expert Report to defend itself should not be extended into any waiver

---

[8] To the contrary, the 2010 amendments, which limited discovery of certain privileged and work product information, such as draft expert reports and communications between a testifying expert and the party's counsel (Fed R. Civ. P. 26(b)(4)(B)-(C)), reflect an intent to *uphold* privileges except where necessary to prevent unfairness in the litigation.

outside of those proceedings. In *Meyerhofer v. Empire Fire & Marine Ins. Co.*, 497 F.2d 1190 (2d Cir. 1974), the Second Circuit held an attorney has a limited right to use privileged materials to defend against allegations of wrongful conduct made by someone other than the client. *See id.* at 1195; *see also*, 2 ATTORNEY-CLIENT PRIVILEGE IN THE U.S. §§ 9:57-58. At least one court in this district has also recognized this "self-defense exception" to the privilege:

> [T]he Code of Professional Responsibility narrows the client's protection from that recognized at common law insofar as it authorizes disclosures not only when the client challenges the attorney's competence or integrity, but whenever he is accused of wrongful misconduct. This "self-defense" exception serves various functions including the attorney's interest in being able to defend himself, while at the same time promoting the truth-finding process.

*Skloff v. Bickley*, No. 85-5555, 1986 WL 14999, at *9 (E.D. Pa. 1986) (allowing attorney to defend securities and RICO claims with client confidential information). But unlike a client's malpractice claim, where a third party challenges the attorney's conduct and the attorney is permitted to disclose confidential information, that disclosure *is not treated as a waiver*. *See* 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.33; *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 161 n.7 (S.D.N.Y. 2003) (attorney's disclosure of privileged information to defend against misconduct claims was not a waiver) (citing *Meyerhofer*, 497 F.2d 1190); *Fraidin v. Weitzman*, 93 Md. App. 168, 230-231 (1992) (attorney permitted to testify about client communications "without waiving [client's] privilege").

For these reasons, the Special Master should conclude that the use of an expert to offer an opinion *in camera* about Hagens Berman's conduct insofar as it pertains to withdrawal, even one based on privileged information, does not effect a waiver.

## IV. THE COURT MAY DECLINE TO CONSIDER PRIVILEGED MATERIAL IF IT DETERMINES IT CANNOT FAIRLY DO SO WITHOUT PUBLIC DISCLOSURE

If the Special Master determines that, having received the Expert Report *in camera*, it

14

would be unfair to consider a portion of it for any purpose without public disclosure, the proper outcome would be to disregard that portion for that purpose. This is a typical use of *in camera* inspection: the court is often called on to review material for a limited purpose and disregard it when assessing the merits or other issues. *See United States v. Cuthbertson*, 651 F.2d 189, 198 (3d Cir. 1981) (Seitz, J., concurring) (discussing evaluation of privileged documents and noting that "Given … the deeply held privacy interest or privilege of the person opposing disclosure, I believe that a district court should consider *in camera* material to be in its possession for a limited purpose only"); *see also In re Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474-475 n.7 (3d Cir. 1979) (court may assess Defendant's assertion of his 5th Am. privilege *in camera* without compromising the merits); *El-Masri v. United States*, 479 F.3d 296, 305-306 (4th Cir. 2007), *cert. denied* 552 U.S. 947 (2007) (court assesses state secrets privilege *in camera*; if it applies, the information is then "absolutely protected from disclosure" and not considered on the merits). This is what courts and Special Masters do every day in determining the validity of privilege assertions: they review privileged documents, determine whether they must be produced, and then do not themselves consider the contents of the undisclosed materials on other issues that may arise in the case. *See* 2 ATTORNEY-CLIENT PRIVILEGE IN THE U.S. § 11:15 (describing role of *in camera* review to resolve privilege disputes).

One such circumstance would be if Hagens Berman had sought to rely on one Plaintiff's individually privileged materials to justify its conduct vis-à-vis a different Plaintiff. Under the rules scrupulously applied to this *in camera* proceeding to date, Plaintiffs have had access only to their own privileged materials and to common interest materials that do not implicate the individual confidential information of another Hagens Berman client. If, for example, Hagens Berman were to advance a position regarding its withdrawal from Ms. Sells that relies on Ms.

