# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| GLENDA JOHNSON, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:11-cv-05782-PD |
| v. | ) | And All Related Cases |
| | ) | |
| SMITHKLINE BEECHAM CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' RENEWED MOTION TO REALLOCATE SPECIAL MASTER'S FEES AND COSTS

Defendants Grünenthal GmbH ("Grünenthal"), GlaxoSmithKline LLC and

GlaxoSmithKline Holdings (Americas) Inc. ("GSK"), and Sanofi-Aventis U.S. LLC ("Sanofi")

(collectively, "Defendants") respectfully submit this Renewed Motion to Reallocate the Special

Discovery Master Fees and Costs.

Defendants previously requested that the Court reallocate the Special Master's fees and

costs to reflect that financial responsibility for the extensive proceedings over the past several

years should be borne by Hagens Berman Sobol Shapiro LLC ("Hagens Berman") rather than

Defendants.  The Court denied that motion without prejudice on the basis that it was not ripe

until rulings had been made as to which parties were culpable.  Mem. (the "2018 Mem.") (Dkt.

No. 624); Order (the "2018 Order") (Dkt. No. 625).

Defendants respectfully submit that this issue is now ripe for decision.  After review of

the Special Master's Report and Recommendation (Dkt. No. 767), the Court has determined  that

Hagens Berman's conduct may go beyond sanctionable to criminal.  *See* Mem. Op. (Dkt. No.

835) (referring matter to the Department of Justice).  Neither the Court nor Special Master found misconduct or wrongdoing on the part of Defendants as part of these inquiries.  Accordingly, Defendants re-urge their request that the Court reallocate the Special Master's compensation such that Hagens Berman bears full responsibility for the Special Master's costs and fees.  More specifically, Defendants request that such reallocation be made retroactively beginning December 1, 2017, the approximate date that the Special Master first learned of the conduct by Hagens Berman precipitating substantial additional work and proceedings, as well as going forward.

Defendants have consulted with Hagens Berman about whether they consent to the relief sought in this motion, and the parties could not reach agreement.  Hagens Berman indicated it would file a separate statement in response.

## BACKGROUND

The Court first appointed William T. Hangley, Esq. as Special Master on June 27, 2014 to address a discovery issue related to the adequacy of Plaintiffs' responses to written discovery (the "Thalidomide discovery issue").  *See* Order (Dkt. No. 256); [Proposed] Order (Dkt. No. 239).  At that time, the Court ordered that Plaintiffs and Defendants share Mr. Hangley's fees and expenses, with Plaintiffs paying 50% and Defendants paying 50%.  Order at 3 (Dkt. No. 256).

On August 11, 2014, after GSK and Grünenthal sought sanctions in connection with a summary judgment motion, the Court amended the Special Master appointment to vest Mr. Hangley with the authority to consider all requests for sanctions related to the Thalidomide discovery issue.  *See* Order (Dkt. No. 316); [Proposed] Order (Dkt. No. 297).

The Court further amended the Special Master's appointment on December 8, 2014.  *See* Order (Dkt. 420).  That amendment was precipitated by an agreement that GSK and Plaintiffs' counsel reached to resolve several sanctions motions filed by GSK against Hagens Berman (the "GSK agreement").  The agreement provided that Plaintiffs represented by Hagens Berman would dismiss their claims against GSK in exchange for GSK's withdrawal of the motions.  *See id.* at 1.  The Special Master was ordered to advise the Court on whether each Plaintiff subject to the GSK agreement "knowingly, intelligently, and voluntarily consented to dismissing with prejudice his or her claims" against GSK.  *Id.*  The Court subsequently amended the appointment again, on March 14, 2016, to have the Special Master advise the Court whether to grant Hagens Berman's motion to withdraw as to six Plaintiffs.  *See* Order (Dkt. No. 532).

