**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GLENDA JOHNSON, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:11-cv-05782-PD |
| v. | ) | And All Related Cases |
| | ) | |
| SMITHKLINE BEECHAM CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**GSK'S RESPONSE TO THE COURT'S MARCH 16, 2026 ORDER REGARDING
ALLOCATION OF THE SPECIAL MASTER'S FEES AND COSTS**

The GSK Defendants hereby respond to the Court's March 16, 2026 Order regarding the allocation of Special Master "Hangley's fees and costs since December 1, 2017." (Dkt. No. 895).

The entirety of Mr. Hangley's fees and costs should be borne by Hagens Berman. This entire litigation—commenced almost 15 years ago—was brought by and/or continued by Hagens Berman with "grossly inadequate presuit investigations," and throughout these 14 plus years, Hagens Berman has "obstructed discovery," "recklessly (or, perhaps, intentionally) made false and baseless allegations intended to toll the limitations clock," "doctored evidence," and "when their misconduct came to light—sought to abandon Plaintiffs and evade Defendants' sanctions requests." (*Id*. at 2, quoting Mr. Hangley).

No part of Mr. Hangley's fees or costs should be allocated to GSK or other defendants. No such fees or costs would have been incurred at all but for the above-mentioned misconduct by Hagens Berman. GSK especially has been the victim of such misconduct. The claims asserted against GSK have been the most frivolous of all. Not only were such claims plainly barred by the

1

US_ACTIVE-211241457.v3-BPCADIGA-999983-27569 3/29/2026 3:44 PM

statute of limitations, but many of the plaintiffs had no basis for even alleging in utero exposure to thalidomide distributed by, or associated, with GSK.

As Mr. Hangley found after interviewing each of the plaintiffs who belatedly agreed in 2014 to dismiss their meritless claims against GSK, they "had no evidence to support claims that GSK had been involved with thalidomide at the times when these Plaintiffs were in utero.  That is a rational basis for dropping claims against [GSK] independent of whatever other unstated reasons any of these Plaintiffs might have for continuing or not continuing the pursuit of their claims against GSK or the others."  Report and Recommendation of the Special Master, 8/01/2016 (Dkt. No. 535 at 28).

Furthermore, contrary to the suggestion that there was something unusual or unseemly in GSK's agreement in 2014 to allow certain plaintiffs to dismiss their claims with prejudice against GSK with GSK to bear its own fees and costs, there was actually nothing unusual or suspect about that agreement.  Unlike Hagens Berman, GSK owed no duty of loyalty to the individuals Plaintiffs or any duty to act in their best interests.  Indeed, the Special Master's investigation was focused exclusively on Hagens Berman's conduct precisely because they—not GSK—owed a duty to the plaintiffs, just as counsel for GSK owes a duty to its clients.  Moreover, the idea that a defendant would accept a dismissal of bogus claims without pursuing a claim for costs against plaintiffs or sanctions against their lawyers is an everyday occurrence.  For a defendant caught up in frivolous litigation dragging on for over a decade, the end of the litigation is what has the most value, not the preservation of claims against the lawyers who brought the cases or the plaintiffs themselves. As Mr. Hangley observed in his preliminary consideration of the GSK agreement, "it is not at all surprising that a defendant would choose to accept total victory on the claims in a group of law suits and, in exchange, curb its enthusiasm for sanctions."  Mem. and Order of the Special Master,

12/23/2014 (Dkt. No. 430 at 4).  Ordering GSK to contribute to the Special Master's fees would effectively require that before a defendant settles or secures the dismissal of a case, *it* must assess whether the resolution is in the plaintiffs' best interest.  In any event, it is not true that the individual plaintiffs did not benefit from the agreement.  They were spared the significant burdens of continuing to pursue patently meritless and worthless claims against GSK and were shielded from the assessment of costs against them personally to which GSK as the inevitable prevailing party would have been entitled as a matter of right.

By the time GSK entered into the 2014 agreement in October of that year, the Special Master had already taken the lead in getting Hagens Berman to reevaluate its cases and agreeing to dismiss those which lacked merit.  On July 17, 2014, the Special Master issued an Order "[i]n accordance with the agreement of the parties" requiring Hagens Berman to investigate each of the pending cases "with a view to making a decision whether it should continue to be prosecuted or dismissed with prejudice by consent."  Discovery Order, 7/17/14 (Dkt. No. 268 at 1).  In many of the cases in which Hagens Berman notified defendants that a case should be dismissed with prejudice, the case was dismissed, with the parties bearing their own costs and fees.  *See* Court Order, 1/7/15 (Dkt. No. 442).

Moreover, the notion that its agreement with GSK might have been somehow causally related to Hagens Berman's falsification of expert reports in an apparent effort to convince certain plaintiffs to drop their cases is wholly unfounded.  The agreement was not reached until October 2014 and the relevant misconduct had *already occurred*.  *See* Order and Report and Recommendations of the Special Discovery Master, 2/26/2018 (Dkt. No. 588 at 8 n.5) (noting that the "switch" of the expert reports took place in August 2014).  Plus, GSK first learned of Hagens Berman's malfeasance at the same time as this Court.  It had no knowledge of any such wrongdoing

by Hagens Berman when the agreement was reached.  The suggestion that the GSK agreement somehow made Hagens Berman's falsification of expert reports "foreseeable" (*see* Sanofi Response at 1) is also logically flawed.  An agreement reached in October could not make misconduct which had occurred months earlier retroactively "foreseeable".

Nor does Sanofi's argument that it never sought sanctions against Hagens Berman (*id*. at 2) suggest that even though perhaps GSK or Grunenthal might have, Sanofi is not responsible for Hagen Berman's misconduct.  Indeed, Sanofi's reluctance to seek sanctions may well have conveyed to Hagens Berman a sense of immunity from its wrongdoing and made it "foreseeable".

Therefore, the Court should order that Special Master Hangley's fees and costs exclusively be paid by Hagens Berman.

Dated: March 30, 2026                              Respectfully submitted,

*/s/ Sonja S. Weissman*
Sonja S. Weissman (admitted pro hac vice)
REED SMITH LLP
101 Second Street, Ste. 1800
San Francisco, CA 94105
Telephone: (415) 543-8700

Michael T. Scott
MIKE SCOTT LAW LLC
1116 Red Rose Lane
Villanova, PA 19085
Telephone: (215) 518-8695

*Counsel for GlaxoSmithKline LLC, and*
*GlaxoSmithKline Holdings (Americas) Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2026, the foregoing document was filed electronically and is available for viewing and downloading from the CM/ECF system. I also certify that a true and correct copy of the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF. A true and correct copy of the foregoing document is also being served this day on the following by electronic mail:

Terrie Bolton
tmixon922@gmail.com

John Marshall
jmarshall.marshall9@gmail.com

Jose Navamuel
josenavamue@gmail.com

Carolyn Sampson
cafsampson@gmail.com

*/s/ Sonja S. Weissman*