IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENDA JOHNSON, *et al.,* | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | Case No. 2:11-cv-05782-PD |
| | : | |
| SMITHKLINE BEECHAM | : | AND ALL RELATED CASES |
| CORPORATION, *et al.,* | : | |
| *Defendants* | : | |

RESPONSE OF TYLER WEAVER TO THE COURT'S ORDER
OF MARCH 16, 2026 REGARDING THE ALLOCATION
OF SPECIAL MASTER FEES

Tyler Weaver hereby responds to the Court's Order dated March 16, 2026, regarding allocation of payment of the cost of the fees charged by Special Discovery Master William T. Hangley's compensation for fees and costs dating from December 1, 2017, to the present ("the Order"). Mr. Weaver does not – and cannot – speak as to the proper allocation of fees should be between Plaintiffs and Defendants. As explained further below, he should not be apportioned any portion of the retroactive fees at issue because he is not a party to this litigation withing the meaning of Fed. R. Civ. Proc. 53(g).  Moreover, no party has asked that he be apportioned any responsibility, and it would be improper and inequitable to do so.

## I.    INTRODUCTION

Mr. Weaver does not take any position on how the Special Master's fees should be allocated between Plaintiffs and Defendants. However, any allocation of responsibility to Mr. Weaver, a non-party, would not be consistent with Fed. R. Civ. Proc. 53(g). Even if allocation could be made to a non-party under Rule 53(g), the record is clear that Mr. Weaver was not involved in the actions that gave rise to the appointment of a Special Master and that most of the

1

Special Master's work has not involved what Mr. Weaver did and disclosed. It would thus not be appropriate to allocate any payment of the Special Master's fees to Mr. Weaver, especially considering the significant disparity in his ability to pay those fees as compared to Hagens Berman and several pharmaceutical giants. If the Court nonetheless considers imposing payment on Mr. Weaver as a sanction, it should do so only after addressing the issues raised in prior briefing on possible sanctions.

## II.    BACKGROUND FACTS

### A.    No Party Has Asked for an Order Directing Mr. Weaver to Pay Special Master Fees

The Court's Order follows a motion by Defendants to apportion all of the Special Master's costs and fees since December 2017 to Plaintiffs/Hagens Berman. Neither Defendants nor Hagens Berman in its response to that motion or in its statement in response to the Order have requested or suggested Mr. Weaver should bear any of the costs at issue. Dkt. Nos. 890, 892, 894, 896.

### B. Mr. Weaver Was Not Involved in Filing Any of These Cases, or Other Issues That Led to the Appointment of the Special Master and Occupied the Vast Majority of the Special Master's Time

The request to reapportion fees must be understood in the full context of the history of the Special Master's appointment and his work in this case. Mr. Weaver was ***not*** involved in the filing of these cases or other actions that caused the Court to appoint the Special Master, nor have Mr. Weaver's actions given rise to the majority of the work the Special Master has performed in this case.

The Order states that the Special Master concluded in his report that Mr. Weaver "conducted grossly inadequate presuit investigations; obstructed discovery; [and] recklessly (or perhaps intentionally) made false and baseless allegations intended to toll the limitations clock." Order at 2. But the Special Master, in factual findings the Court has adopted, was clear and

2

correct in his statement that Mr. Weaver was not involved in these cases prior to June 2014 and therefore was not involved in the pre-suit investigation and pleading of the cases nor in any pre-June 2014 discovery in the cases. As stated in the Special Master's October 12, 2023, Report and Recommendations:

> **As the depth of the hole Hagens Berman had dug itself by filing lawsuits without appropriate presuit investigation and passing up the opportunity to investigate the cases over the next three years became increasingly apparent, two more Hagens Berman lawyers, Tyler Weaver and Ari Brown, were pressed into service. That was in June 2014.** …
>
> … I must observe that their Hagens Berman superiors thrust both Weaver and Brown into a terribly difficult situation. To be sure, Weaver's and Brown's responses to the challenge could hardly have been worse, but **this remains a top-down calamity**. Weaver was plainly overwhelmed by the sheer volume and complexity of the investigation and validation work left undone by his colleagues over the preceding three years; the seeds of his ethical undoing had, at least in part, been planted by the attorneys who preceded him on the case. **By the time of Weaver and Brown's pro hac appearances on June 11, 2014, the Court had already concluded that Hagens Berman was thumbing its nose at its discovery obligations and required more hands-on monitoring than a busy Article III court could indulge.**

