**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON, et al., | Case No. 2:11-cv-05782-PD |
| Plaintiffs, | AND ALL RELATED CASES |
| v. | This Document Relates to:<br>Yeatts, et al. v. SmithKline Beecham Corp., et al., No. 11-cv-06711 |
| SMITHKLINE BEECHAM CORPORATION, et al., | |
| Defendants. | |

**PLAINTIFF CAROLYN SAMPSON'S RESPONSE IN OPPOSITION TO**

**DEFENDANTS' MOTION TO DISMISS FOR ALLEGED NONCOMPLIANCE WITH**

**THE MAY 27, 2026 LONE PINE ORDER**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........ 3

ARGUMENT ........ 6

CONCLUSION ........ 12

CERTIFICATE OF SERVICE ........ 12

## INTRODUCTION

Plaintiff Carolyn Sampson, proceeding pro se, respectfully opposes Defendants' motion to dismiss her claims with prejudice under Federal Rule of Civil Procedure 41(b). Plaintiff timely submitted sworn factual material and expert evidence addressing congenital pattern, exposure, and causation. After Defendants challenged Professor Neil Vargesson's original report, Plaintiff obtained and now submits his signed Supplemental Declaration dated September 18, 2026, with the August 19, 2026 report incorporated and attached as Exhibit A. (Pl.'s Ex. 01, Supp. Decl. ¶¶ 2-3, 29.) The Supplemental Declaration supplies the certification, qualifications, reviewed materials, alternative-causation analysis, methodology, and case-specific exposure-and-causation opinions Defendants claimed were missing. Dismissal with prejudice is therefore neither necessary nor proportionate.

## PRELIMINARY STATEMENT

The premise of Defendants' motion has materially changed. Professor Vargesson's Supplemental Declaration is executed under penalty of perjury under the laws of the United States of America, identifies the documentary and clinical materials he personally reviewed, explains his qualifications and methodology, addresses genetic and other alternatives, incorporates his August 19 report, and confirms his exposure-and-causation opinions. (Pl.'s Ex. 01, Supp. Decl. ¶¶ 1-29 & attached Ex. A.) The declaration is not a new theory. It formalizes, authenticates, and explains the same case-specific conclusions contained in the timely served report.

Defendants also convert the Order's requested opinion standard into an unstated credential rule. Paragraph A.2(v), as quoted by Defendants, required "one or more expert declarations" stating, after review of available evidence and to a reasonable degree of medical certainty, that Plaintiff was exposed to thalidomide in utero and that the exposure caused the

identified injuries. (Defs.' Mem. at 3; ECF No. 911 ¶ A.2(v).) The quoted language does not state that the declarant must be a licensed physician or hold an M.D. Defendants nevertheless emphasize that Professor Vargesson is "a Ph.D., not a medical doctor." (Defs.' Mem. at 4.)

Professor Vargesson is Chair in Developmental Biology at the University of Aberdeen, has studied thalidomide's embryonic effects for more than twenty years, has published extensively on thalidomide mechanisms, embryonic development, congenital anomalies, angiogenesis, teratogenesis, recognition of thalidomide embryopathy, and drug safety, participated in a World Health Organization-sponsored expert meeting on thalidomide embryopathy, and serves on the Canadian Thalidomide Survivors Support Program Multi-Disciplinary Committee. (Pl.'s Ex. 01, Supp. Decl. ¶¶ 1, 5-10.) Those qualifications directly fit the developmental-science questions presented.

The Supplemental Declaration states, to a reasonable degree of scientific certainty, that Plaintiff was exposed to thalidomide in utero and that the exposure caused bilateral absence of the thumbs, bilateral radial abnormalities, and specified reproductive-tract abnormalities. (Id. ¶¶ 23-24.) Plaintiff does not ask the Court to disregard the Order's required degree of professional confidence. Plaintiff submits that "medical certainty" states the requested confidence in the causal opinion, not an unstated M.D.-only credential restriction. If the Court requires the exact phrase used in Paragraph A.2(v), the proper remedy remains a targeted clarifying submission, not dismissal with prejudice.

## BACKGROUND

On May 27, 2026, the Court required remaining plaintiffs to submit one or more expert declarations meeting 28 U.S.C. § 1746 and containing specified threshold opinions. (ECF No. 911 ¶ A.2.) Plaintiff timely served her own declaration and the declaration of Trent Stephens, Ph.D., and thereafter served Professor Vargesson's signed, six-page, case-specific report dated August 19, 2026. Defendants filed the present motion on September 8, 2026.

Professor Vargesson executed the Supplemental Declaration on September 18, 2026 in Aberdeen, Scotland, before the deadline for Plaintiff's opposition. (Pl.'s Ex. 01 at 7-8.) He declared under penalty of perjury under the laws of the United States that the declaration is true and correct. (Id.) His August 19 report is attached as Exhibit A and incorporated to the extent stated in the declaration. (Id. ¶¶ 2-3, 29.)

