# EXHIBIT 01

Vargesson Supplemental Declaration

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: THALIDOMIDE PRODUCTS LIABILITY LITIGATION

Civil Action No. 2:11-cv-05782-PD

MDL No. 2416

THIS DOCUMENT RELATES TO: Carolyn Sampson

**SUPPLEMENTAL DECLARATION OF PROFESSOR NEIL VARGESSON**

**REGARDING PLAINTIFF CAROLYN SAMPSON**

I, Neil Vargesson, declare as follows:

1. I am Professor Neil Vargesson, FRSE, FRSB, Chair in Developmental Biology at the University of Aberdeen, Scotland.
2. I make this Supplemental Declaration concerning Plaintiff Carolyn Sampson. I previously prepared a report dated August 19, 2026, entitled "Review of Carolyn SAMPSON case," a true and correct copy of which is attached as Exhibit A.
3. I have reviewed this Supplemental Declaration and my August 19, 2026 report. My report is incorporated into this Declaration to the extent stated herein.
4. I understand that this Declaration may be submitted in proceedings pending in the United States District Court for the Eastern District of Pennsylvania.

**QUALIFICATIONS**

5. I am a Professor of Developmental Biology at the University of Aberdeen and have studied and researched the mechanisms by which thalidomide causes embryonic damage for more than twenty years.
6. I have published extensively concerning thalidomide's mechanisms of action, embryonic development, congenital anomalies, angiogenesis, teratogenesis, recognition of thalidomide embryopathy, and drug safety.
7. My expertise concerning thalidomide's mechanisms and developmental effects has been sought by governments and by persons involved in the evaluation of alleged thalidomide survivors in multiple countries.
8. I participated in a World Health Organization-sponsored expert meeting in 2014 concerning guidelines for identifying and recognizing persons affected by thalidomide embryopathy.
9. I serve on the Canadian Thalidomide Survivors Support Program Multi-Disciplinary Committee, assessing applications for recognition and compensation.
10. Additional information concerning my education, experience, publications, and qualifications appears in my August 19, 2026 report and curriculum vitae.

**NATURE AND SCOPE OF EVALUATION**

11. I have not personally examined Carolyn Sampson, either in person or remotely, and I have not interviewed her. My opinions are based on the documentary and clinical information provided to me and on my education, research, training, and experience.
12. Before signing this Supplemental Declaration, I personally reviewed and considered the following materials concerning Carolyn Sampson:

a. Medical records from childhood through adulthood that were provided to me;

b. Childhood photographs provided to me;

c. Adult radiographs and other imaging provided to me;

d. The results of the Invitae Limb Malformation Panel, which screened 177 genes associated with limb anomalies;

e. Information provided concerning Carolyn Sampson's family history;

f. Information provided concerning the circumstances under which Carolyn Sampson's mother reportedly received and ingested unmarked pills during pregnancy;

g. Carolyn Sampson's deposition testimony dated June 5, 2014, including the portions concerning her congenital conditions, the history reported by her mother, the remaining pills, the earlier attempt to identify the pills, and her efforts to investigate the possible cause of her congenital conditions;

h. Marilyn Martin's deposition testimony dated June 5, 2014, including the portions concerning her pregnancy with Carolyn Sampson, the medication or pills reportedly provided during that pregnancy, the circumstances under which they were provided, and the extent of her present recollection;

13. The materials identified in Paragraph 12 are the materials I considered in forming and confirming the opinions stated in my August 19, 2026 report and in this Supplemental Declaration.

14. I understand that certain testimony may describe events occurring many decades earlier and may reflect limitations in present recollection. I considered the testimony together with the objective clinical findings, medical records, photographs, imaging, genetic-testing results, and my scientific knowledge of thalidomide embryopathy.

**CAROLYN SAMPSON'S CONGENITAL CONDITIONS**

15. The materials I reviewed document or depict congenital abnormalities that include:

a. Bilateral absence of the thumbs;

b. Three digits on the left hand, with abnormalities involving the left upper extremity;

c. Bilateral elbow-joint abnormalities affecting extension;

d. Abnormalities of the radii, including displacement or curvature of the right radius and shortening involving the left radius;

e. A shortened left arm;

f. A unicornuate uterus; and

g. Absence of the left ovary.

