**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION ET AL.,<br>Defendants. | Case No. 2:11-cv-05782-PD<br><br>This Document Relates to:<br><br>*Gunn, et al. v. SmithKline Beecham Corp., et al.*,<br>No. 2:12-cv-06431 |

**ORDER**

Upon consideration of Defendants' Motion for Summary Judgment as to Plaintiff Yvonne English-Monroe and the accompanying Memorandum of Law in Support thereof, and any response thereto, it is hereby **ORDERED** that Defendants' Motion is **GRANTED** and the claims of Plaintiff Yvonne English-Monroe are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED** this __ day of ____________, 2026.

BY THE COURT:

______________________________
Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GLENDA JOHNSON ET AL., | ) | Case No. 2:11-cv-05782-PD |
| Plaintiffs, | ) | This Document Relates to: |
| v. | ) | *Gunn, et al. v. SmithKline Beecham Corp., et al.*, No. 2:12-cv-06431 |
| SMITHKLINE BEECHAM CORPORATION ET AL., | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AS TO PLAINTIFF YVONNE ENGLISH-MONROE**

Pursuant to Federal Rule of Civil Procedure 56 and for the reasons set forth in the accompanying Memorandum of Law in Support of this motion, Defendants respectfully move for summary judgment as to Plaintiff Yvonne English-Monroe because her claims are time-barred under the applicable statute of limitations and because she has no admissible evidence that her mother took thalidomide.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Daniel S. Pariser*

Daniel S. Pariser (admitted *pro hac vice*)
daniel.pariser@arnoldporter.com
Paige H. Sharpe (admitted *pro hac vice*)
paige.sharpe@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP

601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)

Anand Agneshwar (admitted *pro hac vice*)
anand.agneshwar@arnoldporter.com
Carmela T. Romeo
carmela.romeo@arnoldporter.com
Pennsylvania Bar No. 313042
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(212) 836-8689 (fax)

*Counsel for Sanofi-Aventis U.S. LLC*

*/s/ Michelle A. Ramirez*
Michelle A. Ramirez (*admitted pro hac vice*)
michelle.ramirez@sidley.com
Daniel A. Spira (*admitted pro hac vice*)
dspira@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (fax)

Eliezer Granek
egranek@eckertseamans.com
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
(215) 851-8383 (fax)

Eugene A. Schoon (*admitted pro hac vice*)
CROKE, FAIRCHILD, DUARTE & BERES, LLC
180 N. LaSalle Street, Suite 3400
Chicago, IL 60601
(772) 517-2740

*Counsel for Grünenthal GmbH*

*/s/ Michael T. Scott*
Michael T. Scott
MIKE SCOTT LAW LLC
Email: mike@mikescottlaw.com
1116 Red Rose Lane
Villanova, PA 19085
(215) 518-8695

Sonja S. Weissman (*admitted pro hac vice*)
REED SMITH LLP
Email: sweissman@reedsmith.com
101 Second Street, Suite 1800
San Francisco, CA 94105
(415) 543-8700

*Counsel for GlaxoSmithKline LLC, and GlaxoSmithKline Holdings (Americas) Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENDA JOHNSON ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION ET AL.,<br>Defendants. | Case No. 2:11-cv-05782-PD<br><br>This Document Relates to:<br><br>*Gunn, et al. v. SmithKline Beecham Corp., et al.*, No. 2:12-cv-06431 |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AS TO PLAINTIFF YVONNE ENGLISH-MONROE**

Anand Agneshwar (admitted *pro hac vice*)
anand.agneshwar@arnoldporter.com
Carmela T. Romeo
carmela.romeo@arnoldporter.com
Pennsylvania Bar No. 313042
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(212) 836-8689 (fax)

Daniel S. Pariser (admitted *pro hac vice*)
daniel.pariser@arnoldporter.com
Paige H. Sharpe (admitted *pro hac vice*)
paige.sharpe@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)

*Counsel for Sanofi-Aventis U.S. LLC*

[additional counsel listed on signature page]

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

UNDISPUTED FACTS .......... 2

ARGUMENT .......... 3

I. Plaintiff's Claims Are Time-Barred .......... 3

A. The Discovery Rule Does Not Toll Plaintiff's Claims .......... 5

B. Fraudulent Concealment Does Not Toll Plaintiff's Claims .......... 12

C. Plaintiff's Experts' Submissions Confirm Her Claims Are Time-Barred .......... 14

II. Plaintiff's Claims Fail as a Matter of Law Because She Has No Admissible Evidence That She Was Exposed to Thalidomide .......... 16

A. Neither Plaintiff Nor Her Mother Has Any Evidence of Thalidomide Exposure .......... 16

B. Plaintiff's Expert Submissions Do Not Supply the Missing Evidence of Exposure .......... 20

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbdulaziz v. City of Phila.*,
47 F. App'x 131 (3d Cir. 2002) ........ 7

*Abbdulaziz v. City of Phila.*,
No. 00-5672, 2001 WL 1257441 (E.D. Pa. Oct. 18, 2001) ........ 7

*In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*,
No. 1871, 2012 WL 3205620 (E.D. Pa. Aug. 7, 2012) ........ 8

*Baselice v. Franciscan Friars Assumption BVM Province, Inc.*,
879 A.2d 270 (Pa. Super. Ct. 2005) ........ 12

*Blanyar v. Genova Prods. Inc.*,
861 F.3d 426 (3d Cir. 2017) ........ 5

*Bradford v. City of Phila.*,
Civil Action No. 06-CV-5121, 2007 WL 2345278 (E.D. Pa. Aug. 16, 2007) ........ 6, 7

*C.J.M. v. Archdiocese of Phila.*,
67 Pa. D. & C.4th 474 (Pa. Ct. Com. Pl. 2004) ........ 12

