**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON, et al.,<br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION, et al.,<br>Defendants. | Case No. 2:11-cv-05782-PD<br>AND ALL RELATED CASES<br><br>This Document Relates to:<br>Yeatts, et al. v. SmithKline Beecham Corp., et al.,<br>No. 11-cv-06711 |

**PLAINTIFF CAROLYN SAMPSON'S RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE STATEMENT OF UNDISPUTED MATERIAL FACTS (DOC. 950) AND MOTION FOR LEAVE TO SUPPLEMENT THE RECORD**

**Table of Contents**

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA** ........ 1

**INTRODUCTION** ........ 3

**BACKGROUND** ........ 4

**CONCLUSION** ........ 10

**REQUESTED RELIEF** ........ 11

**CERTIFICATE OF SERVICE** ........ 12

## INTRODUCTION

Plaintiff Carolyn Sampson, proceeding pro se, respectfully responds to Defendants' Motion for Leave to File Statement of Undisputed Material Facts and contemporaneously requests leave to supplement the record with newly discovered historical evidence.

Defendants seek leave to file a separate Statement of Undisputed Material Facts after filing their Renewed Motion for Summary Judgment. Defendants further represent that, although Plaintiff declined to consent to the requested relief, they would not object to Plaintiff supplementing her opposition with a response to Defendants' proposed statement. [Doc. 950]

Plaintiff does not oppose Defendants' request provided Plaintiff is granted corresponding leave to supplement the record with newly discovered contemporaneous documents relating directly to the issues before the Court. These documents came to Plaintiff's attention only after Plaintiff's mother recently transitioned to assisted living and Plaintiff became responsible for clearing and preparing her mother's residence for sale.

During that process, Plaintiff discovered legal correspondence and medical records that had remained among family papers and were not previously available to Plaintiff. The newly discovered documents include a December 16, 1963 attorney letter concerning efforts by Plaintiff's parents to determine the cause of Plaintiff's birth defects, a December 22, 1967 physician referral letter regarding Plaintiff's treatment, and contemporaneous surgical records documenting congenital upper-extremity anomalies and reconstructive procedures performed during Plaintiff's childhood. [Pl.'s Ex. 1, Attorney Letter], [Pl.'s Ex. 2 Letter from Daniel C. Riordan, M.D.], [Pl.'s Ex 3, Surgery Records 1966-67].

Because these materials were not previously available to Plaintiff, they could not have been submitted to the Court earlier in these proceedings and likewise were unavailable when expert review was previously sought.

Plaintiff respectfully requests that the Court consider the parties' requests for supplemental filings on a reciprocal basis and permit Plaintiff to supplement the record with the newly discovered documents described below.

## BACKGROUND

### I. DEFENDANTS SEEK LEAVE TO FILE AN ADDITIONAL STATEMENT OF FACTS.

On September 30, 2026, Defendants filed a Motion for Leave to File Statement of Undisputed Material Facts in Support of their Renewed Motion for Summary Judgment. Defendants state that although factual assertions were included in their Renewed Motion, those assertions were not presented in the separate format contemplated by the Court's procedures and therefore seek leave to submit an additional factual statement. Defendants further state that they do not object to Plaintiff supplementing her opposition with a response to the proposed factual statement. [Doc. 950]

Plaintiff takes no position on whether Defendants should be permitted to file the additional statement provided that Plaintiff is granted corresponding leave to supplement the record with newly discovered evidence relevant to issues presently before the Court. [Doc 950]

### II. PLAINTIFF RECENTLY DISCOVERED ADDITIONAL HISTORICAL RECORDS.

Plaintiff's mother recently relocated from her residence to an assisted living facility. Following that relocation, Plaintiff became responsible for organizing, clearing, and preparing the residence for sale.

While sorting through decades of accumulated family papers, correspondence, legal files, and medical records, Plaintiff discovered documents that had not previously been in Plaintiff's possession and whose existence was previously unknown to Plaintiff.

