**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION, et al.,<br><br>Defendants. | Case No. 2:11-cv-05782-PD<br><br>AND ALL RELATED CASES<br><br>*This Document Relates to:*<br><br>*Spence, et al. v. Avantor Performance Materials, et al.*, No. 5:12-cv-04542 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CLAIMS OF *PRO SE* PLAINTIFF TERRIE BOLTON**

Defendants bring this Motion based on deficiencies in the expert declaration submitted by *pro se* Plaintiff Terrie Bolton in response to this Court's *Lone Pine* Order. The Order required, *inter alia*, an expert declaration affirming—***to a reasonable degree of medical certainty***, and ***after review of the available evidence***—both that Plaintiff was ***exposed*** to thalidomide in utero and that the exposure ***caused*** her injuries. ECF No. 911 ¶ A.2(v).

Plaintiff submitted a declaration that Trent Stephens, Ph.D., executed in 2018, nearly eight years before the Order was entered (the "Stephens Declaration"). The Stephens Declaration was not drafted to address the Order's requirements, and it does not meet them. Dr. Stephens never considers the available evidence, which



US 258092377v6

reflects a complete absence of proof that Plaintiff's mother took thalidomide. Indeed, Plaintiff was born in September 1964, more than two years ***after*** the drug's 1962 recall. Instead of opining that the evidence shows Plaintiff was exposed to thalidomide *in utero* as the Order requires, Dr. Stephens takes a backwards logical leap from Plaintiff's injuries to effectively ***assume*** she was exposed. This reverse-engineering is no substitute for the review of the evidence the Order requires. Plaintiff's claims should therefore be dismissed with prejudice. *See* Federal Rule of Civil Procedure 41(b); *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868–70 (3d Cir. 1984).

## BACKGROUND

### A. Plaintiff's Claims

Plaintiff's case began with a multi-plaintiff complaint that her counsel at the time, the Hagens Berman firm, filed on August 9, 2012. *See* Compl. (ECF No. 1). Defendants collected medical records in Plaintiff's case in 2013 and 2014 and served written discovery directed to exposure and causation. In response to Defendants' requests, Plaintiff admitted that she has no contemporaneous medical record documenting that her mother was dispensed, or ingested, thalidomide while pregnant with her, and that she does not know the identity of the doctor who allegedly dispensed thalidomide to her mother. Ex. A, Pl. Terrie Bolton's Supp. Resps. to

Def. Sanofi-Aventis U.S. LLC's First Set of Reqs. for Admis., Interrogs., and Reqs. for Prod. of Docs. (June 9, 2014) Resps. to RFA Nos. 1, 3. Plaintiff's parents, who died before Defendants took discovery in Plaintiff's case, never told her that thalidomide caused her injuries. Ex. B, Resp. to GSK Interrog. No. 3. And Plaintiff herself acknowledged that "no living person" has any knowledge whether Plaintiff's mother took thalidomide. *Id.*, Resp. to GSK Interrog. No. 1. In fact, Plaintiff was born in 1964—which was ***two years*** after the U.S. clinical trial of the drug ceased and the product was recalled.

Medical records produced in Plaintiff's case further highlight the lack of exposure evidence. A medical record from 1964 states that Plaintiff "was the product of an uneventful, nine-month pregnancy," and "[t]he only significant history during the pregnancy was adrenalin which was administered to the mother for asthma during the 4th month." Ex. C, Bolton 260088:007 at 316. A 1967 medical record reiterates that Plaintiff "was the product of an uneventful nine months pregnancy . . . . The mother had one episode of asthma during the fourth month of her pregnancy and was treated with adrenalin; ***no other medications were given***." *Id.* at 202.

### B. The *Lone Pine* Order

In May 2026, this Court entered the *Lone Pine* Order now at issue, requiring all remaining Plaintiffs to come forward with threshold evidentiary support for their

claims. ECF No. 911 at 1–2. Paragraph A.2 of the Order requires each Plaintiff identified in Appendix A—which includes Plaintiff here—to serve "one or more expert declarations meeting the requirements of 28 U.S.C. § 1746" that contain, "at a minimum":

> An affirmation that the Declarant has reviewed and considered the available evidence, including Plaintiff's medical records produced and any testimony given by Plaintiff and other fact witnesses in the Plaintiff's case, and that the Declarant can state to a reasonable degree of medical certainty that Plaintiff was exposed to thalidomide in utero, which caused Plaintiff's injuries identified in the Declaration.