15

Bolton's privileged information, while at the same time withholding that information from Ms. Sells, that would be unfair. In that circumstance, if Ms. Bolton's consent to share the information could not be obtained, the Special Master should decline to consider the information as to Hagens Berman's withdrawal for Ms. Sells to protect Ms. Bolton's interest in confidentiality. To be clear, Plaintiffs are not aware of any instance in which Hagens Berman has sought to use the privileged material of one Plaintiff in respect of another in this manner. And Hagens Berman has reported that it has not done so. But if it did, the proposed course set forth here remains available to the Special Master due to the fact these proceedings are *in camera*.

Similarly, if the Special Master concluded that there was prejudice to the Defendants' ability to protect their interest on any issue as against use of privileged information in the Expert Report, then the Special Master may and should decline to consider the Expert Report on that issue. As with other privileged material received *in camera*, the Special Master would simply not rely on that information vis-à-vis a party who has not had an opportunity to confront it. The fact that the Special Master had received that information, when offered for a purpose that is within the privilege, does not mean that he must or may consider it as to Defendants or others for any other, non-privileged reason.

But it bears emphasis that there is no apparent reason that Defendants would, in fairness, need access to the Expert Report or any privileged material in it in order to protect against that information. Defendants have not offered any reason why it is necessary to let them invade the privilege of their litigation opponents. Any benefit the Defendants might get from using the motion to withdraw to conduct fact discovery on the merits, or in support of other requests for relief, are both incidental and contrary to the purpose of an *in camera* hearing.

This conclusion is unremarkable. One overriding justification for considering evidence on

16

a motion to withdraw *in camera* is precisely to prevent the prejudice that would result from its disclosure to the client's litigation opponent. *See Weinberger v. Provident Life & Cas. Ins. Co.*, No. 97–9262, 1998 WL 898309, at *1 (S.D.N.Y. Dec. 23, 1998) ("[I]t is appropriate for a Court considering a counsel's motion to withdraw to consider *in camera* submissions in order to prevent a party from being prejudiced by the application of counsel to withdraw"); *Harrison Conference Servs., Inc. v. Dolce Conference Servs., Inc.*, 806 F. Supp. 23, 25-26 (E.D.N.Y. 1992) (rejecting defendants' request for access to documents submitted to the court in support of a withdrawal motion). Here, if any material considered *in camera* is also subject to discovery for the cases that continue—*i.e.*, "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" (Fed. R. Civ. P. 26(b)(1))—Defendants' interest in obtaining it can be met once the proceedings have concluded.

## CONCLUSION

For the foregoing reasons, the Special Master should conclude that the unredacted Expert Report may be considered *in camera* in connection with the withdrawal proceedings, and that its submission has not waived the privileges that would otherwise attach to the redacted portions. If the Special Master concludes he cannot in fairness consider the Expert Report for any other purpose without exposing its privileged information, then he should not consider it for such other purpose, rather than disclose privileged information the protections for which Plaintiffs have not waived.

17

July 9, 2020

Respectfully submitted,

FENWICK & WEST LLP


By: */s/ Laurence F. Pulgram*
      Laurence F. Pulgram
      (Admitted *pro hac vice*)
      Email: lpulgram@fenwick.com
      Todd R. Gregorian
      (Admitted *pro hac vice*)
      Email: tgregorian@fenwick.com

555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350
Attorneys for DIANA CABCABIN

**CERTIFICATE OF SERVICE**

I, Laurence F. Pulgram, certify that on this date I caused to be served the foregoing

**RESPONSE TO REQUEST OF SPECIAL MASTER REGARDING PRIVILEGE ISSUES**

on all parties by operation of the Court's electronic filing system.  Parties may access this filing

through the Court's system.


July 9, 2020

*/s/ Laurence F. Pulgram*
Laurence F. Pulgram