On August 10, 2016, the Special Master issued a Report and Recommendations as to the GSK agreement, recommending that the Court grant the dismissal of GSK.  *See* Report and Recommendations of the Special Discovery Master at 3 (Dkt. No. 535).  With respect to the motions to withdraw, the Special Master conducted *in camera* proceedings with Hagens Berman and the Plaintiffs subject to the motions, Procedural Mem. and Order of the Special Discovery Master (Dkt. No. 539), which took place on September 26–28, 2017.  Order and Report and Recommendations of the Special Discovery Master at 5 (Dkt. No. 588).

A few weeks after those hearings, in late November and early December 2017, the Special Master learned from outside counsel for Hagens Berman that a Hagens Berman attorney had falsified expert reports for at least two Plaintiffs, one of whom was subject to a motion to withdraw.  *See id.* at 7–8.  The Special Master accordingly recommended, at the request of Hagens Berman, that he reopen his inquiry into the motions to withdraw, *id.* at 18, a

recommendation that the Court approved and adopted on March 14, 2018.  *See* Order (Dkt. No. 593).

It was at this point that Defendants filed their initial motion seeking to reallocate the Special Master's fees and costs.  *See* Defs.' Mot. to Reallocate Special Master Fees and Costs 1 (Dkt. No. 615).  Defendants asked that the Court reallocate the Special Master's compensation retroactive to December 1, 2017, the approximate date that the Special Master uncovered evidence of Hagens Berman's falsification of expert reports.  *See id.* at 4.  Hagens Berman did not oppose the reallocation request.  *See* Resp. to Defs.' Mot. to Reallocate Special Master Fees and Costs at 1 (Dkt. No. 617).  However, on May 8, 2018, the Court denied Defendants' motion without prejudice, holding that it was premature.  *See* 2018 Mem.; 2018 Order.

Specifically, the Court expressed concerns about whether and to what extent the conduct by Hagens Berman at issue was the result of the agreement that GSK had reached with Hagens Berman.  2018 Mem. at 4–5.[1]  At the time of the 2018 Order, the Special Master's inquiry into the motions to withdraw was ongoing.  Until the Special Master completed that investigation, the Court could not "determine which (if any) 'party is more responsible than other parties for the reference to [Mr. Hangley].'"  *Id.* (quoting Fed. R. Civ. P. 53(g)(3) (alteration in original)).

Circumstances have since changed, and Defendants' motion is now ripe.  The Special Master completed his reopened investigation and issued a Report and Recommendations on the motions to withdraw on October 12, 2023.  *See* Report and Recommendations of the Special Discovery Master (the "2023 Report") (Dkt. No. 767).  In addition to ruling on the motions to

---

[1] Because the agreement was not reached until October 2014 and the relevant misconduct by Hagens Berman occurred before then, such misconduct was not the result of the agreement.  *See* Letter from M. Scott to J. Diamond (Dkt. No. 394); Order and Report and Recommendations of the Special Discovery Master at 8 n.5 (Dkt. No. 588) (noting that that the "switch" of the expert reports took place in August 2014).

withdraw, that Report recommended that Hagens Berman be sanctioned for its conduct related to the filing of this litigation. *Id.* at 144–153. Hagens Berman timely objected to those Recommendations. Hagens Berman Objections to the Special Discovery Master's Report and Recommendations Dated October 12, 2023 (Dkt. No. 791). The Court ruled on those objections on August 5, 2025, entering an order (1) granting in part and denying in part the motions to withdraw and (2) requiring Hagens Berman to show cause why it should not be sanctioned for misconduct relating to its filing and prosecution of this litigation.[2]

The Court's order further required the parties to meet and confer and then "advise the Court on how they wish to proceed with the remaining claims." Order (the "2025 Order") (Dkt. No. 835); *see also* Mem. Op. (the "2025 Op.") (Dkt. No. 834). Pursuant to the 2025 Order, Defendants submitted their motion for procedures in the remaining cases on November 4, 2025. Defendants noted in their accompanying memorandum that they would be renewing their motion to reallocate. *See* Defs.' Mot. for Procedures in Remaining Cases in Resp. to Order of Aug. 5, 2025 (Dkt. No. 868); Mem. in Supp. of Defs.' Proposal in Resp. to Order of Aug. 5, 2025 at 10 (Dkt. No. 868-1). This motion now follows.