Dkt. No. 767 at 8-9 (emph. added). As the Special Master made clear, Mr. Weaver was not involved in the cases when the Court concluded a special master was necessary, but rather was involved in attempting to investigate, and make decisions about whether there was a good-faith basis to continue prosecuting cases that had been filed years earlier by others, as the Special Master had directed plaintiffs to do. Dkt. 268

To be sure, as the Special Master notes and as Mr. Weaver has repeatedly admitted ever since he disclosed it in 2017, Mr. Weaver had a lapse in judgment while trying to clean up the mess he inherited. In August 2014, Mr. Weaver deleted language from two summaries he got from an expert without directly talking to him about it, sent one of those to a plaintiff without

3

telling her, and then three years later (in September 2017) incorrectly testified based on his faulty memory that the altered report was the report he had received from the expert. All of this was a grave error that he deeply regrets. But Mr. Weaver's failings did not lead to the appointment of the Special Master, and those failings are unrelated to what appears to be most of the Special Master's work on this matter. This can be seen from the Special Master's October 2023 report, which addressed Mr. Weaver's conduct but spent most of its space on pre-suit investigation problems that Mr. Weaver was not involved in, Hagens Berman's possible waiver of privilege as to certain materials, and various motions Mr. Weaver was not involved in. *See generally* Dkt. No. 767.

In addition, while the Special Master remained focused after December 2017 on pre-suit and post-suit investigations by attorneys other than Mr. Weaver, the Special Master's post-December 2017 work has also involved a variety of additional issues unrelated to Mr. Weaver. This includes, for example, disputes involving unrelated plaintiffs (Dkts. No. 644, 676, 680), discovery concerning counsel other than Hagens Berman involved in filing these cases (Dkt. No. 657), orders and analysis regarding possible waivers of work product and privilege that did not involve Mr. Weaver (Dkt. Nos. 705-707, 713, 720-724, 805), and hearings that did not involve Mr. Weaver or his counsel (Dkts. No. 736, 747). Even at the hearing before the Special Master in which Mr. Weaver testified in May 2019, much of the hearing was dedicated to other topics that did not involve Mr. Weaver or his conduct, such what was done to investigate the cases before they were filed. Dkt. No. 689.

## C.  Mr. Weaver Has Not had Access to the Special Master's Billings

Mr. Weaver has not had access to the Special Master's billing records. He has not been involved in the billing or payment of the Special Master's fees and costs and therefore does not

have the ability to determine if it is reasonably possible, based on the details of his billings, to allocate a portion of those costs to one party or another.

### III.    ARGUMENT

**A.    Rule 53(g)(2)(A) Does Not Apply to Non-Parties Such as Mr. Weaver**

The Court appointed the Special Master pursuant to Rule 53, and apportioned costs for the Special Master's fees pursuant to Rule 53(g)(2). Dkt. No. 239 As provided in Rule 53, the compensation of a Special Master "must be paid either … by a party or parties; or … from a fund or subject matter of the action within the court's control." Rule 53(g)(2)(A), (B). There is no such fund here, and Mr. Weaver is not a party to this litigation. The Special Master's fees therefore cannot be allocated to him under Rule 53. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 4928184, at *3 (S.D.N.Y. Aug. 1, 2023) ("non-parties may not be called upon to pay the special master's compensation"); *Sec. & Exch. Comm'n v. Yin*, No. 17-CV-972 (JPO), 2021 WL 2138541, at *1 (S.D.N.Y. May 26, 2021) ("Rule 53(g)(2)(A) permits the allocation of fees only to 'a party or parties.'"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 610 (D. Del. 2008) ("[W]hen Fed. R. Civ. P. 53[g] expressly states that compensation must be paid by 'a party or parties,' it means just that and does not include nonparties"). *Also compare* Rule 53(c)(2) (clarifying that section applies to both a "party" and a "nonparty").