Professor Vargesson states that before signing the Supplemental Declaration he personally reviewed Plaintiff's medical records from childhood through adulthood, childhood photographs, adult radiographs and other imaging, the Invitae Limb Malformation Panel, family-history information, information concerning the unmarked pills reportedly ingested during pregnancy, Plaintiff's June 5, 2014 deposition, and Marilyn Martin's June 5, 2014 deposition. (Id. ¶¶ 11-14.) He expressly considered limitations in recollection together with objective clinical findings, medical records, photographs, imaging, genetic-test results, and scientific knowledge of thalidomide embryopathy. (Id. ¶ 14.)

The declaration identifies the congenital abnormalities reflected in the materials, including bilateral absence of the thumbs, abnormalities of the radii and upper extremities, a shortened left arm, a unicornuate uterus, and absence of the left ovary. (Id. ¶¶ 15-16.) Professor Vargesson explains that the bilateral thumb absence and radial and upper-extremity abnormalities follow a pattern scientifically consistent with recognized thalidomide effects during embryonic development, and that thalidomide embryopathy may also involve reproductive-tract abnormalities. (Id. ¶¶ 17-19 under "Carolyn Sampson's Congenital Conditions.")

The declaration also addresses genetic alternatives. The Invitae Limb Malformation Panel screened 177 genes associated with limb anomalies and reported no pathogenic variant that would explain Plaintiff's limb abnormalities. (Id. ¶ 12(d), ¶¶ 18-19 under "Alternative Explanations and Genetic Testing.") Professor Vargesson explains that the identified

heterozygous CEP290 variant indicates carrier status and does not explain Plaintiff's type and pattern of limb abnormalities. (Id. ¶ 20.) He acknowledges that negative testing cannot exclude every possible genetic cause and expressly accounts for that limitation. (Id. ¶ 21.) He then explains why the negative panel, family history, combination of upper-limb and reproductive-tract abnormalities, and objective clinical pattern support his opinion. (Id. ¶ 22.)

## ARGUMENT

### I. The Supplemental Declaration cures the asserted § 1746, record-review, methodology, and alternative-causation defects.

Defendants' motion emphasized that the original report lacked the certification prescribed by 28 U.S.C. § 1746 for a declarant outside the United States. The Supplemental Declaration now contains that certification and was executed in Aberdeen, Scotland. (Pl.'s Ex. 01 at 7-8.) The attestation objection is therefore cured.

Defendants also argued that Professor Vargesson did not identify the medical record or deposition testimony he reviewed. The Supplemental Declaration lists the reviewed categories and identifies both Plaintiff's and Martin's June 5, 2014 depositions and the relevant subject matter considered. (Id. ¶¶ 11-14.) It further states that those are the materials considered in forming and confirming the opinions in both the original report and Supplemental Declaration. (Id. ¶ 13.)

Defendants criticized the consideration of alternatives. The Supplemental Declaration expressly addresses genetic testing, the CEP290 carrier finding, the limits of a negative panel, family history, and the combined objective phenotype. (Id. ¶¶ 18-22 under "Alternative Explanations and Genetic Testing.") It also explains that the opinions are based on the totality of evidence and that no single feature forms the sole basis for them. (Id. ¶¶ 25-27.) Those

explanations directly meet the criticism that the original report merely assumed its conclusion or ignored alternatives.

**II. The declaration supplies the ultimate exposure-and-causation opinions required by Paragraph A.2(v).**

Professor Vargesson states that, based on the available evidence reviewed together with his education, research, training, and experience, it is his opinion to a reasonable degree of scientific certainty that Plaintiff was exposed to thalidomide in utero. (Id. ¶ 23.) He separately states, to the same degree of scientific certainty, that the exposure caused bilateral absence of the thumbs, bilateral radial abnormalities, and reproductive-tract abnormalities including a unicornuate uterus and absent left ovary. (Id. ¶ 24.) These are not generalized statements that Plaintiff's phenotype is merely compatible with thalidomide. They are case-specific ultimate opinions on exposure and causation.

The declaration explains the evidentiary basis. The testimony about unidentified pills is part of the evidence, but the opinions also rely on objective congenital pattern, imaging, medical documentation, genetic-testing results, family-history information, and scientific knowledge of the characteristic and variable manifestations of thalidomide embryopathy. (Id. ¶¶ 25-27.) Professor Vargesson further states that the absence of a surviving prescription, original medication, or contemporaneous drug-identification result does not alter his scientific assessment. (Id. ¶ 27.)