16. I understand that Carolyn Sampson underwent surgery during childhood to convert or reposition the right index finger into a thumb-like structure and that the left arm was surgically treated.

17. The absence of both thumbs and the abnormalities involving the radii and upper extremities follow a pattern that is scientifically consistent with the recognized effects of thalidomide during embryonic development.
18. In recognized thalidomide embryopathy, upper-limb structures may be affected in a characteristic sequence, with the thumb particularly sensitive, followed by the radius and other upper-limb structures. The precise presentation may vary with the timing and extent of exposure.
19. Thalidomide embryopathy may also involve internal-organ and reproductive-tract abnormalities. A unicornuate uterus and an absent associated ovary are scientifically consistent with developmental injury of the type documented in persons affected by thalidomide.

**ALTERNATIVE EXPLANATIONS AND GENETIC TESTING**

18. I considered whether the documented abnormalities might have a genetic explanation.
19. The Invitae Limb Malformation Panel reported no pathogenic variant among the 177 genes screened that would explain Carolyn Sampson's limb abnormalities.
20. The testing identified a heterozygous pathogenic variant in CEP290. As explained in my report, that finding indicates carrier status and does not explain the type and pattern of limb abnormalities observed in Carolyn Sampson.
21. Negative testing cannot exclude every possible genetic cause, including a cause involving a gene not presently identified or not included in the panel. I have taken that limitation into account.
22. Nevertheless, the negative limb-malformation panel, the absence of a reported family history of similar congenital abnormalities, the combination of upper-limb and

reproductive-tract abnormalities, and the objective pattern shown in the medical records, photographs, and imaging support my opinion that Carolyn Sampson's congenital presentation is consistent with thalidomide embryopathy.

**OPINIONS ON EXPOSURE AND CAUSATION**

23. Based on my review and consideration of the available evidence provided to me, including Carolyn Sampson's medical records, photographs, imaging, genetic-testing results, family-history information, and the testimony identified above, together with my education, research, training, and experience, it is my opinion to a reasonable degree of scientific certainty that Carolyn Sampson was exposed to thalidomide *in utero*.

24. It is also my opinion, to a reasonable degree of scientific certainty, that Carolyn Sampson's *in utero* exposure to thalidomide caused the following congenital injuries:

a. Bilateral absence of the thumbs;

b. Radial abnormalities involving both arms, with possible associated involvement of the ulna as discussed in my August 19, 2026 report; and

c. Reproductive-tract abnormalities, including a unicornuate uterus and an absent left ovary.

25. These opinions are based on the totality of the evidence I reviewed. No single feature, considered in isolation, forms the sole basis for my opinions.

26. The testimony concerning unidentified pills reportedly provided during pregnancy is part of the available evidence I considered. My opinions also rely on the objective pattern of congenital abnormalities, imaging, medical documentation, genetic-testing results,

family-history information, and my scientific knowledge of the characteristic and variable manifestations of thalidomide embryopathy.

27. The absence of a surviving prescription, original medication, or contemporaneous drug-identification result does not alter my scientific assessment that the objective congenital presentation is consistent with thalidomide embryopathy. My conclusion concerning *in utero* exposure represents my expert opinion based on the totality of the evidence described above.

28. As outlined in my August 19, 2026 report, a lot of our current understanding of the mechanisms that underpin thalidomide action and its action on the developing embryo have been discovered in the last 20 years. Thus, it is my scientific opinion that given the lack of scientific and clinical expertise in the USA (historically and to date) together with recent new discoveries in our understanding of the mechanisms of action of thalidomide that the damage patterns presented by Carolyn Sampson, were unlikely to have been appreciated until recently.

29. My August 19, 2026 report remains accurate, subject to the clarifications contained in this Supplemental Declaration.

**DECLARATION UNDER UNITED STATES LAW**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: __September 18__, 2026

at Aberdeen, Scotland, United Kingdom.

**Professor Neil Vargesson, PhD., FRSE, FRSB**

Chair in Developmental Biology

University of Aberdeen