*Carey v. Kerr-McGee Chem. Corp.*,
999 F. Supp. 1109 (N.D. Ill. 1998) ........ 14

*Cathedral of Joy Baptist Church v. Village of Hazel Crest*,
22 F.3d 713 (7th Cir. 1994) ........ 14

*Ciccarelli v. Carey Canadian Mines, Ltd.*,
757 F.2d 548 (3d Cir. 1985) ........ 12

*Citing Berkebile v. Brantley Helicopter Corp.*,
337 A.2d 893 (Pa. 1975) ........ 17

*Cochran v. GAF Corp.*,
666 A.2d 245 (Pa. 1995) ........ 9

*Danysh v. Eli Lilly & Co.*,
2011 WL 4344601 (M.D. Pa. July 13, 2011) ........................................................5

*DeMayo v. Schmitt*,
20 Phila. Co. Rptr. 269 (Pa. Ct. Com. Pl. 1990)..........................................17, 18

*Dick v. Am. Home Prods. Corp.*,
No. 1:05-cv-22384, 2009 WL 1542773 (M.D. Pa. June 2, 2009)................17, 18

*Eckenrod v. GAF Corp.*,
544 A.2d 50 (Pa. Super. Ct. 1988)....................................................................17

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000) .........................................................................20, 21

*Fine v. Checcio*,
870 A.2d 850 (Pa. 2005)..........................................................................5, 6, 13

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
982 F. Supp. 388 (E.D. La. 1997).......................................................................8

*Frankentek Residential Sys., LLC v. Buerger*,
No. 12-767, 2014 WL 1623775 (E.D. Pa. 2014)................................................4

*Gease v. Johnson & Johnson*,
No. 2:18-CV-935, 2019 WL 5579374 (W.D. Pa. Oct. 29, 2019).......................17

*Gehring v. Showa Denko, K.K.*,
No. 91-cv-6855, 1994 WL 597584 (E.D. Pa. Nov. 2, 1994)..............................17

*Gleason v. Borough of Moosic*,
609 Pa. 353 (2011)..............................................................................................5

*Ingenito v. AC & S, Inc.*,
633 A.2d 1172 (Pa. Super. Ct. 1993)............................................................9, 11

*Johnson v. SmithKline Beecham Corp.*,
55 F. Supp. 3d 603 (E.D. Pa. 2014).........................................................*passim*

*Johnson v. SmithKline Beecham Corp.*,
636 F. App’x 87 (3d Cir. 2016) .....................................................................1, 2

*Johnson v. SmithKline Beecham Corp.*,
Civ. No. 11-5782, 2014 WL 7087959 (E.D. Pa. July 14, 2014) ..........................6

*Lutes v. Farley*,
446 N.E.2d 866 (Ill. Ct. App. 1983) ..........................14

*Martin v. Dalkon Shield Claimants Trust*,
No. Civ.A.93-2652, 1994 WL 649248 (E.D. Pa. Nov. 16, 1994) ..........................9

*Mest v. Cabot Corp.*,
449 F.3d 502 (3d Cir. 2006) ..........................9

*Naden v. Celotex Corp.*,
546 N.E.2d 766 (Ill. App. 1989) ..........................16

*Rice v. Diocese of Altoona-Johnstown*,
667 Pa. 92 (2021) ..........................5

*Robertson v. Allied Signal, Inc.*,
914 F.2d 360 (3d Cir. 1990) ..........................16

*Sherk v. Daisy-Heddon*,
450 A.2d 615 (Pa. 1982) ..........................17

*Shine v. Owens-Illinois, Inc.*,
979 F.2d 93 (7th Cir. 1992) ..........................16

*Smeal v. Clark Equip. Co.*,
No. CV 19-5853, 2022 WL 1265532 (E.D. Pa. Apr. 28, 2022) ..........................17

*Spade v. Star Bank*,
No. Civ. A 01-3349, 2002 WL 31492258 (E.D. Pa. Nov. 6, 2002) ..........................5, 6

*Speicher v. Dalkon Shield Claimants Trust*,
943 F. Supp. 554 (E.D. Pa. 1996) ..........................12

*Stecyk v. Bell Helicopter Textron, Inc.*,
295 F.3d 408 (3d Cir. 2002) ..........................20, 21

*In re Trasylol Prods. Liab. Litig.*,
No. 08-MD-01928, 2010 WL 6098571 (S.D. Fla. Mar. 16, 2010) ..........................8

*United States v. Kubrick*,
444 U.S. 111 (1979)........................................................................................21

*Urland v. Merrell Dow Pharms., Inc.*,
822 F.2d 1268 (3d Cir. 1987) ...........................................................................5, 13

*In re Vioxx Prods. Liab. Litig.*,
522 F. Supp. 2d 799 (E.D. La. 2007)...............................................................8, 11

*Wilson v. El-Daief*,
964 A.2d 354 (Pa. 2009)......................................................................................4

**Statutes**

42 Pa. Cons. Stat. § 5521(b) ....................................................................................3

42 Pa. Cons. Stat. § 5524(2) ....................................................................................4

42 Pa. Cons. Stat. § 5524(7) ....................................................................................4

735 Ill. Comp. Stat. 5/13-202.................................................................................4, 13

## INTRODUCTION

Plaintiff filed her claims more than fifty years after being born with the birth defects at issue. The discovery rule is unavailable to toll limitations for the five decades between her injuries and her suit. She claims she was unaware of thalidomide until a friend mentioned it to her a few years ago, but there is "overwhelming record evidence that the American public has known since the early 1960s that thalidomide causes serious birth defects." *Johnson v. SmithKline Beecham Corp.*, 55 F. Supp. 3d 603, 613 (E.D. Pa. 2014) ("*Andre*" or "*Andre* Mem.").