Among the newly discovered materials are:

A December 16, 1963 letter from counsel to Plaintiff's father discussing efforts to determine the cause of Plaintiff's congenital anomalies and consultations with Doctor Hopper. [Pl.'s Ex. 1, Attorney Letter],

A December 22, 1967 letter from Daniel C. Riordan, M.D. to G. Dean Mac Ewen, M.D. concerning Plaintiff's treatment and continuing care. [Pl.'s Ex. 2 Letter from Daniel C. Riordan M.D.],

Operative reports and related medical records from 1966 and 1967 documenting congenital upper-extremity anomalies and reconstructive surgical procedures performed during Plaintiff's childhood. [Pl.'s Ex. 3, Surgery Records 1966-67].

The documents appear to have been maintained among Plaintiff's parents' personal records for decades and were not previously available to Plaintiff despite Plaintiff's extensive efforts to reconstruct the historical record relevant to this action.

**III. THE NEWLY DISCOVERED EVIDENCE IS RELEVANT AND APPROPRIATE FOR SUPPLEMENTATION**

The materials Plaintiff seeks to submit are newly discovered contemporaneous records created in the ordinary course of legal representation and medical treatment. Plaintiff does not offer these records as newly created litigation materials or post hoc recollections. Rather, they are historical documents generated during the period in which Plaintiff's family and physicians were attempting to understand and treat the congenital anomalies at issue in this action. [Pl.'s Ex. 1, Attorney Letter], [Pl.'s Ex. 2 Letter from Daniel C Riordan, M.D.], [Pl.'s Ex. 3, Surgery Records 1966-67].

**A. The 1963 Attorney Correspondence Provides Contemporaneous Evidence Concerning Early Efforts To Determine the Cause of Plaintiff's Injuries.**

The December 16, 1963 letter reflects that Plaintiff's parents retained counsel and explored whether an automobile accident during pregnancy could have caused Plaintiff's

congenital anomalies. The letter further reflects that counsel consulted with Doctor Hopper concerning the question and reported the then-current understanding regarding fetal injury and pregnancy timing. Counsel ultimately advised Plaintiff's parents that he was unaware of a legal basis to connect the accident to Plaintiff's deformities and intended to place the matter on inactive status absent future developments in medical knowledge. [Pl.'s Ex. 1, Attorney Letter].

Plaintiff does not contend that the letter identifies thalidomide, establishes causation, or resolves any disputed issue by itself. Its significance lies in the fact that it contemporaneously documents efforts by Plaintiff's parents to identify an explanation for Plaintiff's birth defects and demonstrates that the family was actively seeking answers regarding causation. [Pl.'s Ex. 1, Attorney Letter].

**B. The 1967 Medical Correspondence Documents Continuing Treatment for Congenital Anomalies.**

The December 22, 1967 letter from Daniel C. Riordan, M.D. to G. Dean Mac Ewen, M.D. concerns Plaintiff's treatment and continuing care. The letter references reconstructive surgery performed during Plaintiff's childhood and confirms that Plaintiff's family was relocating and arranging for continued treatment by specialists familiar with Plaintiff's condition. [Pl.'s Ex. 2 Letter from Daniel C. Riordan, M.D.].

The letter further demonstrates the ongoing nature of Plaintiff's treatment and provides contemporaneous medical documentation of congenital abnormalities requiring surgical intervention.

**C. The Operative Reports Provide Contemporaneous Documentation of Plaintiff's Congenital Conditions.**

The 1966 and 1967 operative reports document congenital upper-extremity anomalies and the reconstructive procedures undertaken to address those abnormalities during Plaintiff's childhood. The records describe congenital absence of the right thumb, reconstructive thumb

surgery, congenital abnormalities involving the left upper extremity, and related corrective procedures. [Pl.'s Ex. 3, Surgery Records 1966-67].

Unlike retrospective descriptions prepared years later, these records were created contemporaneously by treating physicians and therefore provide direct documentation of the physical abnormalities present during Plaintiff's childhood.

The records do not merely describe treatment. They also document the nature and extent of the congenital anomalies themselves. Accordingly, they bear directly upon the medical history underlying the issues presently before the Court.

**D. The Documents Were Previously Unavailable to Plaintiff.**

The circumstances of discovery distinguish these materials from evidence that could reasonably have been presented earlier. Plaintiff discovered the documents only after her mother's August 31, 2026 transition to assisted living required Plaintiff to clear and organize her mother's residence in preparation for sale.