*Id.* ¶ A.2(v). The Order set a ninety-day deadline for Plaintiffs to respond. Noncompliance carries a strict consequence: the claims of any Plaintiff who fails to comply "shall be dismissed with prejudice." *Id.* ¶¶ A.1–A.3.

On August 21, 2026, Plaintiff—who has proceeded *pro se* since October 21, 2020 (ECF No. 731)—served Defendants with a declaration in response to the Order. Ex. D, Bolton Decl. Her declaration lists ten congenital conditions that she attributes to thalidomide. *Id.* ¶ 2. She claims that, before 2014, she had been told that thalidomide "could not have caused [her] injuries" because, among other reasons, her 1964 birthdate "was too late for thalidomide to have caused [her] injuries given the purported 'successful' recall of the drug in 1962." *Id.* ¶ 6; *see also id.* ¶ 17. She does not identify any medication her mother took during her pregnancy. To the

contrary, her declaration concedes that "[m]y parents never told me thalidomide caused my birth injuries." *Id.* ¶ 5. She only speculates that her mother "***could have*** taken a pill prescribed to her for a prior pregnancy." *Id.* ¶ 7(b) (emphasis added).

Plaintiff included with her submission a Declaration from Dr. Trent Stephens, executed on June 14, 2018, together with Dr. Stephens's curriculum vitae. *See* Ex. E, Stephens Decl.[1] Dr. Stephens states that he evaluated Plaintiff on August 20, 2014 at his home in Pocatello, Idaho, after which he informed Plaintiff's counsel at the time of his "oral conclusions" and prepared "a very preliminary report that did not express any final opinion." *Id.* ¶¶ 11–12. He further states that he "was never asked to prepare a final report on Ms. Bolton," and that after he provided his August 22, 2014 preliminary draft, he was "never asked . . . to perform any additional work with respect to Ms. Bolton's case." *Id.* ¶ 13. The remaining paragraphs set out the

[1] The Stephens Declaration was prepared and provided to Hagens Berman in June 2018 ahead of a mediation between Plaintiff and the firm over potential claims related to its representation of her in this litigation. *See* ECF No. 818-9, Ex. 105. Hagens Berman filed the Stephens Declaration to the docket on June 24, 2024, as part of an exhibit to Hagens Berman Sobol Shapiro LLP and Steve Berman's Objections to the Special Discovery Master's Report and Recommendations Dated October 12, 2023 and Response to the OSC Entered October 13, 2023. *See generally* ECF No. 818. Plaintiff has since confirmed that she is relying on the Stephens Declaration alone. After Defendants agreed to extend her time to identify a supplemental expert to November 2025, Plaintiff advised defense counsel that, although she had "attempted to find additional support," she was "unable to do so and will therefore rely on Dr. Stephens." *See* Ex. F (Email from T. Bolton to S. Weissman dated Nov. 10, 2025).

conclusions that, according to Dr. Stephens, "would have been included" if he "had been asked to prepare a final report on Ms. Bolton." *Id.* ¶¶ 14–17.

The Stephens Declaration does not reflect that he reviewed, or was even aware of, the abject lack of evidence that Ms. Bolton's mother took thalidomide. Nor does he ever mention her birthdate in 1964. The declaration accordingly contains no conclusion or analysis directly addressing whether Plaintiff's mother was exposed to thalidomide during pregnancy. *See generally id.* ¶¶ 15–17. Instead, he purports to calculate the probability of several conditions occurring together by chance and concludes that Plaintiff's "spectrum of defects were caused by thalidomide other than by some other, random event." *Id.*