## LEGAL STANDARD

As the Court recognized in denying Defendants' initial motion, it has ample authority to reallocate responsibility for a special master's compensation to those parties who occasioned the need for his work. *See* 2018 Mem. at 6; *see also* Fed. R. Civ. P. 53(g)(3) (directing courts to consider "the nature and amount of the controversy, the parties' means, and the extent to which

---

[2] In addition, on December 2, 2025, the Court *sua sponte* ordered a referral of Hagens Berman to the Department of Justice for criminal investigation in connection with the same conduct addressed in the Special Master's 2023 Report and the Court's 2025 Memorandum. Mem. Op. (Dkt. No. 888).

any party is more responsible than other parties for the reference to a master"). Federal Rule 53(g) explicitly provides that while a court must fix a special master's compensation upon initial appointment, "the court may set a new basis and terms [of compensation] after giving notice and an opportunity to be heard." Fed. R. Civ. P. 53(g)(1).

Courts routinely exercise this authority once an investigation has concluded and responsibility for the proceedings is clear. As the Third Circuit has explained:

> Rule 53(g)(3) provides a means for the court to revisit the allocation *after the Special Master rules*. This provides, among other things, a means to shift expenses if it is determined, for example, that one party has taken frivolous or bad faith positions that have unnecessarily increased the costs associated with proceeding before the Special Master.

2018 Mem. at 7 (quoting *Glover v. Wells Fargo Home Mortg.*, 629 F. App'x 331, 339 n.7 (3d Cir. 2015) (emphasis added by Court)); *see also Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 112-13 (D.N.J. 2006) (requiring party to bear entirety of special master's fee where party's "unreasonable behavior has occasioned the need to appoint a master to review their compliance" with discovery orders); *PIC Grp., Inc. v. LandCoast Insulation, Inc.*, No. 1:09-CV-662, 2011 WL 2669144, at *1, *12 (S.D. Miss. July 7, 2011) (allocating special master fees needed to investigate party's ESI preservation and collection issues to party who failed to fulfill ESI discovery obligations); *Snyder v. Dep't of Defense*, No. C-03-4992, 2007 WL 951293, at *5 (N.D. Cal. Mar. 27, 2007) (in FOIA action, allocating special master costs to government where government was responsible for delay and failure to cooperate).

## ARGUMENT

Now that the Court has ruled on the motions to withdraw, and because the Special Master's recommendations and the Court's rulings reflect the determination that Hagens Berman

6

(and not Defendants) engaged in significant malfeasance, the Court should grant this motion to reallocate fees and costs.

*First*, the motion is ripe. As the Court noted in 2018, only after the issuance of the Special Master's decision on the motions to withdraw could the Court decide whether reallocation is warranted. 2018 Mem. at 9. The Special Master has now completed that inquiry and issued his report and recommendations on the motions. *See generally* 2023 Report. The Court, too, has ruled on Hagens Berman's objections to those recommendations. *See* 2025 Order. With that order now entered, the Court should exercise its "broad discretion in making a determination as to whether reallocation is appropriate." *Wachtel*, 239 F.R.D. at 84.

*Second*, the Special Master's findings and the Court's ruling make clear that Hagens Berman is the responsible party that should bear the fees and costs for the Special Master's inquiry. *See* Fed. R. Civ. P. 53(g)(3) (in allocating fees, the court should consider "the extent to which any party is more responsible than other parties for the reference to a master"). The 2023 Report reflects findings by the Special Master of repeated and far-ranging misconduct by Hagens Berman and its agents, including the failure to properly investigate claims, discovery abuses, and the falsification of evidence. 2023 Report at 13–122.[3] The investigation underlying the 2023 Report was extensive, time-consuming, and expensive, with the Special Master collecting and reviewing documents, holding multiple rounds of hearings, and submitting multiple reports and recommendations not only on merits questions but also on procedural issues related to transcript redactions and privilege challenges. Moreover, the Special Master's work may continue, as the Court made clear in denying Hagens Berman's request to end his service in the litigation. 2025

---

[3] The Court "reviewed *de novo a*nd adopt[ed]" these factual findings in its ruling on the motions to withdraw. 2025 Mem. at 2.