Hagens Berman has been listed in motions and orders as the party paying 50% the Special Master's fees, but the original apportionment was actually to party p laintiffs, Dkt. No. 256, although Hagens Berman is the entity paying that portion of the Special Master's fees.

And even if allocation of special-master fees to nonparties were appropriate, any allocation must take into account: (1) the nature and amount of the controversy, (2) "the parties'

means," and (3) "the extent to which any party is more responsible than other parties for the reference to the master." Rule 53(g)(3).

The major differentiating factor between the possible candidates for allocation listed in the Order, of course, is their respective means. Defendants are multinational pharmaceutical companies whose stock is traded publicly. Hagens Berman is a highly successful national plaintiffs' firm with several offices. Mr. Weaver, in contrast, is an individual with no applicable insurance coverage who has vastly insufficient means to cover the Special Master's bills, especially given the effect that his failures and these proceedings have had on his career. According to Hagens Berman's filings, the Special Master's fees in this case apparently total more than $3 million, about $1.2 million of which is apparently at issue following Defendants' motion. Requiring Mr. Weaver to pay or share in payment of those and future bills could easily force him into bankruptcy. That is not true of the other entities listed in the Order.

Further, as discussed above, Mr. Weaver is not responsible for the initial reference of matters to the Special Master. The referral was based on issues that had been simmering for months and years at that point, and it was made only days after Mr. Weaver was first assigned to and appeared in this case. Mr. Weaver's disclosures of his conduct added to the issues being considered, but questions about pre-suit investigations were the key motivating factor for the original appointment. Those and other issues not related to Mr. Weaver appear to have been responsible for the bulk of the Special Master's work after December 2017, as discussed above.

**B.    If the Court is Considering Apportionment to Mr. Weaver as a Sanction, it Must Address All the Issues Raised by Mr. Weaver in His Briefs Regarding Sanctions**

The Order addresses the issue of reallocation of the fees of the Special Master under Rule 53(g). However, if the Court is considering the imposition of the cost of Special Master's fees as a sanction, aside from the fact (as discussed above) this would be inappropriate given the origin

of the majority of those fees, the Court should only decide that issue after fully addressing the

issues related to whether a sanction is appropriate, and what or how much any sanction should

be.

Mr. Weaver has briefed the issues related to the imposition of sanctions (Dkt. Nos. 798,

855) and will not belabor the Court with a full recitation of them. However, some of the issues

for consideration are summarized here:

- Mr. Weaver disclosed his personal errors in 2017, has consistently and repeatedly admitted them, expressed regret for them, and has not attempted to blame anyone else for his failings. He is the only person who has accepted personal responsibility for conduct that the Special Master has deemed sanctionable.

- Mr. Weaver has already been through three bar grievances related to his conduct and has been sanctioned by the Washington State Bar Association. *See Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 196 (3d Cir. 1988) (it is a mitigating factor if the person being sanctioned "has been subject to at least one other disciplinary action" regarding the conduct in question).

- Mr. Weaver does not know what specific sanctions might be imposed, such as, for example, whether it is special master fees and how much, and therefore has not been able to respond in a detailed manner. *See, e.g., In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir. 1997); *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994). Any monetary sanction must consider Mr. Weaver's ability to pay it, and that is nearly impossible to appropriately address without knowing what such a sanction might be. *See Doering*, 857 F.2d at 195-96.

8

## IV.    CONCLUSION

It is respectfully submitted that no portion of the fees at issue be allocated to Mr.

Weaver.

Respectfully Submitted,

/s/ Robert E. Welsh

Robert E. Welsh
Welsh & Recker, P.C.
306 Walnut Street
Philadelphia, PA 19106
216 972 6430
rewelsh@welshrecker.com
Counsel for Tyler Weaver

8

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been electronically filed with the Clerk of Court using CM/ECF on this 25th day of March, 2026. A true and correct copy of the foregoing document is being served on this date on all counsel of via transmission of Notices of Electronic Filing generated by CM/ECF.


DATED:  March 30, 2026


/s/ Robert E. Welsh
Robert E. Welsh