**III. Defendants improperly convert the Order's opinion standard into an M.D.-only credential requirement.**

Paragraph A.2(v) required an expert declaration; it did not state that the declarant must hold an M.D. Defendants' emphasis that Professor Vargesson is "a Ph.D., not a medical doctor" inserts a categorical restriction not found in the quoted Order. (Defs.' Mem. at 4.) Federal Rule of Evidence 702 permits qualification through knowledge, skill, experience, training, or

education and focuses on fit, sufficient facts or data, reliable principles and methods, and reliable application. Fed. R. Evid. 702.

The Third Circuit has cautioned against overly narrow specialization requirements when an expert has relevant specialized knowledge. See Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 781-82 (3d Cir. 1996). The questions here concern embryonic development, timing and pattern of thalidomide embryopathy, recognized developmental effects, and plausible alternatives. Professor Vargesson's qualifications and work directly concern those subjects. (Pl.'s Ex. 01, Supp. Decl. ¶¶ 1, 5-10.)

Plaintiff does not contend that a scientific title alone satisfies the Order. The Supplemental Declaration demonstrates actual fit: more than twenty years researching thalidomide's embryonic mechanisms, extensive relevant publication, government and international consultation, WHO-sponsored expert participation, survivor-recognition work, and a case-specific review of medical, imaging, genetic, family-history, and testimonial evidence. (Id. ¶¶ 5-14.) Defendants may challenge the weight of that analysis, but the absence of an M.D. credential does not establish noncompliance with an Order that requested an expert declaration.

**IV. "Scientific certainty" is substantive compliance; any remaining verbal distinction does not justify dismissal with prejudice.**

Professor Vargesson used "reasonable degree of scientific certainty," terminology appropriate to his discipline. (Id. ¶¶ 23-24.) The declaration unmistakably states firm case-specific exposure and causation opinions and explains their bases. Plaintiff respectfully submits that Paragraph A.2(v)'s phrase describes the requested degree of professional confidence, not the academic degree of the declarant.

If the Court reads Paragraph A.2(v) to require the exact words "reasonable degree of medical certainty," the remaining issue is verbal conformity, not absence of expert support. A targeted clarification could insert that exact formulation without changing the opinions,

materials, methodology, or theory already submitted. Dismissal with prejudice would be disproportionate to any such residual wording question.

**V. The expert evidence should be considered cumulatively, including the genetic evidence and Dr. Stephens's analysis.**

Paragraph A.2 contemplated "one or more" expert declarations. (ECF No. 911 ¶ A.2.) Dr. Stephens reviewed medical records, personally examined Plaintiff, identified a combined pattern of limb, reproductive, spinal, and visual abnormalities, and concluded, assuming exposure, that it was more likely than not that the combined defects were caused by thalidomide. (Stephens Decl. ¶¶ 7-16, Defs.' Ex. A.) Professor Vargesson supplies the ultimate exposure-and-causation opinion and explains the totality-of-evidence basis. (Pl.'s Ex. 01, Supp. Decl. ¶¶ 23-27.)

The genetic evidence is no longer merely a stand-alone report mentioned by Plaintiff. Professor Vargesson reviewed the Invitae panel, described its 177-gene scope, explained the CEP290 carrier result, acknowledged the panel's limitations, and incorporated the result into his differential analysis. (Id. ¶ 12(d), ¶¶ 18-22 under "Alternative Explanations and Genetic Testing.") The Court should evaluate these materials together rather than require every proposition to appear in one original document.

**VI. The Supplemental Declaration is a permissible clarification and cure, not a prejudicial new theory.**

The declaration incorporates and confirms the August 19 report and states that the report remains accurate subject to the Supplemental Declaration's clarifications. (Id. ¶¶ 2-3, 29.) The identified injuries, exposure conclusion, causation conclusion, developmental-science framework, and thalidomide-embryopathy analysis remain the same. The supplement authenticates the opinions, identifies the file reviewed, explains alternatives and methodology, and responds to Defendants' stated objections.

Defendants suffer no unfair surprise. Their motion identified the alleged omissions, and the supplement addresses them directly. Defendants already possess the original report, depositions, and medical materials and have filed a separate summary-judgment motion attacking the same expert record. If the Court believes a response is appropriate, it may permit a limited reply. That is a direct and proportionate remedy; dismissal is not.

**VII. Defendants improperly seek a final Rule 702 and merits adjudication through a Rule 41(b) sanction motion.**

The threshold issue is compliance with the Court's case-management Order. Defendants also ask the Court to reject Professor Vargesson's exposure opinion, weigh alternative explanations, and decide that phenotype and circumstantial evidence cannot support exposure. Those issues resemble a Rule 702 or Rule 56 determination. The signed Supplemental Declaration now places qualifications, materials, methodology, alternatives, and ultimate opinions before the Court. The existence of a contested expert issue does not establish willful noncompliance warranting dismissal with prejudice.