Thalidomide's risks were featured in countless prominent news articles and books over the last fifty years. The drug was addressed in highly publicized Congressional hearings during the early 1960s, and dozens of thalidomide-related lawsuits were filed around the country from the 1960s to the 1990s. *See* Defs' Statement of Undisputed Materials Facts ("SUMF") ¶¶ 39–61. There was more than enough information concerning thalidomide in the United States to awaken inquiry. Yet Plaintiff did nothing to investigate the cause of her birth defects until 2011, nearly fifty years after her birth. As the Court held in *Johnson*, because Plaintiff did not exercise reasonable diligence in determining the cause of her injuries, "the statute of limitations ran ***long*** before [she] instituted the instant action." *Johnson v. GlaxoSmithKline, LLC*, 636 F. App'x 87, 89 (3d Cir. 2016) (emphasis in original).

Nor can Plaintiff avoid limitations based on fraudulent concealment. She admits that she had no direct communications with any Defendant concerning thalidomide, and there is no evidence that Plaintiff relied on any statements or actions by Defendants in choosing not to file suit. To the contrary, Plaintiff and her mother both testified that they had never heard of thalidomide—and did not conduct any investigation about it—until fifty years after her claims accrued. As the Third Circuit held in *Johnson*, these facts cannot sustain tolling based on fraudulent concealment. *Id*.

Plaintiff also has no admissible evidence of exposure. Plaintiff's mother testified that, while pregnant, she was given white pills to treat morning sickness. But she does not know whether those pills contained thalidomide as opposed to the many other drugs then available to treat morning sickness. Plaintiff's submissions in response to the Court's May 27, 2026 Order, ECF No. 911 ("*Lone Pine* Order") cannot remedy this evidentiary gap. Defendants are therefore entitled to summary judgment not only on limitations grounds, but also based on the absence of any evidence proving Plaintiff actually was exposed to thalidomide.

## UNDISPUTED FACTS

The undisputed material facts are set forth in Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment as to

Plaintiff Yvonne English-Monroe ("SUMF") and are incorporated herein by reference.

## ARGUMENT

Defendants are entitled to summary judgment.[1] ***First***, Plaintiff's claims are time-barred as a matter of law because all the information necessary to bring suit has been available to her, had she exercised reasonable diligence, for decades. ***Second***, Plaintiff cannot carry her burden of proving an essential element of her case: that her mother took thalidomide during pregnancy and that this caused her birth defects.

### I. Plaintiff's Claims Are Time-Barred

For claims like Plaintiff's arising outside Pennsylvania, the applicable time for filing suit "shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. Cons. Stat. § 5521(b). Here, Plaintiff's mother allegedly ingested thalidomide in Illinois, and Plaintiff was born with birth defects in that State. *See* SUMF ¶ 1; Compl. ¶ 27. Thus, Plaintiff's claims accrued in Illinois and, under the borrowing statute, the Court must apply the statute of limitations—that of Pennsylvania or that of Illinois—that results in the earliest bar to Plaintiff's claims. *See Andre* Mem., 55 F. Supp. 3d at 610–11 (explaining borrowing statute).

---

[1] The Court explained the standard for granting summary judgment in *Andre*. 55 F. Supp. 3d at 610. Accordingly, Defendants will not restate that standard here.

Both Pennsylvania and Illinois apply a two-year statute of limitations. *See* 42 Pa. Cons. Stat. §§ 5524(2), (7) (Pennsylvania requires commencement of actions to recover personal injury damages "within two years" after injury is inflicted); 735 Ill. Comp. Stat. 5/13-202 (Illinois requires that "[a]ctions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued"). Because Pennsylvania law bars Plaintiff's claim here, the Court may apply the Pennsylvania statute of limitations without reaching Illinois law. *Andre* Mem., 55 F. Supp. 3d at 611 ("Pennsylvania's limitations period applies . . . unless the foreign jurisdiction's laws, including laws on tolling and the date of accrual, bar the claim first") (quoting *Frankentek Residential Sys., LLC v. Buerger*, 15 F. Supp. 3d 574, 581 (E.D. Pa. 2014)).

Pennsylvania's two-year limitations period "starts to run when 'an injury is inflicted.'" *Id.* (quoting *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009)). Because Plaintiff sustained her injuries at birth, the statute began to run in 1962. "The statute of limitations thus bars the instant claims unless Plaintiff can equitably toll the limitations clock until at least . . . two years before [she] initiated this action [in November, 2012]." *Id.* The undisputed facts demonstrate that Plaintiff cannot establish tolling here.[2]

---

[2] As this Court has recognized, "Pennsylvania's minor tolling statute, which tolls the limitations clock until an individual reaches 18, does not apply retroactively to claims barred at the time of its enactment in 1984." *Andre* Mem., 55 F. Supp. 3d

**A. The Discovery Rule Does Not Toll Plaintiff's Claims.**

Pennsylvania's discovery rule "reflects a narrow approach 'to determining accrual for limitations purposes' and places a greater burden upon Pennsylvania plaintiffs vis-á-vis the discovery rule than most other jurisdictions." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 432 (3d Cir. 2017) (quoting *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011)); *see also Spade v. Star Bank*, No. Civ. A 01-3349, 2002 WL 31492258, at *8 (E.D. Pa. Nov. 6, 2002) ("[Pennsylvania's] discovery rule is a narrow exception and should be applied in only the most limited circumstances.") (internal quotations omitted); *Danysh v. Eli Lilly & Co.*, 2011 WL 4344601, at *7 (M.D. Pa. July 13, 2011) ("Pennsylvania takes a 'narrow approach' to the discovery rule and places a 'greater burden' on plaintiffs than do most other jurisdictions"). The rule tolls the statute of limitations only until the plaintiff "was able, in the exercise of reasonable diligence, to know of [1] his injury and [2] its cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005); *see also Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021) ("The plaintiff's inability to know of the injury must be 'despite the exercise of reasonable diligence[.]'"); *accord*

---

at 611 (citing *Urland v. Merrell Dow Pharms., Inc.*, 822 F.2d 1268, 1276 (3d Cir. 1987)). Because Plaintiff's claims were time-barred as of 1984, the minor tolling statute does not apply here. Even if the minor tolling statute applied—and it does not—Plaintiff's claims still would be time-barred because the information necessary to bring suit has been readily available to her for more than thirty years of adulthood.