Prior to that time, Plaintiff did not possess these records and was unaware of their existence. The documents appear to have remained among family files and personal papers maintained by Plaintiff's parents for decades. Because the records were not available to Plaintiff, they could not have been submitted to the Court earlier in these proceedings and were likewise unavailable when expert review was previously sought.

Plaintiff acted promptly after discovering the documents. After reviewing the materials and determining their relevance, Plaintiff assembled the exhibits and seeks leave to present them to the Court at the earliest practical opportunity.

**E. Supplementation Will Assist the Court and Will Not Prejudice Defendants.**

The proposed supplementation is limited and narrowly tailored. Plaintiff seeks leave to submit only a small number of newly discovered documents together with a declaration explaining the circumstances of their discovery.

Unlike newly created declarations or retrospective recollections, these materials were created contemporaneously in 1963, 1966, and 1967 and therefore provide independent historical documentation of facts and circumstances relevant to Plaintiff's claims.

Their authenticity and relevance can be evaluated by the Court in the same manner as other documentary evidence already contained in the record. Defendants will suffer no unfair prejudice from supplementation because they will have a full opportunity to address the documents should the Court determine that any response is necessary.

Under these circumstances, the interests of a complete and accurate record favor permitting supplementation so that the Court may consider all relevant contemporaneous evidence now available to Plaintiff.

**IV. RECIPROCAL LEAVE IS APPROPRIATE AND SERVES THE INTERESTS OF A COMPLETE RECORD**

Defendants seek leave to supplement their pending summary-judgment submissions with an additional factual filing that was not included with their original motion. Defendants represent that the purpose of their request is to place those facts into a format that more closely conforms to the Court's procedures rather than to introduce entirely new substantive evidence. Defendants further state that they would not object to Plaintiff supplementing her opposition with a response to the proposed statement.

Whether or not the Court grants Defendants' Motion for Leave, Plaintiff respectfully requests leave to supplement the record with the newly discovered contemporaneous documents that were unavailable to her when her opposition was prepared. [Pl.'s Ex. 1, Attorney Letter], [Pl.'s Ex. 2 Letter from Daniel C. Riordan, M.D.], [Pl.'s Ex. 3, Surgery Records 1966-67].

Plaintiff is not seeking to reopen discovery, introduce newly created evidence, or delay resolution of the pending motion. Plaintiff seeks only to place before the Court a limited number of historical documents that recently came into her possession through circumstances beyond her control. As described above, those documents were discovered only when Plaintiff became responsible for clearing and preparing her mother's residence for sale following her mother's transition to assisted living. [Pl.'s Ex. 1, Attorney Letter], [Pl.'s Ex. 2 Letter from Daniel C. Riordan, M.D.], [Pl.'s Ex. 3, Surgery Records 1966-67].

Nor will supplementation impose unfair prejudice on Defendants. The proposed exhibits consist of identifiable historical documents created decades ago in the ordinary course of legal representation and medical treatment. Defendants will have an opportunity to review those materials and, if necessary, address their significance. The requested supplementation therefore does not deprive Defendants of notice or an opportunity to be heard.

In contrast, denial of supplementation would prevent the Court from considering contemporaneous evidence that bears upon the history of Plaintiff's congenital anomalies, the medical treatment undertaken during Plaintiff's childhood, and the efforts made by Plaintiff's family to understand the cause of those anomalies. The purpose of summary judgment is to evaluate the record as completely and accurately as possible. Permitting reciprocal supplementation advances that objective.

The circumstances presented here are particularly appropriate for supplementation because Plaintiff did not previously possess the documents and was unaware of their existence. The records surfaced not through strategic delay but through the unexpected discovery of family papers while addressing significant responsibilities related to her mother's relocation and affairs. Plaintiff acted promptly after discovering the documents and now seeks leave at the earliest practical opportunity to place them before the Court.

Accordingly, Plaintiff respectfully requests leave to supplement the record with:

Exhibit 1, the December 16, 1963 attorney correspondence; [Pl.'s Ex. 1, Attorney Letter].

Exhibit 2, the December 22, 1967 letter from Daniel C. Riordan, M.D.; [Pl's Ex 2 Letter from Daniel C. Riordan, M.D.]