## ARGUMENT

### I. Plaintiff's Submission Does Not Comply with the Order

The Order required Plaintiff to serve a conforming expert declaration within ninety days or have her case dismissed with prejudice. ECF No. 911 ¶ A.3. The threshold question then is whether Plaintiff's expert submission satisfies Paragraph A.2(v). It does not. Dismissal is accordingly the appropriate remedy. *See In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, No. 23-1032, 2024 WL 3423709, at *3 (3d Cir. July 16, 2024) (recognizing a court's authority to dismiss cases for noncompliance with a *Lone Pine* order); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 245–46 (3d Cir. 2013) (affirming dismissal and making clear that a

submission's mere existence does not satisfy a *Lone Pine* order when its substance fails to supply the required showing).

***First***, Paragraph A.2(v) of the Order requires an affirmation that the expert "has reviewed and considered the available evidence, including Plaintiff's medical records produced . . . in the Plaintiff's case." ECF No. 911 ¶ A.2(v). The Stephens Declaration contains no such affirmation. Dr. Stephens describes in general terms the work he was asked to perform across the thalidomide cases, namely to "review medical records and, if desired, examine plaintiffs." Ex. E, Stephens Decl. ¶ 1. But he does not identify a single medical record that he reviewed for Plaintiff, much less the full set of medical records produced in her case, and he does not reference any other evidence. The only case-specific work he describes is an examination of Plaintiff at his home in August 2014 and a preliminary report that followed. *Id.* ¶¶ 11–12. Nor could the Stephens Declaration have been prepared with the Order's requirements in view. Dr. Stephens signed it nearly eight years before the Order was entered, and he states that he performed no work on Plaintiff's case after August 2014. *Id.* ¶ 13.

The omission matters because the Order requires an opinion grounded in the available evidence of exposure, including the evidence that (i) Plaintiff herself cannot identify a record of ingestion, a dispensing physician, or a living witness with knowledge that her mother took thalidomide, and (ii) contemporaneous medical

records refute that Plaintiff's mother took thalidomide. ECF No. 911 ¶ A.2(v); Ex. A, Resps. to RFA Nos. 1, 3; Ex. B, Resp. to GSK Interrog. No. 1; Ex. C, Bolton 260088:007 at 202. Nor does the Stephens Declaration grapple with the fact that Plaintiff was not born until two years after the product was recalled. The Stephens Declaration therefore does not reflect the review of the "available evidence" that the Order requires. *See In re Asbestos*, 718 F.3d at 245–46 (affirming dismissal where *Lone Pine* submission does not contain sufficient factual support for exposure).

***Second***, the Stephens Declaration does not supply the exposure opinions that the Order requires. ECF No. 911 ¶ A.2(v). The Order requires two showings: (1) that Plaintiff "was exposed to thalidomide in utero," and (2) that this exposure "caused Plaintiff's injuries." *Id.* Yet Dr. Stephens does not present a distinct opinion that Plaintiff was exposed to thalidomide. His method, by his own description, is to estimate the likelihood of a plaintiff's physical deformities "occurring in a typical pregnancy" and to ***infer*** exposure from that estimate. Ex. E, Stephens Decl. ¶ 3. Applying that method here, he calculates the probability of five conditions occurring together by chance, and concludes only that this "suggests that these defects did not occur by random events but, therefore, may be linked by some common etiology." *Id.* ¶ 16. He then reasons that, because birth defects arising from an alternative possible cause (a "natural blood vessel compromise") are "exceedingly rare," thalidomide must have caused her injuries. *Id.* ¶ 17. He does so without ever

quantifying how likely such a natural blood vessel compromise is in the general population, citing any literature supporting any such estimate, or making any attempt to rule that possibility out as the cause of Plaintiff's birth defects.

Putting aside that it lacks any scientific rigor whatsoever, this backwards reasoning does not supply the exposure opinion the Order demands. Plaintiff's declaration confirms that she is treating causation as a substitute for exposure: she contends that the probability calculation "means that no external evidence of ingestion is required." Ex. D, Bolton Decl. ¶ 10. But that has it exactly backwards: exposure evidence is a predicate of a causation finding. *Cf. Johnson v. SmithKline Beecham Corp.*, 55 F. Supp. 3d 603, 612 (E.D. Pa. 2014) (in addressing an absence of causation evidence, noting that "Dr. Stephens's assumption is not evidence that Plaintiff's mother took thalidomide early in her pregnancy").