Mem. at 18–19.  Given the Special Master's and Court's findings of egregious misconduct on the part of the firm, Hagens Berman should appropriately bear the costs and fees of the investigation leading to those determinations.

*Third*, there has been no finding of culpability on the part of Defendants.  With respect to GSK, the Court previously observed that the GSK agreement with Hagens Berman was part of the impetus for the Special Master's inquiry, and believed that it was "distressing."  *See* 2018 Mem. at 1.  However, the 2023 Report does not cite any violation of any law or ethical rules by GSK or suggest that GSK should be subject to any penalties or sanctions.  *See* 2023 Report at 68–74 (describing the GSK agreement, the subsequent inquiry, and recommendations).  Rather, the Special Master continued to recommend that the agreed dismissals of GSK go forward.  2023 Report at 72.[4]  GSK therefore respectfully submits that it should not bear fees and costs for the Special Master's work relating to the inquiry into Hagens Berman's conduct.

With respect to Defendants Grünenthal and Sanofi, neither defendant was a party to the GSK agreement.  There was no suggestion in the Special Master's reports and recommendations or in this Court's order that either Grünenthal or Sanofi was culpable for the underlying conduct that was the subject of the Special Master's extensive work.  Accordingly, Grünenthal and Sanofi respectfully submit that neither of them should bear any portion of the Special Master's costs and fees for the relevant period.

---

[4] The Special Master noted some exceptions, questions, and developments post-dating his 2018 Report pertaining to whether certain Plaintiffs were proceeding with their claims against GSK. 2023 Report at 72–43.  Those Plaintiffs either were not parties to the agreement in the first place or subsequently filed suit against Hagens Berman, *id.*, and are now, based on recent filings, proceeding *pro se*.  *See* Dkt. No. 883 (Mark Harrelson); Dkt. No. 878 (Yvonne English); Dtk. No. 884 (Carol Grover); Dkt. No. 873 (Darren Griggs).

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court reallocate the fees and costs incurred by the Special Master, both retrospectively beginning on December 1, 2017, and prospectively.

Dated: February 3, 2026                    Respectfully submitted,

*/s/ Daniel S. Pariser*
Daniel S. Pariser (*admitted pro hac vice*)
Paige H. Sharpe (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999

Anand Agneshwar *(admitted pro hac vice)*
Carmela T. Romeo
Pennsylvania Bar No. 313042
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689

*Counsel for Sanofi-Aventis U.S. LLC*

*/s/ Daniel A. Spira*
Michelle A. Ramirez (*admitted pro hac vice*)
Daniel A. Spira (*admitted pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Eugene A. Schoon (*admitted pro hac vice*)
CROKE, FAIRCHILD, DUARTE & BERES, LLC
180 N. LaSalle St.
Suite 3400
Chicago 60601
Telephone:  (773) 517-2740

9

*Counsel for Grünenthal GmbH*

/s/ Michael T. Scott
Michael T. Scott
Mike Scott Law LLC
1116 Red Rose Lane
Villanova PA 19085
Telephone:  (215) 518-8695

Sonja S. Weissman (*admitted pro hac vice*)
REED SMITH LLP
101 Second Street, Ste. 1800
San Francisco, CA 94105
Telephone:  (415) 543-8700

*Counsel for GlaxoSmithKline LLC, and*
*GlaxoSmithKline Holdings (Americas) Inc.*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2026, the foregoing document was filed electronically and is available for viewing and downloading from the CM/ECF system.  I also certify that a true and correct copy of the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.  A true and correct copy of the foregoing document is also being served this day on the following by electronic mail:

Terrie Bolton
tmixon922@gmail.com

John Marshall
jmarshall.marshall9@gmail.com

Jose Navamuel
josenavamue@gmail.com

Carolyn Sampson
cafsampson@gmail.com

*/s/ Daniel S. Pariser*
Daniel S. Pariser