The historical nature of the proof reinforces the distinction. The original pills are unavailable, Dr. Hopper's records were reported lost, the surviving-pill test was reportedly inconclusive, and contemporaneous distribution records were incomplete. Professor Vargesson expressly considered the absence of a surviving prescription, medication, or contemporaneous identification and explained why it did not alter his assessment based on the totality of objective and testimonial evidence. (Id. ¶¶ 25-27.) The Order required expert evaluation of available evidence, not direct chemical identification of a tablet dispensed in 1961.

**VIII. The Poulis factors do not support dismissal with prejudice.**

Personal responsibility. Plaintiff timely submitted her declaration and expert materials, obtained a case-specific report, and now submits the executed Supplemental Declaration

addressing Defendants' objections. This is active prosecution and completed cure, not abandonment.

Prejudice. Defendants possess the Stephens declaration, original Vargesson report, underlying materials, and now the clarifying Supplemental Declaration. The cure causes no loss of evidence and no inability to respond. A limited reply, if allowed, eliminates any claimed procedural disadvantage.

History of dilatoriness and willfulness. Defendants concede these factors are largely neutral and disclaim ill motive. (Defs.' Mem. at 12.) Plaintiff met the original deadline and obtained the signed supplement before the opposition deadline. Nothing supports deliberate defiance or bad faith.

Alternative sanctions. The asserted defects have now been cured. If the Court identifies any residual wording or filing issue, acceptance of the declaration, a limited clarification, or a short response period for Defendants is effective. Dismissal with prejudice is unnecessary.

Meritoriousness. Plaintiff has submitted case-specific expert opinions identifying exposure and causation, a scientific explanation of the congenital pattern, a totality-of-evidence methodology, and an alternative-causation analysis that includes genetic testing and its limitations. (Pl.'s Ex. 01, Supp. Decl. ¶¶ 11-29.) Defendants dispute weight and admissibility, but that dispute does not establish that the claim lacks all merit for purposes of the ultimate sanction.

**IX. At minimum, fairness requires acceptance of the Supplemental Declaration or limited leave to cure any residual issue.**

The Court should consider the Supplemental Declaration with the timely served report because it responds directly to Defendants' objections without changing the claim or expert theory. If the Court concludes that exact wording or another discrete matter remains, Plaintiff

respectfully requests limited leave to correct that issue rather than dismissal. Resolution on the complete expert record is more proportionate and consistent with adjudication on the merits.

**CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss. Professor Vargesson's September 18, 2026 Supplemental Declaration is executed under penalty of perjury under United States law, incorporates the August 19 report, establishes his relevant qualifications, identifies and discusses the materials reviewed, addresses genetic alternatives and limitations, explains the totality-of-evidence basis, and supplies case-specific exposure-and-causation opinions. (Pl.'s Ex. 01, Supp. Decl. ¶¶ 1-29.) The Order required expert support, not expressly an M.D. Any remaining disagreement concerns wording, weight, admissibility, or a readily curable residual issue, none of which warrants dismissal with prejudice under Rule 41(b).

Dated: September 21, 2026

Respectfully submitted,

/s/ Carolyn Sampson
Carolyn Sampson, Plaintiff Pro Se
15353 Greenhaven Ln Apt 101
Burnsville, Minnesota 55306
Telephone: 651-470-3937
Email: cafsampson@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2026, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system. I further certify that a true and correct copy of the foregoing document is being served on all counsel of record through the Court's CM/ECF system.

/s/ Carolyn Sampson

Carolyn Sampson

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON, et al., | Case No. 2:11-cv-05782-PD |
| Plaintiffs, | AND ALL RELATED CASES |
| v. | This Document Relates to: Yeatts, et al. v. SmithKline Beecham Corp., et al., No. 11-cv-06711 |
| SMITHKLINE BEECHAM CORPORATION, et al., | |
| Defendants. | |

**[PROPOSED] ORDER**

AND NOW, this ____ day of ____________________, 2026, upon consideration of Defendants' Motion to Dismiss the Claims of Pro Se Plaintiff Carolyn Sampson for Alleged Noncompliance with the Court's May 27, 2026 Lone Pine Order (ECF No. 938), Plaintiff Carolyn Sampson's Response in Opposition, Plaintiff's supporting exhibits, including the Supplemental Declaration of Professor Neil Vargesson dated September 18, 2026, and the entire record, it is hereby ORDERED that Defendants' Motion is DENIED.

Plaintiff's Supplemental Declaration of Professor Neil Vargesson, together with the August 19, 2026 report incorporated therein, shall be accepted as part of Plaintiff's response to the May 27, 2026 Lone Pine Order.

To the extent any additional clarification or supplementation is necessary, Plaintiff shall be permitted to provide such clarification or supplementation rather than suffer dismissal with prejudice.

BY THE COURT:

________________________________
HON. PAUL S. DIAMOND, U.S.D.J.