*Andre* Mem., 55 F. Supp. 3d at 614 (alteration in original); *Johnson v. Smithkline Beecham Corp.*, No. CIV. 11-5782, 2014 WL 7087959, at *1 (E.D. Pa. July 14, 2014) ("Pennsylvania statute of limitations begins to run when plaintiff discovers or reasonably should discover injuries, and that another has caused the injuries" (citing *Fine*, 870 A.2d at 859)).

> The standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard. The fact that this individual plaintiff may have lacked knowledge of his or her injury is irrelevant, the statute is tolled only if a reasonable person in the plaintiff's position would have been unaware of the salient facts.

*Bradford v. City of Phila.*, Civil Action No. 06-CV-5121, 2007 WL 2345278, at *2 (E.D. Pa. Aug. 16, 2007) (internal quotations omitted). "[T]here are very few facts which cannot be discovered through the exercise" of such reasonable diligence. *Spade*, 2002 WL 31492258, at *9.

Under these legal standards, the "undisputed facts lead unerringly to the conclusion that the time it took to discover an injury was unreasonable as a matter of law." *Bradford*, 2007 WL 2345278, at *2. ***First***, the massive publicity concerning thalidomide and its propensity to cause birth defects triggered the running of the limitations period despite Plaintiff's claimed lack of knowledge.

In *Bradford*, for example, plaintiff alleged he was injured as a result of improper medical tests performed on him at Holmesburg Correctional Facility in Philadelphia in 1957. *Id.* at *1. He did not file suit until some fifty years later,

claiming he did not learn of the dangers of the medical testing until decades later. *Id.* The court concluded that the discovery rule was unavailable to toll limitations because of the extensive public record surrounding the Holmesburg medical testing, which consisted of articles in the media, public hearings before Congress, and lawsuits by six other prisoners. *Id.* at *3 n.2. As the court put it, "given 'the extraordinary media attention paid to the medical experiments conducted on prisoners at Holmesburg, as well as the six other lawsuits filed by former Holmesburg prisoners, a reasonable person in the plaintiff[']s position would have been aware of the salient facts years before the current action was filed.'" *Id.*; *see also Abbdulaziz v. City of Phila.*, No. 00-5672, 2001 WL 1257441, at *8 (E.D. Pa. Oct. 18, 2001) (granting summary judgment in another Holmesburg case on similar grounds), *aff'd*, 47 F. App'x 131, 132 (3d Cir. 2002) (finding it "simply not reasonable" to believe plaintiffs did not know facts necessary to bring suit because the Holmesburg "experimentation programs were widely publicized").

Here, the undisputed evidence forecloses the discovery rule even more clearly than in the Holmesburg cases. For decades, there has been extraordinary attention about thalidomide in the media, books, and public government records—starting in the early 1960s and continuing through the 2000s. *See Andre* Mem., 55 F. Supp. 3d at 613 (noting the "overwhelming record evidence that the American public has known since the early 1960s that thalidomide causes serious birth defects."); SUMF

¶¶ 43–57. Public knowledge of thalidomide's presence in the United States has even led to the filing of dozens of lawsuits from the 1960s to the 1990s—including by several former plaintiffs in this current litigation. *See* SUMF ¶¶ 58–61.

This is more than enough to put any reasonable person in Plaintiff's or her mother's position on notice of a potential thalidomide claim decades ago. *See In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, No. 1871, 2012 WL 3205620, at *4 (E.D. Pa. Aug. 7, 2012) ("extensive media reports" regarding Avandia reflected "what was in the public realm at the time" and were sufficient to put a reasonable person on notice of the need to investigate a claim); *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 808 (E.D. La. 2007) (under Pennsylvania law, "[b]oth the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiffs on notice of a potential link between their alleged injuries and the use of Vioxx."); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 396 (E.D. La. 1997) (rejecting under Louisiana law plaintiffs' "bald[] assert[ion] that even in the face of . . . extensive media attention in widely circulated publications . . . their ignorance of the [alleged defect] is not unreasonable."); *see also In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 6098571, at *12 (S.D. Fla. Mar. 16, 2010) (applying California law, finding that "***at the latest***, Plaintiffs had a reason to discover (and a reasonable investigation would have led them to discover) their claims against Bayer in January 2006, when

the Mangano article, which asserted in part, that the administration of Trasylol doubled the risk of post-operative renal failure, was published in the *New England Journal of Medicine* and discussed in national and local newspapers.") (emphasis in original).