Exhibit 3, the 1966-1967 operative reports and related medical records; [Pl's. Ex. 3, Surgery Records 1966-67] and

Exhibit 4, the Declaration of Carolyn Sampson describing the circumstances under which the documents were discovered. [Pl's. Ex. 4 Declaration].

Plaintiff seeks leave not to create new evidence, but to present contemporaneous documents that were discovered only after the record was assembled and submitted.

For these reasons, granting leave is appropriate and will assist the Court in considering the most complete factual record available.

## CONCLUSION

Plaintiff does not oppose Defendants' request for leave to file a separate Statement of Undisputed Material Facts provided that Plaintiff is afforded corresponding leave to supplement the record with newly discovered contemporaneous documents and to address Defendants' supplemental factual submission. [Doc 950]

The documents Plaintiff seeks to submit were discovered only after Plaintiff's mother transitioned to assisted living and Plaintiff became responsible for clearing and preparing the family residence for sale. Those materials consist of contemporaneous legal and medical records that were not previously available to Plaintiff and therefore could not have been presented to the Court earlier in these proceedings. The records include a 1963 attorney letter concerning efforts to determine the cause of Plaintiff's congenital anomalies, a 1967 physician referral letter, and operative reports documenting congenital upper-extremity abnormalities and reconstructive surgeries performed during Plaintiff's childhood.

# EXHIBIT 1

Attorney Letter

EGAN, O'DONNELL, HANLEY & CLIFFORD
*Counsellors at Law*

CHARLES M. EGAN, JR.
JOHN J. O'DONNELL
ROBERT P. HANLEY
ROBERT L. CLIFFORD

*10 Park Place*
PARK SQUARE BUILDING
MORRISTOWN, NEW JERSEY
JEFFERSON 8-1230

December 16, 1963

Mr. Leonard Farmer
101 Robert Lane
Monroe Park
Wilmington, Delaware

Dear Mr. Farmer:

I would like to bring you up to date on the case of your infant child. As I explained to you in my letter of February 25th, 1963, I have again consulted with Doctor Hopper and according to medical research because your wife was approximately 2 months pregnant with the child at the date of the accident, injury to the child could not have occurred. Generally, injury to the child will only occur after the fourth month of pregnancy.

I do not know of any legal basis at the present time to connect up the accident of August 28, 1961 with the deformities which your child was born with.

I am, therefore, going to put this file on an inactive status, with the only possibility being that if future medical research does provide us with some lead to form the basis of attaching liability in this matter.

If you have any question in this matter, please advise.

Very truly yours,

EGAN, O'DONNELL, HANLEY & CLIFFORD

BY: Robert P. Hanley

RPH:mb

EGAN, O'DONNELL, HANLEY & CLIFFORD
10 PARK PLACE, MORRISTOWN, N. J.

MORRISTOWN N.J. DEC 16 '63
U.S. POS[TAGE] .05
P.B. METER 522957

3703 Evelyn Dr.

Mr. Leonard Farmer
101 Robert Lane
Monroe Park
Wilmington, Delaware

# EXHIBIT 2

Letter From Daniel C. Riordan, M.D.

Rufas H. Alldredge, M.D.
U.S. REG. NO. 7769
J. Kenneth Saer, M.D.
U.S. REG. NO. 15066
Daniel C. Riordan, M.D.
U.S. REG. NO. 12480
Ray J. Haddad, Jr., M.D.
U.S. REG. NO. 14893

DRS. ALLDREDGE, RIORDAN, SAER and HADDAD
1538 Louisiana Ave., New Orleans, La. 70115
By appointment – Phone TW 9-2353

Name ______

Address ______

Age ______ Date 12-22-67

Rx

Mrs. Farmer:

This is a copy of what I sent Dr. MacEwen, as you can see. I think it would be wise for you to hang on to it just in case they lose theirs.

Janet Ayo

REFILL - 0 1 2 3 4 5 6 -

U.S. POSTAGE 05 NEW ORLEANS LA DEC 22 '67 METER 363570

Mrs. Leonard Farmer
921 Barnes St.
Westwego, La.