Nor does Dr. Stephens' opinion square with the factual record in Plaintiff's case. He does not address whether, or how, Plaintiff's mother could have obtained thalidomide during a pregnancy that resulted in a birth in 1964, more than ***two years after*** the drug was recalled, a fundamental timing problem that Plaintiff herself identifies. *See* Ex. D, Bolton Decl. ¶¶ 6, 17. He does not consider the absence of any record of Plaintiff's mother receiving the drug, her admission that she does not know who allegedly provided it, or the fact that "no living person" has any knowledge as to exposure. *See* Ex. B, Resps. to RFA Nos. 1, 3. He does not address

the medical records from the 1960s that indicate that Plaintiff's mother did ***not*** ingest thalidomide during pregnancy. Ex. C Bolton 260088:007 at 202, 316. An opinion that disregards the direct evidence (or lack thereof) is not a competent opinion that exposure occurred. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 413 (3d Cir. 2002) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (a court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

***Finally***, the Stephens Declaration does not address all of "Plaintiff's injuries identified in the Declaration." ECF No. 911 ¶ A.2(v). Plaintiff attributes ten conditions to thalidomide. Ex. D, Bolton Decl. ¶ 2. Dr. Stephens's analysis does not address several of them, including her scoliosis, hypoplastic left iliac wing, hip and knee contractures, and valgus deformity of the feet. *See* Ex. E, Stephens Decl. ¶¶ 15–17. *Cf. Andres*, 55 F. Supp. 3d at 612 (faulting Dr. Stephens for "not address[ing] whether thalidomide caused ***all*** Plaintiff's injuries," including a curved spine) (emphasis in original). At the same time, his probability calculation includes a palatine torus, a condition Plaintiff does ***not*** list, on which he relies for his probability calculation and causation analysis. Ex. E, Stephens Decl. ¶¶ 15–17. These basic errors and omissions only underscore the disconnect between the Stephens Declaration and the underlying evidence that the Order mandates he review

and consider. The Stephens Declaration therefore does not offer the required causation opinion on the injuries that Plaintiff attributes to thalidomide exposure.

## II. Dismissal is Warranted Under Rule 41(b) and the *Poulis* Factors

Federal Rule of Civil Procedure 41(b), which permits dismissal when a plaintiff "fails . . . to comply with . . . a court order," provides the framework here. Applying Rule 41(b), courts routinely dismiss cases when plaintiffs do not or cannot comply with *Lone Pine* orders requiring them to produce sufficient proof to substantiate their claims. *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 687 F. App'x 210, 212 (3d Cir. 2017) (affirming dismissal of case for failure to produce expert report opining "that a particular plaintiffs injury was caused by ingestion of Avandia" in compliance with case management order); *In re Asbestos*, 718 F.3d at 248 (affirming dismissal of cases for failure to comply with *Lone Pine* order requiring proof of medical diagnoses and detailed exposure history); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 30 F. App'x 27, 30 (3d Cir. 2002) (affirming dismissal with prejudice for failure to comply with discovery order to designate case-specific experts).[2]

---

[2] *See also Avila v. Willits Envt Remediation Tr.*, 633 F.3d 828, 833–34 (9th Cir. 2011) (affirming dismissals of cases where plaintiffs failed to comply with *Lone Pine* order requiring *prima facie* showing of exposure and causation); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 966 F.3d 351, 358 (5th Cir. 2020) (affirming dismissal with prejudice for failure to provide completed fact sheet detailing personal and medical history pursuant to case management order); *In re Guidant*

In this Circuit, when a plaintiff fails to comply with a *Lone Pine* order and dismissal is sought as a sanction, district courts apply the six-factor balancing test set forth in *Poulis*. *See, e.g., In re Avandia,* 687 F. App'x at 213 (citing *Poulis*, 747 F.2d at 868–70); *In re Asbestos*, 718 F.3d at 246 (same). Those factors are "(1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) a history of dilatoriness; (4) whether the conduct was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of the claim." *In re Avandia*, 687 F. App'x at 213 (internal citation omitted). "Not all factors need to be satisfied for the District Court to dismiss a complaint," and "a District Court need not explicitly weigh all of the factors before dismissing a complaint." *Id.* at 213, 214 (internal quotation marks and citations omitted).