***Second***, Plaintiff cannot invoke the discovery rule because she failed to exercise reasonable diligence by investigating her claims. "To toll the running of the limitations clock, Plaintiff was obligated to exercise 'reasonable diligence in ascertaining the existence of [his] injury and its cause.'" *Andre* Mem., 55 F. Supp. 3d at 614 (quoting *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006)) (alteration in original). But Plaintiff did not timely seek any medical or legal opinion concerning the cause of her birth defects. *See id.* ("[A] diligent investigation may require one to seek further medical examination") (quoting *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)) (alteration in original); *see also Martin v. Dalkon Shield Claimants Trust*, No. Civ.A.93-2652, 1994 WL 649248, at *4 (E.D. Pa. Nov. 16, 1994) ("The due diligence requirement necessitates that a plaintiff question a doctor as to the cause of an injury"); *Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1174–75 (Pa. Super. Ct. 1993) (finding the discovery rule unavailable to pipefitter who worked with asbestos and developed lung cancer because the "exercise of reasonable diligence would have suggested that Ingenito inquire of his physician concerning the cause of his illness.").

Indeed, the Third Circuit explained in affirming *Johnson* that failure to make reasonable inquiry is alone a sufficient basis for enforcing the statute of limitations: "The District Court also correctly reasoned that, even if [plaintiff's mother's] knowledge was not imputed to Johnson, Johnson never investigated the cause of her injuries, and 'even a cursory inquiry would have provided Plaintiff with abundant information concerning the connection between thalidomide and her birth defects.'" 636 F. App'x at 89. In fact, it is undisputed that Plaintiff conducted no investigation at all into the cause of her injuries for decades. *See* SUMF ¶¶ 1–8. As in *Johnson*, because Plaintiff did not exercise reasonable diligence in determining the cause of her injuries, "the statute of limitations ran long before [she] instituted the instant action." *Johnson*, 636 F. App'x at 89; *see also Andre* Mem., 55 F. Supp. 3d at 614 ("This is no diligence at all, especially compared with that demonstrated by the numerous plaintiffs who brought thalidomide personal injury actions against Defendants decades before").

Plaintiff's lack of diligence is demonstrated by the ease with which she discovered her cause of action once her friend Ramon Rayford urged her to look into thalidomide. *See* SUMF ¶¶ 10–12. That suggestion led to a quick internet search, causing her to believe that birth defects similar to her own appeared among children whose mothers had taken thalidomide. *Id*. ¶¶ 13–14. Yet information on children born with birth defects after thalidomide exposure was widely available to her from

the 1960s on. *Id*. ¶¶ 43–61. Plaintiff could have conducted a similar search years earlier. "[W]here the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury or its cause was unreasonable as a matter of law, summary judgment may be entered by the court." *Ingenito*, 633 A.2d at 1175. That is exactly the situation here.

***Third***, Plaintiff's own sworn discovery responses establish that she had reason to investigate the cause of her injuries nearly ***two decades*** before Rayford suggested a connection to thalidomide in 2011. In response to Defendants' interrogatories, Plaintiff twice represented that "[a]bout 20 years ago Plaintiff's mother told her she'd taken a pill during pregnancy with Plaintiff for morning sickness in the first trimester." SUMF ¶ 5; Ex. C (Pl.'s Supp. Resp. to Sanofi-Aventis U.S. LLC's First Set of Reqs. for Admis., Nos. 6–7); Ex. F (Pl.'s Supp. Resp. to GlaxoSmithKline LLC's First Set of Interrogs., No. 4). Although Plaintiff states that her mother "did not know what the pill was," and cannot now establish that it was in fact thalidomide, that disclosure nevertheless put Plaintiff on notice that her injuries ***might*** be linked to a medication taken during pregnancy. At a minimum, this information triggered a duty to investigate. Plaintiff did not do so, and the discovery rule cannot excuse that decades-long lack of diligence. *See In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d at 808 (finding claims time-barred where plaintiffs were on notice of potential link more than two years before filing suit).

### B. Fraudulent Concealment Does Not Toll Plaintiff's Claims

Plaintiff's claims are likewise not saved by the doctrine of fraudulent concealment. Plaintiff cannot prove ***direct*** fraudulent concealment because she concedes that she has never communicated with any of the Defendants. SUMF ¶ 9; Ex. D (Pl.'s Second Suppl. Resp. to Sanofi-Aventis U.S. LLC's Fourth Interrog.). Nor is there any evidence that Plaintiff relied ***indirectly*** on any of Defendants' alleged representations to the general public, assuming *arguendo* such an "indirect reliance" theory is valid.[3] As in *Andre*, "Defendants' alleged misrepresentations

---

[3] While this Court "ha[s] never ruled on whether [an] 'act of concealment' must be communicated ***directly*** to the plaintiff," the Court has recognized that this proposition has ample support in case law. *Andre* Mem., 55 F. Supp. 3d at 616 (collecting federal and state cases) (emphasis in original). Defendants submit that a "fraud on the public" does not constitute fraudulent concealment, and that an affirmative act directed at the plaintiff instead is required to toll the statute of limitations. Ex. AA (*Thomas v. Smith Kline Beecham Corp.*, No. J-A15019-13, slip op. at 10 (Pa. Super. Ct. Nov. 27, 2013) (upholding summary judgment on limitations grounds because "general systematic public conduct . . . is not an affirmative act directed at this specific Plaintiff.")). In *Thomas*, the state court cited multiple decisions of the Third Circuit and the Eastern District of Pennsylvania, all of which further support the rejection of Plaintiff's claim of fraudulent concealment here. *See also Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 557 (3d Cir. 1985) (holding allegations of decades-long fraud on the public regarding asbestos "insufficient to create an issue of fraud under Pennsylvania law."); *Speicher v. Dalkon Shield Claimants Trust*, 943 F. Supp. 554, 559 (E.D. Pa. 1996) (finding no fraudulent concealment because "Plaintiff has not alleged facts which would enable us to conclude that there was any specific conduct directed towards her by defendant that would cause her to deviate from her right of inquiry"); *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 278–79 (Pa. Super. Ct. 2005) (noting that "general and systematic conduct" is not fraudulent concealment; "affirmative or independent" statements directed to the plaintiff are required); *C.J.M. v. Archdiocese of Phila.*, 67 Pa. D. & C.4th 474, 490–91 (Pa. Ct. Com. Pl.

never lulled Plaintiff into an incorrect understanding that [she] had no reason to proceed against Defendants." 55 F. Supp. 3d at 616; *see also id.* at 615 ("Plaintiff has not, in his Complaint or deposition, identified a single misrepresentation on which ***he*** relied to ***his*** detriment.") (emphases in original).