DRS. ALLDREDGE, RIORDAN, SAER & HADDAD
P. O. BOX 53341
1538 LOUISIANA AVENUE
NEW ORLEANS, LOUISIANA 70150

DRS. ALLDREDGE, RIORDAN, SAER AND HADDAD
ORTHOPEDIC SURGERY
P. O. BOX 53341
1538 LOUISIANA AVENUE
NEW ORLEANS, LOUISIANA 70150

RUFUS H. ALLDREDGE, M. D.
DANIEL C. RIORDAN, M. D.
J. KENNETH SAER, M. D.
RAY J. HADDAD, JR., M. D.

TWINBROOK 9-2353

December 22, 1967

G. Dean Mac Ewen, M. D.
Alfred I. du Pont Institute
P. O. Box 269
Wilmington, Delaware

Re: Carolyn Farmer

Dear Doctor Mac Ewen:

I think perhaps you will remember this little girl whom you cared for in 1966. The family is returning to Wilmington and will be coming to you for continued care.

We have pollicized the index finger on the right hand and made a thumb for her. She is using it very well. She will need to have the excess fat on the dorsal aspect of the transplanted thumb removed to give her a better cosmetic appearance but I have told the mother that I thought this should be delayed several months so that she can get better motion.

Enclosed please find copies of my operative reports.

Thank you for assisting us with her care.

Very truly yours,

Daniel C. Riordan, M. D

DCR:jaa
Encl: 2

# EXHIBIT 3

Surgery Records 1966-67

TOURO INFIRMARY 1400 FOUCHER STREET NEW ORLEANS, LOUISIANA 70115

OPERATIVE REPORT

NAME Farmer, Carolyn HOSPITAL NO. 01-40-53 DATE 10/25/67 ROOM A218

PRE-OPERATIVE DIAGNOSIS Congenital absence of thumb, right hand.

POST-OPERATIVE DIAGNOSIS Same.

NAME OF OPERATION Pollicization of right index finger.

SURGEON Dr. Riordan

ASSISTANTS Dr. O'Keefe

PROCEDURE (Include Anesthesia, Incision, Findings, Technic, Closure and condition on leaving Operating Suite)

After the patient was anesthetized, the right hand and arm were prepared with phisohex and betadine and sterile drapes were applied. An S-shaped incision was made on the radial aspect of the hand, starting at the level of the base of the metacarpals. This was curved around the base of the index finger, using a flap of skin both dorsally and palmarward to make the square corners on this S-shaped cut on the base of the index finger. The first dorsal interosseous and first volar interosseous were exposed and cut from their attachment on the proximal phalanx. The nerves and veins and arteries were all identified and protected, keeping them intact. The skin flap on the base of the index finger was made, a Wolfe-graft-type of skin dissection to preserve the vessels with the finger and the fat going with the finger. The base of the 2nd metacarpal was excised and the bone was cut off about 5 mm. proximal to the epiphysis of the thumb. It was necessary to do this because the middle phalanx of this finger was extremely small and would make this reconstructed thumb too short if part of the metacarpal was not saved. This removed about 3 cm. of the metacarpal shaft. After the index finger had been completely freed so that it could be mobilized and shifted proximally, it was shifted proximally placing the base of the metacarpal that remained into the defect at the carpus and placing this volar to the normal position of the 2nd metacarpal. It was sutured into position with two sutures of 5-0 multiple filament wire. The 1st dorsal interosseous and 1st volar interosseous were then sutured to the extensor apparatus at the level of the middle joint of the finger so that we would re-construct abductor brevis function and adductor function of the thumb. The long flexor of the thumb was freed from the annular ligament and allowed to retract which it did moderately well. The extensor tendon seemed to take up most of the slack so it was not shortened. The skin edges were then closed transposing the flaps of skin so that the transposed index finger was in the position of a normal thumb. The skin on the dorsal aspect was a little too tight and seemed to be avascular upon release of the tourniquet. There was good circulation to the transposed index finger, however. Some of the excess skin that had been removed was then placed on the dorsal aspect of the reconstructed thumb as a skin graft and sutured into position with 5-0 monofilament wire. Pressure dressing and splints were applied, im-mobilizing the hand in functional position with the transposed index finger in the position of the thumb.