Multiple *Poulis* factors—particularly personal responsibility, prejudice to the adversary, the effectiveness of sanctions other than dismissal, and the

---

*Corp. Implantable Defibrillators Prods. Liab. Litig*., 496 F.3d 863, 867 (8th Cir. 2007) (same); *In re Vioxx Prods. Liab. Litig.*, 388 F. App'x 391, 398 (5th Cir. 2010) (affirming dismissal of cases for failure to comply with *Lone Pine* order requiring Rule 26(a)(2) expert report attesting that plaintiffs had injuries caused by Vioxx); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (affirming dismissal of over 1,000 cases for failure to provide expert affidavits that complied with case management orders); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2021 WL 493069, at *3 (E.D. La. Feb. 10, 2021), reconsideration denied, 2021 WL 1212538 (E.D. La. Mar. 31, 2021) and appeal dismissed sub nom. *Brown v. Janssen Rsch. & Dev., L.L.C.*, 2021 WL 8322124 (5th Cir. July 30, 2021) (dismissing case with prejudice for failure to comply with *Lone Pine* order requiring expert affidavits establishing a *prima facie* case of causation).

meritoriousness of the claims—weigh heavily in favor of dismissal of Plaintiff's claims, while the others are largely neutral. *See Washington v. Erwin*, No. CV 14-1527, 2016 WL 4440327, at *4 (E.D. Pa. Aug. 22, 2016) (dismissing with prejudice where "three of the *Poulis* factors—personal responsibility, unavailability of alternative sanctions, and meritoriousness of claims—weigh strongly in favor of dismissal[,] a fourth factor—willfulness—weighs somewhat in favor of dismissal [] and the remaining two factors—prejudice and a history of dilatoriness—are largely neutral").

***Personal Responsibility.*** As a *pro se* litigant, Plaintiff is solely responsible for prosecuting her claims. *See Lopez v. Cousins*, 435 F. App'x 113, 117 (3d Cir. 2011) ("As a general rule, a *pro se* litigant is responsible for his failure to comply with court orders."); *see also Gieniec v. Smith*, No. 3:09–cv–02330, 2011 WL 6130723, at *1 (M.D. Pa. Dec. 8, 2011) ("Plaintiff is proceeding *pro se,* and thus is responsible for . . . informing the Court of his address, responding to discovery requests, and complying with Court orders."); *In re Avandia*, 687 F. App'x at 214 ("Because the Mayfields are proceeding *pro se*, they are personally responsible for their non-compliance."). Plaintiff was aware of the requirements of the Order yet failed to comply with them. As a *pro se* plaintiff, she bears the responsibility for that. *See, e.g.*, *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 319 F.R.D. 480, 485 (E.D. Pa. 2017) (in granting dismissal pursuant to *Lone Pine* order, noting

that plaintiffs "were aware of the requirements of PTO 236, and received the Court's orders. Thus, the first factor weighs in favor of dismissal.").

***Prejudice to the Adversary.*** Defendants have sought threshold causation evidence from each individual Plaintiff in this litigation for more than fifteen years. Requiring Defendants to continue litigating claims unsupported by any conforming expert affirmation of specific causation is precisely the type of burden that *Lone Pine* orders are intended to eliminate. In *In re Asbestos*, for example, the Third Circuit found that the district court properly considered the *Poulis* factors and dismissed cases with prejudice after determining that the plaintiffs' failure to present an "exposure history necessary to withstand a motion to dismiss . . . delayed the progress of their cases and unduly burdened the defendants." *In re Asbestos Prods. Liab. Litig.*, 543 F. App'x 202, 206 (3d Cir. 2013).