Plaintiff's fraudulent concealment theory is also at odds with the massive publicity surrounding thalidomide for five decades. The Pennsylvania Supreme Court "views tolling of the statute of limitations in terms of the same 'knew or should have known' standard whether the statute is tolled because of the discovery rule or because of fraudulent concealment." *Urland*, 822 F.2d at 1273 (cited and quoted in *Andre* Mem., 55 F. Supp. 3d at 617). In other words, "the fraudulent concealment doctrine tolls the statute only until the 'injured party knows or reasonably should know of his injury and its cause.'" *Andre* Mem., 55 F. Supp. 3d at 617 (quoting *Fine*, 870 A.2d at 861). As the Third Circuit affirmed in *Johnson*, fraudulent concealment is simply unavailable given Plaintiff's failure to investigate and the widespread public knowledge of thalidomide for the last half-century. *See Johnson*, 636 F. App'x at 89.[4]

---

2004) (finding no fraudulent concealment where plaintiff claimed reliance on "systematic" acts or "general statements" instead of an "independent act of concealment . . . applicable to an individual plaintiff").

[4] Since Pennsylvania law bars Plaintiff's claims, it is unnecessary to consider Illinois law. Nevertheless, Illinois law also forecloses her claims. Illinois has a two-year limitations period. 735 Ill. Comp. Stat. 5/13-202. A plaintiff asserting the

### C. Plaintiff's Experts' Submissions Confirm Her Claims Are Time-Barred

After Plaintiff elected to proceed *pro se*, the Court afforded her an opportunity to submit additional evidence pursuant to its *Lone Pine* Order. *See* ECF 853 (notice of proceeding *pro se*); ECF 911 ¶¶ A1–A2. In response, Plaintiff resubmitted the declaration of Trent Stephens, Ph.D., who asserts that Plaintiff's injuries are consistent with in utero exposure to thalidomide based on his "assum[ption] that [Plaintiff] was exposed to thalidomide during the critical period in utero." SUMF ¶¶ 63–65; Ex. Y (Stephens Decl. ¶¶ 6, 12). Plaintiff also submitted a brief declaration from a treating physician, Robert Jeffrey Snell, M.D., who opines that in utero exposure to thalidomide caused Plaintiff's injuries. SUMF ¶¶ 67–69; Ex. X

---

discovery rule "has the burden of showing that . . . even with the exercise of reasonable diligence it could not have known" of his or her claim. *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994) (applying Illinois law); *Lutes v. Farley*, 446 N.E.2d 866, 868 (Ill. App. Ct. 1983) (denying tolling based on discovery rule because "the stillbirth of a child is a sudden, traumatic event which should prompt some investigation by the injured party"). The Illinois discovery rule does not defer the accrual of a plaintiff's claim, moreover, where (as here) the plaintiff is on constructive notice of her potential claims due to widespread publicity. *See, e.g.*, *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1117 (N.D. Ill. 1998). While Illinois recognizes fraudulent concealment, "Plaintiff must show that defendants knew the acts or misrepresentations were false and made with the intent to deceive him and that he detrimentally relied on them such that he was lulled or induced to delay filing suit until after the statute of limitations expired." *Gredell v. Wyeth Lab'ys, Inc.*, 803 N.E.2d 541, 548 (Ill. App. Ct. 2004). Given the obvious nature of Plaintiff's birth defects, the massive publicity surrounding thalidomide, and the lack of any detrimental reliance by Plaintiff, Illinois law bars her claim for the same reasons as Pennsylvania law.

(Snell Decl. ¶¶ 4–5). Far from supporting Plaintiff's position, Drs. Stephens' and Snell's submissions underscore that Plaintiff has long possessed the information necessary to investigate and pursue her claims, confirming that those claims are now time-barred.

Starting with Dr. Stephens, his declaration is not new. More than a decade ago, this Court considered a nearly identical declaration from Dr. Stephens in the *Andre* case and concluded that it was "insufficient to defeat summary judgment." *Andre* Mem., 55 F. Supp. 3d at 614. That is because Dr. Stephens based his conclusion that Plaintiff's birth defects are consistent with thalidomide exposure on studies published in 1962, 1966, and 1992, respectively. SUMF ¶ 66; Ex. Y (Stephens Decl. ¶¶ 12–14). As this Court recognized, Dr. Stephens "himself acknowledges that any 'sea change' in medical thought on thalidomide occurred" ***several decades*** before he personally "came to appreciate[] its significance." *Andre* Mem., 55 F. Supp. 3d at 613 (alteration in original and internal quotations omitted); *see also Johnson v. SmithKline Beecham Corp.*, 95 F. Supp. 3d 819, 829–30 (E.D. Pa. 2015), *aff'd sub nom. Johnson v. GlaxoSmithKline, LLC*, 636 F. App'x 87 (3d Cir. 2016). The same holds true here. The decades-old medical literature on which Dr. Stephens relies confirms that the factual basis for Plaintiff's causation theory was available long before she filed suit and could have been discovered through the exercise of reasonable diligence.