Patientwas sent to the recovery room in good condition.

DR:ar 10/26/67 M.D.
DICTATED BY

Daniel Riordan, M. D. M.D.
SURGEON

FORM 0164 224 4/66 P

SURGEON'S COPY

014053 Carolyn Farmer

ROOM 2-7N-20

Service of Dr. Riordan (ORTHO)

DATE of operation: 11/14/66

Surgeon: Dr. Riordan

Assistant: Dr. Kube, Dr. Carter

Preoperative Diagnosis: Congenital anomalies; both upper extremities;(On the left arm, absence, partial, of the ulna; congenital fusion of the radius to the humerus.

Operative Procedure: Excision of cartilaginous ulnar anlage; excision of supracondylar bone and osteotomy of humerus.

PROCEDURE: After the patient was anesthetized, the left hand and arm were prepared with phisohex and betadine and sterile drapes applied. A longitudinal incision was made in the ulnar aspect of the elbow and carried down the ulnar border of the forearm. The medial epicondyle was exposed and the subcutaneous border of the cartilaginous ulnar anlage was identified, and this small bit of cartilage about 2½ inches long was exposed extraperiosteally and was removed. This was found to attach to the carpus and was causing some of the ulnar deviation of the forearm.

The humerus was then exposed proximally by elevating the brachioradialis and wrist extensor muscles off of the humerus and retracting them. By elevating the muscles anteriorly on the humerus, the radial nerve was identified and a branch of the radial nerve going into the extensor ulnaris was seen, and in an effort to free this from the surrounding tissues while dissecting with a small pointed pair of scissors, a small branch of this nerve was accidentally cut. This, as far as we could determine, was the motor supply to the extensor ulnaris. This was repaired with a single 6-0 suture of silk.

The supercondylar bone was e xposed in the anterior aspect of the humerus, and this was removed. An osteotomy of the humerus at the elbow, where the fusion with the radius was present was then done, removing a wedge of bone from the anterior and lateral aspect of the humerus, allowing the forearm to be brought from the posterior position to the anterior position and placing it in a position of about 150°. Two large KIrschner wires were used to transfix the osteotomy site. The muscles were returned to their normal position and sutures with catgut. The skin edges were closed with 4-0 chromic catgut. A pressure dressing and splints were applied, immobilizing the hand and arm in this position.

The patient was returned to the Recovery Room in good condition.

Daniel C. Riordan, M. D.

DCR:ks 11/14/66

# EXHIBIT 4

Declaration of Carolyn Sampson, Plaintiff, Pro Se

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GLENDA JOHNSON, et al.,
Plaintiffs,

v.

SMITHKLINE BEECHAM CORPORATION, et al.,
Defendants.

Case No. 2:11-cv-05782-PD
AND ALL RELATED CASES

This Document Relates to:
Yeatts, et al. v. SmithKline Beecham Corp., et al.,
No. 11-cv-06711

**DECLARATION OF CAROLYN SAMPSON IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT THE RECORD**

I, Carolyn Sampson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action and make this Declaration based upon my personal knowledge.
2. I submit this Declaration in support of my Motion for Leave to Supplement the Record with newly discovered historical documents.
3. My mother recently moved from her residence to an assisted living facility.
4. Following my mother's move, I became responsible for clearing, organizing, and preparing her residence for sale.
5. While sorting through decades of accumulated family papers, correspondence, and records located in my mother's residence, I discovered legal and medical documents relating to my congenital anomalies and childhood medical treatment.
6. Prior to discovering these materials during the process of clearing my mother's residence, I did not have possession, custody, or access to these documents.
7. To the best of my knowledge, these materials had remained among my parents' personal records and were not previously available to me.
8. The documents I discovered include:

   a. A December 16, 1963 letter from my parents' attorney discussing efforts to determine the cause of my birth defects and consultations with Doctor Hopper.

   b. A December 22, 1967 letter from Daniel C. Riordan, M.D. to G. Dean Mac Ewen, M.D. regarding my treatment and continuing care.

c. Medical and operative records from 1966 and 1967 documenting congenital upper-extremity anomalies and reconstructive surgical procedures performed during my childhood.