***Effectiveness of Remedies Other than Dismissal.*** No sanction other than dismissal would cure the defect in this case. Plaintiff was on notice that failure to comply with the Order would result in dismissal with prejudice. ECF No. 911 ¶ A.3. And the Court entered the Order over her objection that she had already provided the requested evidence. *Id.* at 2. She nonetheless responded with an expert declaration prepared eight years earlier that does not contain the required affirmations. Her inability to produce conforming expert evidence of exposure and causation signifies that she lacks the prima facie evidence necessary to pursue her

claims. *See In re Avandia*, 319 F.R.D. at 486 (granting dismissal with prejudice where "[t]he Court has repeatedly warned that failure to comply with its orders may result in dismissal . . . and at this juncture the Court cannot contemplate an effective alternative sanction").

***Meritoriousness of Plaintiff's Claims.*** Plaintiff has been proceeding *pro se* for years and had every opportunity under the Order to provide conforming expert support if she could do so. "[T]he logical conclusion" from her submission of a stale declaration that, by its own terms, reflects no final opinion is that she was unable to find the requisite expert support "because her claims lacked merit." *In re Avandia*, 319 F.R.D. at 486; *see also In re Xarelto*, 2021 WL 493069, at *3 (dismissing with prejudice after concluding that "no lesser sanction is warranted in light of Plaintiffs' inability to produce expert evidence central to [] their case"); *Acuna v. Brown & Root Inc.*, 1998 WL 35283824, at *8 (W.D. Tex. 1998) (dismissing claims with prejudice after finding expert affidavits did not sufficiently comply with *Lone Pine* order and stating that "the court has no choice but to conclude that Plaintiffs are either unwilling or unable to provide the foregoing information and that a sanction less than dismissal would be fruitless"). The rest of the record points the same way. Plaintiff admits that she has no record of her mother receiving thalidomide and does not know who allegedly provided it, and that her parents never told her that her mother took thalidomide. Ex. B, Resps. to RFA Nos. 1, 3. She has further admitted

that she has not been able to find expert support beyond the Stephens Declaration. Ex. F.

***History of Dilatoriness and Willfulness of Conduct.*** Defendants do not ascribe any ill motives to Plaintiff and recognize that Hagens Berman represented her for much of the duration of this litigation. From that standpoint, Defendants concede that these factors are largely neutral. However, as this Court explained, the Order "require[d] only that Plaintiffs provide information that should have been obtained ***before*** suit was filed, and to verify allegations in their Complaints." ECF No. 911 at 2 (emphasis added). That is because a "plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries" before filing suit. *Acuna*, 200 F.3d at 340.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the claims of *pro se* Plaintiff Terrie Bolton with prejudice for failure to comply with Paragraph A.2 of the Court's May 27, 2026 Order (ECF No. 911) and pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and the *Poulis* factors.

Dated: November 19, 2026 Respectfully submitted,

*/s/ Daniel S. Pariser*
Daniel S. Pariser (admitted pro hac vice)
Paige H. Sharpe (admitted pro hac vice)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Anand Agneshwar (admitted pro hac vice)
Carmela T. Romeo
Pennsylvania Bar No. 313042
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Counsel for Sanofi-Aventis U.S. LLC*

*/s/ Sonja S. Weissman*
Michael T. Scott
Mike Scott Law LLC
1116 Red Rose Lane
Villanova, PA 19085
Telephone: (215) 518-8695

Sonja S. Weissman (admitted pro hac vice)
REED SMITH LLP
101 Second Street, Ste. 1800
San Francisco, CA 94105
Telephone: (415) 543-8700

*Counsel for GlaxoSmithKline LLC and GlaxoSmithKline Holdings (Americas) Inc.*

*/s/ Daniel A. Spira*
Michelle A. Ramirez (*admitted pro hac vice*)
Daniel A. Spira (*admitted pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Eugene A. Schoon (*admitted pro hac vice*)
CROKE, FAIRCHILD, DUARTE & BERES, LLC
180 N. LaSalle St., Suite 3400
Chicago, IL 60601
Telephone: (773) 517-2740

*Counsel for Grünenthal GmbH*