Dr. Snell's declaration fares no better. By Dr. Snell's own account, Plaintiff's injuries "perfectly align with the textbook clinical presentation" of thalidomide-induced birth defects, which undermines any claim that Plaintiff lacked the information necessary to investigate her claims. *See* SUMF ¶ 69; Ex Y (Stephens Decl. ¶ 6). If Plaintiff's injuries are "textbook" manifestations of thalidomide embryopathy, then the alleged connection between those injuries and thalidomide has been recognized for decades and cannot be attributed to newly available science. Dr. Snell's opinion therefore only confirms that any delay in bringing suit reflects Plaintiff's failure to pursue her claims with reasonable diligence.

## II. Plaintiff's Claims Fail as a Matter of Law Because She Has No Admissible Evidence That She Was Exposed to Thalidomide

### A. Neither Plaintiff Nor Her Mother Has Any Evidence of Thalidomide Exposure

Plaintiff's claims fail for the independent reason that she cannot establish actual exposure to thalidomide, much less exposure to thalidomide that one of these Defendants distributed. "Under Illinois law . . . [the plaintiff] must identify the allegedly harmful product and demonstrate a link between that product and each defendant." *Shine v. Owens-Illinois, Inc.*, 979 F.2d 93, 97 (7th Cir. 1992); *see also Naden v. Celotex Corp.*, 546 N.E.2d 766, 769 (Ill. App. Ct. 1989) (affirming grant of summary judgment because "there is nothing that justifies an inference that decedent was exposed to defendants' products"). Pennsylvania law similarly

requires proof of exposure to a particular defendant's product. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366 (3d Cir. 1990) ("Under Pennsylvania law, the plaintiff in a products liability action bears the burden of demonstrating that a specific defendant is responsible for the harm alleged."); *Smeal v. Clark Equip. Co.*, No. CV 19-5853, 2022 WL 1265532, at *5 (E.D. Pa. Apr. 28, 2022) ("Before imposing liability on a defendant in a product liability action, Pennsylvania law requires a plaintiff to show not only that the plaintiff was exposed to a defective product manufactured or sold by the defendant, but that the plaintiff's exposure was a substantial factor in causing the plaintiff's injury.").[5]

*DeMayo v. Schmitt*, 20 Phila. Co. Rptr. 269 (Pa. Ct. Com. Pl. 1990), is instructive. There, the plaintiff sued to recover for injuries allegedly caused by the plaintiff's grandmother's ingestion of DES while pregnant. *Id.* at 271. The plaintiff had no physician or pharmacist records confirming exposure, and the grandmother who allegedly had ingested DES was deceased. *Id.* at 279–80. The plaintiff's only evidence of exposure was physician testimony that her mother's injuries were

---

[5] *See also Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 898 (Pa. 1975); *Gease v. Johnson & Johnson*, No. 2:18-CV-935, 2019 WL 5579374, at *2 (W.D. Pa. Oct. 29, 2019); *Dick v. Am. Home Prods. Corp.*, No. 1:05-cv-2384, 2009 WL 1542773, at *3 (M.D. Pa. June 2, 2009); *Gehring v. Showa Denko, K.K.*, No. 91-cv-6855, 1994 WL 597584, at *3 (E.D. Pa. Nov. 2, 1994); *Sherk v. Daisy-Heddon*, 450 A.2d 615, 617 (Pa. 1982); *Eckenrod v. GAF Corp.*, 544 A.2d 50, 52 (Pa. Super. Ct. 1988).

"***consistent*** with DES exposure," medical records in which the grandmother "***said*** she took DES during the pregnancy in question," and the plaintiff's mother's testimony that the plaintiff's grandmother said that she ingested DES. *Id.* at 280, 284 (emphases in original). The court found "no competent evidence of ingestion of DES," and dismissed the plaintiff's claims because she failed to establish exposure (among other reasons). *Id.* at 272.

In *Dick v. American Home Products Corp.*, 2009 WL 1542773 (M.D. Pa. June 2, 2009), the plaintiff claimed he suffered injuries after ingesting a later-recalled drug lot contaminated with acebutolol. 2009 WL 1542773, at *2. The court found "no evidence to support Plaintiff's claim that Mr. Dick actually received or ingested any capsules that may have come from [the recalled] lot," and "[e]ven more fundamentally, there is no evidence to show that any etodolac capsules Mr. Dick did ingest—whether from [the recalled lot] or otherwise—actually contained any acebutolol, much less a quantity of acebutolol sufficient to cause him to suffer adverse health effects or cause his death." *Id.* at *3. "Although the Court is sensitive to the difficulty that Plaintiff may have had to prove through direct evidence that her husband's medication was filled from the contaminated lot, the Court cannot ignore the fundamental requirement that Plaintiff produce at least sufficient circumstantial evidence in order to prove product identification." *Id.* at *4.

Here, Plaintiff's mother testified only that she took white tablets for morning sickness during her pregnancy. SUMF ¶ 18; Ex. A (English Dep.) at 15, 16, 58–59. She admits that she does not know whether the tablets contained thalidomide. SUMF ¶ 27; Ex. A (English Dep.) at 15, 16, 58–59. She received thirty of the tablets at an unidentified clinic in an unmarked white bag, which no longer exists. SUMF ¶¶ 25–26; Ex. A (English Dep.) at 50–51, 54. Her prenatal care doctor—whose name she cannot remember decades later—told her nothing about "the company who made the pills," or where they came from. SUMF ¶¶ 23, 25; Ex. A (English Dep.) at 45–47, 51–52. Plaintiff has no medical records or other documentation identifying the tablets. SUMF ¶ 33; Ex. C (Pl.'s Supp. Resp. to Sanofi-Aventis U.S. LLC's First Set of Reqs. for Admis., No. 1).