9. Because these documents were not previously available to me, I was unable to submit them to the Court earlier in these proceedings.
10. Because these documents were not available to me, they were likewise unavailable when expert opinions concerning my congenital anomalies were previously sought.
11. I believe these documents constitute contemporaneous evidence relevant to the historical record concerning my congenital anomalies, my medical treatment, and efforts undertaken by my family and physicians to determine the cause of those anomalies.
12. Attached as Exhibits A through C are true and correct copies of the documents I discovered among my mother's records.
13. I respectfully request that the Court permit supplementation of the record so that these newly discovered documents may be considered as part of the historical evidentiary record before the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 31, 2026.

Respectfully submitted,

**Carolyn Sampson**
Plaintiff, Pro Se

Because the proposed exhibits are contemporaneous records relevant to the historical facts underlying Plaintiff's claims, and because supplementation will not unfairly prejudice Defendants, Plaintiff respectfully submits that the interests of a complete and accurate record favor granting reciprocal leave. [Pl.'s Ex. 1 Attorney Letter], [Pl.'s Ex. 2 Letter from Daniel C. Riordan, M.D.], [Pl.'s Ex. 3, Surgery Records 1966-67].

**REQUESTED RELIEF**

WHEREFORE, Plaintiff Carolyn Sampson respectfully requests that the Court:

1. Accept this Response to Defendants' Motion for Leave to File Statement of Undisputed Material Facts; [Doc. 950].
2. Grant Plaintiff leave to supplement the record with the following newly discovered exhibits:
    - Exhibit 1: December 16, 1963 attorney correspondence; [Pl.'s Ex. 1, Attorney Letter].
    - Exhibit 2: December 22, 1967 letter from Daniel C. Riordan, M.D.; [Pl.'s. Ex 2, Letter from Daniel C. Riordan, M.D.].
    - Exhibit 3: 1966-1967 operative reports and related medical records; and [Pl.'s Ex. 3, Surgery Records 1966-67].
    - Exhibit 4: [Pl.'s Ex. 4, Declaration of Carolyn Sampson];
3. Permit Plaintiff to rely upon those materials in connection with Defendants' pending Renewed Motion for Summary Judgment;
4. Consider the supplemental exhibits together with Plaintiff's previously filed opposition to Defendants' Renewed Motion for Summary Judgment; and
5. Grant such other and further relief as the Court deems just and proper.

Dated: October 31, 2026

Respectfully submitted,

/s/ Carolyn Sampson

Carolyn Sampson, Plaintiff Pro Se

15353 Greenhaven Ln Apt 101

Burnsville, Minnesota 55306

651-470-3937

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2026, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system. I further certify that a true and correct copy of the foregoing document is being served on all counsel of record through the Court's CM/ECF system.

/s/ Carolyn Sampson

Carolyn Sampson

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON, et al.,<br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION, et al.,<br>Defendants. | Case No. 2:11-cv-05782-PD<br>AND ALL RELATED CASES<br><br>This Document Relates to:<br>Yeatts, et al. v. SmithKline Beecham Corp., et al.,<br>No. 11-cv-06711 |

**[PROPOSED] ORDER**

AND NOW, this _____ day of _________________, 2026, upon consideration of Plaintiff Carolyn Sampson's Response to Defendants' Motion for Leave to File Statement of Undisputed Material Facts and Motion for Leave to Supplement the Record, it is hereby ORDERED that:

Plaintiff Carolyn Sampson's Motion for Leave to Supplement the Record is GRANTED;

The Clerk shall docket Plaintiff's supplemental exhibits consisting of:

a. Exhibit A - December 16, 1963 attorney correspondence;

b. Exhibit B - December 22, 1967 letter from Daniel C. Riordan, M.D.;

c. Exhibit C - 1966-1967 operative reports and related medical records; and

d. Exhibit D - Declaration of Carolyn Sampson;

The Court will consider the supplemental exhibits in connection with Defendants' Renewed Motion for Summary Judgment and Plaintiff's opposition thereto;

Defendants may file a response to Plaintiff's supplemental materials within 14 days of this Order should they elect to do so.

BY THE COURT:

____________________________

Paul S. Diamond, J.