That Plaintiff's mother remembers taking unidentified white tablets for morning sickness does not begin to prove she took thalidomide. At the time of her pregnancy, doctors used scores of medications to treat that condition. *See* Ex. Z (*Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals* 355–56 (16th ed. 1962) (listing drugs FDA had approved to treat morning sickness)). And her mother further testified that she has no basis for believing the tablets she took were thalidomide. SUMF ¶ 27; Ex. A (English Dep.) at 16.

Plaintiff's discovery responses confirm the lack of exposure evidence. Plaintiff admits that she possesses no contemporaneous medical record establishing

that her mother was dispensed or ingested thalidomide. Ex. C (Pl.'s Supp. Resp. to Sanofi-Aventis U.S. LLC's First Set of Reqs. for Admis., No. 1). She likewise admits that she has no documentary evidence showing that the physician who allegedly provided her mother with medication participated in any clinical trial that SKF or Merrell conducted. *Id.* at Nos. 3–5. There is, in short, no admissible evidence to establish that her mother took thalidomide.

### B. Plaintiff's Expert Submissions Do Not Supply the Missing Evidence of Exposure

Nor do Plaintiff's experts' submissions provide evidence that she was exposed to thalidomide. ***First***, Dr. Stephens's declaration rests entirely on the assumption, supplied by Plaintiff's former counsel, that Plaintiff "was exposed to thalidomide during the critical period in utero." SUMF ¶ 65; Ex. Y (Stephens Decl. ¶¶ 6, 12). As this Court has already recognized, however, "Dr. Stephens's assumption is not evidence that Plaintiff's mother took thalidomide early in her pregnancy." *Andre* Mem., 55 F. Supp. 3d at 612 (citing *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."), and *Elcock v. Kmart Corp.*, 233 F.3d 734, 755 (3d Cir. 2000) (same)). The same flaw is present in Dr. Stephens's declaration submitted here and compels the same determination.

***Second***, the declaration from Dr. Snell is equally insufficient. Dr. Snell's opinion that Plaintiff was exposed to thalidomide in utero rests on his review of her

"verified historical medical records," which purportedly "document an established medical history of intrauterine thalidomide exposure." SUMF ¶ 70; Ex. X (Snell Decl. ¶ 3). The sole record he identifies, however, is a December 5, 2017 office note from Rush University Medical Center, created more than ***five decades*** after Plaintiff's birth and approximately ***five years*** after this litigation began. SUMF ¶ 71; Ex. Y (Plaintiff's December 5, 2017 Office Visit at Rush University Medical Center). That record contains only a brief notation that Plaintiff has a "past history medical significant for intrauterine thalidomide exposure," with no attribution or explanation. SUMF ¶ 74; Ex. Y (Plaintiff's December 5, 2017 Office Visit at Rush University Medical Center) at 1, 4. Most likely, the notation simply reflects the patient's own self-report, but, in any case, does not contain any factual foundation for the statement. Dr. Snell's cursory opinion, based on this passing and unsupported reference dated more than fifty years after her birth, cannot defeat summary judgment. *See Stecyk*, 295 F.3d at 414; *Elcock*, 233 F.3d at 755.

Because Plaintiff has not put forth any admissible evidence that she was in fact exposed to thalidomide, summary judgment is independently warranted on this ground.

## CONCLUSION

Although the statute of limitations applies absent any showing of prejudice, the very purpose of such statutes is to "protect defendants and the courts from having

to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). This case is a glaring example of why such statutes are needed. Plaintiff's mother cannot remember the name of the doctor or doctors who provided her with prenatal care during her pregnancy with Plaintiff. There are no medical records documenting her alleged use of thalidomide. Accordingly, Defendants are severely prejudiced in defending against Plaintiff's claims. Prevention of this kind of prejudice is a key reason why statutes of limitations exist. For all of the foregoing reasons, Defendants respectfully request that this Court enter summary judgment in their favor and dismiss each of Plaintiff's claims with prejudice.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Daniel S. Pariser*

Daniel S. Pariser (admitted *pro hac vice*)
daniel.pariser@arnoldporter.com
Paige H. Sharpe (admitted *pro hac vice*)
paige.sharpe@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)

Anand Agneshwar (admitted *pro hac vice*)
anand.agneshwar@arnoldporter.com
Carmela T. Romeo
carmela.romeo@arnoldporter.com

Pennsylvania Bar No. 313042
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(212) 836-8689 (fax)
*Counsel for Sanofi-Aventis U.S. LLC*

*/s/ Michelle A. Ramirez*
Michelle A. Ramirez (*admitted pro hac vice*)
michelle.ramirez@sidley.com
Daniel A. Spira (*admitted pro hac vice*)
dspira@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (fax)

Eliezer Granek
egranek@eckertseamans.com
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
(215) 851-8383 (fax)

Eugene A. Schoon (*admitted pro hac vice*)
CROKE, FAIRCHILD, DUARTE & BERES, LLC
180 N. LaSalle Street, Suite 3400
Chicago, IL 60601
Telephone: (772) 517-2740

*Counsel for Grünenthal GmbH*

*/s/ Michael T. Scott*

Michael T. Scott
MIKE SCOTT LAW LLC
Email: mike@mikescottlaw.com
1116 Red Rose Lane
Villanova, PA 19085
Telephone: (215) 518-8695

Sonja S. Weissman (*admitted pro hac vice*)
REED SMITH LLP
Email: sweissman@reedsmith.com
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700

*Counsel for GlaxoSmithKline LLC, and GlaxoSmithKline Holdings (Americas) Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, I electronically filed the foregoing Defendants' Motion for Summary Judgment as to Plaintiff Yvonne English-Monroe and accompanying Memorandum of Law in Support thereof with the Clerk of the Court using CM/ECF. I also certify that true and correct copies of the foregoing documents are being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Daniel S. Pariser*
Daniel S. Pariser